UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY DEN HOLLANDER, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DEBORAH SWINDELLS DONOVAN, PAUL W. STEINBERG, and JANE DOE, | : |
| Defendants. | : |

Case No.:  08 CV 04045 (FB)(LB)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DEBORAH SWINDELLS DONOVAN'S MOTION TO DISMISS

---

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS.......................................................................................1

ARGUMENT...........................................................................................................4

POINT I
THIS COURT LACKS SUBJECT MATTER JURISDICTION ..................................4

POINT II
DONOVAN IS IMMUNE FROM LIABILITY UNDER THE FAIR USE DOCTRINE .................5

     A.    The Purpose and Character of the Use Favors Application of the Fair
           Use Doctrine. ....................................................................................7

          1.    Donovan's use of the six essays was non-commercial. .......................7

          2.    Donovan used the six essays for criticism and commentary,
                rendering it transformative. ..................................................9

     B.    The Nature of the Copyrighted Work Favors Application of the Fair Use
           Doctrine. .........................................................................................10

     C.    The Amount and Substantiality of the Portion Used At Worst Neither
           Favors Nor Disfavors Application of the Fair Use Doctrine. ..........................12

     D.    The Effect of the Use Upon the Potential Market For or Value of the
           Copyrighted Work Favors Application of the Fair Use Doctrine....................13

     E.    Use of the Copyrighted Work in Judicial Proceedings is a Recognized
           Basis for Application of the Fair Use Doctrine. ..............................................13

POINT III
THE LITIGATION PRIVILEGE ACCORDS DONOVAN ABSOLUTE IMMUNITY ...............15

POINT IV
DONOVAN IS ENTITLED TO COSTS AND ATTORNEY'S FEES ...................................16

CONCLUSION ......................................................................................................17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*3H Enterprises, Inc. v. Dwyre*
182 F. Supp. 2d 249 (N.D.N.Y. 2001).................................................................. 15

*Aequitron Medical, Inc. v. Dyro*
999 F. Supp. 294 (E.D.N.Y. 1998) ...................................................................... 15

*Arica Inst. v. Palmer*
970 F.2d 1067 (2d Cir. 1992) .......................................................................... 6, 12

*Ass'n of Am. Med. Colleges v. Cuomo*
928 F.2d 519 (2d Cir. 1991) ................................................................................. 6

*Bill Graham Archives v. Dorling Kindersley Ltd.*
448 F.3d 605 (2d Cir. 2006) ............................................................................... 13

*Blanch v. Koons*
467 F.3d 244 (2d Cir. 2006) ................................................................................. 7

*Bond v. Blum*
317 F.3d 385 (4th Cir. 2003) ....................................................................... passim

*Campbell v. Acuff-Rose Music, Inc.*
510 U.S. 569 (1994) ...................................................................................... 10, 12

*Conan Properties, Inc. v. Mattel, Inc.*
601 F. Supp. 1179 (S.D.N.Y. 1984) ..................................................................... 5

*Credit Sights, Inc. v. Ciasullo*
No. 05 CV 9345 (DAB), 2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008)................. 15

*Earth Flag Ltd. v. Alamo Flag Co.*
154 F. Supp. 2d 663 (S.D.N.Y. 2001).................................................................. 16

*Fogerty v. Fantasy, Inc.*
510 U.S. 517 (1994) ........................................................................................... 16

*Getaped.com v. Cangemi*
188 F. Supp. 2d 398 (S.D.N.Y. 2002)............................................................ 11, 12

*In re Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*
509 F.3d 116 (2d Cir. 2007) ................................................................................. 4

*Infinity Broad. Corp. v. Kirkwood*
150 F.3d 104 (2d Cir. 1998) ................................................................................. 5

*Jartech, Inc. v. Clancy*
666 F.2d 403 (9th Cir. 1982) .............................................................................. 14

*Lennon v. Premise Media Corp.*
556 F. Supp. 2d 310 (S.D.N.Y. 2008)........................................................... passim

*London v. Polishook*
189 F.3d 196 (2d Cir. 1999) ................................................................................. 4

*Mathieson v. Associated Press*
No. 90 Civ. 6945 (LMM), 1991 WL 64453 (S.D.N.Y. April 16, 1991) ............... 6

*Matthew Bender & Co., Inc. v. West Publ'g Co.*
240 F.3d 116 (2d Cir. 2001) ............................................................................... 16

*Morriseau v. DLA Piper*
No. 06 Civ. 13255 (LAK), 2007 WL 4292030 (S.D.N.Y. Dec. 3, 2007) .......... 17

**TABLE OF AUTHORITIES**
(continued)

Page

*Noble v. Town Sports Int'l, Inc.*
  No. 96 CIV. 4257 (JFK), 1998 WL 43127 (S.D.N.Y. Feb. 2, 1998)................................. 5
*Religious Tech. Ctr. v. Wollersheim*
  971 F.2d 364 (9th Cir. 1992) .......................................................................... 14
*Shell v. Devries*
  No. Civ. 06-CV-00318-REB, 2007 WL 324592 (D. Colo. Jan. 31, 2007)..................... 14
*Sony Corp. of Am. v. Universal City Studios, Inc.*
  464 U.S. 417 (1984) ...................................................................................... 14
*Straus v. Prudential Employee Sav. Plan*
  253 F. Supp. 2d 438 ...................................................................................... 11
*Thomson v. Gaskill*
  315 U.S. 442 (1942) ........................................................................................ 4
*U.S. v. Am. Soc. of Composers, Authors and Publishers*
  562 F. Supp. 2d 413 (S.D.N.Y. 2008)................................................................ 11
*Video-Cinema Films, Inc. v. Cable News Network, Inc.*
  No. 98 CIV. 7128IBSJ), 98 CIV. 7129 (BSJ), 98 CIV. 7130 (BSJ), 2001 WL 1518264
  (S.D.N.Y. Nov. 28, 2001) ............................................................................ 6, 12
*Williams v. Crichton*
  891 F. Supp. 120 (S.D.N.Y. 1994) ................................................................... 16
*World Wide Tours of Greater NY, Ltd. v. Parker Hannifin Customer Support, Inc.*
  No. CV-07-1007 (FB), 2008 WL 516676 (E.D.N.Y. Feb. 25, 2008)................................. 7
*Wright v. Warner Books, Inc.*
  953 F.2d 731 (2d Cir. 1991) ............................................................................. 6

**Statutes**
17 U.S.C. § 107 (2006) ...................................................................................... 5
17 U.S.C. § 107(3) (2006) ................................................................................ 12
17 U.S.C. § 107(4) (2006) ................................................................................ 13
17 U.S.C. § 411(a) (2006) .................................................................................. 4
17 U.S.C. § 505 (2006) .................................................................................... 16

**Other Authorities**
3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*
  § 13.05[D] (1991) ........................................................................................ 14

## PRELIMINARY STATEMENT

Undeterred in his crusade against "the infringement of Men's Rights by the feminists and their allies,"[1] Plaintiff Roy Den Hollander ("Plaintiff"), an attorney proceeding *pro se*, opens a new front in this imagined battle with a lawsuit accusing defendants Deborah Swindells Donovan ("Donovan") and another attorney, Paul W. Steinberg ("Steinberg"), of unlawfully duplicating his misogynistic manifestos ("the six essays") and proffering them in a court proceeding.

Donovan moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and respectfully submits this Memorandum of Law in support of the instant motion.

As a preliminary matter, this Court lacks subject matter jurisdiction because Plaintiff has failed to comply with the recording statute governing his purported claims of infringement under the federal Copyright Act of 1976 ("the Copyright Act"). Even if Plaintiff complied with the Copyright Act's recording statute, thereby vesting this Court with subject matter jurisdiction, his claims of infringement would fail on the merits under the doctrine of fair use and/or New York's litigation privilege. Accordingly, Donovan respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice and award Donovan costs and attorney's fees as authorized under the Copyright Act.

## STATEMENT OF FACTS[2]

The instant lawsuit ("*Hollander II*") was commenced by Plaintiff filing a Complaint on or about October 3, 2008. (Krebs. Decl. Ex. 1).[3] However, the true genesis of this lawsuit

---

[1]    *See* www.roydenhollander.com.

[2]    Donovan assumes the allegations in the Complaint, as modified by Plaintiff in his letter to the Court dated February 10, 2009, are true for the purpose of this motion only and reserves the right to contest them in subsequent proceedings. All exhibits are annexed to the Declaration of Diane Krebs, Esq. ("Krebs Decl."). Plaintiff's February 10, 2009 letter is Exhibit 2.

[3]    Plaintiff impermissibly filed a Supplemental Complaint on March 2, 2009 (Ex. 3). Fed. R. Civ. 15(d) requires that a "supplemental" pleading be filed upon motion of a party. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1504 (2d ed. 1990) ("[l]eave must be sought by motion, upon reasonable notice to the other parties, and the court may impose such

can be traced to June 2007, when plaintiff commenced a purported class action lawsuit: *Hollander v. Copacabana Nightclub et al.*, 07-cv-05873 (MGC)(KNF) (S.D.N.Y. June 21, 2007) ("*Hollander I*").  (Ex. 4).  In *Hollander I*, Plaintiff sought a judgment declaring that Ladies Nights events are discriminatory against men.  Lotus, a New York City nightclub named as a defendant, retained the law firm of Gordon & Rees LLP as counsel.  Donovan, a partner with Gordon & Rees, was the primary attorney on the case.

During the course of the litigation, Plaintiff moved to disqualify the presiding judge, Senior United States District Judge Miriam Goldman Cedarbaum.  (Ex. 5).  Plaintiff's Notice of Motion accused Judge Cedarbaum of evincing "sexual bias, sexual prejudice, and partiality toward the class of men on whose behalf the male named plaintiff brought this suit."  *Id.* at ¶ 8.

Lotus opposed the motion.  (Ex. 6).  In those opposition papers, Donovan filed an affirmation in which she pointed out the hypocrisy of Plaintiff's accusations of impartiality by submitting, as exhibits, the six essays.  Donovan did not publicly disclose how she obtained the six essays, but stated that it was her "understanding [that the six essays] appeared on the Internet."  (Ex. 6 at ¶ 11).[4]

Incensed, Plaintiff filed a 12-page reply accusing Donovan, *inter alia*, of "resort[ing] to a tactic often used by self-righteous feminists and their sycophants over the past forty years in this country: attack a man for daring to exercise his freedom of speech in an effort to silence what they don't like and win something they don't deserve – in this case a denial

---

terms as are just").  But even if this Court were to ignore this procedural impropriety and view the original and supplemental Complaint jointly as a single document, the entire case should still be dismissed with prejudice for the reasons stated herein.

[4]      As Plaintiff has acknowledged in his February 10, 2009 letter (Ex. 2), Steinberg has stated he provided the six essays to Donovan.

of my motion for recusal." (Ex. 7 at ¶ 2). In his reply affirmation, Plaintiff also accused Donovan of unlawfully procuring the six essays. (Ex. 7 at ¶ 5).[5]

On September 29, 2008, Judge Cedarbaum issued a *Memorandum & Opinion* ("Opinion") denying Plaintiff's various motions, granting the *Hollander I* defendants' motion to dismiss the complaint, and directing the Clerk to close the case. (Ex. 8). In rejecting Plaintiff's request for an order directing Donovan to disclose how she procured the essays, Judge Cedarbaum wrote that "any claim that [Plaintiff] may seek to pursue in relation to the submission of those essays is beyond the scope of this action." *Id.* at 12).

Emboldened by this single sentence, Plaintiff apparently (and, as demonstrated below, wrongly) believes that a copyright infringement claim is the proper course of action. In *Hollander II*, he alleges ownership of the six essays and avers that they "are registered in accordance with the Copyright Act of 1976 either individually or as part of a larger work." Cmplt. at ¶ 2. However, Plaintiff fails to provide Certificates of Registration or present copyright registration numbers showing registration of the six essays with the United States Copyright Office. Plaintiff further alleges that Donovan infringed the copyright law when she uploaded the six essays on the Electronic Case Filing System ("ECF") as an exhibit in *Hollander I*. Cmplt. at ¶ ¶ 10; 11; 12; 13; 14; 15; 16.

Viewed in the light most favorable to the Plaintiff, the Complaint does not vest this Court with subject matter jurisdiction and also fails to state a cause of action upon which relief can be granted. Accordingly, the Complaint should be dismissed with prejudice.

---

[5]     Plaintiff has now apparently withdrawn that accusation. See Krebs Decl. Ex. 2.

## ARGUMENT

### POINT I

### THIS COURT LACKS SUBJECT MATTER JURISDICTION

It is a prerequisite for any copyright infringment lawsuit that subject works must be registered with the United States Copyright Office.  *See* 17 U.S.C. § 411(a) (2006) ("no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").  The Second Circuit has squarely held the registration requirement to be a condition precedent to a claim of copyright infringement, and the failure to do so divests the court of subject matter jurisdiction.  *See In re Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 509 F.3d 116, 121 (2d Cir. 2007) ("Whether this requirement is jurisdictional is not up for debate in this Circuit.  On two recent occasions, we have squarely held that it is").

In the present case, Plaintiff has failed to meet this precondition.  Plaintiff's conclusory assertion – that the six essays "are registered in accordance with the Copyright Act of 1976 either individually or as part of a larger work" (Cmplt. at ¶ 2) – does not demonstrate compliance.[6]  *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) ("if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof"); *London v. Polishook*, 189 F.3d 196, 199 (2d Cir. 1999) ("when a bona fide dispute is raised as to the presence of federal jurisdiction it is the affirmative burden of the party invoking such jurisdiction … to proffer the necessary factual predicate – not simply an allegation in a complaint – to support jurisdiction").

---

[6]    Indeed, Plaintiff makes a seemingly contradictory statement in his Complaint at paragraph 11, *i.e.*, that at the time Donovan utilized the six essays as exhibits to her motion papers, five had not been registered – which he fails to clarify or bring into accord with his assertion in paragraph two (2).

In the context of a copyright infringment claim, *Conan Properties, Inc. v. Mattel, Inc.*, 601 F. Supp. 1179 (S.D.N.Y. 1984) is illustrative of Plaintiff's burden.  In *Conan Properties*, the court dismissed copyright infringement claims that lacked proof of registration with the Copyright Office. *Id.*  Critical to the dismissal was the fact that some – but not all – of the works allegedly infringed were identified by copyright registration numbers or paired with copyright registration certificates. *Id.* at 1182.  The Court held that partial dismissal of the infringement action was necessary because the infringement claims lacking proof of registration were jurisdictionally defective. *Id.  See also Noble v. Town Sports Int'l, Inc.*, No. 96 CIV. 4257 (JFK), 1998 WL 43127, at *1 (S.D.N.Y. Feb. 2, 1998).  (Ex. 9).

Because Plaintiff has utterly failed to present any proof that the six essays are registered with the Copyright Office, his Complaint is jurisdictionally defective and must be dismissed.

**POINT II**

## DONOVAN IS IMMUNE FROM LIABILITY UNDER THE FAIR USE DOCTRINE

Had Plaintiff followed the registration requirements, Donovan nevertheless would be entitled to dismissal on the merits under the statutory privilege of fair use. *See* 17 U.S.C. § 107 (2006) ("the fair use of a copyrighted work … is not an infringement of copyright"). Fair use of a copyrighted work is an affirmative defense to copyright infringment claims, with the burden of proof on the proponent. *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998).

Courts determine whether the use of a copyrighted work qualifies as a fair use by utilizing a four factor test set forth in the Copyright Act. *See* 17 U.S.C. § 107.  The test instructs a court to consider

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of

5

> the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Ass'n of Am. Med. Colleges v. Cuomo*, 928 F.2d 519, 523 (2d Cir. 1991), *cert. denied*, 502 U.S. 862 (1991) (citation and internal quotation marks omitted).

"The factors enumerated in [section 107] are not meant to be exclusive:  Since the doctrine [of fair use] is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts." *Id.* at 524 (alteration in original) (citation and quotation marks omitted).  But "[t]he mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are factual issues *to be tried.*" *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128IBSJ), 98 CIV. 7129 (BSJ), 98 CIV. 7130 (BSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) (emphasis in original) (citation omitted) (Ex. 11).  "Because [fair use] is not a mechanical determination, a party need not 'shut-out' her opponent on the four factor tally to prevail." *Wright v. Warner Books, Inc.,* 953 F.2d 731, 740 (2d Cir. 1991).  But "if she does so, victory on the fair use playing field is assured." *Arica Inst. v. Palmer*, 970 F.2d 1067, 1079 (2d Cir. 1992).

Although the fair use test has generally been utilized in the summary judgment context, there is no authority precluding its application on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Indeed, in *Mathieson v. Associated Press*, No. 90 Civ. 6945 (LMM), 1991 WL 64453, at *1 (S.D.N.Y. April 16, 1991) (Ex. 12), the court contemplated applying the fair use test on the defendant's motion to dismiss but determined it could not in that particular case because "[t]oo many potentially relevant facts [were] absent from the record ... for the Court to undertake the balancing process called for by the fair use defense."  Here, however, the record contains ample facts for the Court to make a fair use

determination. The six essays are incorporated into Plaintiff's Complaint, and the Court can easily take judicial notice of the pleadings in *Hollander I*, on which Plaintiff relies in support of his instant action. *See World Wide Tours of Greater NY, Ltd. v. Parker Hannifin Customer Support, Inc.*, No. CV-07-1007 (FB), 2008 WL 516676, at *1 (E.D.N.Y. Feb. 25, 2008) (Block, J.) ("The Second Circuit has noted ... that consideration of materials outside the complaint need not trigger conversion of a Rule 12(b)(6) motion to a Rule 56 motion where plaintiff has actual notice of all the information in movant's papers and has relied upon these documents in framing the complaint") (citation and internal quotation marks omitted) (Ex. 13).

Analysis of the four factors points very clearly to the conclusion that the fair use doctrine is applicable to the instant case.

## A.      The Purpose and Character of the Use Favors Application of the Fair Use Doctrine.

The first factor "comprises principally two considerations: whether the use is 'commercial' and whether it is 'transformative.'" *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 321 (S.D.N.Y. 2008) (quoting *Blanch v. Koons*, 467 F.3d 244, 251-53 (2d Cir. 2006)). "The crux of the [commercial/non-commercial] distinction, however, is not whether the sole motive for the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.* (citation and internal quotation marks omitted).

### 1.      Donovan's use of the six essays was non-commercial.

As evidenced by a review of the relevant pleadings from *Hollander I*, Donovan introduced the six essays for a narrow, non-commercial purpose, and she did not seek to exploit those works for a price on the open market. Rather, it is undisputed that Donovan

proffered the six essays to rebut Plaintiff's charges of judicial bias and demonstrate Plaintiff's own bias with respect to the subject at issue.

Furthermore, Plaintiff here cannot establish that Donovan's use of the six essays will chill the potential market for his writings.  Plaintiff has never sought to shield from the marketplace of ideas his opinions about about some of the same issues discussed in the six essays.  *See* http://www.roydenhollander.com (accessed February 26, 2009) (proclaiming on the home page that "[n]ow is the time for all good men to fight for their rights before they have no rights left" and imploring visitors to "[c]ontact Roy to help battle the infringement of Men's Rights by the feminists and their allies").

Finally, the purported link Plaintiff tries to draw between federal copying fees and Donovan's income as an attorney is far too tenous to warrant any serious consideration. Donovan's decision to proffer the six essays in the court proceeding had everything to do with demonstrating the Plaintiff's bias, and nothing to do with commercial exploitation. Thus, the conclusion is inescapable that Donovan's use of the six essays was completely non-commercial.

The instant case is quite similar in facts and intent with *Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003), *cert. denied*, 540 U.S. 820 (2003), in which the Fourth Circuit held that use of a copyrighted work in a judicial proceeding qualified as a fair use, and dismissed the infringment claim at the pleading stage. In *Bond*, the plaintiff and defendant were locked in a bitter child custody litigation. *Id.* at 390. Seeking to cast the plaintiff as an unfit parent, the defendant introduced a manuscript authored by the plaintiff entitled *Self-Portait of a Patricide: How I got Away with Murder*. *Id.* Based on this action, the *Bond* plaintiff commenced a copyright infringement action in the federal district court. *Id.* at 391.

After applying the four factor test, the district court concluded that the defendant's introduction of the manuscript into the state judicial proceeding qualified as a fair use. *Id.* at

389. With respect to the "commercial use" test within the first factor, the court determined that the defendant's use of the manuscript was entirely noncommercial. *Id.* at 395. The defendant in *Bond* saw evidentiary – and not commercial – value in the manuscript "insofar as it contain[ed] admissions that Bond may have made against his interest when he bragged about his conduct in murdering his father, in taking advantage of the juvenile justice system, and in benefiting from his father's estate." *Id.* at 395. Similarly, in this case, Donovan utilized the six essays for their evidentiary value, insofar as they undermined Plaintiff's rationale for moving to disqualify Judge Cedarbaum. The complete absence of any motive on Donovan's part to generate a profit from her use of the six essays reinforces the conclusion that the commercial/non-commercial distinction in the first factor clearly favors Donovan.

### 2. Donovan used the six essays for criticism and commentary, rendering the use transformative.

"A work is transformative if it does not merely supersede the objects of the original creation but instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Lennon*, 556 F. Supp. 2d at 322. "There is a strong presumption that this factor favors a finding of fair use where the allegedly infringing work can be characterized as involving one of the purposes enumerated in 17 U.S.C. § 107: 'criticism, comment, news reporting, teaching ..., scholarship, or research.'" *Id.* (citation omitted).

Donovan's use of the six essays is transformative to the extent she sought to invoke their content to criticize Plaintiff's grounds for recusal. *See id.* at 323 (accepting defendant filmmakers' contention that use of John Lennon's song "Imagine" in a film qualified as a fair use because it "'provide[d] a layered criticism and commentary of the song'"). Donovan also commented on and critiqued the six essays themselves, stating in her declaration that

9

"[p]erhaps Plaintiff would prefer a male judge, given his negative stereotypes of women on the Internet, frequently referring to them as 'feminazi.'  The attached [six essays] includes examples of Plaintiff's invective against women."  (Ex. 6 at ¶ 8).  Donovan's use of the six essays was thus transformative because it "add[ed] something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

Given the fact that Donovan's use of the six essays is both non-commercial and transformative, the inquiry under the first factor strongly supports a finding of fair use.

**B.    The Nature of the Copyrighted Work Favors Application of the Fair Use Doctrine.**

> The second fair use factor considers 'the nature of the copyrighted work.'  …  Two distinctions are relevant to this analysis: (1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower.

*Lennon*, 556 F. Supp. 2d at 325 (citation and internal quotation marks omitted).

The six essays escape precise classification under the first prong.  But they certainly are not intended by the author as works of fiction or fantasy.  They fall in the broader category of commentary based on personal observations, statistics, and historical facts.  Plaintiff, for example, recalls his youth during the Vietnam War, writing in his essay entitled "A Different Time" that "this town will have the second highest number of persons per capita to die in Vietnman – all of them men, of course, and all of them guys I knew."  In "Two Sides", Plaintiff skewers the "fifth estate" for "kowtow[ing] to the current, political correctionist propaganda of depicting females as victims and men as oppressors."  Thus, this prong weighs in favor of a finding of fair use.

With respect to the second prong, Steinberg has explained that he viewed the six essays on an Internet site accessible to the public and viewed Plaintiff's posting of "A Different Time" on his MySpace Internet page,[7] which was accessible to the public at least as of March 9, 2009. *See* Ex. 14. Moreover, at the pre-motion conference on February 6, 2009, Plaintiff admitted that the six essays had at least at one time prior to the instant lawsuit been open to public viewing in postings on the Internet. Although the Court on a motion to dismiss must accept as true the allegations in a plaintiff's Complaint, it cannot ignore a state of facts that belie the claims stated therein. *See Straus v. Prudential Employee Sav. Plan*, 253 F. Supp. 2d 438, 449 ("[w]hile the Court is obliged to draw all inferences in favor of plaintiff[] on a motion to dismiss, conclusory allegations ... which are clearly refuted by other parts of the complaint will not suffice to satisfy the pleading requirements").

Plaintiff's posting of the six essays on the Internet and fully accessible to the public constitutes "publication" within the meaning of the Copyright Act. *Getaped.com v. Cangemi*, 188 F. Supp. 2d 398, 401 (S.D.N.Y. 2002). In rejecting the notion that display of a work on a website does not constitute publication within the meaning of the Copyright Act, the Southern District observed:

> By accessing a webpage, the user not only views the page but can also view - and copy - the code used to create it. In other words, merely by accessing a webpage, an Internet user acquires the ability to make a copy of that webpage, a copy that is, in fact, indistinguishable in every part from the original. Consequently, when a website goes live, the creator loses the ability to control either duplication or further distribution of his or her work. A webpage in this respect is indistinguishable from photographs, music files or software posted on the web - all can be freely copied. Thus, when a webpage goes live on the Internet, it is distributed and 'published'...

---

[7]   *See U.S. v. Am. Soc. of Composers, Authors and Publishers*, 562 F. Supp. 2d 413, 435 (S.D.N.Y. 2008) ("MySpace is one of the most popular social networking sites on the Internet and allows users to post information about themselves and view information posted by others").

*Id.* (footnote omitted).

Thus, the six essays were published prior to the instant litigation, bolstering a finding of fair use under the second factor. *See also Video-Cinema, Inc.*, 2001 WL 1518264, at *7 ("[i]ndeed, the Second Circuit has found that where the plaintiff's work has already been published, this fact alone supports a finding of fair use under the second statutory factor").

## C.    The Amount and Substantiality of the Portion Used At Worst Neither Favors Nor Disfavors Application of the Fair Use Doctrine.

The third factor focuses on "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3) (2006). "This factor has both a quantitative and a qualitative component, in that [t]he factor favors copyright holders where the portion used by the alleged infringer is a signifcant percentage of the copyrighted work, or where the portion used is essentially the heart of the copyrighted work." *Lennon*, 556 F. Supp. 2d at 325 (citations and internal quotation marks omitted).

Plaintiff vaguely avers that the six essays are "part of a larger work", but provides no indication of the size and scope of the "larger work." Cmplt. at ¶ 2. Indeed, if the six essays constitute a minor portion of the larger work, this third factor clearly benefits Donovan. *See Arica Institute, Inc.*, 970 F.2d at 1067. Granting Plaintiff the favorable inference that the six essays do constitute the bulk of the work does not, however, compel finding in his favor on this factor. In *Campbell*, the Supreme Court stated that the fair use factors can not "be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578.

*Bond* is instructive on this latter point, where it was conceded that the challenged use of the manuscript "involved all, or nearly all, of the copyrighted work." *Bond*, 317 F.3d at 396. Nevertheless, the court held that "[t]he use of the copyrighted material in this context, even the entire manuscript, does not undermine the protections granted by the

12

[Copyright] Act but only serves the important societal interest in having evidence before the factfinder."  *Id.*  Here, Donovan proffered the six essays in opposition to the motion to disqualify Judge Cedarbaum.  Thus, it cannot be said that Donovan's use of the six essays in any way undermine the rights conferred by the Copyright Act. *See id.*

**D.    The Effect of the Use Upon the Potential Market For or Value of the Copyrighted Work Favors Application of the Fair Use Doctrine.**

The fourth factor concerns "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4) (2006).  "In this analysis, '[t]he court looks to not only the market harm caused by the particular infringement, but also to whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work.'"  *Lennon*, 556 F. Supp.2d at 327 (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006)).

The Complaint is bereft of any claims that the market will shun the six essays because they were introduced in a court proceeding.  Nor is there any claim that their appearance in the record would diminish their marketability.  The observation made by the district court in *Bond* on this broader point is pertinent:   "'Ironically, if anything, [the defendants' use of the manuscript] increases the value of the work in a perverse way, but it certainly doesn't decrease it.'" *Bond*, 317 F.3d at 396-397 (alteration in original).   There being no allegation nor indication that Donovan's use of the six essays reduced their market appeal, the fourth factor weighs in her favor.

**E.    Use of Copyrighted Work in Judicial Proceedings is a Recognized Basis for Application of the Fair Use Doctrine.**

While it is useful to analyze the four factors in the current context, as it clearly demonstrates the propriety of applying the fair use doctrine here, it is also noteworthy that application of the doctrine to the use of a copyrighted work in a judicial proceeding is hardly novel, unprecedented, or without legal foundation.  To the contrary, it is clear that such

circumstances were clearly contemplated by Congress in the creation of the fair use exclusion, and courts regularly apply it in such a situation.

That the use of copyrighted material in a judicial proceeding constitutes fair use is specified in the legislative history of the Copyright Act, has been recognized by the Supreme Court, and was endorsed by the leading treatise on copyright law. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 479, n.29 (1984) (noting that the Senate and House reports on the Copyright Act listed as an example of fair use "[the] reproduction of a work in legislative or judicial proceedings or reports"); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 13.05[D] at 13-91 (1991) ("works are customarily reproduced in various types of judicial proceedings ... and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work into evidence"). In addition, the Fourth, Ninth and Tenth Circuits have all held that use of copyrighted material in a judicial proceeding is fair use. *See Bond v. Blum*, *supra*, 317 F.3d at 396-397; *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406-07 (9th Cir. 1982); *Shell v. Devries*, No. Civ. 06-CV-00318-REB, 2007 WL 324592 (D. Colo. Jan. 31, 2007) (Ex. 15), *aff'd* 2007 WL 4269047 (10th Cir. 2007) (affirming Fed. R. Civ. P. 12(b)(6) dismissal) (Ex. 16).

In sum, Donovan has amply demonstrated that a balancing of all four factors point to a finding of fair use. Moreover, her use of the documents occurred in a context specifically contemplated by Congress and recognized by the courts to be a quintessential example of fair use – judicial proceedings. Accordingly, this Court should find that Donovan's use of the six essays in the proceeding to disqualify Judge Cedarbaum qualified as a fair use, and as a result dismiss Plaintiff's Complaint in its entirety.

14

## POINT III

## THE LITIGATION PRIVILEGE ACCORDS DONOVAN ABSOLUTE IMMUNITY

A third and final basis for dismissal of the Complaint is the litigation privilege.  Courts in the Second Circuit have held that "[i]n the context of a legal proceeding, statements by parties *and their attorneys* are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Aequitron Medical, Inc. v. Dyro*, 999 F. Supp. 294, 297-298 (E.D.N.Y. 1998) (emphasis added) (alteration in original) (citation and internal quotation marks omitted).  *See also Credit Sights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2008 WL 4185737, at *19 n.9 (S.D.N.Y. Sept. 5, 2008) (Ex. 17).

This may be the strongest basis of all, as it is grounded in the strong public policy of encouraging all litigants to have their day in court.  They cannot do so freely and fairly if they have to fear they will be sued for what they say and present in judicial proceedings. Nor can parties' attorneys discharge their responsibility to vigorously represent their clients if they have to worry that they will be sued for doing so.  In addition, allowing liability for statements made in litigation runs counter to the doctrine of finality, and would merely encourage piecemeal litigation and an endless multiplicity of follow-on suits, to the detriment of scarce judicial resources. *See 3H Enterprises, Inc. v. Dwyre*, 182 F. Supp. 2d 249, 260 (N.D.N.Y. 2001) ("[o]ur system requires attorneys to zealously represent their clients, and, in many cases, the public as well.  Suits against attorneys for their actions taken in zealously representing their clients must be held to the highest standard").

It is clear that the six essays were, "by any view or under any circumstances, ... pertinent to the litigation." *Aequitron*, 999 F. Supp. at 297-298.  As explained in the Statement of Facts and Point II above, Plaintiff had accused Judge Cederbaum of sexual bias and prejudice and moved for her disqualification.  Donovan utilized the six essays to reveal the hypocrisy of that accusation and demonstrate that the bias lay with Plaintiff

15

himself and not the court, which rendered them patently relevant to the issue in the motion. As such, the litigation privilege protects Donovan's action in submitting the six essays to the Court, and Plaintiff's claims of copyright infringement must be dismissed.

**POINT IV**

**DONOVAN IS ENTITLED TO COSTS AND ATTORNEY'S FEES**

This Court should award Donovan costs and attorneys fees for defending this frivolous lawsuit. *See* 17 U.S.C. § 505 (2006) (in any copyright infringement action, the court "may ... award a reasonable attorney's fee to the prevailing party as part of the costs"). Whether to award attorney's fees is a decision left solely to the sound discretion of the Court. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 33 (1994).

> In *Fogerty*, the Supreme Court highlighted a list of non-exclusive factors to guide the district court's exercise of discretion in awarding fees, including 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.

*Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001). "The Second Circuit has held that, of the factors enumerated by the Supreme Court, 'objective unreasonableness' should be accorded 'substantial weight." *Id.* (citing *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 120-21 (2d Cir. 2001)).

Plaintiff's commencement of this infringement action is objectively unreasonable. Plaintiff failed to comply with the most basic requirement under the Copyright Act – registration of the six essays with the Copyright Office. His infringement claim is neither novel nor complex. *See Williams v. Crichton*, 891 F. Supp. 120, 121 (S.D.N.Y. 1994). Moreover, the Senate and House reports on the Copyright Act listed the exact conduct in which Donovan engaged as an example of fair use. This makes this action the epitome of objective unreasonableness. Nor does his status as a *pro se* litigant shield him from the

16

consequences of bringing a frivolous lawsuit.[8]  *See Morriseau v. DLA Piper*, No. 06 Civ. 13255 (LAK), 2007 WL 4292030 (S.D.N.Y. Dec. 3, 2007) (refusing to grant *pro se* plaintiff dispensation in view of her vexatious conduct, academic qualifications and status as an attorney) (Ex. 18).

In sum, it is evident that Plaintiff's actions amount to retribution masquerading as a copyright infringement lawsuit.  Accordingly, Plaintiff should be compelled to pay costs and attorney's fees.

## CONCLUSION

For all the foregoing reasons, Donovan respectfully requests that the Court grant its motion to dismiss Plaintiff's complaint in its entirety and award Donovan costs and attorney's fees.

Dated:      New York, New York
            March 11, 2009

Respectfully submitted,

GORDON & REES LLP

By:

Diane Krebs, Esq. (DK 8280)
Gordon & Rees LLP
Attorneys for Defendant Deborah Swindells Donovan
90 Broad Street
23rd Floor
New York, New York  10004
(212) 269-5500 (Phone)

---

[8]      Indeed, Plaintiff's legal resume, posted on his Web site, www.roydenhollander.com, lists prior work experience with the Internal Revenue Service and Cravath, Swaine & Moore LLP.