UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------

ROY DEN HOLLANDER,

                 Plaintiff,

           v.

DEBORAH SWINDELLS DONOVAN,
PAUL W. STEINBERG, and
JANE DOE,

                 Defendants.

Civil Action No. 08-cv-4045 (FB)(ECF)

-------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
RULES 12(b)(1) & (6) MOTIONS TO DISMISS**

Roy Den Hollander (RDH 1957)
Attorney and *pro se* plaintiff
545 East 14 Street, 10D
New York, NY 10009
(917) 687 0652

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………iii

PRELIMINARY STATEMENT……………………………………………………………1

STATEMENT OF FACTS………………………………………………………………1

ARGUMENTS: THREE NOVEL QUESTIONS……………………………………………5

    Is the display of a work on the Internet publication? …………………………………5

    Does fair use require that copyrighted works submitted in judicial proceedings
    be relevant to the issues? …………………………………………………………9

    When the Copyright Office is seriously backlogged, can confirmation by telephone
    of acceptance of submitted works substitute for receipt of the Certificate of
    Registration? …………………………………………………………………22

ATTORNEY'S FEES……………………………………………………………………23

RELIEF……………………………………………………………………………24

**TABLE OF AUTHORITIES**

Page

## Cases

Acad. Motion Picture Arts & Sciences v. Creative House Promo. Inc., 944 F.2d 1446
(9th Cir. 1991)...........................................................................................................................2

Aequitron Medical, Inc. v. Dyro, 999 F. Supp. 294 (E.D.N.Y. 1998).........................11 n. 10

Agee v. Paramount Communs., 59 F.3d 317 (2d Cir. 1995)..............................................7

American Geophysical Union v. Texaco Inc., 60 F.3d 913 (2d Cir. 1994)..............10, 21 n. 18

Arista Records, Inc. v. Mp3Board, Inc., 2002 WL 1997918 (S.D.N.Y. 2002)......................7

Ass'n of Am. Med. Colleges v. Cuomo, 928 F.2d 519 (2d Cir. 1991)..............................15

ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007)...........................10

Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006)...................................................12, 20

Bond v. Blum, 317 F.3d 385 (4th Cir. 2003).................................................19 n. 17

Burke v. National Broadcasting Co., Inc., 598 F.2d 688 (1st Cir. 1979.............................6

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 114 S.Ct. 1164,
127 L.Ed.2d 500 (1994)..........................................................10, 11, 16, 21, 22

Canfield v. Ponchatoula Times, 759 F.2d 493 (5th Cir. 1985).......................................6

Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).........................19

Credit Sights, Inc. v. Ciasullo, 2008 WL 4185737 (S.D.N.Y.)...............................11 n. 10

Demetriades v. Kaufmann, 680 F.Supp. 658 (S.D.N.Y. 1988)................................22, 23

Earth Flag Ltd. v. Alamo Flag Co., 154 F.Supp.2d 663 (S.D.N.Y. 2001).....................23, 24

Einhorn v. Mergatroyd Prods., 2006 U.S. Dist. LEXIS 20645,
79 U.S.P.Q.2D (BNA) 1146 (S.D.N.Y. 2006).......................................................7

Fallaci v. New Gazette Lit. Corp., 568 F.Supp. 1172 (S.D.N.Y. 1983)...........................24

Fisher v. Dees, 794 F.2d 432 (9th Cir. 1986)........................................................20

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110 (2d Cir. 1986)...............................24

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S. Ct. 222, 97 L. Ed. 276 (1952)...............................................................................................24

*Getaped.Com, Inc. v. Cangemi*, 188 F.Supp.2d 398 (S.D.N.Y. 2002)............................8, 9

*Harper & Row Publrs. v. Nation Enters.*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).........................................................10, 15, 16, 17, 18, 20

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D. Pa. 2007)......................................................................................15, 25

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998)....................................19

*Iowa St. Univ. Research Foundation, Inc. v. A.B.C., Inc.*, 621 F.2d 57 (2d Cir. 1980).............9

*Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982)...................................................12

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26 (1st Cir. 2003)...........6

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 170, 71 S.Ct. 624, 95 L.Ed. 817 (1951)........................................................................................21

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).............................................11

*Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310 (S.D.N.Y. 2008)...........10, 17 n. 14, 18, 19

*Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)...................14

*Lozano v. Ashcroft*, 258 F.3d 1160 (10th Cir. 2001)....................................................11

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986)..........................................................25

*McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).....15

*Morris v. Bus. Concepts, Inc.*, 2001 U.S. Dist. LEXIS 17760 *4, 60 U.S.P.Q.2d 2015 (S.D.N.Y. 2001)......................................................................................23

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250 (2d Cir. 1992)...................24

*National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426 (8th Cir. 1993)...............................................................................................7

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)............................................18

Oboler v. Goldin, 714 F.2d 211 (2d Cir. 1983)................................................2, 25

RCA/Ariola International, Inc. v. Thomas & Grayston Co., 845 F.2d 773 (8th Cir. 1988)........24

Religious Tech. Center v. Wollersheim, 971 F.2d 364 (9th Cir. 1992)..............................12

Shell v. Devries, 2007 WL 324592 (D.Colo. 2007)......................................... 12, 18 n. 16

Sony Corp. of Am. v. Univ. City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774,
78 L.Ed.2d 574 (1984).........................................................................13, 15, 19, 21

Stewart v. Abend, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)...................15, 18

United States v. Brinkworth, 68 F.3d 633 (2d Cir. 1995).......................................14

Video-Cinema Films, Inc. v. CNN, Inc., 2001 WL 1518264 (S.D.N.Y. 2001).....................10

Weissmann v. Freeman, 868 F.2d 1313 (2d Cir. 1989)..............................................16

Worldwide Church of God v. Phil. Church of God, Inc., 227 F.3d 1110 (9th Cir. 2000),
cert. denied, 532 U.S. 958 (2001).........................................................10, 18, 19

Wright v. Warner Books, Inc., 953 F.2d 731 (2d Cir. 1991).....................................10 n. 8

Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).......................17 n. 15

**Statutes & Rules**

17 U.S.C. § 101.........................................................................1, 5, 6, 7, 8

17 U.S.C. § 107.........................................................................15, 19

17 U.S.C. § 410.........................................................................2 n. 3

17 U.S.C. § 411.........................................................................23

17 U.S.C. § 412.........................................................................5

17 U.S.C. § 504.........................................................................2, 5, 24, 25

18 U.S.C. § 1030(a)(2)(c).............................................................1 n. 2

28 U.S.C. § 144.........................................................................14

28 U.S.C. § 455.........................................................................14

Fed. R. Civ. P. 12(b)..................................................................................................10

**Other**

Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886,
25 U.S.T. 1341, 828 U.N.T.S. 221, Doc't IV-B..................................................7

Chang, "Publication" Does Not Really Mean Publication, 33 AIPLA Q.J. 225 (2005).............9

Cotter, Prof. Law U. Minn., Toward a Functional Definition of Publication
in Copyright Law, 92 Minn. L. Rev. 1724 (2007-08)......................................8

George Orwell.......................................................................................................19

Goldstein, Goldstein On Copyright, 3rd ed., Aspen (2005) .............................................9

House Report No. 93-1453; 93d Cong., 2d Sess., 1974 U.S.C.C.A.N. 6351........................14

House Report No. 94-1476; 94th Cong., 2d Sess., 1976 U.S.C.C.A.N. 5659....6, 6 n. 7, 10, 11, 12

Keller & Cunard, Copyright Law:  A Practitioner's Guide,
Practicing Law Institute (2001-07)....................................................8, 19

Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105 (1990).........................16, 21, 22

J. Moore, Moore's Federal Practice, 3rd ed., Matthew Bender (2008)................................10

M. Nimmer & D. Nimmer, Nimmer on Copyright, Matthew Bender (2008)...........6, 12, 13, 19

Patry, Patry on Copyright, Thomson/West (2008).....................................................7

Reese, The Public Display Right, 2001 U. Ill. L. Rev. 83 (2001)....................................7

Schechter & Thomas, Intellectual Property:  The Law of Copyrights,
Patents and Trademarks, Thomson/West (2003)....................................6, 6 n. 7

"The Future—If There Is One—Is Female" in Reweaving the Web of Life,
Pam McAllister, ed. (Philadelphia:  New Society Publishers, 1982)............................ 1 n. 1

U.S. Copyright Office, Circular 1:  Copyright Basics......................................................1

U.S. Copyright Office, Circular 65:  Copyright Registration for Automated Databases, 2
(2006)..................................................................................................9

U.S. Copyright Office, Circular 66:  Copyright Registration for Online Works, 3 (2006)..........9

## PRELIMINARY STATEMENT

The Copyright Act of 1976 ("Act"), 17 U.S.C. § 101 *et seq.*, gives copyright owners of unpublished works protection from unauthorized reproduction or copying, distributing, and displaying of their works.[1]  U.S. Copyright Office, Circular 1, p.1.  Protection under the Act begins from the time the work is created in a tangible form.  Id. at 2.  The transfer of ownership of a material object that contains a protected work does not alone convey any copyrights.  Id.

The defendants—without authorization—copied, distributed, made available to the public at a price, and caused to be displayed the protected six essays in efforts to have the government, through three separate cases, in three different courts, punish the plaintiff for exercising his freedom of speech outside of the courtroom and to use social opprobrium to intimidate him into relinquishing his legal rights to prosecute those cases.

## FACTS

Defendant Steinberg alleges he first copied the unpublished essays from an Internet website, but he does not say when or from what site, and does not give the site's address.  The date and from where he first copied the essays are important because if he did not copy them from a temporary Internet display of the essays by the plaintiff, then he would have had to gain unauthorized access to an Internet host computer ("Host") that stores the essays but is not viewable to the public, or obtain the essays elsewhere.[2]  (Compl. ¶ 6).

Every Internet host computer keeps data on when a website is viewable to the public and when it is not.  By comparing the specific date and time that defendant Steinberg alleges he first copied the essays with the Host computer's data will either refute or confirm Steinberg's

---

[1] The Copyright Act not only protects "misogynistic manifestos," Krebs Memo. p. 1, but, unfortunately, the all too common misandry myths propagated by post-modern feminists, such as Sally Miller Gearhart who advocates genocide against men so as to reduce the male population to 10%.  "The Future—If There Is One—Is Female" in Reweaving the Web of Life, Pam McAllister, ed. (Philadelphia:  New Society Publishers, 1982), p. 271.

[2] Unauthorized access to a computer connected to the Internet is a crime under 18 U.S.C. § 1030(a)(2)(c).

assertion.  Defendant Steinberg admitted at the pre-motion conference that he copied the essays

because of an existing case involving the plaintiff.  Surely, as a successful lawyer, defendant

Steinberg noted when and from where he made the copies.   Also, when copies are made from

Internet sites, they often carry the date and time of the copying, but strangely Steinberg's do not.

There exists a threshold fact issue here that only defendant Steinberg can resolve before

the Court considers the defendants' arguments on the issue of publication, which will determine

whether statutory damages apply.  While "[t]he determination of statutory damages … is

assigned by statute to the judge rather than the jury, Oboler v. Goldin, 714 F.2d 211, 213 (2d Cir.

1983), when the facts concerning the issue of publication are in dispute, the determination is no

longer one of law.  Cf. Acad. Motion Picture Arts & Sciences v. Creative House Promo. Inc., 944

F.2d 1446, 1450 (9th Cir. 1991).

Assuming defendant Steinberg can prove he first copied the unpublished essays off of an

Internet site temporarily set up by the plaintiff, his subsequent unauthorized copying,

distributing, making available to the public for sale, and displaying them after their effective date

of copyright registration make him liable for statutory damages, 17 U.S.C. § 504(c), or, in the

alternative, the profits he made from their unauthorized use, 17 U.S.C. § 504(b).

The effective dates of registration for the six essays are

(1) A Different Time, April 20, 2002, registered as part of the larger work Stupid

Frigging Fool, TXu001053401, Exhibit A (Copyright Office record, pages with the essay,

certificates and envelopes for three essays, mail receipt confirmations for the other two essays);

(2) Fear Corrupts, November 13, 2007, Service Request Number ("SRN")[3] No. 1-

2729448;

---

[3] The Copyright Office, in two telephone conversations, confirmed essays (2) & (3) were accepted, but it could not
guess as to when the certificates would be issued because the Office is extensively backlogged with delays of well

(3) <u>Two Sides</u>, November 13, 2007,  SRN No. 1-27294778;

(4) <u>Invisible Weapon</u>, November 13, 2007,  TXu 1-596-208;

(5) <u>Do Men Cause Wars</u>, November 14, 2007,  TXu 1-597-060; and

(6) <u>Some Differences: Men v. Girls</u>, November 14, 2007, TXu 1-596-340.

When defendant Swindells-Donovan[4] filed her papers on October 24, 2007, opposing a motion to recuse the Judge in the "Ladies' Nights" lawsuit for the appearance of bias,[5] the only essay registered with the Copyright Office was <u>A Different Time</u>, which was part of the larger work <u>Stupid Frigging Fool</u>.  The other five essays had already been fixed in a tangible form; therefore, protected under the Act but not eligible for statutory damages.  In preparing and filing her papers, defendant Swindells-Donovan, without authorization from the plaintiff,

(1) made copies of <u>A Different Time</u> and the other five essays;

(2) distributed <u>A Different Time</u> and the other five essays by uploading them onto the U.S. Courts' Electronic Case Filing System ("ECF");

(3) made the essays available to the public on the Internet for a price through the U.S. Courts' Public Access to Court Electronic System ("PACER "); and

(4) put the essays on display, since the general public can view the essays by either requesting the files in the case or using the PACER website.

Defendant Steinberg admits copying and distributing the essays to defendant Swindells-Donovan so that she could use them against the plaintiff in the Ladies' Nights case.  The Copyright Complaint, however, alleges, on information and belief, that defendant Swindells-

---

over a year.  The Office assigns Service Request Numbers to keep track of the paper work that eventually results in the printing of the certificates.  Registration is effective when the applications were received, 17 U.S.C. § 410(d).

[4] The plaintiff, an attorney, refers to defendant Swindells-Donovan by her full last name.  He expects the same courtesy from attorney Krebs.  The plaintiff's full last name is "Den Hollander."

[5] Attorney Krebs impermissibly failed to attach the First Amended Complaint in the Ladies' Nights case, which superseded the complaint she did attach.  The case is a men's rights constitutional equal protection action currently on appeal to the Second Circuit.

Donovan gave the essays to Steinberg, since Swindells-Donovan was the first of the two defendants to display the essays in a court case.  In light of defendant Steinberg's admission, the following paragraphs of the Complaint are withdrawn as they pertain to defendant Swindells-Donovan:  ¶¶ 6, 17, 25, and, as to ¶ 28, it now only applies to one essay:  A Different Time.[6]

Defendant Steinberg copied without authorization the essay A Different Time and distributed it to defendant Swindells-Donovan after its effective registration date.  Subsequently, defendant Steinberg, following the effective dates of registration of all six essays, filed them in two separate cases in two different courts:  (1) on December 18, 2007 in a noise nuisance action in the New York County Supreme Court, and (2) on December 19, 2007 in a defamation action in the New York County Civil Court.  In order to prepare and file his papers in both cases, defendant Steinberg, without the plaintiff's authorization,

(1) made copies of the six essays;

(2) distributed the six essays by personally handing them over to the two courts;

(3) made the six essays available to the public for a price, since they were entered into the public record systems of both courts from which the general public can make copies for a fee; and

(4) put the six essays on display, since the general public can view the essays by requesting the files in either case.

Finally, during the time frame when defendant Steinberg was applying for admission to the New York State Bar, 2003, he failed to pay over $30,000 in taxes he owed to the State.  (Exhibit B).  Applying for admission to the Bar requires informing the Bar of any pending debts,

---

[6] The plaintiff also withdraws his requests for immediate relief contained in the Complaint at ¶¶ 26, 27, since the filing of this action has already had the effect of discouraging the defendants from again infringing the essays as evinced by defendant Steinberg not including the essays in his latest court filing, December 11, 2008, in a Civil Court defamation case.

which defendant Steinberg may not have done. The plaintiff informed the First Department's Character and Fitness Committee of Steinberg's prior failure to pay taxes, and the matter was then referred to the Disciplinary Committee, which interviewed the plaintiff as a source of information. In addition, prior to defendant Steinberg's admission to the Bar, he was served papers multiple times in a mortgage foreclosure case from Debevoise & Plimpton in which the affirmations of service addressed him as a lawyer, "Paul W. Steinberg, Esq." Exhibit C p. 2 of each set. Defendant Steinberg is not new to breaking the rules or using dissemblances, such as those at the pre-motion conference, to win the day.

## ARGUMENTS

Assuming that defendant Steinberg first copied the six essays from an Internet site set up by the plaintiff, as opposed to Steinberg hacking into the Host computer, this action presents three novel questions:

(1) In order to recover statutory damages under 17 U.S.C. § 412, as opposed to the infringer's profits under 17 U.S.C. § 504(b), is the display of a work on the Internet a "publication" as defined by 17 U.S.C. § 101?

(2) For the "Fair Use" doctrine to apply to the submission of copyrighted material in a judicial proceeding, does the material have to be relevant to the action?

(3) For subject matter jurisdiction purposes, can the Copyright Office's confirmation over the telephone that works are accepted substitute for receipt of the Certificate of Registration when the Office is backlogged by well over a year in issuing certificates?

## 1. Publication

The Copyright Act of 1976 defines "'[p]ublication' [a]s the distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.... A

public performance or display of a work does not of itself constitute publication." 17 U.S.C. §

101. The first sentence of the definition contains the following elements: (1) a distribution, (2)

of copies of a work, (3) to the public, and (4) by sale or other transfer of ownership, or by rental,

lease, or lending.

The legislative history states it is clear that any form of distribution in which the material

object in which the work is fixed does not change hands is not a publication no matter how

many people view the work. Copyrights Act, House Report No. 94-1476, p. 138, Sept. 3, 1976;

94th Cong., 2nd Sess. 1976, 1976 U.S.C.C.A.N. 5659, 5754.[7] "[A] sine qua non of publication

should be the acquisition by members of the public of a possessory interest in tangible copies of

the work in question." John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26,

37 (1st Cir. 2003)(citing M. Nimmer & D. Nimmer, Nimmer on Copyright § 4.07, at 4-42

(2001)); see Burke v. National Broadcasting Co., Inc., 598 F.2d 688, 693 (1st Cir. 1979),

superseded on other grounds, Canfield v. Ponchatoula Times, 759 F.2d 493, 497 (5th Cir. 1985).

In Danielson, the plaintiff had displayed drawings that were disseminated by cable television to

the general public. "At most, Danielson ... showed the [drawings] to others; that did not

constitute publication under the explicit terms of the statute." Danielson at 37.

"It is clear ... that under the statutory language now in effect there has been no

"distribution of copies ... to the public' and hence no publication when a work is disseminated

electronically." Prof. Schechter & Thomas, Intellectual Property: The Law of Copyrights,

Patents and Trademarks, § 5.1, p. 81 (2003). "The distribution right ... does not appear to

---

[7] "[U]nder the definition of publication ... there would no longer be any basis for holding ... that the public display of a work of art under some conditions (e.g. without restriction against its reproduction) would constitute publication of the work." Copyrights Act, House Report No. 94-1476, p. 144, Sept. 3, 1976; 94th Cong., 2nd Sess. 1976, 1976 U.S.C.C.A.N. 5659, 5760. The 17 U.S.C. § 101 definition of publication "eliminates any ambiguity over display of works where there are no restrictions on copying, as it makes it quite plain that such display does not constitute a publication in any event." Schechter & Thomas, Intellectual Property: The Law of Copyrights, Patents and Trademarks, § 5.1, p. 81 (2003).

encompass transmissions of copyrighted works over computer networks." Prof. Reese, The Public Display Right, 2001 U. Ill. L. Rev. 83, 125-26 (2001). The reason is that transmissions over computer networks do not transfer tangible objects in which the works are fixed. William F. Patry, Patry on Copyright, § 13:11, p. 13-21, ed. 2008. Without the transfer of an existing material object or of an ownership or possessory interest in such an object, no distribution occurs. Id. Without distribution, there is no publication. 17 U.S.C. § 101.

A number of courts have also interpreted the Copyright Act to require the transfer of a material object for distribution to occur, rather than a mere transmission of a work: Agee v. Paramount Communs., 59 F.3d 317, 325 (2d Cir. 1995)("distribution is generally thought to require transmission of a 'material object'"); National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 434 (8th Cir. 1993)(infringement of distribution right requires transfer of a material copy); Arista Records, Inc. v. Mp3Board, Inc., 2002 WL 1997918 at *4 (S.D.N.Y. 2002)(distribution requires dissemination of copies).

The Host computer, for a temporary period of time, electronically transmitted the six essays over computer networks but did not transmit tangible copies of them; therefore, there was no publication. Any copies that were made had to be made by others, similar to a person video taping a play. The viewing of the essays did not transfer to others any material objects, just as a play does not. In addition, under the Berne Convention to which the U.S. is a party "the communication by wire or the broadcasting of literary or artistic works ... shall not constitute publication." Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, 25 U.S.T. 1341, 828 U.N.T.S. 221, Doc't IV-B, art. 3(3).

There was also no sale or other transfer of ownership, or rent, lease or loan involved as required for publication by 17 U.S.C. § 101. In Einhorn v. Mergatroyd Prods., 2006 U.S. Dist.

LEXIS 20645, *18, 79 U.S.P.Q.2D (BNA) 1146 (S.D.N.Y. 2006), the Court held that posting

images of a play on the Internet "even assuming it constituted 'distribution,' did not involve

'sale or other transfer of ownership, or by rental, lease or lending.'  Indeed, this result follows

directly from the principle that 'the projection or exhibition of a motion picture in theaters or

elsewhere does not in itself constitute a publication.'"

    Here, at most, the six essays were displayed on a website, similar to a television

broadcast or the projection of a movie.  "To 'display' a work means to show a copy of it, either

directly or by means of a film, slide, television image, or any other device or process."  17

U.S.C. § 101.  A display, however, is not a publication.  Id.

    The defendants rely on a case from the Southern District Court of N.Y. for the

proposition that the display of a work on the Internet equals publication.  Getaped.Com, Inc. v.

Cangemi, 188 F.Supp.2d 398 (S.D.N.Y. 2002).  In Getaped, a competitor of the plaintiff copied

and used the HTML code from Getaped's website.  HTML is the computer language used to

give a website its visual appearance—color, graphics, spacing, font, point size, and animation.

The words used for verbal expression are separate from the code.  It was the code, not the verbal

expressions, which the Getaped defendant used.  The Court held that viewing the Getaped

website on the Internet constituted the publication of its HTML code.

    Commentators disagree over whether Getaped was correctly decided.  Thomas F. Cotter,

Prof. Law U. Minn., Toward a Functional Definition of Publication in Copyright Law, 92 Minn.

L. Rev. 1724, 1727 (2007-08).  Bruce P. Keller and Jeffrey P. Cunard, Copyright Law, A

Practitioner's Guide, § 6.1.2(B) n. 94, say:

> "The holding in Getaped is difficult to reconcile with the principle that a public
> display of a work is not a publication and may be an example of bad facts making
> bad law.... [T]he plaintiff suffered little actual damages.  As the infringement
> commenced before the [HTML] code was registered [but after the site went live]

8

> the plaintiff could recover statutory damages only if it had published the [HTML] code and registered it within three months after first publication.  The court equated the ability to make copies with a general publication and determined that the plaintiff satisfied the prerequisites for entitlement to statutory damages."

The Getaped decision relies on faulty reasoning that "if consistently applied, would mean that a broadcast such as a Major League Baseball game is published once a viewer makes a copy via a videocassette recorder or digital-video recorder."  Ray Ming Chang, "Publication" Does Not Really Mean Publication, 33 AIPLA Q.J. 225, 226, 241 (2005).  A close question remains unresolved as to whether for purposes of publication the dissemination of a work over the Internet is a publication.  Goldstein On Copyright, § 3.3.3 (believes it is a publication).

According to the U.S. Copyright Office:  "It is unclear whether online availability for the user constitutes publication of the work under copyright law," Circular 65:  Copyright Registration for Automated Databases, 2 (2006), and "[t]he definition of 'publication' in U.S. copyright law does not specifically address on line transmission," Circular 66:  Copyright Registration for Online Works, 3 (2006).

Today, there is a lack of clarity in copyright law "as to whether publication can occur via electronic dissemination," which is contributing to the creation of arguably bad law as in Getaped and erroneous awards of attorney fees.  Chang, "Publication" Does Not Really Mean Publication, 33 AIPLA Q.J. at 252.  "Eventually, either the courts or Congress will have to address this ...." Id. 253.

## 2. Fair Use Relevancy

Purpose

The purpose of fair use is to prevent the courts from stifling the very creativity that the copyright law aims to protect, Iowa St. Univ. Research Foundation, Inc. v. A.B.C., Inc., 621 F.2d 57, 60 (2d Cir. 1980), by encouraging authors to make new and reasonable creative use of

existing works, <u>Lennon v. Premise Media Corp.</u>, 556 F.Supp.2d 310, 322 (S.D.N.Y. 2008),

through improving on those existing works, <u>Worldwide Church of God v. Phil. Church of God,</u>

<u>Inc.</u>, 227 F.3d 1110, 1116 (9th Cir. 2000)(quoting <u>Harper & Row Publrs. v. Nation Enters.</u>, 471

U.S. 539, 549-50, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)), *cert. denied*, 532 U.S. 958 (2001).

<u>Burden of Proof</u>

 Fair use is an affirmative defense to a claim of copyright infringement, so the party

asserting it carries the burden of proof as to all the fair use issues. <u>American Geophysical Union</u>

<u>v. Texaco Inc.</u>, 60 F.3d 913, 918 (2d Cir. 1994)(citing *see* <u>Campbell v. Acuff-Rose Music, Inc.</u>,

510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994)). Determining fair use is a **fact**

driven inquiry requiring that "each case raising the question must be decided on its own facts."

Notes of Committee on the Judiciary, <u>House Report No. 94-1476,</u> 1976 Copyright Act, 1976

U.S.C.C.A.N. 5659, 5679.

 Courts have held that fair us can be decided on a summary judgment motion, <u>Video-</u>

<u>Cinema Films, Inc. v. CNN, Inc.</u>, 2001 WL 1518264 *5 (S.D.N.Y. 2001), but neither the plaintiff

nor defendants have found authority for deciding it on a motion to dismiss. [8] The present action

is a motion to dismiss under Fed. R. Civ. P. 12(b)(1) & (6) in which the allegations in the

Complaint are taken as true for both a Rule 12(b)(6) motion, <u>ATSI Communs., Inc. v. Shaar</u>

<u>Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007)(citation omitted), and a 12(b)(1) motion in which the

mover does not provide affidavits or documents addressing the factual issues, J. Moore, <u>Moore's</u>

<u>Federal Practice</u>, § 12.30(4), 3rd ed. The defendants provide 18 exhibits of which nine are cases

and none of the others, except two, have anything to do with the issues of this case.[9] The

---

[8] The fact-driven nature of the fair use determination suggests that a district court should be cautious in granting Rule 56 motions in this area. <u>Wright v. Warner Books, Inc.</u>, 953 F.2d 731, 735 (2d Cir. 1991).

[9] The two exceptions are Swindells-Donovan's submission without authorization of the essays in the Ladies' Nights case and the Judge's Opinion at p. 12 holding the essays irrelevant.

defendants do make lots of assertions, but those are not the ones assumed true nor are all reasonable inferences drawn in the defendants' favor.

The defendants fail to prove the facts necessary to meet their fair use burden and do not request summary judgment, which leaves the Court only with the defendants' speculation. They do try to circumvent summary judgment procedures by saying, "there is no authority precluding" the factual finding of fair use on a motion to dismiss, Krebs Memo. p. 6, which means there is no authority permitting it either. Defendants also try to circumvent summary judgment by appealing to judicial notice, but such does not apply when there are factual disputes as in this case on all four fair use factors. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Lozano v. Ashcroft, 258 F.3d 1160, 1165-66 (10th Cir. 2001).

## Per Se Rule for Judicial Proceedings ?

The defendants argue that the use of copyrighted material in judicial proceedings constitutes fair use regardless of whether the material is relevant to those proceedings.[10]  Krebs Memo. 13, 14. Any per se rule is inappropriate, Campbell, 510 U.S. at 577, because "[n]o real definition of the concept has ever emerged," since it is an equitable rule of reason, House Report No. 94-1476, 1976 Copyright Act, 1976 U.S.C.C.A.N. 5659, 5679. To impose a per se rule of fair use in judicial proceedings violates the purpose of the Copyright Act by stifling creativity and chills the constitutional and common law rights to use the courts to redress injuries. Such a rule that ignores a requirement of relevancy would allow an author's opponents to freely place

---

[10] Defendants even try to have state defamation law apply to this Federal copyright case to find that whenever copyrighted works are submitted in judicial proceedings, there use is, in effect, fair use, which they call "litigation privilege." Krebs Memo. p. 15. In New York, defamatory statements made in judicial proceedings are usually, although not always, protected. The action before this Court is for copyright infringement—not defamation. The cases that the defendants rely on for their misleading litigation privilege rule is Aequitron Medical, Inc. v. Dyro, 999 F. Supp. 294 (E.D.N.Y. 1998) and Credit Sights, Inc. v. Ciasullo, 2008 WL 4185737 (S.D.N.Y.). Both are defamation cases applying New York defamation law. The term "copyright" is not even mentioned in the cases.

his writings on the Internet through PACER or in a court's public files in any state or Federal court action in which the author is involved.  Some members of the author's market would likely choose to pay pennies for his works through PACER or a court's public files rather than dollars through commercial outlets.  The author is therefore placed in the untenable situation of choosing between the economic benefits of his creativity and enforcing rights he may have in matters unrelated to his copyrighted works.

The defendants wrongly claim support for their position from legislative history, a number of cases, and Nimmer on Copyright.  They misleading say, "[t]hat the use of copyrighted material in a judicial proceeding constitutes fair use is specified in the legislative history of the Copyright …." Krebs Memo. p. 14.  The legislative history actually states that the 1961 Copyright Law Revision Report "give[s] some idea of the sort of activities the courts **might** regard as fair use under the circumstances: … 'reproduction of a work in … judicial proceedings or reports….'" House Report No. 94-1476, 1976 U.S.C.C.A.N. at pp. 5678-79 (emphasis added).  "Might" is a long way from what the defendants claim the history states.

As for the cases, in Bond v. Blum, 317 F.3d 385, 389 (4th Cir. 2003), sections of the copyrighted work were relevant to issues in the case.  The same was true in Religious Tech. Center v. Wollersheim, 971 F.2d 364, 367 (9th Cir. 1992).  In Jartech, Inc. v. Clancy, 666 F.2d 403 (9th Cir. 1982), the copyright infringement did not occur in judicial proceedings but a local city council action in which the copyrighted material was relevant to the council's decision. And the Court in Shell v. Devries, 2007 WL 324592 * 3 (D. Colo. 2007), specifically stated "the use of copyrighted material in judicial proceedings is not inherently fair use.  Indeed, the use of copyrighted material in judicial proceedings has been found in some cases **not** to constitute fair

use." (Emphasis in the original). <u>Shell</u> found fair use on the ground that the work was only a chronology of events in a lawsuit, therefore, more factual than creative. <u>Id.</u> at *4.

The defendants also claim support for their *per se* rule from <u>Sony Corp. Am. v. Univ. City Studios, Inc.</u>, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). But they cite to a dissenting opinion without indicating it is a dissent. If I had done that when I worked as an associate at Cravath, I would have been fired on the spot. That part of the dissenting opinion actually dealt with the policy behind fair use. Justice Blackmun said,

> "I do not suggest, of course, that every productive use is a fair use. A finding of fair use still must depend on the facts of the individual case .... The fair use doctrine must strike a balance between the dual risks created by the copyright system: on the one hand, that depriving authors of their monopoly will reduce their incentive to create, and, on the other, that granting authors a complete monopoly will reduce the creative ability of others. The inquiry is necessarily a flexible one, and the endless variety of situations that may arise precludes the formulation of exact rules. But when a user reproduces an entire work and uses it for its original purpose, with no added benefit to the public, the doctrine of fair use usually does not apply. There is then no need whatsoever to provide the ordinary user with a fair use subsidy at the author's expense." <u>Id.</u> 479

The last of the defendants' misplaced support is their assertion that Nimmer "endorsed" a rule that any copyrighted material placed on a court's website or in its public files is fair use. Krebs Memo. p. 14. Nimmer requires the infringing materials play some evidentiary role in the underlying facts of the case—that they are relevant. *See* <u>Nimmer on Copyright</u>, § 13.05(D)(2).

Defendant Swindells-Donovan used the copyright material in a motion to oppose the recusal of the Judge in the Ladies' Nights lawsuit. The issue on the motion was not whether the Judge was biased against the putative class of men, not whether one of parties was biased toward females, or whether a party's belief system was hypocritical.[11] Krebs Memo p. 2, 15, 16.

---

[11] Attorney Krebs apparently believes she has the ability to read minds retroactively by interspersing in her statements of facts descriptions of the plaintiff's state of mind at a time when she never even knew him nor observed his demeanor. For example, plaintiff was "incensed" and "emboldened." Krebs Memo. pp. 2, 3. Or perhaps she is

The only issue was whether the Judge had exhibited an **appearance** of not acting fairly towards

the plaintiff class under 28 U.S.C. § 144 and 28 U.S.C. § 455. The purpose behind §§ 144 and

455 is to promote public confidence in the judicial process; therefore, the question is not

whether a judge is actually biased, prejudiced, or partial toward a party, but whether the Judge's

actions create an appearance of such. Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct.

1147, 127 L.Ed.2d 474 (1994); United States v. Brinkworth, 68 F.3d 633, 637 (2d Cir.

1995)(citing H.R. Rep. No. 1453, 93d Cong., 2d Sess., 1974 U.S.C.C.A.N. 6351, 6355).

Further, Judge Cedarbaum stated in her Opinion at 12, Exhibit D, that the essays were irrelevant

as did defendant Swindells-Donovan in her November 1, 2007 letter to the Court, Exhibit E.

Defendant Steinberg submitted the essays in a defamation case in which he, among other

defamations, libeled the plaintiff on the Internet. Steinberg recently defaulted on a motion by the

plaintiff to supplement the complaint in that libel action against Steinberg and his client William

R. Fasano in the N.Y. County Civil Court, 021283 Cv 2006. Steinberg also submitted the essays

in a noise nuisance action pending in the N.Y. County Supreme Court, 102057 Cv 2007, where

Steinberg is acting as defense attorney for the same client William R. Fasano. The essays have

no evidentiary value to the issues in the libel and noise nuisance cases.

Both defendants Swindells-Donovan and Steinberg used the essays to provoke, to

agitate, to stir those courts into ruling against the plaintiff based on his unpopular views. They

were in effect telling the judges that the plaintiff is not one of them, not like them, does not

politically believe and speak as they do, and is one of the types of men post-modern Feminists

are trying to eliminate. That's what those essays were meant to communicate so as to agitate

and provoke, and that's how they were used by the defendants in trying to win decisions against

just trying to exploit the typical post-modern feminist demonization of men as barbarians right out of the beginning
scenes of the movie Gladiator.

14

the plaintiff.  For court decisions to depend on a party's political and social beliefs as expressed

in writings rather than on the facts would seriously deter the creativity protected by the

Copyright Act and punish the expression of speech that the First Amendment intended to

protect.  The "purpose behind … the First Amendment in particular [is] to protect unpopular

individuals from retaliation-and their ideas from suppression-at the hand of an intolerant

society."  McIntyre v. Ohio Elections Com'n, 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed.2d

426 (1995).

Factors

     If the defendants meet their burden of proof for fair use, the determination rests on a

number of factors:

     ***Factor 1.***  The purpose and character of the infringer's use, including whether such use is

of a commercial nature or is for nonprofit educational purposes.  17 U.S.C. § 107(1).

     a.  Whether the infringer's use is commercial in nature?

     Courts are less willing to deem a use fair when it is commercial and profit seeking in

nature.  Harper & Row Publrs. v. Nation Enters., 471 U.S. 539, 562.  The defendants infringed

the essays in their practice of law, which "can be characterized as a profit making venture …."

Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 636

(E.D. Pa. 2007).

     When the unauthorized use is done for a commercial or profit-making purpose, the use is

presumptively unfair.  Stewart v. Abend, 495 U.S. 207, 237, 110 S.Ct. 1750, 109 L.Ed.2d 184

(1990)(citing Sony Corp. of Am., 464 U.S. at 451); Ass'n of Am. Med. Colleges v. Cuomo, 928

F.2d 519, 525 (2d Cir. 1991).  While monetary profit is commercial in nature, "[t]he crux of the

profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but

whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, Publrs., 471 U.S. at 562. Defendants Steinberg and Swindells-Donovan are attorneys by profession, and they used the essays to win their cases or motions that would aid in a case victory. Both were paid for their efforts and success always increases an attorney's marketability and profits. Neither paid the plaintiff for using the copyrighted works. Since the use of the essays were for a commercial purpose, the presumption is that the use was unfair.

> b. Whether the infringer used the work for the same intrinsic purpose?

Courts examine whether an infringer's use is for the same intrinsic purpose as the author's or transformative in that it adds something new, with a further purpose or different character that alters the first with new expression, meaning, or message, Campbell, 510 U.S. 569, 579, by providing "new information, new aesthetics, new insights and understandings...." Judge Pierre N. Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1103, 1111 (1990). A claim of fair use is seriously weakened where the infringer's use is for the same purpose as the copyright holder's. Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989).

The defendants used the essays for their original expressions in the hope of agitating the courts against the plaintiff. The intrinsic purposes of the essays were to agitate, provoke, incite, foment, stir things up in the culture wars, and create a controversy. Just as Frederick Douglas exhorted a women's suffrage meeting on February 20, 1895, "[a]gitate, agitate, agitate," the essays follow his advice.[12] However, the essays agitate against the current feminist establishment and expose its double standards concerning the sexes.[13] Apparently the essays were successful, at least with the defendants. The defendants tried, and apparently succeeded, in

---

[12] On returning home from his speech, Douglas died of a heart attack.
[13] Establishment means a unitary belief system held by enough influential persons so that it dominates over other beliefs in a society. In America today, that belief system is post-modern Feminism.

using the essays' criticisms of post-modern Feminism, political correctionalism, preferential treatment of females, and society's rampant denigration of males to provoke and agitate three courts to decide against the plaintiff, not on the issues, but because the content of the essays did not conform to the predominant American belief system of what is permissible speech. The defendants took the very purpose of the essays—to provoke mainstream feminist America—and used them to politically foment three courts against the plaintiff.

In using the plaintiff's unpopular expressions against him, the defendants added nothing new, and submitted the entire essays as exhibits to their declarations. Declarations are factual recitations that copyright law does not protect to the same extent as criticism and comment because of a greater societal need to disseminate facts. Harper & Row, 471 U.S. at 563. Defendants now try to recast their declarations of fact as "criticism and commentary" deserving protection as transformative works, Krebs Memo. pp. 9, 10, which they are not.[14] The defendants' uses also did not serve the public interest in justice because the uses were not relevant to the cases but only an attempt to have the courts punish the plaintiff for the content of his speech outside of the courtroom.[15] Moreover, to hold that the defendants' few sentences in their factual declarations make their use of the essays transformative would permit the wholesale copying, distributing, and displaying by anyone, for nearly any purpose, of a copyrighted work, no matter how large, by just making a few short remarks concerning the content and its author.

---

[14] This action is not similar to the transformative work in Lennon v. Premise Media Corp., 556 F.Supp.2d 310 (S.D.N.Y. 2008). There a movie producer added film segments while parts of John Lennon's song "Imagine" were playing in the background. The Court found fair use by the moviemaker because the film segments transformed the utopian message of the original song such that the film segments amounted to commentary and criticism of the song's original message. Id. at 321-25. Here, the defendants did not change the messages of the essays.

[15] Such is contrary to the principles of a democracy for "in times of repression, when interests with powerful spokes[persons] generate symbolic pogroms against nonconformists, the federal judiciary … has special responsibilities to prevent an erosion of the individual's constitutional rights." Younger v. Harris, 401 U.S. 37, 58, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)(Douglas, J. dissenting).

<u>c.  Whether defendants knowingly infringed the work?</u>

"[T]he propriety of the defendant's conduct 'is relevant to the character' of the use under the first factor of the statutory fair use test...." <u>Harper & Row, Publrs.</u>, 471 U.S. at 562 (quoting 3 M. Nimmer, <u>Copyright</u> § 13.05 (1984)).   A defendant's conduct is relevant if she knowingly exploited a purloined work for free that could have been obtained for a fee.  <u>NXIVM Corp. v. Ross Inst.</u>, 364 F.3d 471, 478 (2d Cir. 2004).

Defendant Swindells-Donovan's declaration in opposition to the motion to recuse the Judge in the Ladies' Nights case shows she knew the essays were authored by the plaintiff. <u>Exhibit F</u>, Declaration ¶ 11.  Steinberg also knew the plaintiff authored the essays as shown by his statements under penalty of perjury in two separate court filings:  <u>Exhibit G</u>, Steinberg's <u>Affirmation in Opposition, Nuisance</u>, ¶ 12, submitted to the N.Y. Supreme Court on December 18, 2007; <u>Exhibit H</u>, Steinberg's <u>Affirmation in Opposition, Defamation</u>, ¶ 12, submitted to the N.Y. Civil Court on December 19, 2007.  Both defendants knew who authored the essays but went ahead and used them anyway.

***Factor 2.***  The nature of the copyrighted work.  17 U.S.C. § 107(2).

Fair use is less likely in creative than factual works.  <u>Stewart v. Abend</u>, 495 U.S. 207, 237.  Creative works contain creativity, imagination and originality.  <u>Worldwide Church of God</u>, 227 F.3d 1110, 1118.  The distinction under "Factor 2" is between creative works and those that consist of a recitation of facts or information.[16]  <u>Lennon</u>, 556 F. Supp. 2d at 325.

The defendants mistakenly derive from <u>Lennon</u> the proposition that fair use is more likely when a work is commentary, which they assert the essays are, than when it is fictional or fantasy.  Krebs Memo. p. 10.  <u>Lennon</u> does not hold that and for good reason because it would

---

[16] An example of a factual or informational work is the case cited by the defendants, <u>Shell v. Devries</u>, 2007 WL 324592 (D.Colo. 2007), were the plaintiff set up a chronology of events in a lawsuit, not unlike a docket sheet.

mean that every New York Times editorial would carry less copyright protection than stories about extraterrestrial aliens in the tabloids. Further, a key purpose of the First Amendment is to protect opinion and commentary on political, social and other concerns of the community. *See* Connick v. Myers, 461 U.S. 138, 145-46, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). It is unlikely that Congress, through the Copyright Act, would relegate a key purpose of free speech to second-class status behind fiction and fantasy.

The essays use creativity and originality to express ideas unrestrained by conformity to majoritarian opinions or by modern day "newspeak" in which euphemistic terminology disguises the reality of life in an effort to control belief and action. Or, as George Orwell said, "If thought can corrupt language, then language can corrupt thought"—control thought, and one controls the individual.

*Factor 3.* The amount and substantiality of the portion used in relation to the copyrighted work as a whole. 17 U.S.C. § 107(3).

This factor involves both a quantitative and qualitative analysis. Lennon, 556 F.Supp.2d at 325(citations omitted); Keller and Cunard, Copyright Law: A Practitioner's Guide, § 8.4.4.

Unauthorized use of all or significant portions of a work generally prevents a finding of fair use. Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 109 (2d Cir. 1998)(citing Nimmer on Copyright § 13.05(A)(3)); *see* Sony Corp. of Am., 464 U.S. 417, 449-50 (1984). Other than newsworthy or literary criticism, the Ninth Circuit found no published case holding that fair use protected the verbatim copying of a written work in its entirety. Worldwide Church of God, 227 F.3d at 1120. Except for A Different Time, the defendants used the copyrighted works in their entirety. (Compl. ¶¶ 11, 18).[17]

---

[17] The defendants argue the use of the entire five essays was similar to the use of nearly the entire work in Bond, 317 F.3d at 396. That is false. As addressed *supra*, the work in Bond was used as evidence relevant to an issue in

A Different Time is copyrighted as part of a larger work, so a qualitative analysis is needed for determining the substantiality of the portion used by the defendants. Infringing a small portion of a work is not fair use if the portion constitutes the qualitative heart of the work. Harper & Row, Publrs., 471 U.S. 539, 564-65. In Harper & Row, Publrs., the defendant reproduced 300 words from a manuscript of 200,000 words and the Supreme Court ruled no fair use because those few words represented "essentially the heart" of the work. A Different Time is 240 words out of a manuscript of around 250,000 words. In Blanch v. Koons, 467 F.3d 244, 257-58 (2d Cir. 2006), the Second Circuit found fair use because the artist did not copy key creative elements of a photograph. Copying of another's work is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation. Fisher v. Dees, 794 F.2d 432, 434 n. 2 (9th Cir. 1986).

A Different Time encapsulates the key theme of the copyrighted work Stupid Frigging Fool. The larger work illustrates that in America, males pay with their lives, limbs, savings, and dreams so that females can receive preferential treatment. For the past 50 years, equality American style has meant females are treated more equally than males. For example, 58,209 American males died fighting in Viet Nam but only eight (8) American females. That, however, is just the beginning of America's institutionalized inequality.

Females can perjure themselves in open court or lie in *ex parte* proceedings without punishment in order to throw a man in jail and out of the house he bought while taking the child that carries 50% of his genes. Females can murder the unborn, the born, young children, their boy friends, and husbands at will with little or no punishment. Females live longer, control a greater percentage of the nation's wealth, make 80% of the purchases, serve less time for the

---

that case, therefore, the amount of the work used was not crucial. Here, the six essays had no evidentiary relevance to the cases in which they submitted them.

same crimes, consume more food, and the government spends more money on their health care. They receive preferential treatment in hiring and promotion decisions for most jobs, except those in the tombstone basement where America's most dangerous occupations are 90% manned by males.

A Different Time sets the theme for the Stupid Frigging Fool who believes "that democracy implies respect for the elementary rights of men, ... [and that] a democratic government must therefore practice fairness ...." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 170, 71 S.Ct. 624, 95 L.Ed. 817 (Frankfurter J., concurring)(1951).

*Factor 4.* The effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107(4).

When an infringer's use is commercial, there is a presumption of market harm. Sony Corp. of Am., 464 U.S. 417, 451. Works that are not transformative will often have a negative effect on the original work's market. *See* Campbell, 510 U.S. 569, 591. As argued *supra*, the defendants used the essays for commercial purposes, and that use was not transformative.

The market factor "must almost always be judged in conjunction with the other three criteria." H.R. Rep. No. 83 at 35 (1967). Judge Leval has written:

> "When the secondary use does substantially interfere with the market for the copyrighted work ... [the market] factor powerfully opposes a finding of fair use. But the inverse does not follow. The fact that the secondary use does not harm the market for the original gives no assurance that the secondary use is justified. Thus, notwithstanding the importance of the market factor, especially when the market is impaired by the secondary use, it should not overshadow the requirement of justification under the first factor, without which there can be no fair use. Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1124." Worldwide Church of God, 227 F.3d 1110, 1120.[18]

---

[18] The Second Circuit apparently believes the Supreme Court has abandoned its position of the market factor being the most important factor. American Geophysical Union v. Texaco Inc., 60 F.3d 913, 926 (2d Cir. 1994).

Not only did the defendants use the essays for commercial purposes in a non-transformative fashion, but they knew the plaintiff was the author, used the essays for the same purpose as they were written, ignored that the essays were creative expressions, and used the entirety of five essays plus the heart of a larger work. The defendants' infringement satisfies the first three factors and presumptively the fourth.

The defendants argue their use of the essays actually increased the value of them, so the market factor is satisfied. Krebs Memo. p. 13. The U.S. Supreme Court disagrees. The increased sales of copyrighted material attributable to unauthorized use should not deprive the copyright holder of the right to license the material. Campbell, 510 U.S. at 591 n. 21. "Judge Leval gives the example of the film producer's appropriation of a composer's previously unknown song that turns the song into a commercial success; the boon to the song does not make the film's simple copying fair." Id. (citing Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. at 1124 n. 84).[19]

**3. Subject Matter Jurisdiction**

"Receipt of an actual certificate of registration or denial of same is a jurisdictional requirement, and this court cannot prejudge the determination to be made by the Copyright Office." Demetriades v. Kaufmann, 680 F.Supp. 658, 661 (S.D.N.Y. 1988)(citations omitted). While the Copyright Office has issued a certificate for the work Stupid Frigging Fool that contains the essay A Different Time and three essays, it still has not issued certificates for the remaining two essays. Applications for the five essays were made and received in November 2007, Exhibit A, when the waiting period was six months. Now, fifteen months later, the Copyright Office has become so backlogged that two certificates still have not been issued.

---

[19] Defendants allege no harm to potential markets because plaintiff has already publicized his ideas. Copyright law does not protect ideas but expression. Defendants' assertion would prevent a modern-day Shakespeare from copyrighting any sonnets on love written after publication of the first one copyrighted. Krebs Memo. p. 8.

According to the Copyright Office, the applications were accepted, but it cannot even guess as to when the certificates will be issued.

The novel question concerning jurisdiction presented by this case is whether telephone conversations that two essays are accepted is sufficient for the maintenance of an action under 17 U.S.C. § 411 as a substitute for receipt of the certificates of registration? Given the Copyright Office's extensive backlog in issuing certificates and its inability to even guesstimate the waiting period, the plaintiff believes such conversations should be enough for jurisdiction. If this Court decides otherwise, then the plaintiff requests the case be set aside until the remaining two certificates are received and he then be permitted to amend the Complaint with the certificates or the registration numbers. In Demetriades, 680 F.Supp. at 661, the Court decided that the cure to an action in which certificates had not yet issued was to amend the complaint when the certificates were received.

## ATTORNEY'S FEES

Courts decline to make fee awards in novel cases because it is important to encourage parties to clarify the boundaries of copyright law. Morris v. Bus. Concepts, Inc., 2001 U.S. Dist. LEXIS 17760 *4, 60 U.S.P.Q.2d 2015 (S.D.N.Y. 2001). This action presents three novel questions and was instituted after the registration of one essay and the Copyright Office's receipt of the registration applications for the five other essays. The action was brought after the defendants infringed the copyrighted essays in three different cases in three different courts in an effort to intimidate the plaintiff into not pursuing the cases he had a right to bring.

Defendants rely on Earth Flag Ltd. v. Alamo Flag Co., 154 F.Supp.2d 663 (S.D.N.Y. 2001), which awarded defendant fees after a summary judgment because the plaintiff's work contained no copyrightable material to infringe but only public domain material; therefore,

23

attorney fees would not chill future lawsuits concerning copyrighted works. Id. at 668. Even

the defendants do not argue that the essays contain only public domain and no copyrightable

material. Earth Flag also held that "a court should not award attorneys' fees where the case is

novel … because such a litigation clarifies the boundaries of copyright law." Id. at 666.

### RELIEF

The Complaint at ¶¶ 28-30 requests statutory damages under 17 U.S.C. § 504(c)(1),

which can range from $750 to $30,000 as the court considers just. In the event that the

defendants willfully infringed, the amount of statutory damages can be enhanced to $150,000 at

the Court's discretion. 17 U.S.C. § 504(c)(2). The "statutory rule, formulated after long

experience, not merely compels restitution of profit and reparation for injury but also is designed

to discourage wrongful conduct." F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S.

228, 233, 73 S. Ct. 222, 97 L. Ed. 276 (1952).

The Second Circuit has held that "willful infringement" means a defendant had

"knowledge that its actions constitute an infringement." Fitzgerald Pub. Co. v. Baylor Pub. Co.,

807 F.2d 1110, 1115 (2d Cir. 1986). This knowledge may be "actual or constructive." Id. It

need not be proven directly but may be inferred from the defendant's conduct. N.A.S. Import,

Corp. v. Chenson Enterprises, Inc., 968 F.2d 250, 252 (2d Cir. 1992)(citing Fallaci V. New

Gazette Lit. Corp., 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983)). Infringement is also "willful"

when a defendant acts in reckless disregard of the copyright owner's rights. N.A.S. Import,

Corp., 968 F.2d at 252 (citing RCA/Ariola International, Inc. v. Thomas & Grayston Co., 845

F.2d 773, 779 (8th Cir. 1988)).

Both defendants Swindells-Donovan and Steinberg stated under penalty of perjury in

court proceedings that the plaintiff was the author of the six essays. Exhibits F, G. Knowing

that the plaintiff authored the essays, factoring in that both defendants are lawyers, and, that under the law, copyright protection subsists at the time a work is created with ownership usually vested in the author, the defendants completely disregarded the circumstances and used the essays without authorization.  So self-righteous in their beliefs and driven to win their cases by provoking the courts' ire against the plaintiff, they disregarded the law they swore to uphold as attorneys.

If this Court finds that statutory damages and enhance statutory damages do not apply, the Supplemental Complaint requests a proportion of the profits the defendants earned from infringing on the essays under 17 U.S.C. § 504(b).  Remedies for infringement under the Copyright Act of 1976 may be pleaded in the alternative, but the copyright owner is to make an election before final judgment in a case. Oboler v. Goldin, 714 F.2d 211, 213 (2d Cir. 1983).

Both defendants used the essays in litigation, a "profit making venture," Healthcare Advocates, 497 F.Supp.2d 627, 636, they were paid for their time, and defendant Donovan succeeded in having her case dismissed while defendant Steinberg admits in his November 11, 2008 letter to the Court, third paragraph, that his litigation "defeat[ed]" the plaintiff, Exhibit I, so Steinberg most assuredly profited.  The amount by which the defendants profited from their unauthorized use of the essays is peculiarly within their knowledge; therefore, the plaintiff cannot plead the actual amount. *See* Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir. 1986).

## CONCLUSION

The plaintiff requests this Court deny the defendants motions to dismiss under Rules 12(b)(1) & (6).

Dated: March 28, 2009
   New York, N.Y.

               Roy Den Hollander, Esq.

Attorney and plaintiff
545 East 14 Street, 10D
New York, N.Y. 10009
(917) 687-0652