# KREBS SUPP. DECL.
# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

**C**

United States District Court, S.D. New York.
NATIONAL ASSOCIATION OF FREELANCE
PHOTOGRAPHERS, Kevin J. Larkin, Joseph M.
Tabacca, and Paul Hurschmann, Plaintiffs,
v.
ASSOCIATED PRESS, Defendant.
**No. 97 Civ. 2267(DLC).**

Dec. 10, 1997.

Joel L. Hecker, Laurence Desind, Charles D. Donohue, Russo & Burke, New York City, for plaintiffs.

Robert Penchina, Margaret B. Soyster, Hilary Lane, Rogers & Wells, New York City, for defendant.

OPINION and ORDER

COTE, J.

*1 This action was commenced in March 1997 by three professional freelance photographers, Kevin J. Larkin, Joseph M. Tabacca, and Paul Hurschmann (collectively "the individual plaintiffs"), and the non-profit association with which they are affiliated,[FN1] the National Association of Freelance Photographers ("NAFP"), against the Associated Press ("AP"), a non-profit corporation that gathers and disseminates news and information, and, according to the plaintiffs, also engages in the sale of photographs of newsworthy events. The plaintiffs filed an Amended Complaint on May 7, 1997, in response to a motion for sanctions that AP had served on the plaintiffs on April 24, 1997, but not filed, in compliance with Rule 11(c)(1)(A), Fed.R.Civ.P. That motion, and an accompanying cover letter, notified the plaintiffs that their original complaint contained some false statements (regarding procurement of copyright registrations), and advised that if the plaintiffs did not withdraw three of the complaints' six counts, which were asserted to have no legal basis, then AP would file the sanctions motion. In filing their mended Complaint, the plaintiffs removed the allegedly false statements, but made no other curative changes in their pleadings. The Amended Complaint asserts anti-trust and copyright infringement claims and seeks declaratory and injunctive relief largely on the basis of AP's practice of requiring photographers who are on assignment for AP, and from whom it buys photographs, to assign their copyrights in those photographs to AP as a condition of sale.

> FN1. The Amended Complaint states that Larkin is NAFP's president, Hurschmann is NAFP's executive vice president, and Tabacca is a member of the organization.

On May 29, 1997, AP filed an answer with counterclaims and also noticed the two motions that are the subject of this opinion. First, AP has moved pursuant to Rule 12(c), Fed.R.Civ.P., for a judgment on the pleadings as to all but one of the counts of the Amended Complaint (hereinafter "Complaint"), arguing that both NAFP and the individual plaintiffs lack standing to assert their claims and that, in any event, none of the claims states a viable cause of action. Second, as forewarned, AP has filed a motion for sanctions under Rule 11, Fed.R.Civ.P., asserting that the plaintiffs and their counsel filed the Complaint for improper motive and without a reasonable basis in law. As to the latter, the plaintiffs have crossmoved pursuant to Rule 11(c)(1), Fed.R.Civ.P., for expenses and attorney's fees incurred in opposing AP's motion for sanctions. For the reasons set forth below, the motion under Rule 12(c) is granted and the Complaint is dismissed with prejudice as to all the counts at issue; the cross-motions for sanctions are denied.

**STANDARD OF REVIEW**

In deciding a motion under Rule 12(c), this Court "appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6)," that is, the Court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the nonmovant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Moreover, the Court may dismiss an action pursuant to a motion under either Rule only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

_Gibson,_ 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); _accord Sheppard,_ 18 F.3d at 150. In other words, the Court can dismiss the plaintiffs' complaint here only if, assuming all facts as true, they still have failed to plead the basic elements of their causes of action.

## BACKGROUND

**\*2** The Complaint alleges that AP is a cooperative association of publications and other communications related entities referenced as "Members") whose business, at least in part, is he collection, assembly, and distribution of information to the public. This information is acquired by AP from its own employees, from the employees of Members, and from other "independent originators of such materials," including the photographers who make up NAFP. In regard to the latter point, although the Complaint speaks in terms of "Freelance Photographers," the practice of AP that is attacked in the Complaint pertains to AP's purchase of photographs from photographers who attend and photograph events at AP's request, and on its behalf, and not to AP's purchase of photographs from those who are called freelance photographers in the conventional sense.

According to the plaintiffs, AP is "the chief single source of information for the American press," such that the "inability to sell photographs to AP or any of its multitude of Members could have a decimating effect upon the business of any Freelance Photographer." The Complaint purports to document the "power and domination of AP" through allegations of specific instances in which AP improperly demanded, disseminated, retained, or otherwise used without furnishing satisfactory compensation (if any), certain photographs taken by the three individual plaintiffs.

Count One of the Complaint seeks declaratory relief. It alleges that Freelance Photographers routinely "cover" events for AP by providing what is labeled as "Professional Services," which involves "the presence of the Freelance Photographer at an event with the intent, but not the absolute requirement, of creating photographic images of the event for submission to the AP or a Member." AP pays Freelance Photographers for Professional Services at a rate that is unrelated to the subject matter or content of the images, or whether any images are in fact created or submitted to AP, or accepted, used, or returned by AP.

Payment for such services is accomplished by check, and each check that AP issues for such services bears on its face a legend stating:

In consideration of the transfer of any and all copyrighted ownership in the news materials described above. Endorsement signifies consent.[FN2]

> FN2. AP indicates that it began printing the legend on its checks after the decision in _Community for Creative Non-Violence v. Reid,_ 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The plaintiffs assert that the reference in the legend to "news materials described above" is to "a payment stub which does not describe the photographs submitted."

The central focus of this action concerns the parties' differing interpretations of this legend, that is, AP's position that it owns the copyright in all images for which a check bearing this legend was endorsed by a freelance photographer, and he plaintiffs' contention that the legend is ineffective to transfer copyright to AP. In support of the latter view, the complaint alleges that checks bearing the legend were:

Endorsed by Freelance Photographers on the back without noticing and therefore not reading, the Legend on the front; ... Endorsed by Freelance Photographers on the back not understanding the significance or intended meaning of the Legend on the front, or ... Endorsed by Freelance Photographers after crossing out or altering the language of the Legend.

**\*3** On the basis of these allegations Count One seeks a declaration that
each Freelance Photographer is the copyright owner of the Photographs created by such Freelance Photographer and submitted to AP; and that endorsement of Payment Checks issued as compensation for Professional Services and bearing the Legend on their face did not and/or do [sic] not transfer copyright ownership in the Contested Images from Freelance Photographers to AP.

In Count Two the Complaint requests injunctive relief to prevent AP's continued misuse of photographs, taken by Freelance photographers, that AP maintains in a "photo library." The plaintiffs allege that AP

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                      Page 3
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

uses these photographs without the authorization or consent of the Freelance Photographers who created them, without attributing copyright credit to them, and without payment for each use. The specific relief requested includes an injunction against future unauthorized "commercial exploitation" of the photos by AP, and an order directing that AP: (i) give full copyright credit "to each Freelance photographer owning a photographic image used by AP" for any unauthorized purpose; (ii) account to "each Freelance photographer" for "each use made by AP" of his or her images and the revenues received therefrom, and pay over "to each Freelance photographer owning photographic images used by AP" any revenue derived by any unauthorized use thereof; and (iii) return "to each Freelance Photographer all images presently held by AP without the express authorization of each such Freelance photographer."

Counts Three and Four assert claims for restraint of trade, monopoly, and unfair trade practices under (respectively) federal and state antitrust laws. The Complaint alleges that "AP dominates and controls the market for gathering and disseminating information through print media in the form of photographic images," and that due to this "dominant position in the marketplace, Freelance Photographers are compelled to submit images of noteworthy events to AP if such Photographers desire to remain active in such marketplace ."More particularly, the complaint asserts that AP, "directly and through and/or in combination with its constituent Members": (i) uses its dominance to require as a condition of payment for Professional Services that Freelance Photographers "transfer to AP all copyright ownership and interest in images used by AP," and allow AP to make continued use of the images without credit and/or additional compensation; and (ii) "refuse[s] to do business with and/or threaten[s] not to do business with those Freelance Photographers who object to the conduct of AP."

According to the plaintiffs, AP's conduct "restrain[s] trade and commerce by interfering with the ability of Freelance Photographers to compete in the commercial exploitation of images concerning events and people," in violation of Sections 1 and/or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, which causes Freelance Photographers to "lose substantial revenue and threaten[s] their economic survival." The plaintiffs demand treble damages for these infractions, as well

as an injunction (i) barring AP from requiring as a condition of payment that Freelance Photographers transfer copyrights to AP, (ii) halting AP's use of photos without permission of the copyright owners, and (iii) precluding AP from refusing to do business, threatening not to do business, or taking other reprisals in retaliation for objections by Freelance Photographers to AP's actions or their refusal to comply with AP's demands.

*4 Count Five asserts a copyright infringement claim on behalf of plaintiff Larkin only. The Complaint alleges that he created certain images and then, prior to the commencement of this action, "complied in all respects" with governing federal copyright laws by

filing a Registration Application together with deposit copies of the [subject images] with the United States Copyright Office, along with payment of the requisite fees, which submission and payment were received by the Copyright Office prior to the commencement of this action.

AP's use of Larkin's images is thus alleged to have infringed on his "exclusive rights in the copyright" of the images, in violation of Sections 106(2) and 106(5) of the Copyright Act of 1976, 17 U.S.C. §§ 106(2), (5).[FN3]

> FN3. Count Six asserts a nearly identical infringement claim on behalf of plaintiff Hurschmann, but as noted, AP has not made a motion as to that claim. Although AP speaks of moving to dismiss "Counts One through Four, and part of Count Five," Count Five is not readily divisible. The Court therefore construes AP's motion to be directed at all of the first five counts of the Complaint and not at Count Six.

### DISCUSSION

AP raises numerous grounds for dismissal as to each of the plaintiffs' claims, including one ground that applies equally to all, standing. Because standing is a prerequisite to maintaining suit, the Court will address that issue first.

*A. Standing*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

AP argues that both NAFP and the individual plaintiffs lack standing here because the Complaint purports to assert claims generally on behalf of "professional Freelance Photographers" who "have been 'covering' events pursuant to a specific assignment or some other agreement with the AP or a Member." As for the individual plaintiffs, they plainly lack standing to assert the present claims on behalf of any persons other than themselves. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("plaintiff generally must assert its own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The Court finds that the individual plaintiffs do have standing to assert the claims in the Complaint as to themselves; AP's arguments to the contrary go more toward the sufficiency of the individual plaintiffs' pleadings (or lack thereof) than to their capacity constitutionally to assert the present claims.

With respect to NAFP, AP contends that this organization-which seeks redress in the present action only for injuries allegedly suffered by its members, and not for any injury to itself-fails to satisfy the test for "associational" standing set forth in *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and reiterated in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977):

> an association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt,* 432 U.S. at 343. It is undisputed that NAFP satisfies the first two elements of this test; the only question is whether it satisfies the third element as well, that is, whether the claims asserted in the Complaint *or* the relief requested therein require the participation of individual members of NAFP.

**\*5** The Court essentially agrees with AP that NAFP lacks standing here under the *Warth/Hunt* standard. Any judicial determination on the claims in this law-

suit requires proof regarding individual claimants, for example, whether given payment checks were effective to transfer copyright to AP in light of all the circumstances under which the checks were endorsed by Freelance Photographers. Because this conclusion rests on slightly different considerations as to each of the plaintiffs' claims, the Court will further address the issue of NAFP's standing in the sections below that correspond to those claims.

Generally speaking, however, the plaintiffs are not challenging the enforceability of the check legend on its face or standing alone. Rather, they are challenging AP's business practice concerning the endorsement of checks and the transfer of copyright in purchased photographs, a practice that (at least potentially) affects each plaintiff endorser/seller differently, depending on their prior understandings or course of dealing with AP, specific side-agreements that may govern a given transaction, or particular instances of misperception, miscommunication, or fraud by either party. In this situation, the merits of the plaintiffs' claims simply cannot be determined without the participation of individual claimants and the presentation of evidence as to the discrete circumstances substantiating their claims.[FN4] *See, e.g., Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 596-97 (2d Cir.1993) (denying standing to association challenging city rent schemes as a "taking" because "it is impossible to discern the identity of the aggrieved parties without delving into individual circumstances" and "whether a taking has occurred depends ... on a variety of financial and other information unique to each landlord"); *C.A.U.T.I.O.N., Ltd. v. City of New York,* 893 F.Supp. 1065, 1069-70 (S.D.N.Y.1995) (denying associational standing where plaintiffs alleged that city officials had policy or practice that violated Fourteenth Amendment and "[p]roof of the existence of a policy or practice require[d] ... individual members of CAUTION ... to show individual instances of misconduct"). For this reason, NAFP has no standing to assert most of the claims in the Complaint.

> FN4. The plaintiffs do not-and in any event could not-dispute that it is appropriate to deny associational standing where the *claims* at issue require individual participation, even if the relief requested, as is often the case with declaratory or injunctive relief, does not so require. *See Rent Stabilization*

Not Reported in F.Supp.                                                                                              Page 5
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

*Ass'n v. Dinkins,* 5 F.3d 591, 596 (2d Cir.1993) ( "[T]he relief requested is only half of the story. The *Hunt* test is not satisfied unless '*neither the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit.'") (quoting *Hunt,* 432 U.S. at 343) (emphasis in *Dinkins* ).

B. *Declaratory Judgment*

As noted, the plaintiffs seek a declaration that each freelance photographer owns the copyright in his or her photographs, and that AP's policy of requiring the transfer of copyright through "endorsement of Payment Checks issued as compensation for Professional Services" was not effective to "transfer copyright ownership in the Contested Images from Freelance Photographers to AP ."Initially, the plaintiffs concede, as they must, that the use of "a legend on a check" and the required endorsement thereof-as was AP's practice here-"*may* be effective to transfer copyright under the proper circumstances." (Emphasis in original.)

*6 Section 204(a) of the Copyright Act of 1976 provides:

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C. § 204(a). The Second Circuit in *Playboy Enters., Inc. v. Dumas,* 53 F.3d 549, 564 (2d Cir.1995), indicated that the use of a legend on a check may satisfy the writing requirement of Section 204(a), at least in certain circumstances. The district court in *Playboy* had found the legend in that case [FN5] ineffective to transfer copyright, given the ambiguity of the legend and the absence of evidence of the parties' intent. The legend was ambiguous because, *inter alia,* it made no mention of "copyright"; the assignment of "all right, title, and interest" was in the "items" as opposed to rights; the language described not a present transfer of rights but confirmation of one past; and thus there was "no clear way to tell what the parties intended by their agreement." *Playboy Enters., Inc. v. Dumas,* 831 F.Supp. 295,

308-309 (S.D.N.Y.1993).[FN6] The Second Circuit affirmed the finding that the legend was ambiguous, and thus ineffective to transfer copyright in the circumstances of that case. *See Playboy,* 53 F.3d at 564 (emphasizing that the legend at issue "does not expressly mention copyright" and that "the evidence is conflicting as to whether the parties intended a one-time transfer of reproduction rights or a transfer that included copyright").

FN5. The legend at issue read in pertinent part:

By endorsement of this check, payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title, and interest in and to the following items: [a description followed]

*Playboy Enters., Inc. v. Dumas,* 831 F.Supp. 295, 300 n. 1 (S.D.N.Y.1993) (alteration in original).

FN6. The district court repeatedly stressed this theme of clarity, concluding, for example, that the Ninth Circuit's view that "a one-line pro forma statement will do" to transfer copyright had to be "predicated on the fact that the terms of the to forma statement are clear," *Playboy,* 831 F.Supp. at 308 citing *Effects Assocs. ., Inc. v. Cohen,* 908 F.2d 555 (9th Cir.1990)), and that the import of two Southern District cases was that "unless there is evidence of an intention to transfer copyright, a writing merely reciting transfer of an object will not transfer copyright," *id.* at 309 (citing *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.,* 690 F.Supp. 298 (S.D.N.Y.1988); and *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.,* 13 U.S.P.Q.2d 1472 (S.D.N.Y.1989)).

The plaintiffs argue in opposing this motion that "*this Legend* under *these* circumstances, does not transfer copyright to AP." (Emphasis in original.) To begin with, that very statement of the issue demonstrates again why NAFP has no standing here; there is no way to determine whether "*this Legend* under *these* circumstances" was effective to transfer copyright without examining "*these* circumstances," that is, the particular circumstances in which individual Free-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

lance Photographers endorsed their checks. That conclusion is reaffirmed by the Complaint's allegations as to why the endorsements were ineffective in this regard, *i.e.,* because Freelance Photographers endorsed the checks "without noticing and therefore not reading, the Legend[,] ... [while] not understanding the significance or intended meaning of the Legend[,] ... [or] after crossing out or altering the language of the Legend." Such fact-intensive inquiries plainly require the participation of the individual photographers offering the specific explanations.

Although the individual plaintiffs have standing to seek a declaration as to the effect of AP's check endorsement procedure on them, the Court finds that this claim, as pleaded in the Complaint, fails as a matter of law to state a viable cause of action. Specifically, the Complaint alleges no facts on behalf of the individual plaintiffs that would permit this Court to find that the legend at issue did *not,* in the particular circumstances of this case, transfer *their* copyright interests to AP. Instead, in apparent recognition of the clarity of the language in the legend, the Complaint attacks the legend by identifying circumstances in which it might *not* be effective, *e.g.,* where individual endorsers failed to see it or understand it, crossed it out, or had prior understandings or dealings with AP that would unambiguously render the legend moot. The critical fact, however, is that no such alternative circumstances are adduced in the Complaint *as to the individual plaintiffs.* To the contrary, the Complaint contains potentially mitigating allegations only as to "Freelance Photographers" generally, which, for the reasons stated above, are wholly ineffectual in this action given NAFP's lack of standing. Notwithstanding the plaintiffs' misplaced protestations (in opposing this motion) about what "[t]he evidence in this case *will show,*" (emphasis added), the Complaint contains no allegations particular to any of the three individual plaintiffs that would render the legend ineffective as to them and thereby entitle them to relief. The claim for a declaratory judgment must therefore be dismissed.

C. *Injunction*

*7 The plaintiffs' claim for injunctive relief is deficient largely for the reasons set forth above. First, NAFP lacks standing to seek an injunction on behalf of Freelance Photographers in general. The grounds proffered for the injunction, essentially that AP engaged in unauthorized use of Freelance Photographers' copyrighted materials and failed to compensate or credit Freelance Photographers for those uses, all depend at root on proof of copyright ownership in the subject materials-especially in light of the plaintiffs' concession that "AP has the right to *use* the photographs" themselves "in connection with the story for which such photograph[s] w[ere] created" by the plaintiffs. (Emphasis added.) As noted above, proof of copyright ownership cannot be adduced without the participation of individual photographers, who would have to establish that their endorsement of payment checks from AP was ineffective to transfer copyright, or that they had other individual arrangements or dealings with AP that negated the effect of the transfer. Once again, NAFP cannot satisfy the test for associational standing.

The individual plaintiffs do have standing to assert their own claims for unauthorized use and failure to provide compensation or credit for copyrighted materials. But these plaintiffs nevertheless still cannot maintain their claim for injunctive relief because the Complaint fails to allege facts that would permit the finding of liability requisite to such relief. Although the Complaint describes a photograph taken by each of the individual plaintiffs and used by AP, the Complaint does not, as explained above, identify the theory by which the transfer of copyrights in these three photographs might be deemed ineffective. That is, when read as a whole, the Complaint appears to allege that these three photographs were taken while the individual plaintiffs worked on behalf of AP as "Freelance Photographers," as that term is used in the Complaint,[FN7] and that each plaintiff thereafter received payment through endorsement of a check bearing the legend described above. What the Complaint quite clearly fails to allege, however, is that the circumstances claimed to have rendered ineffective the copyright transfers of Freelance Photographers *generally -i.e.,* that checks were endorsed without the photographers noticing or understanding the legend, or after crossing it out-apply to any of the three individual plaintiffs, or occurred with respect to any of the three specifically referenced photographs.

> FN7. The Complaint explicitly states that two of the three individual plaintiffs were working as Freelance Photographers for AP when they took the photographs at issue, but does not make such an allegation as to plain-

Not Reported in F.Supp.                                                                Page 7
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

tiff Tabacca.

In short, the Complaint alleges no facts that would permit a finding that the individual plaintiffs retained ownership of copyrights in the subject photographs (or that would permit a finding of copyright infringement, as explained below); and therefore those plaintiffs cannot maintain a claim for unauthorized use or failure to compensate or credit for copyrighted materials. Accordingly, the plaintiffs have no entitlement to injunctive relief with respect to these issues, and their claim to that effect must be dismissed.

### D. *Antitrust*

**\*8** The Complaint asserts antitrust claims under both Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2,[FN8] and seeks both treble damages and an injunction against (i) AP's policy of requiring Freelance Photographers to transfer their copyright ownership in photographs to AP as a condition of sale, (ii) AP's unauthorized use of Freelance Photographers' photographs, and (iii) AP's "refusing to do business" with, or taking other retaliatory actions against, Freelance Photographers who object to AP's policies. As above, the individual plaintiffs have standing to assert these claims in regard to themselves, but unlike the prior claims, whether NAFP also has standing is a closer question.

> FN8. AP correctly notes that, because the provisions of New York's antitrust laws are to be construed in keeping with federal antitrust law, the plaintiffs' antitrust and unfair business claims under state law will rise or fall along with their federal antitrust claims. Because the Court concludes that the federal claims are deficient as a matter of law, the state claims will not be discussed.

The plaintiffs concede that NAFP, as an association, cannot pursue a claim for money damages on behalf of its members under the antitrust statutes, but they maintain that it may seek injunctive relief for such individuals under those laws. In support of this argument the plaintiffs rely on *Barr v. Dramatist's Guild, Inc.*, 573 F.Supp. 555, 561-62 (S.D.N.Y.1983), where the court held that an association was not precluded *by any principle of antitrust law*[FN9] from obtaining injunctive relief for its members, and therefore analyzed the standing of the association in that case under the familiar *Warth/Hunt* standard. Although this Court has concluded that NAFP cannot satisfy the third element of that test with respect to the claims for declaratory or injunctive relief-because those claims necessitated the participation of individual plaintiffs-the antitrust injunction claim presents different considerations. In its most important aspect, the claim seeks to bar AP from requiring as a condition of purchasing photographs from Freelance Photographers that those Freelance Photographers transfer their copyrights in the subject photographs to AP. Giving the plaintiffs the benefit of the doubt on this motion to dismiss, the Court concludes that substantiation of this claim (at least) will not necessarily require the participation of individual claimants.[FN10] The Court therefore finds that NAFP as well as the individual plaintiffs have standing to assert the antitrust claims in the Complaint.

> FN9. The *Barr* court based this conclusion on the difference between Section 4 of the Clayton Act, 15 U.S.C. § 15, which prohibits associations from suing for treble damages where the only injury alleged is to its members, *see Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262-65, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), and Section 16 of the Clayton Act, 15 U.S.C. § 26, which permits "[a]ny person, firm, corporation, or association ... to sue for and have injunctive relief." *See Barr*, 573 F.Supp. at 561-62.

> FN10. Unlike the declaratory judgment claim, for example, the claim here does not require proof that transfers of copyright were or were not effective in individual cases; rather, the claim weeks to bar the practice in the first instance on the ground that it restrains trade. Proving an adverse effect on competition in the marketplace as a result of that practice (regardless of its effectiveness to transfer copyright) would not necessarily require the participation of each individual photographer.

Although the plaintiffs have standing, the Court concludes that the Complaint contains insufficient factual allegations to permit a finding that AP has violated either Section 1 or 2 of the Sherman Act. At the very least, the plaintiffs have failed adequately to allege the following essential elements of such

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

claims: that they were the victims of "antitrust injury" or "concerted action," or that AP exercised "monopoly power" in the relevant market. For these reasons, Counts Three and Four of the Complaint must be dismissed.

*1. Restraint of Trade*

Section 1 of the Sherman Act provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

**\*9** 15 U.S.C. § 1. In order to state a claim under Section 1, plaintiffs must allege "(1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." *Maric v. Saint Agnes Hosp. Corp.,* 65 F.3d 310, 313 (2d Cir.1995) (citing *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs., Inc.,* 996 F.2d 537, 542 (2d Cir.1993), *cert. denied,* 116 S.Ct. 917 (1996)). In addition, plaintiffs must demonstrate that they have "antitrust standing" and have suffered "antitrust injury." The former requirement involves a showing that the antitrust claimant is a "proper plaintiff," *i.e.,* that based on factors such as the directness and identifiability of his injuries, the plaintiff will be "an efficient enforcer of the antitrust laws." *Balaklaw v. Lovell,* 14 F.3d 793, 798 n. 9 (2d Cir.1994). The latter requirement demands inquiry into "whether the plaintiff suffered antitrust injury,"*id.,* that is,

injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

*Id.* at 797 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). This definition underscores the fundamental tenet that '[t]he antitrust laws ... were enacted for "the protection of *competition,* not *competitors.* " ' " *Id.* quoting *Brunswick,* 429 U.S. at 488 (quoting *Brown Shoe v. United States,* 870 U.S. 294, 320 (1962))). In light of these standards, the plaintiffs' claims are deficient in numerous respects.

First, the plaintiffs have failed to allege sufficient

facts to satisfy the first fundamental element of a Section 1 claim, the existence of "a combination or some form of concerted action between at least two legally distinct economic entities." *Capital Imaging,* 996 F.2d at 542. The Complaint states that AP acted improperly "directly and through and/or in combination with is constituent Members," and "directly and by way of and/or in combination with its constituent Members." This bare assertion is an inadequate allegation of concerted action because, for one, it fails to make clear whether AP is legally distinct from its "Members," *both* of which are included within a single cryptic definition in the Complaint as "a cooperative association of publications and other communications related entities." *See id.*(agreement between parent corporation and wholly owned subsidiary agents is not concerted action for purposes of Sherman Act).

In any event, the plaintiffs have apparently abandoned this theory of concerted action in opposing the present motion. They now allege instead that it is "the presence of 'agreements' here between AP and Freelance Photographers ... that bring AP's practices within the each of the [concerted action] requirement of Section 1." Under the facts as alleged by the plaintiffs, however, the photographers are not willing participants in these agreements and can hardly be said to have engaged in the kind of joint action forbidden by Section 1. Indeed, the only case cited in support of the plaintiffs' revised theory is *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665 (7th Cir.1985), a case that describes the narrow exception whereby *franchisees* alleging an illegal "tying" arrangement can satisfy the joint action requirement by charging a "conspiracy"-really "unwilling compliance"-between themselves and a franchisor. *Id.* at 669-70 (citing *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)). Because this case does not (and could not) involve allegations of a franchisor-franchisee situation, and because, as explained below, the plaintiffs cannot establish a "tying" arrangement, this theory of concerted action fails as a matter of law. On the basis of this conclusion alone, the plaintiffs cannot maintain a Section 1 claim.

**\*10** In addition, however, the plaintiffs also have failed to allege "antitrust injury." Even assuming that they are the "proper plaintiffs" here-such that they satisfy the "antitrust standing" requirement-the plain-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tiffs have set forth insufficient facts to enable them to show, as they must, "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging,* 996 F.2d at 543 (emphasis in original). *See also Clorox v. Sterling Winthrop, Inc.,* 117 F.3d 50, 56 (2d Cir.1997) (discussing actual adverse effects requirement). To the contrary, the only allusions to anticompetitive effect in the Complaint are the allegations that AP's copyright transfer policy and "refusal to deal" with Freelance Photographers who object to that policy: (i) has "restrain[ed] trade and commerce by interfering with the ability of Freelance Photographers to compete in the commercial exploitation of images concerning events and people," and (ii) "is causing and will continue to cause Freelance Photographers to lose substantial revenue and threaten their economic survival." These allegations not only are wholly conclusory, but more importantly fail to demonstrate he requisite effect on "*competition,* not *competitors.*" *Balaklaw,* 14 F.3d at 797; *accord Clorox,* 117 F.3d at 57.

To begin with, the plaintiffs simply make *no* factual allegations that would permit a finding that either of the proffered effects has actually occurred, is occurring, or is threatened to occur. Absent allegations suggesting how Freelance Photographers' "ability to compete" has been hampered, or facts documenting such hindrances and the revenue photographers have lost or will continue to lose thereby, the plaintiffs' antitrust claims resemble only a rote inventory of key words and phrases from an antitrust hornbook. *See Sage Realty Corp. v. ISS Cleaning Servs. Group, Inc.,* 936 F.Supp. 130, 135 (S.D.N.Y.1996) ("[A]n antitrust Complaint is insufficient if it simply contains conclusory allegations which merely recite the litany of antitrust.") (internal quotations and citations omitted). Such terminology may be necessary to state an antitrust claim, but it is not alone sufficient.

Moreover, the Complaint sets forth no factual connection between the alleged market effects and the substantive allegations concerning, for example, AP's check endorsement policies with respect to Freelance Photographers generally. Similarly, the allegations regarding the individual plaintiffs show at most that they personally were harmed by AP's actions toward them, and *not* that others in the market were thereby harmed, thus rendering those allegations deficient as well. *See Capital Imaging,* 996 F.2d at 543 ("to prove

[plaintiff] has been harmed as an individual competitor will not suffice"). In short, at no point does the Complaint adduce facts to show that *competition in the market* -even as generously defined by the plaintiffs in their brief opposing this motion as the "commercial" market for photographs by Freelance Photographers-was harmed by AP's copyright transfer policies or its "refusal to deal with Freelance Photographers." To the contrary, the Complaint merely sets forth a situation in which a purchaser of goods dictates the terms of its purchases. There is no allegation, however, that the copyright transfer requirement prevents those Freelance Photographers who do *not* "object to AP's conduct" from competing in the market, and there are no facts alleged-including those concerning the individual plaintiffs-to support the claim that Freelance Photographers are compelled to submit images to *AP* and no other entity to remain competitive. Without any of these sorts of allegations, the plaintiffs' claim simply cannot survive.

*11 Finally, the plaintiffs' substantive theory of antitrust violation under Section 1 is flawed as well. Although nowhere asserted in the Complaint, the plaintiffs contend in opposing this motion that their pleadings adequately allege restraint of trade in the form of either a "reciprocal dealing" arrangement or a "tying" arrangement. The former claim fails because, as the plaintiffs concede, the "essence" of a reciprocal dealing arrangement is "the willingness of each [of two companies] to buy from the other, conditioned upon the expectation that the other company will make reciprocal purchases," (quoting *United States v. General Dynamics Corp.,* 258 F.Supp. 36, 58 (S.D.N.Y.1966)); in this case, however, there has never been the slightest suggestion (either in the Complaint or in the papers addressed to this motion) that the plaintiffs have made any relevant purchases from AP.

The tying claim is equally invalid. A tying arrangement is defined as:

an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 461, 112 S.Ct. 2072, 119 L.Ed.2d 265

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

(1992) (quoting *Northern Pac. R. Co. v. United States,* 356 U.S. 1, 5-6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)). Implicit in this definition is the "fundamental principle of antitrust law that an illegal tying arrangement requires that *at least two products* and/or services be purchased by the same individual." *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 71 (2d Cir.) (citation omitted) (emphasis added), *cert. denied,* 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996). There simply is no way that the plaintiffs can make out a tying claim in this case as presently configured, given that the only purchaser at issue is AP, the alleged antitrust violator, and that AP is purchasing only *one product* that are the subject of the plaintiffs' present copyright claims. The plaintiffs' dubious attempt to distinguish different *markets* for the subject photographs-one ostensibly involving news agencies such as AP and the other involving the "commercial" photograph-buying public-cannot circumvent the determinative circumstance in their pleadings, *i.e.,* that only a *single* product is being bought.

In sum, the plaintiffs have pleaded insufficient facts to establish that they suffered antitrust injury under the *per se* "tying" theory, and they likewise have stated no claim for the requisite injury under the "rule of reason" because, as noted above, they have plead no facts that, if proven, would show that AP's actions "had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging,* 996 F.2d at 543 (emphasis in original). Their Section 1 claim must therefore be dismissed.

*2. Monopolization*

Although the plaintiffs failed to plead a separate claim for monopoly, the Court will consider the viability of such a claim because the Complaint, by citing Section 2 of the Sherman Act, seems at least to attempt to make allegations thereunder. Section 2 penalizes "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire ... to monopolize ... trade or commerce." 15 U.S.C. § 2. Under that statute, "[t]he offense of monopoly ... has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power...." *Eastman Kodak,* 504 U.S. at 481 (citation omitted); *accord Clorox,* 117 F.3d at 61. A claim of attempted monopoly requires the plaintiff to prove: "(1) that the defendant

has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). The allegations here are insufficient to sustain either variation of the claim.

*12 First and foremost, while the Complaint makes the flatly conclusory assertion that "AP dominates and controls the market for gathering and disseminating information through print media in the form of photographic images," the plaintiffs' pleadings fail altogether to allege facts that would substantiate such a claim. Specifically, the Complaint contains not a single factual allegation demonstrating that AP has *any* market power, or the extent thereof, let alone that AP's market share makes it dominant. Absent any description of the relevant market structure, or any statement concerning the percentage of the market that is controlled by AP, the plaintiffs cannot establish that AP either possesses monopoly power or has a "dangerous probability" of achieving it. The plaintiffs' mere assertion of AP's dominance is insufficient make it so.

In addition, as indicated above, the Complaint contains no facts to support that AP's policies have had any adverse effect on *competition,* as opposed to individual Freelance Photographers. And finally, there is no allegation from which it could be found that AP wilfully acquired monopoly power or intends to acquire it in the future. For these reasons, the plaintiffs have failed to state a claim under Section 2.

*E. Copyright Infringement*

The claim for copyright infringement is easily dismissed. he allegation in the Complaint that plaintiff Larkin "fil[ed] a Registration Application" as well as other materials and fees with the United States Copyright Office ... prior to the commencement of this action," bares the fatal defect. As AP correctly notes, an action for copyright infringement cannot be asserted unless a certificate of registration has been *issued;* the mere filing of an application is simply insufficient to support such a claim. *See, e.g., Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.) ("There are only two elements of an infringement claim: ownership of a valid copyright and the copying of constituent elements of the work that are origi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                      Page 11
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

nal."), *cert. denied,* 522 U.S. 908, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997); *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2d Cir.1989) (same); *Robinson v. The Princeton Review Inc.,* 41 U.S.P.Q.2d 1008, 1015 (S.D.N.Y.1996) ("[A]s most of the cases in this Circuit to have considered the issue have held, registration is a prerequisite to commencement of an action for copyright infringement.") (citing cases). Because it is undisputed that neither Larkin nor any of the other plaintiffs has received a certificate of registration in any of the subject photographs from the Copyright Office, this claim must be dismissed.[FN11]

> FN11. The plaintiffs' sole citation from this Circuit in support of their claim is to a single footnote in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 886 F.Supp. 1120 (S.D.N.Y.1995), which in turn cited a Fifth Circuit opinion in dicta for the proposition that receipt by the Copyright Office of a registration application (along with the required materials and fees) is sufficient to assert an infringement claim. *Id.* at 1125 n. 7 (citing *Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 386-87 (5th Cir.1984)). Even aside from the limited persuasiveness in any event of so attenuated a reference, the Fifth Circuit opinion appears to offer minimal precedential value, especially today. First, it is evident that the court in *Itar-Tass* found the registration requirement unnecessary only because the works for which the plaintiffs sought copyright protection in that case were "Berne Convention works under 17 U.S.C. § 101," 886 F.Supp. at 1126, works that are expressly exempted from the registration prerequisite under Section 411 of the Copyright Act, 17 U.S.C. § 411. Moreover, as Judge Kaplan of this Court has pointed out, the statement in *Apple Barrel* regarding the necessity of actual registration was based solely on "the then-current edition of *Nimmer* [,] ... yet that authoritative text now quite clearly indicates that registration is a precondition to the commencement of an infringement action except in limited circumstances that do not pertain to this case." *Robinson v. The Princeton Review Inc.,* 41 U.S.P.Q.2d 1008, 1015 (S.D.N.Y.1996) (citing 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B] (1996)). In

short, the plaintiffs have offered no persuasive authority to sustain their claim.

*F. Sanctions*

AP's motion for sanctions under Rule 11, Fed.R.Civ.P., is based on the following conduct of the plaintiffs: (i) their erroneous assertion in the original complaint that the individual plaintiffs had obtained actual registration with the Copyright Office for the photographs that are the subject of their infringement claims against AP; and (ii) their contention that the legend on the checks at issue cannot transfer a copyright. On the latter point, AP argues that the law is settled that a copyright may be transferred by such a legend unless factual circumstances surrounding the transfer indicate otherwise.

*13 As noted, the plaintiffs amended their pleadings to remove any assertion of actual copyright registration, and they have made clear in opposing AP's motion for judgment on the pleadings that their legal theory regarding the check legends is that the legend in this case was ineffective to create a transfer of copyright because of the circumstances attendant to individual transfers. Indeed, in light of the amendment of their pleadings and subsequent arguments, the plaintiffs now contend that AP's Rule 11 motion was filed in bad faith, and they have accordingly cross-moved for Rule 11 sanctions against AP. Applying the safe harbor provision of Rule 11, I decline to impose sanctions pursuant to either motion.

CONCLUSION

For the reasons set for above, AP's motion for judgment on the pleadings is granted and Counts One through Five of the Complaint are dismissed in their entirety. The cross-motions for sanctions are denied.

SO ORDERED.

S.D.N.Y.,1997.
National Assoc. of Freelance Photographers v. Associated Press
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                    Page 12
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# KREBS SUPP. DECL.
# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.                                                                          Page 1
Not Reported in F.Supp., 1998 WL 43127 (S.D.N.Y.), 46 U.S.P.Q.2d 1382
**(Cite as: 1998 WL 43127 (S.D.N.Y.))**

▷

United States District Court, S.D. New York.
Richard NOBLE, Richard Noble, as agent for Wil-
liam J. Cook and Kim L. Waltrip, Jeffrey Robert
Bate, Craig D. Branham, Steve Lyon, Sharon K.
Lloyd-Dunbar, and Christine N Seibert, Plaintiffs,
v.
TOWN SPORTS INTERNATIONAL, INC. and
TSI/NEW YORK SPORTS CLUB, INC., Defen-
dants.
No. 96 CIV. 4257(JFK).

Feb. 2, 1998.

*MEMORANDUM OPINION and ORDER*

KEENAN, District J.

*1 Before the Court is Defendants' motion to dismiss
this action, pursuant to Fed.R.Civ.P. 12(b)(1), for
lack of federal subject matter jurisdiction or, in the
alternative, dismissing Plaintiffs' claim for statutory
damages and attorney's fees under the Copyright Act.
For the reasons stated below, the Court grants Defen-
dants' motion to dismiss for lack of federal subject
matter jurisdiction.

BACKGROUND

Plaintiff Richard Noble is a professional photogra-
pher who took photographs of the other Plaintiffs in
this action, who are models. Defendants Town Sports
International, Inc. and TSI/New York Sports Club,
Inc. are affiliates that operate health clubs in New
York, Massachusetts, Washington, D.C. and other
places. By a written license agreement, Defendants
allegedly purchased from Noble a limited right to use
his photographs in connection with a specific adver-
tising campaign. The agreement allegedly provided
that Defendants could use the photographs for one
year, in a limited geographic area, for a specific ad-
vertising campaign. Plaintiffs contend that Defen-
dants breached the terms of the license agreement by
using the photographs for more than one year, with-
out Plaintiffs' consent, in unauthorized advertise-
ments and in unauthorized geographic areas. Plain-
tiffs filed the instant lawsuit, stating a federal claim

for copyright infringement and state law claims for
breach of contract, unfair competition, unjust en-
richment and invasion of privacy under §§ 50-51 of
the New York Civil Rights Law.

Defendants move to dismiss the federal copyright
infringement claim on the ground that the photo-
graphs at issue are not registered with the U.S. Copy-
right Office, which is a prerequisite to instituting a
copyright infringement suit. Alternatively, Defen-
dants move to dismiss the claim for statutory dam-
ages and attorney's fees for failure to comply with 17
U.S.C. §§ 411(a) and 412 of the Copyright Act.

DISCUSSION

*A. The Copyright Infringement Claim*

Under the Copyright Act, "[N]o action for infringe-
ment of the copyright of any work shall be instituted
until registration of the copyright claim has been
made in accordance with this title." 17 U.S.C. §
411(a). "The registration requirement is a jurisdic-
tional prerequisite to an infringement suit." *M.G.B.
Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486,
1488 & n. 4 (11th Cir.1990); *see Whimsicality, Inc. v.
Rubie's Costume Co., Inc.,* 891 F.2d 452, 453 (2d
Cir.1989) ("proper registration is a prerequisite to an
action for infringement"); *Demetriades v. Kaufman,*
680 F.Supp. 658, 661 (S.D.N.Y.1988) ("Receipt of
an actual certificate of registration or denial of same
is a jurisdictional requirement, and this court cannot
prejudge the determination to be made by the Copy-
right Office.").

Plaintiff Richard Noble has only applied for copy-
right registration of the photographs at issue in this
case; a certificate of registration has not yet been is-
sued by the Copyright Office. Nonetheless, Plaintiffs'
counsel contends that "[t]he application for registra-
tion is sufficient to maintain an infringement action."
Pls. Mem. in Opp. at 6. The Court disagrees. The
issuance of a registration certificate is a "prerequisite
to the commencement of the infringement action"
and an application for registration does not suffice.
*Robinson v. Princeton Review,* No. 96 Civ.
4859(LAK), 1996 WL 663880, at *7-8 (S.D.N.Y.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43127 (S.D.N.Y.), 46 U.S.P.Q.2d 1382
**(Cite as: 1998 WL 43127 (S.D.N.Y.))**

Nov.15, 1996); *see National Ass'n of Freelance Photographers v. Associated Press,* No. 97 Civ. 2267(DLC), 1997 WL 759456, at *12 (S.D.N.Y. Dec.10, 1997) ("an action for copyright infringement cannot be asserted unless a certificate of registration has been issued; the mere filing of an application is simply insufficient to support such a claim"). Because Plaintiff Noble has only filed an application for registration, and no certificate of registration has yet been issued for the photographs underlying the infringement claim, the federal copyright infringement claim cannot stand. Upon dismissal of this federal claim, which is the only basis for original federal jurisdiction, only state law claims remain and the Court declines to exercise supplemental jurisdiction over those claims.

## CONCLUSION

*2 For the reasons discussed above, the Court grants Defendants' motion to dismiss the federal copyright infringement claim for lack of federal subject matter jurisdiction. Absent any other federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. The Court orders this case closed and directs that it be removed from the Court's docket.

SO ORDERED.

S.D.N.Y.,1998.
Noble v. Town Sports Intern., Inc.
Not Reported in F.Supp., 1998 WL 43127 (S.D.N.Y.), 46 U.S.P.Q.2d 1382

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# KREBS SUPP. DECL.
# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)
**(Cite as: 2005 WL 1668542 (S.D.N.Y.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Leonard TABACHNIK, Ph.D, Plaintiff,
v.
Professor Bruce DORSEY, and the President's Office of
Swarthmore College; Cornell University Press; and Presi-
dent Jeffrey S. Lehman, Cornell University, Defendants.
**No. 04 Civ. 9865(SAS).**

July 15, 2005.

Leonard Tabachnick, Ph.D, Knickerbocker Station, New
York, New York, Plaintiff, pro se.

Nelson E. Roth, Garden Avenue, Ithaca, New York, for
Cornell Defendants.

*OPINION & ORDER*

SCHEINDLIN, J.

*1 Dr. Leonard Tabachnik, proceeding pro se, has sued a
number of defendants alleging copyright infringement,
monopolization of trade and commerce and academic
conspiracy. Cornell University Press and President Jeffrey
S. Lehman (the "Cornell defendants") move to dismiss
plaintiff's Amended Motion and Complaint [FN1] ("Cmpl.")
for lack of subject matter jurisdiction and for failure to
state a legally cognizable cause of action. *See*Fed.R.Civ.P.
12(b)(1) & 12(b)(6). For the following reasons, defen-
dants' motion is granted and this case is dismissed as to all
defendants.

> FN1. Construing plaintiff's Amended Complaint
> liberally, his reference to a motion can be inter-
> preted as a request to preliminarily enjoin Cor-
> nell University Press from publishing additional
> copies of the alleged infringing work. This re-
> quest will be moot if the case is dismissed. *Cf.*
> *Ruby v. Pan American World Airways, Inc.,* 360
> F.2d 691 (2d Cir.1966) (dismissing appeal from
> order denying motion for preliminary injunction
> on ground that it had become moot where com-
> plaint in case had been dismissed).

I. FACTS

In his pleading, Dr. Tabachnik alleges that his doctoral
dissertation, entitled *Origins of the Know-Nothing Party:
A Study of the Native American Party in Philadelphia,
1844-1852,* is the subject of copyright protection.[FN2]*See*
Cmpl. ¶ 1. Dr. Tabachnik further alleges that parts of Pro-
fessor Bruce Dorsey's book entitled *Reforming Men and
Women* violate the copyright laws "by describing impor-
tant events us[ing] virtually identical language as is found
in the text of Dr. Tabachnik's dissertation."*Id.* ¶
14.Professor Dorsey's book was published by Cornell
University Press. *See id.*Dr. Tabachnik further claims that
the academic community "successfully subverted" him so
that others could present, and get credit for, his research.
*See id.* ¶ 18 ("Had Dr. Tabachnik been allowed to publish
his research years ago, those who have subsequently pub-
lished on the subject could have made their citations ac-
cordingly. Since that is not the case, the press, the authors,
and the universities are all committing illegal acts against
Dr. Tabachnik."). Dr. Tabachnik is claiming damages in
the amount of $2,0000,000,000 (two trillion dollars).*See
id.* ¶ 3.

> FN2. The statute cited by plaintiff provides that
> "the owner of copyright under this title has the
> exclusive rights to do and to authorize any of the
> following: (1) to reproduce the copyrighted work
> in copies or phonorecords...."17 U.S.C. § 106.

II. LEGAL STANDARDS

A. Lack of Subject Matter Jurisdiction Under Rule
12(b)(1)

A district court may exercise subject matter jurisdiction if
the action "arises under" federal law. *Bracey v. Board of
Educ. of City of Bridgeport,* 368 F.3d 108, 113 (2d
Cir.2004) (citing 28 U.S.C. § 1331). An action "arises
under" federal law if " 'in order for the plaintiff to secure
the relief sought he will be obliged to establish both the
correctness and the applicability to his case of a proposi-
tion of federal law.' " *Id.* at 114 (quoting *Franchise Tax
Bd. v. Construction Laborers Vacation Trust,* 463 U .S. 1,
9 (1993)). "A case is properly dismissed for lack of sub-
ject matter jurisdiction under Rule 12(b)(1) when the
court lacks the statutory or constitutional power to adjudi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)
**(Cite as: 2005 WL 1668542 (S.D.N.Y.))**

cate the case." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996).*See also Carlson v. Principal Fin. Group,* 320 F.3d 301, 306 (2d Cir.2003) ("[I]n order to sustain federal jurisdiction, the complaint must allege a claim that arises under the Constitution or laws of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous.").

**\*2** A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).*See also Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998) ("[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.")."When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004)."Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."*Id.* In resolving a motion to dismiss under Rule 12(b)(1), a court may consider evidence outside the pleadings, including affidavits submitted by the parties, and is not limited to the face of the complaint. *See Robinson v. Government of Malaysia,* 269 F.3d 133, 140-41 (2d Cir.2001).

B. Failure to State a Claim Under Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Curto v. Edmundson,* 392 F.3d 502, 503 (2d Cir.2004) (internal quotation marks and citation omitted). The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 176 (2d Cir.2004) (internal quotation marks and citation omitted).When deciding a motion to dismiss, courts must accept all factual allegations as true and draw all reasonable inferences in the non-moving party's favor. *See Chambers v. Time Warner Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

Furthermore, a complaint need not state the legal theory, facts, or elements underlying the claim in most instances.

*See Phillips v. Girdich,* No. 04-0347, 2005 WL 1154194, at \*2-3 (2d Cir. May 17, 2005). Pursuant to the simplified pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include only " 'a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (quoting Fed.R.Civ.P. 8(a)(2)). And when a plaintiff is proceeding pro se, courts are instructed to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997).

Finally, while courts generally may not consider matters outside the pleadings in determining if a complaint should survive a Rule 12(b)(6) motion, documents attached to the pleadings, documents referenced in the pleadings, and documents integral to the pleadings may be considered. *See Chambers,* 282 F.3d at 152-53;Fed.R.Civ.P. 10(c). Courts may also take judicial notice of facts within the public domain and public records if such facts and records are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."Fed.R.Evid. 201(b)(2).*See also Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773-74 (2d Cir.1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ') (quoting Fed.R.Evid. 201(b)(2)).

III. DISCUSSION

A. Plaintiff's Copyright Claim

**\*3** "The Copyright Act requires that 'no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title.' " *Morris v. Business Concepts, Inc.,* 259 F.3d 65, 68 (2d Cir.2001) (quoting 17 U.S.C. § 411(a)).*See also Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 453 (2d Cir.1989) ("[P]roper registration is a prerequisite to an action for infringement."). Thus, "federal district courts do not have jurisdiction over a claim for federal copyright infringement until the Copyright Office has either approved or refused the pending application for registration." *Corbis Corp. v. UGO Networks, Inc.,* 322 F.Supp.2d 520, 521 (S.D.N.Y.2004). The interplay of the relevant statutory provisions has been explained as follows:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)
(Cite as: 2005 WL 1668542 (S.D.N.Y.))

Section 411(a) provides that jurisdiction is not conveyed "until registration of the copyright claim has been made in accordance with [the Copyright Act]."17 U.S.C. § 411(a). Additionally, Section 410(a) indicates that a claim must be examined and approved by the Register of Copyrights before it is registered. 17 U.S.C. § 410(a). Only after the Register of Copyrights examines the material deposited and determines that the legal and formal requirements of the statute have been met does it register the claim and issue a certificate of registration. Id. Thus, the plain language of the statute confirms that although submission of a claim begins the registration process, a claim is not deemed registered until the Register of Copyrights approves it.

Green v. Columbia Records/Sony Music Entm't Inc., No. 03 Civ. 4333, 2004 WL 3211771, at *3 (S.D.N.Y. Mar. 1, 2004) (footnote omitted).

In sum, "an action for copyright infringement cannot be asserted unless a certificate of registration has been *issued;* the mere filing of an application is simply insufficient to support such a claim." National Assoc. of Freelance Photographers v. Associated Press, No. 97 Civ. 2267, 1997 WL 759456, at *12 (S.D.N.Y. Dec. 10, 1997) (emphasis in original) (citing Fonar Corp. v. Domenick, 105 F.3d 99, 103 (2d Cir.1997), for the proposition that "[t]here are only two elements of an infringement claim: ownership of a valid copyright and the copying of constituent elements of the work that are original").See also Noble v. Town Sports Int'l, Inc., No. 96 Civ. 4257, 1998 WL 43127, at *1 (S.D.N.Y. Feb. 2, 1998) ("The issuance of a registration statement certificate is a prerequisite to the commencement of the infringement action and an application for registration does not suffice.").

Here, Dr. Tabachnik appended his Application for Registration of a Claim to Copyright, dated December 27, 1973, as an exhibit to his Amended Complaint. See Cmpl., Document 2. In his Reply papers, dated June 21, 2005, Dr. Tabachnik belatedly submitted an Additional Certificate of Registration of a Claim to Copyright, dated April 22, 2005, and signed by the Register of Copyrights. In M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d

1486 (11th Cir.1990), the appellate court reviewed a lower court decision dismissing the case because plaintiff failed to register its copyright before initiating the infringement action, but allowing plaintiff to amend its complaint based on subsequently obtaining a certificate of registration. See id. at 1489.

*4 The appellate court excused this procedural irregularity but stated that "the filing of a new lawsuit would ordinarily have been the proper way for [plaintiff] to proceed once it received the registration certificate."Id. Here, plaintiff has not moved to amend, instead, plaintiff has belatedly submitted a certificate of registration obtained some four months after the filing of the instant Complaint. This Court lacked jurisdiction over plaintiff's Complaint at the time of filing because there was no registration certificate. Therefore, the proper course is to dismiss the case without prejudice. See id. at 1488 ("The registration requirement is a jurisdictional prerequisite to an infringement suit ."). Accordingly, this case is dismissed for lack of subject matter jurisdiction.

The next question is whether the dismissal should be with or without prejudice. To subject another court to plaintiff's claims would be a waste of judicial resources if the facts alleged by plaintiff cannot support any claim which would entitle him to relief. "To allege a claim of copyright infringement, [plaintiff] must claim that a substantial similarity exists between the defendant's work and the protectible elements of its work. To be 'protectible,' these elements must be original." County of Suffolk v. First Am. Real Estate Solutions, 261 F.3d 179, 187-88 (2d Cir.2001) (citing Feist Publ'ng, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345-349 (1991)). In Feist, the Supreme Court explained that copyright protection extends only to original authorship and that the publication of facts, regardless of how much effort was expended in discovering them, is not original authorship. See Feist, 499 U.S. at 347-48;see also id. at 350 ("Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted ... In no event may copyright extend to the facts themselves."). Here, plaintiff has provided the following table comparing his text with the allegedly infringing Dorsey text.

| Tabachnik Text | Dorsey Text |
|---|---|
| Chapter 1-The Birth of the Naive | Paragraph 1 |
| [sic] American Party. | |

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)
(Cite as: 2005 WL 1668542 (S.D.N.Y.))

Page 4

"In 1844, two related events-a controversy over Bible reading in the public schools and a series of riots between Irish Catholics and those who later call themselves Native Americans -led to a dramatic change in the political life of Philadelphia.["]

"Between May and July 1844, one of the worst incidents of ethnic and religious violence in the history of the US erupted in the outlying districts of Philadelphia."

Paragraph I

p. 36. "The danger to individual life was so great that the Irish Catholic residents in the district fled into the nearby woods located between Kensington and Richmond. They camped there, women and children, in the most pitiable conditions with scarcely anything to eat, and exposed to the rain."

"Frightened Irish families fled the city and camped in nearby woods to escape the wrath of the nativists."

pp. 36-37. "During the course of the riot, city officials were helpless. Volunteer fireman either refused to respond to alarms for fear of their lives, or were prevented by the mob from extinguishing fires on Catholic property."

"Local authorities were powerless to stop the rioting, and, when the state militia tired to quell the disturbances, their presence merely escalated the violence."

pp. 33-33. "These riots were symptomatic of a deeper malady: the discontent caused by the depression of Kensington's hand-loom economy. Since one-third of the third world's gainfully employed males earned their livelihood from handloom weaving the conditions in that industry greatly affected the general economic state of the district ... From 1835 to 1845 wages declined by 100%."

p. 200. Handloom weaversweavers riots. "The weavers' riots exposed the complexity of ethnic conflict and the changing dynamic produced by new immigrants. Kensington's weaving population was overwhelmingly Irish-born. The majority were Catholics....["].

p. 20. "In November of 1842, when

p. 201. "In Philadelphia nearly one

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)
(Cite as: 2005 WL 1668542 (S.D.N.Y.))

Archbishop Kendrick made his demands to the Board of Controllers, a group of sixty-one local Protestant clergymen formed a body known as the American Protestant Association. By the time the new association had drawn up its charter in December of 1842 it had added another twenty-eighty clergymen to its list of charter members, giving the organization thirty-seven percent of the city's clergy."

hundred Protestant clergymen joined together in November 1842 to create the American Protestant Association, whose principle objective was to encourage and equip ministers to preach regularly against Catholicism."

*5 Amended Motion and Complaint ¶ 14.

The above excerpts reveal that Tabachnik is seeking to protect the kind of historical facts that fall within the public domain and, as such, are not copyrightable. *See Sparaco v. Lawler, Matusky, Skelly, Engineers LLP,* 303 F.3d 460, 466 (2d Cir.2002) ("The view developed that historical, scientific, or factual information belongs in the public domain, and that allowing the first publisher to prevent others from copying such information would defeat the objectives of copyright by impeding rather than advancing the progress of knowledge."); *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 979 (2d Cir.1980) (a pre-*Feist* case holding that historical facts are not protected by copyright).

Not only are the historical facts themselves not subject to copyright protection, but it is apparent from the above that Dorsey did not copy Tabachnik's presentation of those facts, which may be protected by copyright. *See Feist,* 499 U.S. at 349 ("Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."). *See also Churchill Livingstone, Inc. v. Williams & Wilkins,* 949 F.Supp. 1045, 1050 (S.D.N.Y.1996) ("[T]he facts in a medical textbook nevertheless are not copyrightable; the over-all selection and arrangement of these facts, if original, may be copyrightable."). Although Dorsey does state some of the same facts as Tabachnik, he does so in his own distinct style and wording. It cannot be said that Dorsey's presentation is substantially similar to that of Dr.

Tabachnik. Accordingly, plaintiff has not stated a valid claim of copyright infringement. Having failed to state a claim upon which relief can be granted, plaintiff's infringement claim is dismissed with prejudice. *See Buckman v. Citicorp,* No. 95 Civ. 773, 1996 WL 34158, at *3 (S.D.N.Y. Jan. 30, 1996), *aff'd,* 101 F.3d 1393 (2d Cir.1996) ("A court may dismiss a copyright claim if it concludes that no reasonable jury could find that the two works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the plaintiff's work.") (citing *Warner Bros., Inc. v. American Broad. Cos.,* 720 F.2d 231, 240 (2d Cir.1983)).

B. Plaintiff's Remaining Claims

Plaintiff's remaining claims, brought under Sections 1 and 2 of the Sherman Act, can be summarily dismissed as there are no allegations in his Amended Complaint to support such claims. Section 1 of the Sherman Act provides as follows:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the Several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1. In order to state a claim under Section 1, a plaintiff must allege: "(1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." *Maric v. Saint Agnes Hosp. Corp.,* 65 F.3d 310, 313 (2d Cir.1995). Section 2 of the Sherman Act penalizes "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)
**(Cite as: 2005 WL 1668542 (S.D.N.Y.))**

other person or persons, to monopolize any part of the trade or commerce among the several States...."15 U.S.C. § 2. "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451 (1992)* (internal quotation marks and citation omitted). The question, then, is whether plaintiff's Amended Complaint sufficiently alleges the required elements of either Sherman Act claim.

*6 Plaintiff's claim under Section 1 of the Sherman Act, entitled "Academic Conspiracy," and his claim under Section 2, entitled "Monopolization of Trade and Commerce," lack any connection to trade or commerce. There are no allegations of an antitrust conspiracy and no allegations of economic monopoly power in any relevant market. The sole question presented here is whether plaintiff's scholarly dissertation is entitled to copyright protection. The kinds of economic activity covered by the Sherman Act are simply not at issue in this case. Plaintiff's reliance on the Sherman Act is therefore misplaced. Accordingly, plaintiff's remaining claims, brought under Sections 1 and 2 of the Sherman Act, must also be dismissed.

V. CONCLUSION

For the foregoing reasons, the Cornell defendants' motion is granted and this case is dismissed in its entirety, with prejudice, as to all defendants. Counsel for the Cornell defendants is directed to provide a copy of this Opinion and Order to his co-counsel. The Clerk of the Court is directed to close this case.

SO ORDERED:

S.D.N.Y.,2005.
Tabachnik v. Dorsey
Not Reported in F.Supp.2d, 2005 WL 1668542 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# KREBS SUPP. DECL.
# EXHIBIT 4

Westlaw.

257 Fed.Appx. 409                                                                      Page 1
257 Fed.Appx. 409, 2007 WL 4386196 (C.A.2 (N.Y.)), 2007 Copr.L.Dec. P 29,488
(Not Selected for publication in the Federal Reporter)
 (Cite as: 257 Fed.Appx. 409, 2007 WL 4386196 (C.A.2 (N.Y.)))

**H**This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Leonard TABACHNIK, Plaintiff-Appellant,
v.
Bruce DORSEY, Cornell University Press, Jeffrey S.
Lehman, Defendants-Appellees.
No. 05-6246-cv.

Dec. 13, 2007.

Appeal from the United States District Court for the Southern District of New York (Scheindlin, J.).
UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court dismissing the complaint be **AFFIRMED**, on the ground that the complaint fails to state a cause of action.
Leonard Tabachnik, pro se, New York, NY, for Appellant.

Nelson E. Roth (Valerie L. Cross and Wendy E. Tarlow, on the brief), Ithaca, NY, for Appellee.

*410 PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. BARRINGTON D. PARKER, Circuit Judge.[FN1]

> FN1. Judge Richard C. Wesley, originally a member of this panel, recused himself from this case. The remaining two members of the Panel, who are in agreement, decide this case in accordance with Second Circuit Local Rule 0.14(b).

### SUMMARY ORDER

**1 Plaintiff-Appellant Leonard Tabachnik appeals from the July 22, 2005 order of the United States District Court for the Southern District of New York (Scheindlin, J.), dismissing the complaint for lack of subject matter jurisdiction (pursuant to Federal Rule of Civil Procedure 12(b)(1)) and failure to state a claim (pursuant to Federal Rule of Civil Procedure 12(b)(6)).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. In the main, Tabachnick claims that a book written by Bruce Dorsey and published by Cornell University Press infringed on Tabachnik's copyright in his 1973 doctoral dissertation, that the Copyright Act, 17 U.S.C. § 106, unconstitutionally prevents Tabachnik from copyrighting facts contained in the dissertation, and that the defendants (along with the national academic community) are part of a racketeering organization engaged in an antitrust conspiracy to prevent the dissertation from being published, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2.

"We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002).

The copyright infringement claim alleges that Dorsey appropriated the historical facts discussed in Tabachnik's doctoral dissertation. However, "[f]acts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 350, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Tabachnik also excerpts Dorsey's work that allegedly plagiarized the phrasing of the dissertation. Having reviewed those excerpts, we cannot conclude that "a substantial similarity exists between [Dorsey's] work and the protectible elements of [Tabachnik's]," a requirement for any copyright infringement claim. County of Suffolk v. First Am. Real Estate Solutions, 261 F.3d 179, 187 (2d Cir.2001).

Tabachnik's antitrust arguments likewise fail to state a claim. A threshold requirement for a private plaintiff under §§ 1 or 2 of the Sherman Act is an allegation of antitrust injury, which entails showing "that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." George Haug Co. v. Rolls Royce Motor Cars Inc., 148 F.3d 136, 139 (2d Cir.1998)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

257 Fed.Appx. 409                                                                          Page 2
257 Fed.Appx. 409, 2007 WL 4386196 (C.A.2 (N.Y.)), 2007 Copr.L.Dec. P 29,488
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 257 Fed.Appx. 409, 2007 WL 4386196 (C.A.2 (N.Y.)))**

(internal citation omitted). Tabachnik's allegations of
antitrust injury focus exclusively on the academy's
failure to publish his own dissertation.

**\*\*2** Finally, Tabachnik's constitutional challenge to
the Copyright Act is without merit.

For failure to state a claim, as set forth above, the
judgment of the district court is hereby **AFFIRMED**
with prejudice.

C.A.2 (N.Y.),2007.
Tabachnik v. Dorsey
257 Fed.Appx. 409, 2007 WL 4386196 (C.A.2
(N.Y.)), 2007 Copr.L.Dec. P 29,488

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# KREBS SUPP. DECL. EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d                                                  Page 1
Not Reported in F.Supp.2d, 2006 WL 2109454 (S.D.N.Y.)
**(Cite as: 2006 WL 2109454 (S.D.N.Y.))**

**C**Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Benjamin K. CALDWELL, Hazim Tawfiq, Plaintiffs,
v.
Billy RUDNICK, Mike Serrano, Theodore Heath,
Sunil Thadani, Defendants.
**No. 05 Civ. 7382(NRB).**

July 26, 2006.

Benjamin K. Caldwell, Hazim Tawfiq, Spojax, Inc.,
New York, NY, for Plaintiffs.

Joseph Sutton, Ezra Sutton, Ezra Sutton, P.A.,
Woodbridge, NJ, for Defendants Serrano and Rud-
nick.

Vivek S. Suri, Middle Village, NY, for Defendants
Thadani and Heath.

MEMORANDUM AND ORDER

BUCHWALD, J.

*1 On August 25, 2005, *prose* plaintiffs Benjamin K.
Caldwell ("Caldwell") and Hazim Tawfiq ("Tawfiq")
filed this copyright infringement action. Plaintiffs are
both affiliated with a company called Spojax, Inc.
("Spojax"), which sells a clothing line marketed un-
der the name of Department of Hood Affairs (or
"DOHA").*See* Compl. at ¶¶ 1-2, 11. The DOHA
clothing line includes T-shirts featuring three differ-
ent graphics and a text logo. *Id.* at ¶ 11.Defendants
Billy Rudnick ("Rudnick") and Mike Serrano
("Serrano") are employed by a clothing retailer, Dr.
Jay's, and purchase apparel sold in the company's
stores. *Id.* at ¶ 5. Defendant Theodore Heath
("Heath") is the owner of a company called BALLA
Clothing and defendant Sunil Thadani ("Thadani") is
the owner of a company called Dagia's, Inc. *See*
Compl. at ¶¶ 5, 32-33. Plaintiffs allege that Dr. Jay's
sold T-shirts that infringed their copyright and that
defendants Heath and Thadani supplied the infringing
T-shirts to Dr. Jay's. Rudnick and Serrano have
jointly submitted a motion to dismiss pursuant to

Fed.R.Civ.P. 12(b)(1) and 12(b)(6) which is currently
pending before this Court. For the reasons that fol-
low, we conclude that the complaint must be dis-
missed.

BACKGROUND [FN1]

> FN1. The facts set forth in this section are
> taken from the original complaint and at-
> tached exhibits. For purposes of resolving
> the pending motion, we assume that the facts
> set forth in the complaint and attached ex-
> hibits are true.

The graphic at issue in this case features an octagonal
stop sign with the word "SNITCHING" inserted be-
low the word "STOP." (Hereafter, the "Stop Snitch-
ing Graphic").*Id.*, Ex. A.[FN2] Plaintiffs claim that they
started selling T-shirts with the Stop Snitching
Graphic on or about May 7, 2005. Compl. at ¶ 13.
Shortly thereafter, plaintiffs learned that others were
producing and selling similar T-shirts. *Seeid.* at ¶
13.This apparently prompted Tawfiq to submit a
copyright application for the Stop Snitching Graphic,
as well as for two other graphics and a text "logo" for
the Department of Hood Affairs to the Copyright
Office on June 7, 2005.[FN3]*Seeid.* at ¶¶ 11, 13.In the
complaint, plaintiffs allege that the registration appli-
cation was received by the Copyright Office on June
20, 2005, but concede that the application was still
pending on the date the complaint was filed. *Seeid.* at
¶¶ 14-15.

> FN2. Based on the allegations in the com-
> plaint, plaintiffs' claim appears to be limited
> to the assertion that defendants unlawfully
> copied and sold T-shirts with the Stop
> Snitching Graphic rather than other DOHA
> T-shirt designs. *See* Compl. at ¶¶ 17, 18.
> Exhibits attached to the complaint also sup-
> port this construction of plaintiffs' claim.
> *Seeid.*, Ex. C. These exhibits include letters
> and e-mails that plaintiffs exchanged between July 18 and July 20, 2005
> which consistently refer to Dr. Jay's selling
> T-shirts with the Stop Snitching Graphic and
> do not reference other designs or the text
> logo. *Id.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2109454 (S.D.N.Y.)
(Cite as: 2006 WL 2109454 (S.D.N.Y.))

FN3. The second graphic features a circular "DO NOT ENTER" sign except that the word "SNITCH" replaces the word "EN-TER." *See* Compl., Ex. A ("T-shirt Sample # 2"). The third design features a rectangular "NO PARKING ANYTIME" sign with the word "SNITCHING" replacing the word "PARKING." *Id.* ("T-shirt Sample # 3").

To further drive home the not-so-subtle message conveyed in the graphics, a text "logo" for the Department of Hood Affairs is apparently placed on the back of the T-shirts sold by Spojax. *See* Compl., Ex. A. The text includes the following mission statement:

The Department of Hood Affairs is an urban shirt company established in 2005 for the purpose of citing and obstructing any potential communication violations in the inner cities of America. The Department of Hood Affairs was specifically designed to enforce the following rules of society:

1. DO NOT SNITCH

2. STOP SNITCHING

3. NO SNITCHING ANYTIME

These three violations consist of divulging unnecessary information willingly and are punishable by fines of up to $250,000 or greater. *See* Compl., Ex. A.

The dispute between the parties commenced on July 14, 2005, when Caldwell discovered that a Dr. Jay's clothing store located on 125th Street in New York City was selling T-shirts that featured an "exact replica" of the Stop Snitching Graphic. Compl. at ¶ 18, Ex. C. In the two or three week period following plaintiffs' discovery of the T-shirts at Dr. Jay's, plaintiffs met with the defendants in an effort to resolve the dispute. Although Rudnick agreed to remove the offending T-shirts from the Dr. Jay's store and to order 83 dozen "Stop Snitching" T-shirts from Spojax, plaintiffs ultimately filed this lawsuit on August 19, 2005. *See* Compl. at ¶¶ 22, 25, Ex. C.

DISCUSSION

As an initial matter, defendants contend that this Court lacks subject matter jurisdiction because plaintiffs did not have a registered copyright for the Stop Snitching Graphic when they filed the complaint. *See* Defs. Mem. at 4-5. We note that "[w]hether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *In re Gucci,* 126 F.3d 380, 387-88 (2d Cir.1997)(quoting *Warth v. Sedin,* 422 U.S. 490, 498 (1975)).

*Legal Standards*

**2** In resolving a Rule 12(b)(1) motion to dismiss, we must assume the truth of the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004).[FN4] Courts are permitted to consider evidence outside the pleadings when evaluating the threshold issue of subject matter jurisdiction. *See, e.g., Tabachnik v. Dorsey,* 04 Civ. 9865(SAS), 2005 WL 1668542, at *2 (S.D.N.Y. July 15, 2005) (citing *Robinson v. Government of Malaysia,* 269 F.3d 133, 140-41 (2d Cir.2001)). Plaintiffs bear the burden of establishing subject matter jurisdiction. *SeeMakarova v. United States,* 201 F.3d 560, 562 (2d Cir.2000).

FN4. We are also mindful of the fact that "the complaint of a *prose* litigant should be liberally construed in his favor." *Salahuddin v. Cuomo,* 861 F.2d 40, 42-43 (2d Cir.1988) (citation omitted).

The Copyright Act provides that, except under circumstances that are not relevant here, "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the work has been made in accordance with this title." *See* 17 U.S.C.A. § 411(a) (2005).[FN5] *Seealso Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 453 (2d Cir.1989)("[P]roper registration is a prerequisite to an action for infringement."); *Nat'l Ass'n of Freelance Photographers v. Associated Press,* No. 97 Civ. 2267(DLC), 1997 WL 759456, at *12 (S.D.N.Y. Dec. 10, 1997) ("[A]n action for copyright infringement cannot be asserted unless a certificate of registration has been issued; the mere filing of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

an application is simply insufficient to support such a claim"). Thus, a plaintiff's failure to register a copyright before bringing an infringement action requires dismissal on jurisdictional grounds. *See, e.g., Country Road Music, Inc. v. MP3.com, Inc.,* 279 F.Supp.2d 325, 332 (S.D.N.Y.2003); *Noble v. Town Sports Int'l, Inc.,* No. 96 Civ. 4257(JFK), 1998 WL 43127 (S.D.N.Y. Feb. 2, 1998).

> FN5. We note that § 411(a) was amended by the Artists' Rights and Theft Prevention Act of 2005, Pub.L. No. 109-9, 119 Stat. 218, which inserted the words "preregistration or" after "shall be instituted until." Preregistration is separate from the registration process and is only available for unpublished motion pictures, sound recordings, musical compositions, literary works prepared for publication in book form, computer programs, advertising or marketing photographs. *Seegenerally*37 C.F.R. § 202.16.

*Analysis*

In the complaint, plaintiffs concede that their registration application was still "pending" at the time the complaint was filed. Compl. at ¶¶ 14-15. Moreover, in the registration form attached to the complaint, the spaces below the headings for "effective date of registration" and "registration number" as well as the spaces used to designate the dates when the application and required deposits are received by the Copyright Office are conspicuously blank. *See* Compl., Ex. A. Based on plaintiffs' failure to comply with the registration requirements of the statute, we dismiss the complaint without prejudice.[FN6]

> FN6. In some situations, it is appropriate to allow a plaintiff who has obtained a registration certificate after the initiation of a copyright action to simply amend the complaint. *See J. Racenstein & Co., Inc. v. Wallace,* 96 Civ. 9222(TPG), 1997 WL 605107, at *1-2 (S.D.N.Y. Oct. 1, 1997) (citing cases). However, in this case, we have concluded that leave should not be granted. Post-motion submissions from both parties create numerous factual questions relevant to whether plaintiffs have, in fact, secured a registration certificate for the copyright at issue in this infringement action.

In a letter dated May 15, 2006, plaintiffs notified this Court that they had "officially received a copyright certificate of registrations for the design(s) in dispute" after filing the complaint and requested permission to amend the complaint to include the attached certificates of registration. *See* Pl. Ltr. dated May 15, 2006, Exs. A-B. However, plaintiffs attached two Certificates of Registration that differ in significant ways from the original application form attached to the complaint. Pl. Ltr. dated May 15, 2006, Exs. A-B. For example, in the application attached to the complaint, the nature of the work is described as "Graphics depicting a t-shirt idea" and is further described in the following way on the second page: "T-shirt samples number 1-4 are initial ideas of the Dept. of Hood Affairs merchandise. T-shirt # 4 is the actual mission statement of submitted for approval & it will also be used for the back of the T-shirt(s)."*See* Compl., Ex. A.

The Certificate of Registration attached as "Exhibit A" to the May 15th Letter appears to have an effective registration date of June 21, 2005 and a registration number. Unlike the original application, the nature of the work is identified as a "Technical drawing depicting a t-shirt" and the certificate contains the following description on the second page: "Technical drawings number 1,2,3,4 are part of a catalog for the Department of Hood Affairs. The text on the technical drawing number 4 is the statement used on the rear of the designs."Pl. Letter dated May 15, 2005, Ex. A. It seems possible that plaintiff Tawfiq submitted more than one registration application related to the DOHA apparel line to the Copyright Office.

Defense counsel has submitted a copy of what appears to be a letter from the Copyright Office to plaintiff Tawfiq that was allegedly produced by plaintiffs during the course of discovery. *See* Attachment to Defs. Letter dated May 1, 2006. We have

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

some concerns about the authenticity of this document since the first copy of the document submitted had been marked up by hand and a second "clean" copy appears to have been produced with the assistance of correction fluid. Consequently, we have not relied on this submission in resolving the pending motion. However, if the November 7, 2005 letter is genuine, it is evidence that an Examiner in the Copyright Office informed Tawfiq that while the DOHA text logo and the sketches of the T-shirts could be registered as "technical drawings," this would confer "no protection [for] the t-shirt designs themselves" and that "the designs on the shirts themselves are not copyrightable artwork."*See* Attachment to Defs. Letter dated May 1, 2006.

Having concluded that subject matter jurisdiction is lacking, it would be inappropriate to reach defendants' remaining arguments. However, this Court observes that there appear to be significant obstacles to plaintiffs prevailing on their copyright claim. First, plaintiff Caldwell does not appear to be the owner of any copyright related to the DOHA apparel line.[FN7]Second, it seems unlikely that successful registration of a "technical drawing" and "text" can support a claim of infringement based on the reproduction of the Stop Snitching Graphic on T-shirts. *See* Pl. Ltr dated May 15, 2006, Exs. A-B. [FN8] In the event that plaintiffs decide to file a new complaint reasserting their copyright claim, they should include as exhibits copies of all correspondence and documents that they have either sent to, or received from, the Copyright Office related to the graphics, technical drawings or text at issue in this case.

FN7. The complaint clearly states that Tawfiq is the "sole proprietor of all rights, title(s) and interests in the copyrights associated with the designs used for the [Department of Hood Affairs] apparel line."Compl. at ¶ 15. Tawfiq is also the only individual listed as the author, copyright claimant and "owner of exclusive rights" in both the registration application form attached to the complaint and the registration certificates subsequently submitted to this Court. *See* Compl., Ex. A; Pl. Ltr dated May 15, 2006,

Exs. A-B. Nothing in the complaint suggests that Caldwell has acquired any ownership rights from Tawfiq.

FN8. Moreover, we doubt that the Stop Snitching Graphic, which consists of one word added to a common street sign, can be copyrighted. *See*37 C.F.R. § 202.1(a) (stating that "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring" are not subject to copyright).

CONCLUSION

*3 Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is granted without prejudice. The Clerk of Court is respectfully requested to close this case.

IT IS SO ORDERED.

S.D.N.Y.,2006.
Caldwell v. Rudnick
Not Reported in F.Supp.2d, 2006 WL 2109454 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# KREBS SUPP. DECL.
# EXHIBIT 6

Westlaw.

Not Reported in F.Supp.2d                                                                                   Page 1
Not Reported in F.Supp.2d, 2007 WL 324592 (D.Colo.)
**(Cite as: 2007 WL 324592 (D.Colo.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
Suzanne SHELL, Plaintiff,
v.
Jolene DEVRIES, Anna Hall Owen, and Unknown
Defendant Doe, Defendants.
**No. Civ. 06-CV-00318-REB.**

Jan. 31, 2007.

Suzanne Shell, Elbert, CO, pro se.

Daniel Bernard Slater, Law Offices of Dan Slater,
Canon City, CO, for Defendants.

ORDER ADOPTING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

BLACKBURN, J.

**\*1** This matter is before me on: 1) the defendants'
Motion to Dismiss Pursuant to F.R.C.P. Rule
12(b)(6) and for Attorneys' Fees and Costs Pursuant
to 17 U.S.C. § 505; and 2) the Recommendation of
the United States Magistrate Judge [# 19], filed De-
cember 15, 2006. The Magistrate Judge recommends
that the motion to dismiss be granted. The plaintiff
filed an objection to the recommendation [# 21] on
December 28, 2006, and the defendants filed a re-
sponse to the plaintiff's objection [# 22] on January 8,
2006. I have reviewed each of these filings, as well as
the balance of the record in this case.

As required by 28 U.S.C. § 636(b), I have reviewed
*de novo* all portions of the recommendation to which
objections have been filed, and have considered care-
fully the recommendation, the objection, and the ap-
plicable case law. In addition, because the plaintiff is
proceeding *pro se,* I have construed her pleadings
more liberally and held them to a less stringent stan-
dard than formal pleadings drafted by lawyers. *See
Hall v. Belmon,* 935 F.2d 1106, 1110 (10th Cir.1991).
Plaintiff's objection is without merit. The recommen-
dation is detailed and well-reasoned. Therefore, I find
and conclude that the arguments advanced, the au-

thorities cited, and the findings of fact, conclusions of
law and recommendation proposed by the Magistrate
Judge should be approved and adopted.

THEREFORE, IT IS ORDERED as follows:

1. That the recommendation of Magistrate Judge
Boland [# 19], filed December 15, 2006, is AP-
PROVED AND ADOPTED as an order of this court;

2. That the defendants Motion to Dismiss Pursuant to
F.R.C.P. Rule 12(b)(6) and for Attorneys' Fees and
Costs Pursuant to 17 U.S.C. § 505; is GRANTED;

3. That the plaintiff's first claim for relief is DIS-
MISSED under FED. R. CIV. P. 12(b)(6) for failure
to state a claim on which relief can be granted;

4. That under 28 U.S.C. § 1367(c)(3), the court DE-
CLINES to exercise supplemental jurisdiction over
the plaintiff's second and third claims for relief, both
of which are claims under state law; and

5. That this case is DISMISSED.

Dated January 30, 2007, at Denver, Colorado.

RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE

BOLAND, Magistrate J.

This matter is before me on the Motion to Dismiss
Pursuant to F.R .C.P. Rule 12(B)(6) and for Attor-
neys' Fees and Costs Pursuant to 17 U.S.C. § 505
[Doc. # 5, filed 3/17/06] (the "Motion"). I respect-
fully RECOMMEND that the Motion be GRANTED
insofar as its seeks dismissal of this case and DE-
NIED to the extent it seeks an award of attorneys'
fees.

I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se.*I must liberally
construe the pleadings of a *pro se* plaintiff. *Haines v.
Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 324592 (D.Colo.)
**(Cite as: 2007 WL 324592 (D.Colo.))**

Page 2

L.Ed.2d 652 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

**\*2** In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the plaintiff. *City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976)."The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A claim should be dismissed only where, without a doubt, the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. *Id.*

## II. BACKGROUND

The plaintiff filed her First Amended Complaint (the "Complaint") on March 6, 2006 [Doc. # 4]. The Complaint contains the following allegations:

1. The plaintiff is the author and copyright owner of an internet website entitled *www.profane-justice.org.Complaint,* ¶ 1, 31.

2. On or about February 24, 2004, the defendants obtained a copy of ten pages of the plaintiff's website, and "transmitted that copy to their computer or computers, without seeking or obtaining [the plaintiff's] permission and without paying license fees and without negotiating a license fee reduction or waiver."*Id.* at ¶¶ 23, 31-32.

3. "The purpose and character of the defendants' use was to seek an order from the court against Shell in the form of an award of Owen's attorney fees and costs."*Id.* at ¶ 36e-f. The defendants attached the material as an exhibit to a motion for attorney fees and costs in Case No. 03-cv-00743-REB-MJW [Doc. # 95, filed February 26, 2004], filed by the plaintiff in this Court on April 25, 2003. *Id.* at ¶¶ 2-4, 36e-f.

The Complaint alleges three causes of action: (1) copyright infringement in violation of 17 U.S.C. §§ 101 et seq.; (2) "civil theft"; and (3) breach of contract. *Id.* at pp. 8-18.The plaintiff seeks monetary and injunctive relief. *Id.* at pp. 18-20.

## III. ANALYSIS

### A. Claim One: Copyright Act

The defendants assert that the use of copyrighted material in judicial proceedings is inherently "fair use" as a matter of law and, therefore, Claim One does not state a claim for infringement of the Copyright Act. *Motion,* pp. 4-6.

The Copyright Act grants a copyright owner exclusive rights in the copyrighted works. 17 U.S.C. § 106. However, the Act contains a "fair use" privilege which allows others to use the copyrighted material in a reasonable manner despite the lack of the owners' consent:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-

**\*3** (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Fair use is a statutory defense to copyright liability.*Id.*

The defendants assert that "[t]he use of copywritten

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 324592 (D.Colo.)
(Cite as: 2007 WL 324592 (D.Colo.))

[sic] material in judicial proceedings is inherently 'fair use' as a matter of law" based on "the plain language of the legislative history surrounding the adoption of the Fair Use' provision." While it is true that both the United States Senate and the United States House of Representatives have recognized that judicial use of copyrighted materials may constitute fair use, S.Rep.No. 94-473, pp. 61-62 (1975); H.R.Rep. No. 94-1476, p. 65 (1976), the United States Supreme Court has clearly stated that fair use must be determined on a case-by-case basis.*Campbell,* 510 U.S. at 577. Thus, the use of copyrighted material in judicial proceedings is not *inherently* fair use. Indeed, the use of copyrighted material in judicial proceedings has been found in some cases *not* to constitute fair use.

In *Images Audio Visual Productions v. Perini Bldg. Co.,* 91 F.Supp.2d 1075 (E.D.Mich.2000), the plaintiff held copyrights for photographs of a construction site. The photographs were intended to serve, among other purposes, as an evidentiary record of progress in the event a dispute occurred during or after construction. When a dispute arose and the parties entered into arbitration proceedings, the construction company made photocopies of the plaintiff's photographs instead of paying the plaintiff for the copies. When sued by the plaintiff for copyright infringement, the construction company argued that its reproduction of the photographs for use in the arbitration proceedings constituted fair use. In determining that the construction company did not make fair use of the photographs, the court distinguished "between copyrighted works that happen to capture information that proves relevant to subsequent litigation, and works that are intended to capture such information, specifically for the purpose of litigation." *Id.* at 1086.The court held that where judicial proceedings are one of the intended markets of the copyrighted work, "the copyright holder is entitled to exercise control over the use of his works within this market; the fair use doctrine does not require the wholesale abandonment of copyright protection at the courthouse door."*Id.*

In contrast, where use of the copyrighted material as evidence in a judicial proceeding does not put the material to its intrinsic use, courts have found fair use of the material. *Religious Technology Center v. Wollersheim,* 971 F.2d 364, 367 (9th Cir.1992) (finding fair use where defendants copied and distributed religious scriptures from former members of the Scientology Church and gave them to expert witnesses for the purpose of preparing testimony in a state tort litigation); *Jartech v. Clancy,* 666 F.2d 403, 406-07 (9th Cir.1982) (finding fair use where defendants made abbreviated copies of adult movies for use as evidence in a nuisance abatement proceeding).

1. Purpose and Character of the Use

*4 The first factor I must examine is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."17 U.S.C. § 107(1).

The central purpose of this investigation is to see ... whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative." Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (internal quotations and citations omitted). Use of the material for the intrinsic purpose for which it was prepared balances the weight of the first factor against fair use.

The Complaint alleges that the content of the website "is intended to generate income" and that "the nature of the infringed work was an exclusive publication containing creative analysis and commentary about events occurring related to the lawsuit."*Complaint,* ¶¶ 21, 36i. The Complaint does not contain any allegations to support a reasonable inference that the defendants used the material for the intrinsic purpose for which it was prepared, *i.e.* that they used the "creative analysis and commentary about events" to generate income. Nor are there any allegations to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 324592 (D.Colo.)
(Cite as: 2007 WL 324592 (D.Colo.))

support a reasonable inference that the defendants' use of the material was commercial in nature. To the contrary, the Complaint alleges that the defendants used the copyrighted portion of the plaintiff's website as an exhibit to a motion for attorneys' fees. There are no allegations that the defendants used the materials for any other purpose. Thus, the first factor weighs heavily in favor of fair use.

### 2. The Nature of the Copyrighted Work

The second factor to consider is the "nature of the copyrighted work." 17 U.S.C. § 107(2)."In general, fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend,* 495 U.S. 207, 237, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)."The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 563, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

The materials are entitled "Lawsuit in United States District Court for the District of Colorado Civil Action No. 03-RB-1743(MJW)."*Complaint,* second consecutive attachment, p. 1. The materials provide a time-line of events leading up to the lawsuit as well as a time-line of events that occurred during the lawsuit. Because the materials are primarily a chronology of events, the materials are more factual in nature than creative.[FN1]Thus, the second factor also weighs in favor of fair use.

> FN1. The plaintiff alleges in the Complaint that the materials are "singularly creative, containing insightfully unique results of her research which is not available from any other source, as well as containing editorial commentary, discussion, analysis, and legal documents which are not generally available anywhere else."*Complaint,* ¶ 36h. The plaintiff attaches the materials to the Complaint. The materials are simply a chronology of the plaintiff's version of the events surrounding her lawsuit.

### 3. Amount and Substantiality of the Portion Used

*5 The third factor I must examine is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."17 U.S.C. § 107(3).

The Complaint alleges that the defendants "obtained a copy of a significant chapter of Shell's website, specifically 10 pages dealing with Shell's civil rights lawsuit against Owen...."*Complaint,* ¶ 23. The Complaint further alleges that "[t]he amount and substantiality of the work infringed consisted of the entire content involving Fremont County and Shell's competitors in Fremont County. This content was meant to stand alone as a complete representation of the concept explored."*Id.* at ¶ 36j.It is unclear from the allegations of the Complaint exactly how much of the website was used, and how substantial the used portion is in relation to the entire website.

Even if I assume that the entire website was used, "the fact that an entire work was copied does not ... preclude a finding of fair use." *Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1526 (9th Cir.1992). Where the use of the work was limited, as it was here, the third factor carries very little weight. *See id.* at 526-27.

### 4. Effect on the Market

The fourth factor focuses on "the effect of the use upon the potential market for or value of the copyrighted work.""This last factor is undoubtedly the single most important element of fair use." *Harper & Row,* 471 U.S. at 566."Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Id.* at 566-67.

The Complaint alleges only that the defendant's use of the materials deprived the plaintiff of the income from defendants for the license fees. *Complaint,* ¶ 36k. The Complaint does not allege that the marketability of her work is impaired. Indeed, it is impossible to imagine how the defendants' use of the materials as an exhibit to a motion for attorneys' fees could in any way impact the marketability of the materials.

My analysis of the fair use factors weighs heavily in favor of the defendants. Accepting all well-pleaded allegations as true and construing all reasonable inferences in favor of the plaintiff, the Complaint alleges a fair use of the copyrighted materials. Therefore, the Complaint fails to state a claim for copyright infringement. I RECOMMEND that Claim One be dismissed for failure to state a claim upon which relief can be granted.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 324592 (D.Colo.)
(Cite as: 2007 WL 324592 (D.Colo.))

### B. State Law Claims

Claims Two and Three assert causes of action for civil theft and breach of contract, respectively. I construe these claims solely as state-law-based claims. This Court may decline to exercise supplemental jurisdiction over the plaintiff's state law claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because I have recommended dismissal of the plaintiff's copyright claim for failure to state a claim upon which relief can be granted, I respectfully RECOMMEND that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.

### C. Attorneys' Fees

*6 The defendants seek attorneys' fees pursuant to the Copyright Act, 17 U.S.C. § 505. Section 505 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Supreme Court has stated that, in determining whether attorneys' fees should be awarded, courts may consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence ... as long as such factors are faithful to the purposes of the Copyright Act...." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

The plaintiff's claims required an analysis and an application of the facts to the law. Although I have recommended that the claims be dismissed, I find that the action was not wholly frivolous. I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks attorneys' fees.

### IV. CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of this case.

I further RECOMMEND that the Motion be DENIED insofar as it seeks an award of attorneys' fees to the defendants.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 147-48, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.,* 230 F.3d 1197, 1199-1200 (10th Cir.2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1060 (10th Cir.1996).

D.Colo.,2007.
Shell v. Devries
Not Reported in F.Supp.2d, 2007 WL 324592 (D.Colo.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# KREBS SUPP. DECL.
# EXHIBIT 7

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 4269047 (C.A.10 (Colo.))
**(Not Selected for publication in the Federal Reporter)**
 **(Cite as: 2007 WL 4269047 (C.A.10 (Colo.)))**

**H**Only the Westlaw citation is currently avail-
able.This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally gov-
erning citation of judicial decisions issued on or after
Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find
CTA10 Rule 32.1)

United States Court of Appeals,
Tenth Circuit.
Suzanne SHELL, Plaintiff-Appellant,
v.
Jolene DEVRIES, Anna Hall Owen and Unknown
Defendant Doe, Defendants-Appellees.
No. 07-1086.

Dec. 6, 2007.

Suzanne Shell, Elbert, CO, pro se.

Daniel B. Slater, Canon City, CO, for Defendants-
Appellees.

Before BRISCOE, EBEL, and McCONNELL, Cir-
cuit Judges.

### ORDER AND JUDGMENT[FN*]

> FN* After examining the briefs and appel-
> late record, this panel has determined
> unanimously that oral argument would not
> materially assist in the determination of this
> appeal. SeeFed. R.App. P. 34(a)(2); 10th
> Cir. R. 34.1(G). This case is therefore sub-
> mitted without oral argument. This order
> and judgment is not binding precedent, ex-
> cept under the doctrines of law of the case,
> res judicata, and collateral estoppel. It may
> be cited, however, for its persuasive value
> consistent with Fed. R.App. P. 32.1 and 10th
> Cir. R. 32.1.

MICHAEL W. McCONNELL, Circuit Judge.

**\*1** Suzanne Shell appeals from the district court's
dismissal of her claim of copyright infringement. The

case arose when the defendants printed ten pages
from Ms. Shell's website to use as evidence in unre-
lated litigation. Ms. Shell's website forbids any re-
production without prior permission, which may be
purchased for $5,000 per page per copy. The defen-
dants did not obtain Ms. Shell's permission to print
the materials. Ms. Shell filed suit for copyright viola-
tion. The defendants moved for judgment on the
pleadings under Fed.R.Civ.P. 12(b)(6), on the ground
that, based on the allegations in Ms. Shell's com-
plaint, their reproduction of the pages from the web-
site constituted fair use. The district court agreed, and
dismissed Ms. Shell's action.

We review de novo the district court's grant of a mo-
tion for judgment on the pleadings. _Park Univ. En-
ters., Inc. v. American Cas. Co.,_ 442 F.3d 1239, 1244
(10th Cir.2006)."Judgment on the pleadings should
not be granted unless the moving party has clearly
established that no material issue of fact remains to
be resolved and the party is entitled to judgment as a
matter of law."_Id._ (internal quotation marks omit-
ted)."[W]e accept all facts pleaded by the non-
moving party as true and grant all reasonable infer-
ences from the pleadings in favor of the same."_Id._

Section 107 of the Copyright Act lists the factors to
consider in determining "fair use":

(1) the purpose and character of the use, including
  whether such use is of a commercial nature or is
  for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used
  in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market
  value for or value of the copyrighted work.

17 U.S.C. § 107. This Court has not yet decided
whether use of copyrighted material as evidence in a
judicial proceeding constitutes fair use. The Ninth
Circuit has found that use of copyrighted material as
evidence in judicial proceedings is fair use, so long as
the users do not reproduce the work for its "intrinsic

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 4269047 (C.A.10 (Colo.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2007 WL 4269047 (C.A.10 (Colo.)))**

purpose." *Jartech, Inc. v. Clancy,* 666 F.2d 403, 406-07 (9th Cir.1982).*See also Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 367 (9th Cir.1992)."[W]orks are customarily reproduced in various types of judicial proceedings ... and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence." 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05[D] at 13-91 (1991).

We need not decide in this case whether the reproduction of copyrighted materials for use in judicial proceedings is *per se* fair use. Here, the district court thoroughly examined each of the statutory factors, studied the specific circumstances of the case, and found that they weigh in favor of fair use. The court explained its conclusions in detail. We have carefully examined the record, the district court's analysis, and the arguments in Ms. Shell's briefs in this Court, and for substantially the reasons stated by the district court, conclude that the defendants' reproduction of pages from her website constituted fair use.

*2 The judgment of the United States District Court for the District of Colorado is **AFFIRMED.**

C.A.10 (Colo.),2007.
Shell v. DeVries
Slip Copy, 2007 WL 4269047 (C.A.10 (Colo.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.