UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X          Case No.:  08 CV 04045 (FB)(LB)

ROY DEN HOLLANDER,

                    Plaintiff,

          v.

DEBORAH SWINDELLS DONOVAN, PAUL W.
STEINBERG, and JANE DOE,

                    Defendants.

-------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## DEBORAH SWINDELLS DONOVAN'S MOTION FOR SUMMARY JUDGMENT


GORDON & REES LLP
ATTORNEYS FOR DEFENDANT DEBORAH SWINDELLS DONOVAN
90 BROAD STREET, 23RD FLOOR
NEW YORK, NEW YORK 10004
(212) 269-5500 (PHONE)
(212) 269-5505 (FAX)

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS....................................................................................................2

LEGAL ARGUMENT ..........................................................................................................2

I.   THE ABSENCE OF COPYRIGHT REGISTRATION CERTIFICATES
     PARTIALLY DIVESTS THIS COURT OF SUBJECT MATTER JURISDICTION ........2

     A.   Issuance of Copyright Registration Certificates Is A Predicate To
          Subject Matter Jurisdiction. ...............................................................................2

     B.   Dismissal Of The Jurisdictionally Defective Claims Is The Appropriate
          Disposition. .......................................................................................................4

     C.   Plaintiff's Defective Infringement Claims Should Be Dismissed With
          Prejudice. ..........................................................................................................5

II.  DONOVAN IS IMMUNE FROM LIABILITY UNDER THE FAIR USE DOCTRINE......6

     A.   Fair Use Is An Affirmative Defense To Copyright Infringement That May
          Be Decided on Summary Judgment..................................................................6

     B.   An Analysis of the Four Factor Test Requires A Finding In Favor of
          Donovan. ...........................................................................................................7

          1a.   Donovan's use of the six essays was non-commercial. .......................8

          1b.   Donovan used the six essays for criticism and commentary,
                rendering the use transformative. ......................................................11

          1c.   Donovan had a good faith belief the six essays had been
                available to the general public...........................................................12

          2.    The Nature of the Copyrighted Work Favors Application of the
                Fair Use Doctrine...............................................................................13

          3.    The Amount and Substantiality of the Portion Used At Worst
                Neither Favors Nor Disfavors Application of the Fair Use
                Doctrine. ............................................................................................16

          4.    The Effect of the Use Upon the Potential Market For or Value of
                the Copyrighted Work Favors Application of the Fair Use
                Doctrine. ............................................................................................17

     C.   Use of Copyrighted Work in Judicial Proceedings is a Recognized Basis
          for Application of the Fair Use Doctrine.............................................................18

## TABLE OF CONTENTS
### (continued)

| | | |
|---|---|---|
| III. | THE LITIGATION PRIVILEGE ACCORDS DONOVAN ABSOLUTE IMMUNITY | 20 |
| IV. | DONOVAN IS ENTITLED TO COSTS AND ATTORNEY'S FEES | 21 |
| CONCLUSION | | 22 |

## TABLE OF AUTHORITIES

**Cases**

3H Enterprises, Inc. v. Dwyre
182 F. Supp. 2d 249 (N.D.N.Y. 2001)...............................................................................20

Aequitron Medical, Inc. v. Dyro
999 F. Supp. 294 (E.D.N.Y. 1998)....................................................................................20

Am. Geophysical Union v. Texaco, Inc.
60 F.3d 913 (2d Cir. 1994) ...............................................................................................8

Arica Inst. v. Palmer
970 F.2d 1067 (2d Cir. 1992)..............................................................................................7

Arica Institute, Inc. v. Palmer
970 F.2d 1067 (2d Cir. 1992).............................................................................................16

Ass'n of Am. Med. Colleges v. Cuomo
928 F.2d 519 (2d Cir. 1991)............................................................................................6, 7

Bartok v. Boosey & Hawkes, Inc.
523 F.2d 941 (2d Cir. 1975)...............................................................................................16

Bill Graham Archives v. Dorling Kindersley Ltd.
448 F.3d 605 (2d Cir. 2006)................................................................................................18

Blanch v. Koons
467 F.3d 244 (2d Cir. 2006).................................................................................................8

Bond v. Blum
317 F.3d 385 (4th Cir. 2003).......................................................................................... passim

Caldwell v. Rudnick
No. 05 Civ. 7382 (NRB), 2006 WL 2109454 (S.D.N.Y. July 26, 2006)...............................5

Campbell v. Acuff-Rose Music, Inc.
510 U.S. 569 (1994) ....................................................................................................12, 17

City Merchandise, Inc. v. Kings Overseas Corp.
No. 99 CV 10456 (RCC), 2001 WL 286724 (S.D.N.Y. Mar. 23, 2001)...............................4

Corbis Corp. v. UGO Networks, Inc.
322 F. Supp. 2d 520 (S.D.N.Y. 2004) .................................................................................4

Credit Sights, Inc. v. Ciasullo
No. 05 CV 9345 (DAB), 2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) ...............................20

Demetriades v. Kaufman
680 F. Supp. 658 (S.D.N.Y. 1988).......................................................................................3

Earth Flag Ltd. v. Alamo Flag Co.
154 F. Supp. 2d 663 (S.D.N.Y. 2001)..................................................................................21

Fogerty v. Fantasy, Inc.
510 U.S. 517 (1994) ...........................................................................................................21

Getaped.com v. Cangemi
188 F. Supp. 2d 398 (S.D.N.Y. 2002)...........................................................................14, 15

Infinity Broad. Corp. v. Kirkwood
150 F.3d 104 (2d Cir. 1998)..................................................................................................6

Jartech, Inc. v. Clancy
666 F.2d 403 (9th Cir. 1982).................................................................................................19

Lennon v. Premise Media Corp.
556 F. Supp. 2d 310 (S.D.N.Y. 2008) ............................................................................ passim

## TABLE OF AUTHORITIES
### (continued)

*Matthew Bender & Co., Inc. v. West Publ'g Co.*
240 F.3d 116 (2d Cir. 2001)...........................................................................................21
*Maxtone-Graham v. Burtachell*
803 F.2d 1253 (2d Cir. 1986)...........................................................................................7
*Morris v. Business Concepts, Inc.*
283 F.3d 502 (2d Cir. 2002)...........................................................................................15
*Morriseau v. DLA Piper*
No. 06 Civ. 13255 (LAK), 2007 WL 4292030 (S.D.N.Y. Dec. 3, 2007) ............................22
*National Assoc. of Freelance Photographers v. Associated Press*
No. 97 Civ. 2267 (DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) ................................3
*New Era Publications Int'l, ApS v. Carol Publ'g Group*
904 F.2d 152 (2d Cir. 1990)..........................................................................................8, 9
*Noble v. Town Sports Intern., Inc.*
No. 96 CIV. 4257(JFK), 1998 WL 43127 (S.D.N.Y. Feb. 2, 1998) ......................................4
*NXIVM Corp. v. Ross Institute*
364 F.3d 471 (2d Cir. 2004)...................................................................................6, 12, 13
*Religious Tech. Ctr. v. Wollersheim*
971 F.2d 364 (9th Cir. 1992)..........................................................................................19
*Sandoval v. New Line Cinema Corp.*
973 F. Supp. 409 (S.D.N.Y. 1997) ................................................................................8, 9
*Shell v. Devries*
No. Civ. 06-CV-00318-REB, 2007 WL 324592 (D. Colo. Jan. 31, 2007) ...............9, 10, 19
*Sony Corp. of Am. v. Universal City Studios, Inc.*
464 U.S. 417 (1984) .......................................................................................................19
*Tabachnik v. Dorsey*
No. 04 Civ. 9865 (SAS), 2005 WL 1668542 (S.D.N.Y. July 15, 2005) ...........................5, 6
*U.S. v. Am. Soc. of Composers, Authors and Publishers*
562 F. Supp. 2d 413 (S.D.N.Y. 2008) .............................................................................14
*Video-Cinema Films, Inc. v. Cable News Network, Inc.*
No. 98 CIV. 7128IBSJ), 98 CIV. 7129 (BSJ), 98 CIV. 7130 (BSJ), 2001 WL 1518264
(S.D.N.Y. Nov. 28, 2001) .............................................................................................7, 15
*Williams v. Crichton*
891 F. Supp. 120 (S.D.N.Y. 1994) ..................................................................................21
*Wright v. Warner Books, Inc.*
953 F.2d 731 (2d Cir. 1991)..............................................................................................7

**Statutes**
17 U.S.C. § 107 (2006) ................................................................................................6, 11
17 U.S.C. § 107(3) (2006) ...............................................................................................16
17 U.S.C. § 107(4) (2006) ...............................................................................................17
17 U.S.C. § 505 (2006) ...................................................................................................21
Fed. R. Evid. 106 ...........................................................................................................17
Fed. R. Evid. 401 ...........................................................................................................10

**Other Authorities**

## TABLE OF AUTHORITIES
### (continued)

**Page**

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*
§ 13.05[D] (1991)..............................................................................................................19

## PRELIMINARY STATEMENT

Plaintiff Roy Den Hollander ("Plaintiff"), an attorney proceeding *pro se*, continues to fight a losing battle with defendants Deborah Swindells Donovan ("Donovan") and Paul W. Steinberg ("Steinberg"), two attorneys he sued more than one year ago after they proffered his misogynistic manifestos ("the six essays") in two separate court proceedings.

By notice of motion dated March 11, 2009, Donovan moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff opposed the motion, and cross-moved seeking leave to supplement his Complaint to modify the nature of relief and the amount of damages. Donovan opposed the cross-motion as procedurally and substantively deficient. To the extent the cross-motion is still pending, Donovan reiterates her opposition and respectfully refers this Court to the arguments presented in her Reply Memorandum of Law in Further Support of the Motion to Dismiss (the "Reply Brief").

By Memorandum and Order dated November 18, 2009, this Court converted Donovan's motion to dismiss to one for summary judgment, and directed the parties to submit all pertinent materials by December 18, 2009. Accordingly, Donovan respectfully submits this memorandum of law in support of the instant motion for summary judgment.

As a preliminary matter, this Court still lacks subject matter jurisdiction with respect to two of the six essays because Plaintiff has failed to comply with the recording statute governing his purported claims of infringement under the federal Copyright Act of 1976 ("the Copyright Act"). But even if Plaintiff fully complied with the Copyright Act's recording statute, thereby vesting this Court with subject matter jurisdiction over all of the infringement claims, they would still fail on the merits under the doctrine of fair use and/or New York's litigation privilege.

Donovan had a good faith belief the six essays had been made available on the Internet to anyone who wished to read and comment on them. Indeed, she received the six

1

essays from Steinberg, another attorney, who sent them to her as an attachment to a letter. Donovan read the six essays and found them to be compelling evidence of Plaintiff's self avowed misogyny, and tendered them as an exhibit in a proceeding commenced by Plaintiff to disqualify the female judge presiding over the Ladies Night Case. Donovan believed the six essays, which she critiqued in a declaration opposing Plaintiff's motion to disqualify, were relevant in the Ladies Night Case insofar as they demonstrated the frivolity of Plaintiff's motion and the underlying case.

In sum, Donovan's submission of the six essays as opposition to a disqualification motion was entirely appropriate and protected under both the fair use doctrine and the litigation privilege.   Accordingly, Donovan respectfully requests that this Court grant Donovan summary judgment in its entirety, dismiss Plaintiff's Complaint with prejudice, and award Donovan costs and attorney's fees as authorized under the Copyright Act.

## STATEMENT OF FACTS

The facts pertaining to this motion for summary judgment are set forth in Donovan's statement of undisputed material facts pursuant to Local Rule 56.1 ("56.1").

## LEGAL ARGUMENT

I.  **THE ABSENCE OF COPYRIGHT REGISTRATION CERTIFICATES PARTIALLY DIVESTS THIS COURT OF SUBJECT MATTER JURISDICTION**

   A.  **Issuance of Copyright Registration Certificates Is A Predicate To Subject Matter Jurisdiction.**

Plaintiff admits he does not have copyright registration certificates for all of the six essays, at least as of March 28, 2009, the date Plaintiff filed his Memorandum of Law in Opposition to Defendants' Rules 12(b)(1) and (6) Motions to Dismiss ("Opp. Br."). *See* Opp. Br. at 22-23.  He has registration certificates for "An Invisible Weapon," "Some Differences: Men v. Girls," and "Do Men Cause the Wars?," and contends that a copyright registration certificate has been issued for "Stupid frigging fool," which, according to Plaintiff, contains

2

the essays "A Different Time."[1]  Opp. Br. at Ex. A.  As to the remaining essays, "Two Sides,"
and "Fear Corrupts," Plaintiff claims to have filed copyright registration applications, but was
advised by the Copyright Office that a backlog was delaying issuance of copyright
registration certificates.  Opp. Br. at 22-23.[2]  Plaintiff portrays his jurisdictional predicament
as presenting a "novel question" of first impression for the Court regarding "whether
telephone conversations that two essays are accepted is [sic] sufficient for the maintenance
of an [infringement] action."  Opp. Br. at 23.

Authority in this Circuit, however, establishes that Plaintiff's question is not novel and
has already been answered in the negative.  In *Demetriades v. Kaufman*, 680 F. Supp. 658,
661 (S.D.N.Y. 1988) cited by Plaintiff himself, the court observed that it could not adjudicate
a copyright infringement claim unless and until the Copyright Office issued a certificate of
registration for the works allegedly infringed:

> In the case at bar, plaintiffs only mailed their application for copyright
> protection to the Copyright Office on February 2.  When this action
> was instituted (February 8), a certificate of registration had not yet
> issued.  ***Consequently, this court had no jurisdiction over the
> copyright claim***.  (Emphasis added).

Similarly, in *National Assoc. of Freelance Photographers v. Associated Press*, No.
97 Civ. 2267 (DLC), 1997 WL 759456, at *12 (S.D.N.Y. Dec. 10, 1997) (citations omitted)
(emphasis in original) (Krebs Decl. Ex. 3)[3], the court squarely held that "an action for
copyright infringement cannot be asserted unless a certificate of registration has been

---

[1]      During the course of this litigation, Donovan acquired a copy of "Stupid frigging fool" and its
certificate of registration pursuant to 37 C.F.R. § 201.2(d)(2)(ii) (2008).  The text of "A Different Time"
appears in the body of "Stupid frigging fool" but without any separate title.

[2]      Since Plaintiff has not notified counsel for Donovan that he has since received certificates (which
one would expect him to do, given the nature of Donovan's arguments), we presume these two essays
still do not have copyright registration certificates.

[3]      Copies of all unreported decisions, with the exception of *City Merchandise, Inc. v. Kings
Overseas Corp.*, No. 99 CV 10456 (RCC), 2001 WL 286724 (S.D.N.Y. March 23, 2001), are annexed to
the Declaration of Diane Krebs, Esq. dated December 18, 2009 ("Krebs Decl.").

issued; the mere filing of an application is simply insufficient to support such a claim." *See also Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521-22 (S.D.N.Y. 2004) (citing "[n]umerous" cases in support); *City Merchandise, Inc. v. Kings Overseas Corp.*, No. 99 CV 10456 (RCC), 2001 WL 286724, at *3 (S.D.N.Y. Mar. 23, 2001) ("the statute and Second Circuit precedent explicitly require registration as a prerequisite to an infringement claim") (Declaration of Joshua S. Hurwit, Esq., Ex. 4); *Noble v. Town Sports Intern., Inc.*, No. 96 CIV. 4257(JFK), 1998 WL 43127, at *1 (S.D.N.Y. Feb. 2, 1998) (Krebs Decl. Ex. 5).

The jurisdictional rule set forth in the above cases, requiring *issuance* of a certificate of registration as a condition precedent to a copyright infringement suit, easily applies to this case. Because certificates of registration for "Two Sides" and "Fear Corrupts" have not been issued, this Court lacks the subject matter jurisdiction necessary to determine whether Donovan infringed them. Accordingly, Plaintiff's copyright infringement claims with respect to "Two Sides" and "Fear Corrupts" must be dismissed for lack of subject matter jurisdiction.

**B.    Dismissal Of The Jurisdictionally Defective Claims Is The Appropriate Disposition.**

After arguing that his "novel" jurisdictional question precludes dismissal of his infringement claims, Plaintiff implicitly concedes that they are indeed defective by asking this Court to "set aside" the case "until the remaining two certificates are received" so that he can "be permitted to amend the Complaint with the certificates or the registration numbers." Opp. Br. at 23. He then cites *Demetriades* for the proposition that "the cure to an action in which certificates had not yet issued was to amend the complaint when the certificates were received." Opp. Br. at 23.

The holding in *Demetriades* is not as broad as Plaintiff suggests. Indeed, there was no suggestion in *Demitriades* that the case had been held in abeyance while the plaintiff sought to obtain a copyright registration certificate. Rather, the *Demetriades* court merely

4

mentioned that the required certificate had been issued less than one month after the case was instituted, and it thus recognized the plaintiff's amended complaint, filed after the copyright registration certificate was issued, as setting forth a proper jurisdictional basis for the claim.

Here, Plaintiff brought this lawsuit more than one year ago and still, to Donovan's knowledge, no copyright registration certificates have been issued for "Two Sides" and "Fear Corrupts." Thus, to set the case aside until (and if) the Copyright Office issues registration certificates for these two essays – which could, by Plaintiff's own admission, take an inordinate amount of time (Opp. Br. at 22-23) – would only further delay resolution of this patently frivolous lawsuit.[4] Moreover, the general rule in this Circuit confirms that dismissal of an infringement suit is the appropriate course of action where the plaintiff has failed to proffer copyright registration certificate(s). *See, e.g.*, *Tabachnik v. Dorsey*, No. 04 Civ. 9865 (SAS), 2005 WL 1668542, at *4 (S.D.N.Y. July 15, 2005) (Krebs Decl. Ex. 6), *aff'd* 257 Fed. Appx. 409 (2d Cir. 2007) (Krebs Decl. Ex. 7); *Caldwell v. Rudnick*, No. 05 Civ. 7382 (NRB), 2006 WL 2109454, at *2 (S.D.N.Y. July 26, 2006) ("a plaintiff's failure to register a copyright before bringing an infringement action requires dismissal on jurisdictional grounds") (citation omitted) (Krebs Decl. Ex. 8). Accordingly, the jurisdictionally defective infringement claims must be dismissed.

## C. Plaintiff's Defective Infringement Claims Should Be Dismissed With Prejudice.

The remaining issue for the Court is whether the dismissal of Plaintiff's jurisdictionally defective infringement claims should be with prejudice. Dismissal with prejudice is warranted here because all of Plaintiff's infringement claims fail on the basis of

---

[4]     Clearly, the Court has implicitly rejected Plaintiff's request to "set aside" the case, since it has converted Donovan's motion to dismiss into one for summary judgment.

5

fair use and/or the litigation privilege.  It would thus be an unnecessary waste of judicial resources for Plaintiff to be permitted to later reassert these claims, even if the jurisdictional defect is corrected.  *See*, *e.g.*, *Tabachnik*, 2005 WL 1668542, at *4 ("to subject another court to plaintiff's claims would be a waste of judicial resources if the facts alleged by plaintiff cannot support any claim which would entitle him to relief").

## II.     DONOVAN IS IMMUNE FROM LIABILITY UNDER THE FAIR USE DOCTRINE

### A.     Fair Use Is An Affirmative Defense To Copyright Infringement That May Be Decided on Summary Judgment.

Even if Plaintiff proffered copyright registration certificates for all of the six essays, Donovan would still be entitled to judgment as a matter of law under the statutory privilege of fair use.  *See* 17 U.S.C. § 107 (2006) ("the fair use of a copyrighted work … is not an infringement of copyright").  *See also NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 475 (2d Cir. 2004), *cert. denied* 543 U.S. 1000 (2004).  Fair use of a copyrighted work is an affirmative defense to copyright infringement claims, with the burden of proof on the proponent. *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998).

Courts determine whether the use of a copyrighted work qualifies as a fair use by utilizing a four factor test set forth in the Copyright Act.  *See* 17 U.S.C. § 107.  The test instructs a court to consider

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Ass'n of Am. Med. Colleges v. Cuomo*, 928 F.2d 519, 523 (2d Cir. 1991), *cert. denied*, 502 U.S. 862 (1991) (citation and internal quotation marks omitted).

"The factors enumerated in [section 107] are not meant to be exclusive:  Since the doctrine [of fair use] is an equitable rule of reason, no generally applicable definition is

6

possible, and each case raising the question must be decided on its own facts." *Id.* at 524 (alteration in original) (citation and quotation marks omitted). "Because [fair use] is not a mechanical determination, a party need not 'shut-out' her opponent on the four factor tally to prevail." *Wright v. Warner Books, Inc.,* 953 F.2d 731, 740 (2d Cir. 1991). But "if she does so, victory on the fair use playing field is assured." *Arica Inst. v. Palmer*, 970 F.2d 1067, 1079 (2d Cir. 1992).

Although a fair use determination involves factual analysis, "[t]he mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are factual issues *to be tried.*" *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128IBSJ), 98 CIV. 7129 (BSJ), 98 CIV. 7130 (BSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) (emphasis in original) (Krebs Decl. Ex. 9).     Indeed, "courts can resolve fair use determinations on summary judgment motions."[5] *Video-Cinema Films, Inc.* 2001 WL 1518264, at \*5 (citing *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991). Accordingly, "[t]he general principles that this court has developed in regard to summary judgment ... apply with equal vigor to the fair use determination." *Maxtone-Graham v. Burtachell*, 803 F.2d 1253, 1257-1258 (2d Cir. 1986), *cert. denied* 481 U.S. 1059 (1987).

## B.     An Analysis of the Four Factor Test Requires A Finding In Favor of Donovan.

In this case there are no genuine issues of material fact precluding a finding that Donovan's use of the six essays qualified as a fair use.   To support this inescapable conclusion, we now turn to the four factors of the fair use test and show why Donovan must prevail.

---

[5]     Plaintiff concedes this point. *See* Opp. Br. at 10.

**1a. Donovan's use of the six essays was non-commercial.**

The first factor "comprises principally two considerations: whether the use is 'commercial' and whether it is 'transformative.'" *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 321 (S.D.N.Y. 2008) (quoting *Blanch v. Koons*, 467 F.3d 244, 251-53 (2d Cir. 2006)). "The crux of the [commercial/non-commercial] distinction, however, is not whether the sole motive for the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.* (citation and internal quotation marks omitted).

Plaintiff contends that Donovan's status as an attorney and desire to win the Ladies Night Case on behalf of her client renders the use commercial, but he provides no legal support for this argument. In fact, the case law compels the opposite conclusion. As an initial matter, the Second Circuit has "explained that courts should be wary of placing too much emphasis on whether or not a given use is commercial in nature, '[s]ince many, if not most, secondary users seek at least some measure of commercial gain from their use.'" *Sandoval v. New Line Cinema Corp.*, 973 F. Supp. 409, 412-413 (S.D.N.Y. 1997) (quoting *Am. Geophysical Union v. Texaco, Inc.* 60 F.3d 913, 921 (2d Cir. 1994)) (alteration in original), *aff'd* 147 F.3d 215 (2d Cir. 1998). For example, in *New Era Publications Int'l, ApS v. Carol Publ'g Group*, 904 F.2d 152, 156 (2d Cir. 1990) (Feinberg, J.), *stay denied*, 497 U.S. 1054 (1990), *cert. denied* 498 U.S. 921 (1990), the Second Circuit held that an author's use of copyrighted material in a biography critical of L. Ron Hubbard was fair use even though the author anticipated commercial gain from its publication. Addressing the commercial/non-commercial distinction, the Court wrote:

> To be sure, the author and [his publisher] want to make a profit in publishing the book. But the author's use of material to enrich his biography is protected fair use, notwithstanding that he and his publisher anticipate profits.

8

*Id.* (citation and internal quotations omitted).

The relevance of *New Era Publications Int'l* to the instant case is clear: Donovan clearly wanted to "win the case," (Opp. Br. at 16) and, obviously, as a private attorney retained to represent Lotus, she expected to receive compensation for her work. 56.1 ¶¶ 3, 17-21. However, and as the Court made plain in *New Era Publications Int'l*, Donovan's expectation of pecuniary gain is not enough to transform her use of the six essays into a "commercial use." Donovan did not proffer the six essays to enrich herself or G&R, but to defeat Plaintiff's baseless motion to disqualify Judge Cedarbaum. 56.1 ¶¶ 10, 16-22. In sum, Donovan's use of the six essays had little to do with pure financial gain; any expectation she had as to compensation for her efforts on Louts' behalf is simply insufficient to find for Plaintiff on the commercial/non-commercial inquiry. 56.1 ¶¶ 10, 16-22; *Sandoval*, 973 F. Supp. at 412-413.

Cases from other Circuits with facts more closely aligned to those presented here include *Shell v. Devries*, No. Civ. 06-CV-00318-REB, 2007 WL 324592, at *4 (D. Colo. Jan. 31, 2007) (Krebs Decl. Ex. 10), *reconsideration denied* 2007 WL 1701715 (D. Colo. June 11, 2007) (Krebs Decl. Ex. 11), *aff'd* 2007 WL 4269047 (10th Cir. 2007), *cert. denied* 128 S.Ct. 2434 (2008). There, the Court refused to find a commercial purpose behind an attorney's submission of a copyrighted work in a judicial proceeding where the attorney's clear objective in doing so was direct pecuniary gain, *i.e.*, attorneys' fees. Indeed, the Court squarely rejected the notion that the attorney's use of the plaintiff's copyrighted material to support a motion for costs and attorneys' fees – surely a more "commercial" venture than opposing a disqualification motion – was commercial in nature. *Id.* at *4.

Moreover, in *Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003), *cert. denied*, 540 U.S. 820 (2003), the Fourth Circuit held that no commercial purpose could be attributed to a defendant who introduced a copyrighted work in a judicial proceeding to win a bitter child

9

custody battle. *Id.* at 395. To the contrary, the Court found that the defendants' submission of a manuscript entitled *Self-Portrait of a Patricide: How I got Away with Murder* had nothing to do with profit and everything to do with

> the *evidentiary value of its content* insofar as it contain[ed] admissions that [the plaintiff and author] may have made against his interest when he bragged about his interest when he bragged about his conduct in murdering his father, in taking advantage of the juvenile justice system, and in benefitting from his father's estate.

*Id.* (emphasis added).

Like the defendant in *Bond*, Donovan introduced the Plaintiff's material for a non-commercial, *evidentiary* purpose; to oppose the Plaintiff's efforts to disqualify Judge Cedarbuam. 56.1 ¶ 17-22. Unlike the defendant in *Shell*, Donovan did not introduce the six essays to win costs and attorneys' fees, but even if she did, it would still be deemed a non-commercial use. *See Shell*, 2007 WL 324592 at *4.

In his opposition brief, Plaintiff argues that *Bond* is inapposite because "sections of the copyrighted work were relevant to the issues in the case." Opp. Br. at 12. Plaintiff is clearly flailing. While it may be true that the six essays had little to do with the primary issue in the Ladies Night Case – whether "Ladies Nights" are unconstitutional – they had everything to do with the ancillary but critical issue that arose in the Ladies Night Case: whether Judge Cedarbaum could preside as an impartial arbiter. Plaintiff believed Judge Cedarbaum could not and moved to disqualify her. 56.1 ¶ 4. Donovan believed she could, and moreover believed Plaintiff's argument was nothing more than another manifestation of his own gender biases; seeing the six essays as evidence of that very bias, she introduced them to support her argument. 56.1 ¶¶ 10, 16-22. As this Court is well aware, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Donovan's submission of the six essays clearly meets this

standard when viewed in the context of Plaintiff's motion to disqualify Judge Cedarbaum; Plaintiff's own words of gender bias were plainly relevant to attack his credibility and basis for asserting Judge Cedarbaum, a woman, was biased.

Because Donovan utilized the six essays for their evidentiary value, insofar as they undermined Plaintiff's rationale for moving to disqualify Judge Cedarbaum, and made no effort to generate a profit, the conclusion is inescapable that the commercial/non-commercial distinction in the first factor clearly favors Donovan.  56.1 ¶¶ 10, 16, 17-22.

### 1b. Donovan used the six essays for criticism and commentary, rendering the use transformative.

"A work is transformative if it does not merely supersede the objects of the original creation but instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Lennon*, 556 F. Supp. 2d at 322. "There is a strong presumption that this factor favors a finding of fair use where the allegedly infringing work can be characterized as involving one of the purposes enumerated in 17 U.S.C. § 107: 'criticism, comment, news reporting, teaching …, scholarship, or research.'" *Id.* (citation omitted).

Donovan's use of the six essays is transformative to the extent she sought to invoke their content to criticize Plaintiff's grounds for recusal.  56.1 ¶¶ 10, 16-22; *see id.* at 323 (accepting defendant filmmakers' contention that use of John Lennon's song "Imagine" in a film qualified as a fair use because it "'provide[d] a layered criticism and commentary of the song'"). Donovan also commented on and critiqued the six essays themselves, stating in her declaration that "[p]erhaps Plaintiff would prefer a male judge, given his negative stereotypes of women on the Internet, frequently referring to them as 'feminazi.' The attached [six essays] includes examples of Plaintiff's invective against women."  56.1 ¶ 22. Donovan's use of the six essays was thus transformative because it "add[ed] something

11

new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

Given the fact that Donovan's use of the six essays is both non-commercial and transformative, the inquiry under the first factor strongly supports a finding of fair use.

### 1c. Donovan had a good faith belief the six essays had been available to the general public.

While the first factor "comprises principally two considerations[,]" *Lennon*, 556 F. Supp. 2d at 32, there is a third consideration this Court must also address: the propriety of Donovan's conduct. *NXIVM Corp.*, 364 F.3d at 478. Indeed, "[the Second Circuit] has recognized that this is an integral part of the analysis under the first factor." *Id.* (citations omitted).

In *NXIVM Corp.*, the inquiry under this "subfactor" was whether the defendant acted in bad faith or broke a law in obtaining the plaintiff's manuscript, which contained copyright marks on virtually every page and was made available only to individuals who paid a fee and signed agreements to not disclose its contents. *Id.* at 475-478. The *NXIVM Corp.* plaintiff accused the defendants of purloining the manuscript and posting portions of it on the Internet, where they analyzed and critiqued its contents. *Id.* at 475. If, the Court observed, the defendants knew that their "access to the manuscript was unauthorized or was derived from a violation of law or breach of duty, this consideration [would weigh] in favor of plaintiffs." *Id.* at 478. In reviewing the district court's decision, the Court assumed a finding of bad faith and "weigh[ed] this subfactor in favor of plaintiffs." *Id.*

The Court's assumption of the defendants' bad faith, however, did not warrant reversal of the district court's finding of fair use. And that is precisely because "a finding of bad faith is not to be weighed very heavily within the first fair use factor and cannot be made central to fair use analysis." *NXIVM Corp.*, 364 F.3d at 479 n. 2. Thus, the teaching of

12

*NXIVM Corp.* is clear: "the subfactor pertaining to defendants' good or bad faith must be weighed," but it cannot be dispositive. *Id.* at 479.

*NXIVM Corp.* compels the conclusion here that this subfactor easily favors Donovan, as she convincingly establishes a good faith belief the six essays were obtained lawfully. 56.1 ¶¶ 5-9. Donovan received the six essays from Steinberg and did not "hack" into Plaintiff's computer (facts Plaintiff concedes). 56.1 ¶¶ 5-9, 24-29. Steinberg stated in his letter that he procured the six essays from an Internet site accessible to the public. 56.1 ¶ 6. Steinberg also stated that he planned to submit the six essays as an exhibit in a state court proceeding. 56.1 ¶ 6. Moreover, Steinberg said he was planning to produce the six essays in a state court proceeding, which reinforced Donovan's belief that the essays were legitimately obtained and could be reproduced; otherwise, Steinberg, an officer of the court, would have been planning to do so. 56.1 ¶¶ 6-9. Thus, Donovan reasonably believed Steinberg's representations – that he obtained the six essays from a public Internet site – were true. 56.1 ¶ 9. Donovan's well-founded good faith belief precludes a finding of bad faith.

As discussed above in sections 1a and 1b, respectively, Donovan has amply demonstrated that her use of the six essays was both non-commercial and transformative. Because Donovan has also shown that she had a good faith belief the six essays were obtained lawfully and were to be available to the general public in an unrelated, state court proceeding, the inquiry under the first factor strong supports a finding of fair use.

## 2. The Nature of the Copyrighted Work Favors Application of the Fair Use Doctrine.

> The second fair use factor considers 'the nature of the copyrighted work.' ... Two distinctions are relevant to this analysis: (1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope of fair use involving

13

unpublished works being considerably narrower.

*Lennon*, 556 F. Supp. 2d at 325 (citation and internal quotation marks omitted).

The six essays escape precise classification under the first prong. But they certainly are not intended by the author as works of fiction or fantasy. They fall in the broader category of commentary based on personal observations, statistics, and historical facts. Plaintiff, for example, recalls his youth during the Vietnam War, writing in his essay entitled "A Different Time" that "this town will have the second highest number of persons per capita to die in Vietnam – all of them men, of course, and all of them guys I knew." 56.1 ¶ 14. In "Two Sides", Plaintiff skewers the "fifth estate" for "kowtow[ing] to the current, political correctionist propaganda of depicting females as victims and men as oppressors." 56.1 ¶ 12. Thus, this prong weighs in favor of a finding of fair use.

With respect to the second prong, Steinberg informed Donovan that he viewed the six essays on an Internet site accessible to the public and additionally viewed Plaintiff's posting of "A Different Time" on his MySpace Internet page,[6] which was accessible to the public at least as of March 9, 2009. 56.1 ¶¶ 6, 27-28.[7] The format of the six essays reinforced that understanding. 56.1 ¶ 8. Moreover, at the pre-motion conference on February 6, 2009, Plaintiff admitted that the six essays had at least at one time prior to the instant lawsuit been open to public viewing in postings on the Internet. 56.1 ¶ 27.

Plaintiff's posting of the six essays on the Internet on a site fully accessible to the public constitutes "publication" within the meaning of the Copyright Act. *Getaped.com v. Cangemi*, 188 F. Supp. 2d 398, 401 (S.D.N.Y. 2002). In rejecting the notion that display of

---

[6]    *See U.S. v. Am. Soc. of Composers, Authors and Publishers*, 562 F. Supp. 2d 413, 435 (S.D.N.Y. 2008) ("MySpace is one of the most popular social networking sites on the Internet and allows users to post information about themselves and view information posted by others").

[7]    Counsel for Donovan also viewed one of the essays on Plaintiff's MySpace page in March 2009. 56.1 ¶ 28.

14

a work on a website does not constitute publication within the meaning of the Copyright Act, the Southern District observed:

> By accessing a webpage, the user not only views the page but can also view - and copy - the code used to create it. In other words, merely by accessing a webpage, an Internet user acquires the ability to make a copy of that webpage, a copy that is, in fact, indistinguishable in every part from the original. Consequently, when a website goes live, the creator loses the ability to control either duplication or further distribution of his or her work. A webpage in this respect is indistinguishable from photographs, music files or software posted on the web - all can be freely copied. Thus, when a webpage goes live on the Internet, it is distributed and 'published'…

*Id.* (footnote omitted).

Thus, the six essays were published prior to the instant litigation, bolstering a finding of fair use under the second factor. *See also Video-Cinema, Inc.*, 2001 WL 1518264, at *7 ("[i]ndeed, the Second Circuit has found that where the plaintiff's work has already been published, this fact alone supports a finding of fair use under the second statutory factor").

Plaintiff tries to blunt the impact of *Getaped.com* by citing law review articles, treatises, and Copyright Office circulars. Opp. Br. at 5-9. Plaintiff's tactic is transparent: clearly, he has failed to locate any controlling authority overruling *Getaped.com*. He cites to *Agee v. Paramount Communications*, 59 F.3d 317 (2d Cir. 1995), but that case is inapposite, as it pertains to transitory transmissions of a television program, as opposed to the more enduring (or endurable) form of posting something to the Internet.[8] Indeed, Plaintiff does not deny having posted all six essays to the Internet, and he never indicated that it was only momentary in nature. Finally, his reliance on Copyright Office Circulars (Opp. Br. at 9) to support his "publication" argument is misplaced. *See Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002) ("the Copyright Office has no authority to give opinions or define legal terms, and its interpretation on an issue never before decided

---

[8]    Were *Agee* applicable, the decision in *Getaped.com* would not have been issued, since *Agee* predates *Getaped.com*.

15

should not be given controlling weight") (quoting *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 946-47 (2d Cir. 1975)).

Because the foregoing analysis supports the conclusion the six essays were "published" within the meaning of the Copyright Act, this Court should find in Donovan's favor on factor two.

### 3.   The Amount and Substantiality of the Portion Used At Worst Neither Favors Nor Disfavors Application of the Fair Use Doctrine.

The third factor focuses on "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3) (2006). "This factor has both a quantitative and a qualitative component, in that [t]he factor favors copyright holders where the portion used by the alleged infringer is a signifcant percentage of the copyrighted work, or where the portion used is essentially the heart of the copyrighted work." *Lennon*, 556 F. Supp. 2d at 325 (citations and internal quotation marks omitted).

Plaintiff argues that the third factor points in his favor because, with the exception of "A Different Time," each of the six essays was reproduced in its entirety. Opp. Br. at 19. But Plaintiff undercuts this argument by suggesting that the six essays are linked to "A Different Time," which, according to Plaintiff, is "part of a larger work" that "illustrates that in America, males pay with their lives, limbs, savings, and dreams so that females can receive preferential treatment." *Id.* at 20. Plaintiff has therefore given the impression that the six essays constitute a fraction of Plaintiff's writings attacking females, feminism, and "Feminazis." If, as seems to be the case, the six essays constitute a minor portion of a larger body of work, this third factor clearly benefits Donovan. *See Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992).

But even if Plaintiff established that the six essays constitute the bulk of the work, it would not compel finding in his favor on this factor. In *Campbell*, the Supreme Court stated

16

that the fair use factors can not "be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578.

*Bond* is instructive on this latter point, where it was conceded that the challenged use of the manuscript "involved all, or nearly all, of the copyrighted work." *Bond*, 317 F.3d at 396. Nevertheless, the court held that "[t]he use of the copyrighted material in this context, even the entire manuscript, does not undermine the protections granted by the [Copyright] Act but only serves the important societal interest in having evidence before the factfinder." *Id.*

Here, Donovan should not be penalized for proffering the six essays in opposition to the motion to disqualify Judge Cedarbaum even if they do constitute the bulk of the work. Indeed, Donovan chose to present the six essays in their entirety and not quote snippets to: (1) prevent charges of doctoring the six essays or taking them out of context; and (2) provide the Court with a complete version of what she believed was evidence relevant to Plaintiff's motion to disqualify Judge Cedarbaum. 56.1 ¶ 17. *See also* Fed. R. Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it"). Accordingly, it cannot be said that Donovan's use of the six essays in any way undermine the rights conferred by the Copyright Act.

### 4. The Effect of the Use Upon the Potential Market For or Value of the Copyrighted Work Favors Application of the Fair Use Doctrine.

The fourth factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4) (2006). "In this analysis, '[t]he court looks to not only the market harm caused by the particular infringement, but also to

17

whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work.'" *Lennon*, 556 F. Supp. 2d at 327 (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006)).

Plaintiff's opposition brief is bereft of any claim that the market will shun the six essays because they were introduced in a court proceeding. The observation made by the district court in *Bond* on this broader point is pertinent:   "'Ironically, if anything, [the defendants' use of the manuscript] increases the value of the work in a perverse way, but it certainly doesn't decrease it.'" *Bond*, 317 F.3d at 396-397 (alteration in original).   There is no allegation in Plaintiff's Complaint nor any assertion in his opposition brief that Donovan's use of the six essays reduced their market appeal.   Perhaps this is because Plaintiff realizes that such an argument would be frivolous, as he actively promotes his misogynistic viewpoints on his personal Internet site.   56.1 ¶¶ 1-2.   Surely he cannot now argue that Donovan's submission of the six essays in the Ladies Night Case was an unwarranted exposure of his deep-seated gender bias that chilled the market for his writings.   Here, as in *Bond*, the fourth factor clearly favors Donovan.

**C.    Use of Copyrighted Work in Judicial Proceedings is a Recognized Basis for Application of the Fair Use Doctrine.**

While it is useful to analyze the four factors in the current context, as it clearly demonstrates the propriety of applying the fair use doctrine here, it is also noteworthy that application of the doctrine to the use of a copyrighted work in a judicial proceeding is hardly novel, unprecedented, or without legal foundation.   To the contrary, it is clear that such circumstances were clearly contemplated by Congress in the creation of the fair use exclusion, and courts regularly apply it in such a situation.[9]

---

[9]      Contrary to Plaintiff's contention, Donovan does not urge the creation of a *per se* rule that the use of a copyrighted work in a judicial proceeding is a fair use. Opp. Br. at 11-14. Although such a rule would clearly favor Donovan, fair use in its present form is sufficient to free Donovan of any liability. Donovan

18

That the use of copyrighted material in a judicial proceeding constitutes fair use is specified in the legislative history of the Copyright Act, has been recognized by the Supreme Court, and was endorsed by the leading treatise on copyright law. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 479, n.29 (1984) (noting that the Senate and House reports on the Copyright Act listed as an example of fair use "[the] reproduction of a work in legislative or judicial proceedings or reports") (Blackmun, J., dissenting); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 13.05[D] at 13-91 (1991) ("works are customarily reproduced in various types of judicial proceedings ... and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work into evidence"). In addition, the Fourth, Ninth and Tenth Circuits have all held that use of copyrighted material in a judicial proceeding is fair use. *See Bond v. Blum, supra*, 317 F.3d at 396-397; *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992); *Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982); and *Shell v. Devries, supra*, 2007 WL 324592.

Contrary to Plaintiff's contention, Donovan does not urge the creation of a *per se* rule that the use of a copyrighted work in a judicial proceeding is a fair use. Opp. Br. at 11-14. Although such a rule would clearly favor Donovan, fair use in its present form is sufficient to free Donovan of any liability.

In sum, Donovan has amply demonstrated that a balancing of all four factors point to a finding of fair use. Moreover, her use of the documents occurred in a context specifically contemplated by Congress and recognized by the courts to be a quintessential example of fair use – judicial proceedings. Accordingly, this Court should find that Donovan's use of the six essays in the proceeding to disqualify Judge Cedarbaum qualified as a fair use, and

---

merely seeks to point out that the current setting is a familiar and expected one for application of the fair use doctrine. This also seriously undermines Plaintiff's argument that evidentiary use of copyrighted material in a legal proceeding constitutes a commercial use. *See* § II.B.Ia, *supra.*

as a result grant Donovan's motion for summary judgment in its entirety and dismiss Plaintiff's Complaint with prejudice.

## III.    THE LITIGATION PRIVILEGE ACCORDS DONOVAN ABSOLUTE IMMUNITY

A third and final basis for granting Donovan summary judgment is the litigation privilege. Courts in the Second Circuit have held that "[i]n the context of a legal proceeding, statements by parties *and their attorneys* are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Aequitron Medical, Inc. v. Dyro*, 999 F. Supp. 294, 297-298 (E.D.N.Y. 1998) (emphasis added) (alteration in original) (citation and internal quotation marks omitted). *See also Credit Sights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2008 WL 4185737, at *19 n.9 (S.D.N.Y. Sept. 5, 2008) (Krebs Decl. Ex. 12).[10]

This may be the strongest basis of all, as it is grounded in the strong public policy of encouraging all litigants to have their day in court. They cannot do so freely and fairly if they have to fear they will be sued for what they say and present in judicial proceedings. Nor can parties' attorneys discharge their responsibility to vigorously represent their clients if they have to worry that they will be sued for doing so. In addition, allowing liability for statements made in litigation runs counter to the doctrine of finality, and would merely encourage piecemeal litigation and an endless multiplicity of follow-on suits, to the detriment of scarce judicial resources. *See 3H Enterprises, Inc. v. Dwyre*, 182 F. Supp. 2d 249, 260 (N.D.N.Y. 2001) ("[o]ur system requires attorneys to zealously represent their clients, and, in many cases, the public as well. Suits against attorneys for their actions taken in zealously representing their clients must be held to the highest standard").

It is clear that the six essays were, "by any view or under any circumstances, … pertinent to the litigation." *Aequitron*, 999 F. Supp. at 297-298. As explained in Donovan's

---

[10]    Although both these cases involved defamation, there is nothing in either case indicating that was a prerequisite for application of the privilege. And, as stated in Fed. R. Evid. 501, privileges are governed by common law.

statement of undisputed material facts, Plaintiff had accused Judge Cederbaum of sexual bias and prejudice and moved for her disqualification. 56.1 ¶ 4. Donovan utilized the six essays to reveal the hypocrisy of that accusation and demonstrate that the bias lay with Plaintiff himself and not the court, which rendered them patently relevant to the issue in the motion. 56.1 ¶¶ 10, 16-22. As such, the litigation privilege protects Donovan's action in submitting the six essays to the Court, and Plaintiff's claims of copyright infringement must be dismissed.

## IV.    DONOVAN IS ENTITLED TO COSTS AND ATTORNEY'S FEES

This Court should award Donovan costs and attorneys fees for defending this frivolous lawsuit. *See* 17 U.S.C. § 505 (2006) (in any copyright infringement action, the court "may … award a reasonable attorney's fee to the prevailing party as part of the costs"). Whether to award attorney's fees is a decision left solely to the sound discretion of the Court. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 33 (1994).

> In *Fogerty*, the Supreme Court highlighted a list of non-exclusive factors to guide the district court's exercise of discretion in awarding fees, including 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.

*Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001). "The Second Circuit has held that, of the factors enumerated by the Supreme Court, 'objective unreasonableness' should be accorded 'substantial weight." *Id.* (citing *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 120-21 (2d Cir. 2001)).

Plaintiff's commencement of this infringement action is objectively unreasonable. Plaintiff failed to comply with the most basic requirement under the Copyright Act – registration of the six essays with the Copyright Office. His infringement claim is neither novel nor complex. *See Williams v. Crichton*, 891 F. Supp. 120, 121 (S.D.N.Y. 1994).

21

Moreover, the Senate and House reports on the Copyright Act listed the exact conduct in which Donovan engaged as an example of fair use. This makes this action the epitome of objective unreasonableness. Nor does his status as a *pro se* litigant shield him from the consequences of bringing a frivolous lawsuit.[11] *See Morriseau v. DLA Piper*, No. 06 Civ. 13255 (LAK), 2007 WL 4292030 (S.D.N.Y. Dec. 3, 2007) (refusing to grant *pro se* plaintiff dispensation in view of her vexatious conduct, academic qualifications and status as an attorney) (Krebs Decl. Ex. 13), *reconsideration denied*, 532 F. Supp. 2d 595 (S.D.N.Y. 2008), *aff'd* No. 08-0697-cv, 2009 WL 4432374 (2d Cir. 2009) (Krebs Decl. Ex. 14).

In sum, it is evident that Plaintiff's actions amount to retribution masquerading as a copyright infringement lawsuit. Accordingly, Plaintiff should be compelled to pay costs and attorney's fees.

## CONCLUSION

For all the foregoing reasons, Donovan respectfully requests that the Court grant summary judgment in Donovan's favor, dismiss Plaintiff's complaint with prejudice, and award Donovan costs and attorney's fees.

Dated:     New York, New York
           December 18, 2009

Respectfully submitted,

GORDON & REES LLP

By: _____

Diane Krebs, Esq. (DK 8280)
Joshua S. Hurwit, Esq. (JH 1058)
Gordon & Rees LLP
Attorneys for Defendant Deborah Swindells Donovan
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 269-5500 (Phone)

---

[11]     Indeed, Plaintiff's legal resume, posted on his Web site, www.roydenhollander.com, lists prior work experience with the Internal Revenue Service and Cravath, Swaine & Moore LLP.