UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X   Case No.: 08 CV 04045 (FB)(LB)
ROY DEN HOLLANDER,

                Plaintiff,

                v.

DEBORAH SWINDELLS DONOVAN, PAUL W.
STEINBERG, and JANE DOE,

                Defendants.
-------------------------------------------------------------X

**DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO L. CIV. R. 56.1**

Pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendant Deborah Swindells Donovan ("Donovan") sets forth the following statement of material facts as to which it contends there is no genuine issue to be tried:[1]

**Plaintiff Roy Den Hollander**

1. Plaintiff Roy Den Hollander ("Plaintiff") bills himself as an "Anti-Feminist Lawyer." Roy Den Hollander – Home Page, http://www.roydenhollander.com. He maintains an Internet site that implores visitors to make financial contributions "to help battle the infringement of Men's Rights by the feminists and their allies." Id.

2. Plaintiff's Internet site also contains links to a trilogy of federal lawsuits he has commenced in furtherance of his "anti-feminist" cause. Id. They are: Hollander v. Copacabana Nightclub, No. 07-CV-5873 (MGC) (S.D.N.Y. Nov. 15, 2007) (challenging the constitutionality of "Ladies Nights" drink specials) (the "Ladies Night Case"); Hollander v. Chertoff, No. 08-CV-01521 (WHP) (S.D.N.Y. May 2, 2008) (alleging that enforcement of three federal laws, including the Violence Against Women Act, violate the rights of a

---

[1] The following statement of material facts about which there is no genuine issue to be tried is made solely for purpose of Donovan's motion for summary judgment. Therefore, Donovan is conceding for purposes of this motion several facts contended by Plaintiff. Should any part of Plaintiff's complaint survive this motion, Donovan reserves the right to dispute Plaintiff's version of events, including those portions contained in this Statement, at a later time.

purported class of men") (the "VAWA Case"); and *Hollander v. Institute for Research on Women & Gender at Columbia Univ.*, 08-Civ-7286 (LAK)(KNF) (S.D.N.Y. Dec. 1, 2008) (alleging in part that Columbia University carries out "the intentional discriminatory impact against men of the Women's Studies program") (the "Columbia University Case"). *Id.* [2]

**The Ladies Night Case**

3.  In the Ladies Night Case, Plaintiff commenced an action in the United States District Court for the Southern District of New York for a judgment declaring that Ladies Nights events are discriminatory against men. Declaration of Deborah Swindells Donovan, Esq., dated December 17, 2009 ("Donovan Decl.") ¶ 2. Lotus, a New York City nightclub named as a defendant, retained the law firm of Gordon & Rees LLP ("G&R") as counsel. *Id.* ¶ 2. Donovan, then a partner with G&R, was the primary attorney on The Ladies Night Case. *Id.* ¶ 2.

4.  During the course of the litigation, Plaintiff moved to disqualify the presiding judge, Senior United States District Judge Miriam Goldman Cedarbaum. *Id.* ¶ 3, Ex. 2. Plaintiff's Notice of Motion accused Judge Cedarbaum of evincing "sexual bias, sexual prejudice, and partiality toward the class of men on whose behalf the male named plaintiff brought this suit." *Id.* ¶ 3, Ex. 2.

5.  While Plaintiff's motion to disqualify Judge Cedarbaum was pending, Paul W. Steinberg, Esq. ("Steinberg") contacted Donovan by letter dated October 19, 2007. *Id.* ¶ 4, Ex. 3.

6.  In his introductory letter to Donovan, Steinberg stated that he became aware of her role as counsel to Lotus in the Ladies Night Case through various press reports. *Id.*

---

[2] None of these lawsuits survived the pleading stage. In dismissing the Columbia University Case, Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York characterized the "core of the complaint" as "frivolous" and sharply criticized its Establishment Clause claims as "absurd and utterly without merit." Declaration of Diane Krebs, Esq., dated December 17, 2009 ("Krebs Decl.") at Exhibit ("Ex.") 2.

¶ 4, Ex. 3. Steinberg went on to write that he was representing an individual in an unrelated proceeding in which Plaintiff was an adverse party, and had discovered essays (the "six essays") authored and posted by Plaintiff on a public Internet site:

> For some while, [Plaintiff] had a website on 'Been-Scammed' and although he took the web site down shortly before commencing his 'Ladies Night' media campaign, I did save some pages from the site while it was on the web. Since he has apparently been successful in scrubbing archives such as WayBack Machine, I have not been able to get the full site. However, you may wish to read the attached [six essays], <u>and bear in mind that these were writings which he made publicly available</u>. Currently, the attached [six essays] has not been submitted in court, but <u>I intend to file as an Exhibit to a submission on November 14</u>.

*Id.* ¶¶ 4,5, Ex. 3 (emphasis added).

7. Steinberg attached to his letter copies of the six essays. *Id.* ¶ 5, Ex. 3. They are: "Fear Corrupts"; "Two Sides"; "An Invisible Weapon"; "A Different Time"; "Do Men Cause the Wars?"; and "Some Differences: Men v. Girls." *Id.* ¶ 5, Ex. 3.

8. A date/time stamp appears next to each essay, and it appears that readers (*i.e.*, visitors to the Internet site on which the six essays were published) could post comments. *Id.* ¶ 6, Ex. 3.

9. Based on the format of the six essays, and the representations in Steinberg's letter, Donovan believed the six essays had been published on an Internet site accessible to the general public. *Id.* ¶ 6, Ex. 3. She also understood that Steinberg himself was going to submit the six essays as an exhibit to a motion in an unrelated state court matter. *Id.* ¶ 6, Ex. 3. As Steinberg, an attorney, is an officer of the court, Donovan had no reason to doubt that the essays had been legitimately obtained and could be produced; otherwise, he would not have been planning to use them as an exhibit in his proceeding. *Id.* ¶ 6.

10. Donovan perceived the essays to be inflammatory and misogynistic. *Id.* ¶ 5, Ex. 3.

11. In "Fear Corrupts," Plaintiff wrote that "Feminazis will not stop until they reshape America and eventually the world into an intolerant hell complete with thought

3

control, inquisitions, intimidation, enslavement and, as one Feminazi priestess advocated, a reduction in the male population to 10%." *Id.* ¶ 5, Ex. 3.

12. In "Two Sides," Plaintiff wrote that "the Feminazi infested media often fails to look beyond its members own biased beliefs to the reality of being a husband in feminarchy America." *Id.* ¶ 5, Ex. 3.

13. In "An Invisible Weapon," Plaintiff wrote "When will we see advertisements paid for by taxpayer dollars given men a number to call to get some ragging, nagging, malicious broad to shut her yap?" *Id.* ¶ 5, Ex. 3.

14. In "A Different Time," Plaintiff wrote "[o]f all the towns in America, this town will have the second highest number of persons per capita to die in Vietnam, all of them men, of course, and all of them guys I knew." *Id.* ¶ 5, Ex. 3.

15. In "Some Differences: Men v. Girls," Plaintiff wrote "Feminarchy America allows broads to get away with more than Mother Nature intended, not because girls are superior but because females are now making the rules." *Id.* ¶ 5, Ex. 3.

16. Donovan found Plaintiff's assertions in the six essays to be "palpably offensive and unprofessional," particularly in light of Plaintiff's motion to disqualify Judge Cedarbaum. *Id.* ¶ 5.

17. Donovan drafted a declaration in opposition to Plaintiff's motion to disqualify Judge Cedarbaum, and attached as an exhibit the six essays in their entirety and without any modification, to prevent any charges of doctoring the six essays or presenting them out of context. *Id.* ¶¶ 7,8, Ex. 4.

18. Donovan's purpose in attaching the six essays was to strengthen the central point of her declaration: "that Plaintiff had no grounds to challenge Judge Cedarbaum's objectivity when he himself was clearly biased against women[.]" *Id.* ¶ 8. In submitting the declaration with the six essays as an exhibit, she hoped to demonstrate the frivolity of

4

Plaintiff's motion to disqualify Judge Cedarbaum: at the same time Plaintiff was accusing Judge Cedarbaum of sexist conduct, Plaintiff was assailing feminists (whom he refers to in the six essays as "Feminazis") and promoting similarly misogynistic viewpoints in the six essays. *Id.*

19. Indeed, Donovan's "only purpose in submitting the six essays was to destroy the foundation on which Plaintiff sought Judge Cedarbaum's recusal." *Id.* ¶ 9.

20. Donovan did not submit the six essays for personal profit or pecuniary gain. *Id.* ¶ 9.

21. Rather, Donovan submitted the six essays out of what she believed was her "ethical and legal obligation to zealously represent Lotus in the Ladies Night Case," which, in Donovan's words, "required me to oppose Plaintiff's baseless motion to disqualify Judge Cedarbaum with all available tools in my arsenal." *Id.* ¶ 9.

22. In her declaration, Donovan argued that the six essays demonstrated

> Plaintiff's unrelenting bias against females. Perhaps Plaintiff would prefer a male judge, given his negative stereotypes of women on the Internet, frequently referring to them as 'feminazi.' The attached Exhibit A includes examples of Plaintiff's invective against women. It is my understanding these 'articles' appeared on the Internet. I personally have read diatribes by Plaintiff on the Internet which are entirely consistent with many of the views expressed in this exhibit. Unfortunately, I did not save them because Plaintiff's opinion of women is not at issue in the lawsuit he has brought. Had I known he would level a baseless charge of gender discrimination against Judge Cedarbaum personally, I certainly would have retained them as they unequivocally reflect his misogyny. The articles suggest Plaintiff is challenging Judge Cedarbaum's impartiality simply because she is female, not biased. Plaintiff is the one who is sexually biased, not Judge Cedarbaum.

*Id.* ¶ 7, Ex. 4 ¶ 11.

23. In a reply affirmation submitted in further support of his motion to disqualify Judge Cedarbaum, Plaintiff accused Donovan of unlawfully procuring the six essays:

> Since [the six essays] are not available to the public, but exist only on a couple of computers, the only way attorney Donovan could have

5

obtained access is by hacking into those computers.

*Id.* ¶ 10, Ex. 5.

24. As the letter from Steinberg demonstrates, (*id.* Ex. 3), Donovan did not "hack" into Plaintiff's computer. *Id.* ¶ 11.

25. Donovan denied the "hacking" accusations in an e-mail to Plaintiff dated October 24, 2007:

> Roy,
>
> You are entitled to take any action you deem appropriate. However, I did not obtain those articles by 'hacking.' If you read my declaration carefully, you will see that I stated only that it was my understanding that the 'articles' had been published on the internet. The articles were given to me by a third party.
>
> I notice you are not denying that you wrote the offensive articles or that they appeared on the internet at one time.
>
> I am not the least bit concerned with your retaliatory action. Nor will it intimidate or prevent me from representing my client to the best of my ability.
>
> Deborah

*Id.* ¶ 11, Ex. 6.

26. Donovan also denied the hacking accusations in a letter to Judge Cedarbaum dated November 1, 2007. *Id.* ¶ 12, Ex. 7.

27. At the pre-motion conference before this Court, held on February 6, 2009, Plaintiff admitted posting the six essays on the Internet. Krebs Decl. ¶ 2.

28. The essay "A Different Time" was publicly available on Plaintiff's MySpace Internet page as of March 9, 2009. Krebs Decl. ¶ 3, Ex. 1.

29. Plaintiff implicitly admits Donovan did not "hack" into a computer on which the six essays were purportedly stored. Plaintiff's Brief in Opposition to Donovan's Motion to Dismiss ("Opp. Br.") at 3-4.

**The Procedural History of This Case**

30.     Plaintiff brought this lawsuit against Steinberg and Donovan on or about October 3, 2008. Declaration of Joshua S. Hurwit, Esq. ("Hurwit Decl.") Ex. 1.

31.     In general, the lawsuit claims Donovan infringed copyrights for the six essays when she attached them as exhibits to her declaration opposing Plaintiff's motion in the Ladies Night Case to disqualify Judge Cedarbaum. *Id.* Ex. 1 ¶¶ 10-17.

32.     Donovan moved on March 11, 2009 to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). *Id.* Ex. 3.

33.     By *Memorandum & Order* dated November 18, 2009, this Court converted Donovan's motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56. The Court directed the parties to submit

> all pertinent materials by December 18, 2009, including materials addressing whether the defendants' use of plaintiff's works is protected under the fair use doctrine. *See NXIVM Corp. v. Ross Institute,* 364 F.3d 471, 476 (2d Cir. 2004) (discussing statutory defense of fair use under 17 U.S.C. § 107).

*Id.* Ex. 4.

Dated: New York, New York
        December 18, 2009

                                        Respectfully submitted,

                                        GORDON & REES LLP

                                        By: /s/ Joshua S. Hurwit
                                        Diane Krebs, Esq. (DK 8280)
                                        Joshua S. Hurwit, Esq. (JH 1058)
                                        Attorneys for Defendant
                                        Deborah Swindells Donovan
                                        90 Broad Street, 23rd Floor
                                        New York, New York 10004
                                        (212) 269-5500 (Phone)
                                        (212) 269-5500 (Facsimile)