UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X    Case No.: 08 CV 04045 (FB)(LB)

ROY DEN HOLLANDER,

            Plaintiff,

**DECLARATION OF
DEBORAH SWINDELLS DONOVAN**

      v.

DEBORAH SWINDELLS DONOVAN, PAUL W.
STEINBERG, and JANE DOE,

            Defendants.

-------------------------------------------------------------X

Deborah Swindells Donovan, being duly sworn, deposes and says under the penalties of perjury:

1.     I am an attorney at law duly admitted to practice law in the state and federal courts of New York.

2.     In 2007, Lotus, a New York City nightclub, retained my former law firm, Gordon & Rees LLP ("G&R"), as defense counsel in *Hollander v. Copacabana Nightclub, et al*, No. 07-CV-5873 (MGC) (S.D.N.Y. Nov. 15, 2007) (the "Ladies Night Case"), a lawsuit commenced in the United States District Court for the Southern District of New York by Plaintiff Roy Den Hollander (the "Plaintiff"). The essence of Plaintiff's argument in the Ladies Night Case was that the practice of holding "Ladies Nights" in nightclubs – offering discounted admission and reduced-price drinks to female patrons on certain nights – violated the equal protection clause of the Fourteenth Amendment of the United States Constitution and was discriminatory against men. I was the attorney at G&R primarily responsible for handling the Ladies Night Case on behalf of Lotus. A true and correct copy of the Complaint is annexed hereto as Exhibit ("Ex.") 1.

3.     By notice of motion dated October 7, 2007, Plaintiff moved to disqualify Senior United States District Judge Miriam Goldman Cedarbaum from hearing the case. In

his supporting affirmation, Plaintiff accused Judge Cedarbaum of being "motivated by sexual bias, sexual prejudice, and partiality toward the class of men on whose behalf the male named plaintiff brought this suit." Specifically, Plaintiff claimed that during a case management conference, Judge Cedarbaum's "overly antagonistic interrogation" of Plaintiff and "disdainful disregard" for his legal arguments "create[d] the appearance that Judge Cedarbaum, whether true or not, is biased and prejudiced against men and creates a perception that she is not impartial in these proceedings." A true and correct copy of Plaintiff's notice of motion, supporting affidavit, and memorandum of law are annexed hereto as Ex. 2.

4.      While Plaintiff's motion to disqualify Judge Cedarbaum was pending, I received a letter from Paul W. Steinberg, Esq. A true and correct copy of this letter is annexed hereto as Ex. 3. In the letter, Steinberg identified himself as an attorney who had been retained in the past by an individual involved in an ongoing dispute with Plaintiff. *See id.* Steinberg stated that he was made aware of the Ladies Night Case and my involvement as defense counsel through press reports. *See id.* Steinberg's letter also warned that "Mr. Den Hollander is someone who has potential for violence and [that I] may wish to act accordingly." *See id.*

5.      Steinberg attached to his letter copies of six (6) essays that I perceived to be inflammatory and misogynistic (the "six essays"), and identified Plaintiff as the author. *See* Ex. 3. For example, in one essay, titled "Fear Corrupts," Plaintiff writes that "Feminazis will not stop until they reshape America and eventually the world into an intolerant hell complete with thought-control, inquisitions, intimidation, enslavement and, as one Feminazi priestess advocated, a reduction in the male population to 10%." *See id.* In another, titled "Two Sides," Plaintiff writes that "the Feminazi infested media often fails to look beyond its members own biased beliefs to the reality of being a husband in feminarchy America." *See*

2

*id.*   Plaintiff leveled similar attacks in "An Invisible Weapon" ("When will we see advertisements paid for by taxpayer dollars giving men a number to call to get some ragging, nagging, malicious broad to shut her yap?"); "Do Men Cause the Wars?" ("The fighting and dying in wars will always fall on the shoulders of men, so it seems wise that to avoid unnecessary wars, men should keep bimbos out of the political decision making process"); "A Different Time" (implying that only men made sacrifices during the Vietnam War); and "Some Differences: Men v. Girls" ("Feminarchy America allows broads to get away with more than Mother Nature intended, not because girls are superior but because females are now making the rules"). *See id.* I found these assertions to be palpably offensive and unprofessional, especially in light of Plaintiff's baseless attack on Judge Cedarbaum's credibility in connection with his motion to disqualify her.

6.   The format of the six essays led me to believe they had been posted on an Internet site accessible to the general public. A date/time stamp appears next to each essay, and it seemed to me that readers could post comments about the six essays. Furthermore, Steinberg stated in his letter that the six essays "were writings which [Plaintiff] made publicly available." *See* Ex. 3. Steinberg also stated in his letter that he was going to submit the six essays as an exhibit to a motion in an unrelated state court matter. *See id.* As Steinberg is an attorney and is thus an officer of the court, I had no reason to doubt that the essays had been legitimately obtained and could be produced; otherwise, he would not have been planning to use them as an exhibit in his proceeding. Nor would he have sent the six essays to me for use in the Ladies Night Case.

7.   To oppose Plaintiff's motion to disqualify Judge Cedarbaum, I drafted a declaration. A true and correct copy of my declaration, which is dated October 23, 2007, is annexed hereto as Ex. 4.

3

8.      Seeing an opportunity to strengthen the central point of my declaration – that Plaintiff had no grounds to challenge Judge Cedarbaum's objectivity when he himself was clearly biased against women – I attached the six essays as an exhibit. I made no modifications to the six essays, and presented them in the same format in which I received them to prevent any charges of doctoring the six essays or taking them out of context. In submitting the declaration with the six essays as an exhibit, I hoped to demonstrate the frivolity of Plaintiff's motion to disqualify Judge Cedarbaum: at the same time Plaintiff was accusing Judge Cedarbaum of sexist conduct, Plaintiff was assailing feminists (whom he refers to in the six essays as "Feminazis") and promoting similarly misogynistic viewpoints in the six essays. See Ex. 4. I also commented on and critiqued the six essays, putting them in the context of the motion to disqualify. For example, I wrote, "Perhaps Plaintiff would prefer a male judge, given his negative stereotypes of women on the Internet…" Id. at ¶ 11. I also made clear that the six essays showed that Plaintiff was "challenging Judge Cedarbaum's impartiality simply because she is female, not biased." Id.

9.      My only purpose in submitting the six essays was to destroy the foundation on which Plaintiff sought Judge Cedarbaum's recusal. My action in this regard had nothing to do with personal profit, and everything to do with my ethical and legal obligation to zealously represent Lotus in the Ladies Night Case, which required me to oppose Plaintiff's baseless motion to disqualify Judge Cedarbaum with all available tools in my arsenal. I believe the six essays were reasonably related to that goal.

10.      Shortly after I submitted my declaration, Plaintiff filed an affirmation in which he cavalierly accused me of "hacking" into a computer or set of computers on which the six essays were purportedly stored. A true and correct copy of Plaintiff's Reply Affirmation in Further Support of the Motion to Disqualify Judge Cedarbaum is annexed hereto as Ex. 5.

4

11.  Clearly, I did not "hack" into a computer or set of computers to obtain the six essays. Rather, as explained above and as seen in Ex. 3, Steinberg sent me the six essays. I do not know how Steinberg obtained the essays, but he told me that he printed them off a publicly accessible site on the Internet, and I had no reason to disbelieve him, especially given the format and appearance of the six essays. I advised Plaintiff of this fact in an e-mail dated October 24, 2007, although I did not disclose Steinberg as the source. A true and correct copy of this e-mail is annexed hereto as Ex. 6. In the e-mail, I wrote:

> Roy,
>
> You are entitled to take any action you deem appropriate. However, I did not obtain those articles by 'hacking.' If you read my declaration carefully, you will see that I stated only that it was my understanding that the 'articles' had been published on the internet. The articles were given to me by a third party.
>
> I notice you are not denying that you wrote the offensive articles or that they appeared on the internet at one time.
>
> I am not the least bit concerned with your retaliatory action. Nor will it intimidate or prevent me from representing my client to the best of my ability.
>
> Deborah

12.  I also denied Plaintiff's "hacking" accusations in a letter to Judge Cedarbaum dated November 1, 2007. A true and correct copy of my November 1 letter is annexed hereto as Ex. 7.

Dated: December 17, 2009
       Westport, Massachusetts

Deborah Swindells Donovan

5