UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
ROY DEN HOLLANDER,

                             Plaintiff,

                                                         Case No. 08-cv-4045(FB)(ECF)

             v.

DEBORAH SWINDELLS-DONOVAN,
PAUL W. STEINBERG, and
JANE DOE,

                             Defendants.
-------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Roy Den Hollander (RDH 1957)
Attorney and *pro se* plaintiff
545 East 14 Street, 10D
New York, NY 10009
(917) 687 0652

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………..…………….... ii

STATEMENT OF FACTS……………………………………………………..………... 1

ARGUMENTS.....………………………………………............................................... 3

    I.  The doctrine of "Fair Use" does <u>not</u> apply to the defendants placing six unpublished, copyrighted works on the World Wide Web and making them publicly available through the records departments of three different courts by submitting the works in three different judicial proceedings where the works were not relevant to the issues for which they were submitted.………………………………………………….…............. 3

    II.  The Court's subject matter jurisdiction depends on the works being registered, not on the Certificates of Registration being mailed to the plaintiff.……………….................. 17

RELIEF............................................................................................................... 19

ATTORNEY'S FEES............................................................................................. 19

CONCLUSION..................................................................................................... 20

## TABLE OF AUTHORITIES

Page

**Cases**

Agee v. Paramount Communs., 59 F.3d 317 (2d Cir. 1995)...................................................... 10

A.V. v. iParadigms, LLC, 562 F.3d 630 (4th Cir. 2009)........................................................ 4

Am. Geophysical Union v. Texaco Inc., 60 F.3d 913 (2d Cir. 1994)................................... 11, 16

Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006)......................... 6

Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006).......................................................................... 12

Burnett v. Twentieth Century Fox Film Corp., 491 F.Supp.2d 962 (C.D. Cal. 2007).......... 17 n. 4

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 114 S.Ct. 1164,
127 L.Ed.2d 500 (1994)........................................................................................................ 4, 6

Craft v. Kobler, 667 F. Supp. 120 (S.D.N.Y. 1987)...................................................................... 6

Earth Flag Ltd. v. Alamo Flag Co., 154 F.Supp.2d 663 (S.D.N.Y. 2001)................................... 20

Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 105 S.Ct. 2218,
85 L.Ed.2d 588 (1985)................................................................................................. 6, 8, 9, 12

Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627
(E.D. Pa. 2007)............................................................................................................................ 8

Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104 (2d Cir. 1998)............................................... 11

Lennon v. Premise Media Corp., L.P., 556 F. Supp. 2d 310 (S.D.N.Y. 2008)............................ 6

Lennon v. Seaman, 84 F.Supp.2d 522 (S.D.N.Y. 2000)............................................................. 18

Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)....................... 14

Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116 (2d Cir. 2001).................................. 19

Morris v. Business Concepts, 283 F.3d 502 (2d Cir. 2002)........................................................ 10

National Ass'n of Freelance Photographers v. AP, 1997 U.S. Dist. LEXIS 19568
(S.D.N.Y. 2004)......................................................................................................................... 19

NXIVM Corp. v. Ross Inst., 364 F.3d 471 (2d Cir. 2004),
*cert. denied*, 543 U.S. 1000 (2004)......................................................... 3, 4, 6, 8, 9, 11, 15, 16, 17

NXIVM Corp. v. Ross Inst., 2005 U.S. Dist. LEXIS 44789 (S.D.N.Y. 2005)........................... 20

Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992)........................................................................ 8

Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir. 1987)...................................................... 6

Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49 (2d Cir. 1936)..................................... 12

Shell v. Devries, 2007 WL 324592 (D.Colo. 2007)............................................................. 17 n. 4

Shell v. Devries, 2007 WL 4269047 (10th Cir. 2007),
*cert. denied*, 128 S.Ct. 2434 (2008)................................................................................. 17 n. 4

Singer v. Livoti, 741 F.Supp. 1040 (S.D.N.Y.1990)................................................................. 19

Sony Corp. Am. v. Univ. City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774,
78 L.Ed.2d 574 (1984)............................................................................................................ 4, 16

Tabachnik v. Dorsey, 2005 WL 1668542 (S.D.N.Y. 2005)...................................................... 19

Telerate Systems, Inc. v. Caro, 689 F. Supp. 221 (S.D.N.Y. 1988)........................................... 12

Thompson v. County of Franklin, 15 F.3d 245 (2d Cir. 1994).................................................. 19

Umg Recordings v. Mp3.com, Inc., 92 F. Supp. 2d 349 (S.D.N.Y. 2000)............................... 16

United States v. ASCAP, 599 F. Supp. 2d 415 (S.D.N.Y. 2009)................................................. 6

United States v. Brinkworth, 68 F.3d 633 (2d Cir. 1995).......................................................... 14

United States v. Shenberg, 89 F.3d 1461 (11th Cir. 1996),
*cert. denied*, 519 U.S. 1117 (1997)........................................................................................ 15

Weissmann v. Freeman, 868 F.2d 1313 (2d Cir. 1989)............................................................... 8

Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110
(9th Cir. 2000)...................................................................................................................... 8 n. 2

**Statutes & Rules**

17 U.S.C. § 410(d)................................................................................................................. 18

17 U.S.C. § 504(b)............................................................................................................... 1, 19

17 U.S.C. § 504(c)........................................................................................... 3

28 U.S.C. § 144............................................................................................. 4, 14

28 U.S.C. § 455............................................................................................. 4, 14

**Other**

H.R. Rep. No. 1453, 93d Cong., 2d Sess., 1974 U.S.C.C.A.N. 6351......................................... 14

McLaughlin, Weinstein's Federal Evidence, 2d ed., Matthew Bender.................................. 5, 15

M. Nimmer & D. Nimmer, Nimmer on Copyright, Matthew Bender (2008)............................ 18

Patry, Patry on Copyright, 2009 ed., Thomson-West........................................................ 10, 12

Siegel, N.Y. Practice, 4th ed., Thomson-West............................................................... 13

Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law:  1965 Revision Bill, 89th Cong., 1st Sess. 20-21 (House Comm. Print 1965).... 10

Webster's Third New International Dictionary (1971)........................................................ 8 n. 2

Weinstein, N.Y. Civil Practice CPLR, 2nd ed., LexisNexis................................................. 13

## STATEMENT OF FACTS

The plaintiff created in tangible form six essays: <u>A Different Time</u>, <u>Fear Corrupts</u>, <u>Two Sides</u>, <u>Invisible Weapon</u>, <u>Do Men Cause Wars</u>, <u>Some Differences: Men v. Girls</u>. (Den Hollander Decl. ¶ 2).

At some unspecified time and from some unspecified source, defendant Steinberg copied all six essays and distributed them to defendant Swindells-Donovan. (Den Hollander Decl. ¶ 9). The copying and distribution was without the plaintiff's authorization. (Den Hollander Decl. ¶ 10). It is unknown to the plaintiff whether Steinberg received some form of compensation for the essays from Swindells-Donovan. (Den Hollander Decl. ¶ 9).

On October 24, 2007, defendant Swindells-Donovan filed papers in the men's rights case <u>Den Hollander v. Copacabana</u> <u>et al.</u>, No. 07 CV 05873 (580 F.Supp.2d 335 S.D.N.Y.), referred to as the "Ladies' Nights" lawsuit.[1] Swindells-Donovan's papers contained as an exhibit the six essays. (Den Hollander Decl. ¶ 11). The papers were opposing a motion by the plaintiff to recuse the Judge in the "Ladies' Nights" lawsuit for the <u>appearance</u> of bias against the putative plaintiff class of men. (Den Hollander Decl. ¶¶ 11, 13). The only essay registered with the Copyright Office on October 24th was <u>A Different Time</u>, which was part of a larger provisional work <u>Stupid Frigging Fool</u>. (Den Hollander Decl. ¶ 4). The other five essays had already been fixed in a tangible form; therefore, protected under the Act, but <u>not</u> eligible for statutory damages. Swindells-Donovan's infringement of the other five essays, however, makes her liable for a portion of her profits attributable to the infringement. 17 U.S.C. § 504(b). In preparing and

---

[1] Various nightclubs in New York City charge males more for admission than females on certain nights referred to as "Ladies' Nights." The case challenged this practice as an unconstitutional discrimination against men in violation of the Equal Protection clause of the 14th Amendment. The case is now on appeal in the Second Circuit, 08-5547-cv.

filing her papers, defendant Swindells-Donovan, without authorization from the plaintiff (Den Hollander Decl. ¶ 12)

(1) made copies of <u>A Different Time</u> and the other five essays;

(2) made the essays available to the public on the Internet for a price through the U.S. Courts' Public Access to Court Electronic Records ("PACER"); and

(3) put the essays on display, since the general public can view the essays by either requesting the files in the case or using the PACER website.

Defendant Steinberg, following the effective dates of copyright registration of all six essays (Den Hollander Decl. ¶¶ 4-7), filed them in two separate state cases in two different courts:  (1) on December 19, 2007 in a defamation action in the New York County Civil Court in which Steinberg, a defendant, opposed a motion to amend the complaint and (2) on March 11, 2008 in a noise nuisance action in which Steinberg, acting as an attorney, opposed a motion for default judgment in the New York County Supreme Court.  (Den Hollander Decl. ¶¶ 19, 21).  In order to prepare and file his papers in both cases, defendant Steinberg, without the plaintiff's authorization (Den Hollander Decl. ¶ 20)

(1) made copies of the six essays;

(2) distributed the six essays by handing them over to the two courts;

(3) made the six essays available to the public for a price, since they were entered into the public record systems of both courts from which the general public can make copies for a fee; and

(4) put the six essays on display, since the general public can view the essays by requesting the files in either case.

Defendant Steinberg has so far not submitted any papers other than a one-page letter to Judge Block, <u>Exhibit I</u>, even though he used all six essays without authorization after they were registered with the Copyright Office, which means statutory and enhanced statutory damages for willful infringement apply under 17 U.S.C. § 504(c).

## ARGUMENTS

The arguments presented here supplement the plaintiff's arguments in his opposition papers to the defendants' motion to dismiss under Rule 12(b), which was converted into a motion for summary judgment by Senior Judge Block.

The following fair use argument focuses on the Second Circuit's requirements set out in cases such as <u>NXIVM Corp. v. Ross Inst.</u>, 364 F.3d 471 (2d Cir. 2004), *cert, denied*, 543 U.S. 1000 (2004).

**I. The doctrine of "Fair Use" does not apply to the defendants placing six unpublished, copyrighted works on the World Wide Web and making them publicly available through the records departments of three different courts by submitting the works in three different judicial proceedings where the works were not relevant to the issues for which they were submitted.**

**Fair use purpose**

> "I do not suggest, of course, that every productive use is a fair use. A finding of fair use still must depend on the facts of the individual case …. The fair use doctrine must strike a balance between the dual risks created by the copyright system: on the one hand, that depriving authors of their monopoly will reduce their incentive to create, and, on the other, that granting authors a complete monopoly will reduce the creative ability of others. The inquiry is necessarily a flexible one, and the endless variety of situations that may arise precludes the formulation of exact rules. But when a user reproduces an entire work and uses it for its original purpose, with no added benefit to the public, the doctrine of fair use usually does not apply. There is then no need whatsoever to provide the ordinary user with a fair use subsidy at the author's expense."

<u>Sony Corp. Am. v. Univ. City Studios, Inc</u>., 464 U.S. 417, 479, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)(Blackmun, J., dissenting).

**Fair use factors**

Factor 1.  The "purpose and character" inquiry

      *a.  Defendants' use was not transformative*

In determining whether a defendant has met its burden of proof on Factor 1 of the fair use

defense, the courts look to see

> "whether the new work merely 'supersedes the objects' of the original creation, or
> instead adds something new, with a further purpose or different character, altering
> the first with new expression, meaning, or message …, in other words, whether
> and to what extent the new work is 'transformative.'"

NXIVM Corp., 364 F.3d 471, 477 (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569,

579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994)).  Where a defendant's use fails to alter an original

work's expression, meaning or message and is unauthorized, Factor 1 will likely weigh in favor

of the plaintiff.  NXIVM, 364 F.3d at 478-79.

Defendants Swindells-Donovan and Steinberg did not add any new creativity by filing

the essays with three different courts.  They did not alter the essays expressions, meanings or

messages.  They did not create new intellectual works.  The defendants' remarks referencing the

essays do not even comment or critique the essays but rather criticize the plaintiff personally for

his "bias against females," his "misogyny," and innuendos of "rape" and "murder [of females]."

(Den Hollander Decl. Ex. E ¶ 11, Ex. I ¶ 14, Ex. J ¶ 12).

The issue of whether a secondary use is transformative often involves a scholarly

critique or parody of the original work.  A.V. v. iParadigms, LLC, 562 F.3d 630, 643 (4th Cir.

2009)(citation omitted).  The defendants did not critique or parody the essays; they just

demonized the author—the plaintiff.

In the recusal motion, the issue was not whether anyone in the courtroom was biased, but

whether the Judge had exhibited an appearance of not acting fairly towards the putative class of

men under 28 U.S.C. § 144 and 28 U.S.C. § 455.  The plaintiff's recusal motion alleged that the

Judge's actions during a pre-motion conference created an appearance of bias toward the

putative class of men—not as Swindells-Donovan keeps falsely saying that the plaintiff alleged

the Judge was actually sexually biased.  (Den Hollander Decl. ¶ 13).

Even assuming that the essays prove the plaintiff is biased against females, the essays

relevance depends on whether they tend to prove or disprove that the Judge's actions at the

conference created an appearance of bias.  McLaughlin, Weinstein's Federal Evidence, §

401.02(2), 2d ed.  The essays do no such thing.  They were written before the conference, so

they could not possibly tend to show or not show that the Judge's action's at that conference

amounted to an appearance of bias.  As far as Steinberg's use of the essays, they were not

submitted on motions to recuse for the appearance of sexual bias but on motions to amend a

complaint and for a default judgment involving him and one of his male clients.

The defendants' efforts in using the essays were neither new nor creative—either

politically or under the copyright law.  They merely used the plaintiff's words against him—

something lawyers always do.  The defendants' tactics were obvious—use a party's

nonconformist statements, which are not relevant to the issues involved, in an attempt to (1)

sway a court against him, or (2) make his efforts at fighting for his rights so uncomfortable that

he will give up.  It is simply the strategy that he's a bad person, so rule against him, or maybe

enough social opprobrium will cause him to go away.  If this were the 1950s, the defendants

would be calling the plaintiff a communist rather than a misogynist and try to use his writings to

black-list him before the courts and the public.  If such litigation tactics are written into the law,

they will chill the future creation of new and nonconformist works of creativity.

The Second Circuit Court in <u>Bill Graham Archives v. Dorling Kindersley Ltd.</u>, 448 F.3d 605 (2d Cir. 2006), considered in the determination of whether a defendant's use was transformative the "percentage the allegedly infringing work comprises of the copyrighted work;" that is, the amount of the copyrighted material used is the numerator, but the denominator is the size of a defendant's secondary work.  <u>Id.</u> at 611 (followed in <u>United States v. ASCAP</u>, 599 F. Supp. 2d 415, 425 (S.D.N.Y. 2009); <u>Lennon v. Premise Media Corp., L.P.</u>, 556 F. Supp. 2d 310, 324 (S.D.N.Y. 2008)).  The <u>Bill Graham Archives</u> Court noted <u>NXIVM Corp.</u> for the proposition that in determining Factor 3, "amount and substantiality," the percentage of the copyrighted work actually used is considered and not the amount used as compared to the infringing work as earlier courts had done, *e.g.* <u>Salinger v. Random House, Inc.</u>, 811 F.2d 90, 98-99 (2d Cir. 1987); *see* <u>Craft v. Kobler</u>, 667 F. Supp. 120, 129 (S.D.N.Y. 1987). The Court in <u>Bill Graham Archives</u>, however, transferred to Factor 1 the previous Factor 3 consideration of the amount that copyrighted material bears to the infringer's entire work.  <u>Bill Graham Archives</u>, 448 F.3d at 611.

The Second Circuit's analysis in <u>Bill Graham Archives</u>, while different than <u>NXIVM Corp.</u>, follows the Supreme Court's ruling that extensive copying by an infringer

> "may reveal a dearth of transformative character or purpose under the first factor, or a greater likelihood of market harm under the fourth; a work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original."

<u>Campbell v. Acuff-Rose Music</u>, 510 U.S. 569, 587-88 (1994).

In <u>Harper & Row, Publrs. v. Nation Enters.</u>, 471 U.S. 539, 565-66, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) the Supreme Court found that 13% of the infringer's magazine article consisted of the copyrighted work, which weighted against a finding of fair use.  In <u>Salinger</u> 811 F.2d 90, 98-99, the Second Circuit found that copyrighted material appeared on approximately

40% of the infringer's book, which weighed against a finding of fair use.  Both courts found that fair use did not apply.

Swindells-Donovan's opposition to the plaintiff's recusal motion, including memorandum, declaration and exhibits, consists of 14 double-spaced pages and six (6) single-spaced pages that are the essays.  Since one single-spaced page generally equals two (2) double-spaced pages, Swindells-Donovan's recusal opposition actually consists of 13 single-spaced pages of which six (6), or 46%, are the plaintiff's copyrighted works.

Steinberg's opposition to the motion to amend a complaint in N.Y. Civil Court comprises 13 double-spaced pages plus six (6) single-spaced pages that are the essays, so Steinberg's entire work equals 13.5 single-spaced pages.  That means 44% of Steinberg's opposition are the essays.  His opposition to the motion for default in the N.Y. Supreme Court consists of 24 double-spaced pages plus 15 single-spaced pages, which includes the six (6) pages of essays.  That entire work of Steinberg's equals 27 single-spaced pages; therefore, 22% of it is the essays.

Swindells-Donovan's 46% usage and Steinberg's 44% and 22% usage of the plaintiff's unpublished works weighs against fair use under this part of the transformative analysis used by the Second Circuit in Bill Graham Archives.

   b. *Defendants use marked by bad faith*

Another integral part of the analysis under Factor 1 is whether defendants "knew that [their] access to the manuscript[s] [were] unauthorized."  NXIVM Corp., 364 F.3d at 478.  The defendants admit they knew the plaintiff had authored the six essays.  (Den Hollander Decl. ¶¶ 17, 23).  They had reason to believe the essays were copyrighted under the Copyright Act, since four of the essays carry the mark "©".  (Den Hollander Decl. ¶ 25).  And they knew the plaintiff

did not authorize their use of the essays.  (Den Hollander Decl. ¶¶ 10, 12, 20).  The defendants, therefore, acted willfully and improperly without good faith or fair dealing.  Harper & Row, Publrs., 471 U.S. at 562-63 (fair use presupposes good faith and fair dealing).

       *c. Defendants use commercial*

       In addition to the subfactors that the defendants' uses of the essays did not make some contribution of new intellectual value and were done without good faith or fair dealing, the defendants used the essays in their business enterprises as lawyers.  "The practice of law can be characterized as a profit making venture …."  Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 636 (E.D. Pa. 2007).  "[A] concurrent commercial purpose on a defendant's part" is a subfactor in considering whether a defendant's use is unfair.  NXIVM Corp., 364 F.3d at 477-78.

       Profit-making, or in the alternative commercial use, is not limited to making money.[2] Monetary gain is not the sole criterion for determining a commercial or profitable motive but includes gaining recognition among a person's peers, Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989), and other personal gain from exploitation of the copyrighted material without paying the customary price, Rogers v. Koons, 960 F.2d 301, 309 (2d Cir. 1992)(citation omitted).  Defendant Swindells-Donovan may have taken on the Ladies' Nights case *pro bono*. In such a scenario, her time and effort in chalking up a victory against a "misogynist" lawyer, according to her, would bring her recognition among her feminist peers and other attorneys.  In the more likely scenario, she was well compensated, and her victory increased her marketability.

---

[2] The Ninth Circuit in Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1117 (9th Cir. 2000), used the Webster's Third New International Dictionary (1971) definition of profit as "an advantage, [a] benefit."

Swindells-Donovan's victory was dependent, in part, on her use of the six essays in preventing the recusal of the District Court Judge; otherwise, why oppose the recusal.  Cases are won in incremental steps of which motions are a significant part, so preventing the recusal of the District Court Judge aided Swindells-Donovan's victory.  The essays, therefore, were used for a profitable, or commercial, purpose because they aided her in winning the case.

Steinberg is also an attorney by profession, and he used the copyrighted essays to try to prevent a motion to amend a defamation complaint in a case in which he is a defendant.  That case is still pending and a lost by Steinberg will cost him money.  In the other case, Steinberg is acting solely as an attorney, and his use of the essays were made in his successful opposition to the plaintiff's default motion.  Once again, any victory increases an attorney's prestige among his peers and, therefore, falls within the profit or commercial purpose subfactor.

Factor 2.  The "nature of the copyrighted work" inquiry

"The fact that a work is unpublished is a critical element in its 'nature,'" and "the scope of fair use is narrower with respect to unpublished works," NXIVM Corp., 364 F.3d at 480 (citing *see* Harper & Row, 471 U.S. at 564).  As argued in the plaintiff's Opposition Memorandum to Defendants' Motion to Dismiss under Rule 12(b), there exists a novel question of whether the temporary display of the six essays on a website constitutes publication, assuming that's where defendant Steinberg obtained the essays.  (Plaintiff Opp. pp 5 - 9).  The numerous authorities cited by the plaintiff indicate such a display is not a publication, or at least an unresolved question in the law.  Swindells-Donovan, however, cavalierly dismisses these traditional authorities for determining a legal question.  She ignores the value of legislative history, law review articles, treatises, international conventions, and even brushes aside case law concerning not just the Internet but analogous electronic transmissions of copyrighted material.

Defendant Swindells-Donovan misleadingly claims that <u>Agee v. Paramount Communs.</u>, 59 F.3d 317 (2d Cir. 1995), found no distribution of a work, which is a requirement for publication under 17 U.S.C. 101, because the transmission of the work was "transitory" in that it was transmitted by television which made the work available for a shorter period of time than one transmitted over the Internet.  The Court in <u>Agee</u> did not use the word "transitory" in that manner.  It used "transitory" to describe the TV transmission of the work as contrasted with a transmission that transfers a "material object" or "copy" of the work.  <u>Agee</u> at 325.  The Court's ruling was <u>not</u> based on the amount of time that a work is displayed as Swindells-Donovan claims.  The Court held that because a "material object" or "copy" of the work was <u>not</u> transferred to the public, there was no distribution.  <u>Id.</u>  Where there is no distribution, there cannot be any publication under 17 U.S.C. 101.

In an odd objection, Swindells-Donovan claims the use of any authorities dated before the existence of the Internet have little or no value.  If that were so, all law would be handicapped by an inability to extrapolate and grow.  Besides, the Copyright Office and Congress recognized as early as 1965 that satellites and other means would link computers allowing people worldwide access to works by electronic images.  <u>Patry on Copyright</u> at § 15.2 (extensively quoting from Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law:  1965 Revision Bill, 89th Cong., 1st Sess. 20-21 (House Comm. Print 1965)).

Swindells-Donovan also argues that the use of Copyright Office Circulars to resolve new copyright issues is misplaced.  She finds her authority by selectively quoting from <u>Morris v. Business Concepts</u>, 283 F.3d 502, 505 (2d Cir. 2002), but ignoring that <u>Morris</u> actually found a

Copyright Office Circular persuasive and ruled consistent with that circular's interpretation of a novel copyright question.

Factor 3.  The "amount and substantiality" inquiry

Where a defendant uses a significant percentage of the material in a copyrighted work or the "heart" of the work, then this third factor favors the plaintiff.  NXIVM, 364 F.3d at 480.  The Second Circuit also considers "whether the quantity of the material used was reasonable in relation to the purpose of the copying."  Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 926 (2d Cir. 1994)(internal quotation marks omitted).

  a.  *Percentage of material used.*

In general, fair use does not exist when the entire work is reproduced.  *See* Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 109 (2d Cir. 1998).  Defendants Swindells-Donovan and Steinberg used 100% of five works by the plaintiff:  Fear Corrupts, Two Sides, Invisible Weapon, Do Men Cause Wars, Some Differences: Men v. Girls.

  b.  *Heart of a work*

A Different Time was copyrighted as part of a draft of a larger provisional work by the plaintiff called Stupid Frigging Fool.  (Den Hollander Decl. ¶ 4).  In July and August 2007, media coverage of the plaintiff and his Ladies' Nights lawsuit made him a public figure.  (Den Hollander Decl. ¶ 26).  At the time of the defendants' verbatim use of the plaintiff's expression in A Different Time—October and December 2007 and March 2008, the public interest that existed in the work Stupid Frigging Fool was the plaintiff's views on the inequities that males incur in this society that favors females.  Those views are the core of the provisional work Stupid Frigging Fool as the text of A Different Time makes evident:

  "A propeller driven plane drones somewhere overhead far out of sight.  Its low
  monotone humming envelops a warm, spring Sunday afternoon somewhere in the

1950s.  I sit on my 24 inch, black, single-gear Schwinn bicycle, keeping my balance by holding onto the door handle of an old, blue, four-door 1947 Dodge.

My consciousness pauses at the moment, feeling vaguely sad for no discernible reason.  The week's events ended with this gift of nothing to do:  no homework, no television shows, no new housing developments to explore or classmates able to come out and play.

The dead-end street needs a new asphalt topping.  Where I am balance on the side, the asphalt has broken up into small gravel-like stones with an isolated weed sprouting up here and there.  It is still early spring, the lawns are just beginning to turn green and the tulips and dogwood buds remain closed, waiting for a few consecutive days of warm weather.  The air smells fresh, warmed slightly by a gentle breeze.

The droning airplane fills the vacuum of silence on this street with modest middle-class houses in this small suburban town, whose claim to fame will not come until the end of the next decade.  Of all the towns in America, this town will have the second highest number of persons per capita to die in Vietnam—all of them men, of course, and all of them guys I knew."

Numerous courts have rejected fair use claims when a defendant copied a small but qualitatively important part of a work, such as its heart.  Patry on Copyright, § 10:141 n. 8. Infringement was found when a few pages out of a 20,000 page database were used, Telerate Systems, Inc. v. Caro, 689 F. Supp. 221, 229 (S.D.N.Y. 1988), and 300 words from a manuscript of 200,000 words, Harper & Row, Publrs., 471 U.S. 539, 564-65.  Swindells-Donovan and Steinberg used the expression of A Different Time in its entirety, which comprises 240 words out of a draft manuscript of around 250,000 words.  (Den Hollander Decl. ¶ 4).  As Judge Learned Hand remarked, "no plagiarist can excuse the wrong by showing how much of [her] work [she] did not pirate."  Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936).

        *c.  Quantity of material used in relation to defendants' purpose.*

The amount of copying allowed depends on whether the quantity and value taken is reasonable or justified in relation to the purpose of the copying.  Blanch v. Koons, 467 F.3d 244, 257 (2d Cir. 2006)(citation omitted).

Defendant Steinberg's purpose was to prevent the amendment of a complaint in a state defamation action and avoid a default judgment in a state private nuisance action. (Den Hollander Decl. ¶¶ 19, 21).

The issue a New York State court considers on whether to include additional or subsequent occurrences in any complaint is whether the inclusion prejudices the opposing party. Siegel, <u>N.Y. Practice</u>, § 237, 4th ed. Steinberg did not submit the essays to show that the amending of the defamation complaint prejudiced him and his male client but to attempt to prejudice the state court against the plaintiff.

The issues on a motion for default due to law office failure is whether the opposing party raises a meritorious defense and sets forth a reasonable excuse for its default. Weinstein, <u>N.Y. Civil Practice CPLR</u>, ¶ 2005.02(2). Steinberg raised the alleged defense that the private nuisance action against his male client was harassment and used a somewhat strained law office failure excuse for filing an answer eight months late. The essays submitted by Steinberg have nothing to do with tending to prove or disprove the allegation of harassment against Steinberg's male client. The essays do not mention or even refer in an oblique manner to Steinberg's client. The essays also have nothing to do with tending to prove or disprove that Steinberg's law office failure was reasonable. The essays do not deal with the functioning of Steinberg's office or his effectiveness in communicating with his clients.

In opposing a motion to amend a complaint and one for default judgment, there was no conceivable need to submit the entire text of five copyrighted works and a portion of another that had nothing to do with the facts in either motion.

Defendant Swindells-Donovan used the copyrighted material in a motion to oppose recusal. The issue was not whether the Judge was biased against the putative class of men, nor

whether one of the parties was biased toward females.  The only issue was whether the Judge had exhibited an <u>appearance</u> of not acting fairly towards the plaintiff class under 28 U.S.C. § 144 and 28 U.S.C. § 455.  The purposes behind §§ 144 and 455 are to promote public confidence in the judicial process; therefore, the question is not whether a judge is actually biased, prejudiced, or partial toward a party, but whether the Judge's actions create an appearance of such.  <u>Liteky v. United States</u>, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); <u>United States v. Brinkworth</u>, 68 F.3d 633, 637 (2d Cir. 1995)(citing <u>H.R. Rep. No. 1453</u>, 93d Cong., 2d Sess., 1974 U.S.C.C.A.N. 6351, 6355).

The Judge decided not to recuse herself, and in her opinion dismissing the case held "[t]he essays submitted by Lotus [Swindells-Donovan's client] as exhibits in opposition to Den Hollander's motion for recusal are irrelevant to this case, and any claim that Den Hollander may seek to pursue in relation to the submission of those essays is beyond the scope of this action." (Den Hollander Decl. ¶ 14).  Swindells-Donovan disingenuously tries to claim that the recusal action was not part of the case before the Judge.  But of course it was because the Judge made a decision on the matter as part of the overall proceeding.  So, logically, the Judge's reference to "case" includes the recusal proceeding.

Defendant Swindells-Donovan herself, in commenting on a letter the plaintiff sent the Judge concerning the essays, admitted the letter's subject matter was "completely irrelevant to any existing issue in the case...."  (Den Hollander Decl. ¶ 15).  The interesting fact question is whether at the time Swindells-Donovan sent the letter, she was aware of the Judge's decision to deny the recusal motion.  If not, then Swindells-Donovan still believed the recusal issues were "existing issue[s]" in the case and the essays were irrelevant to those existing issues.

14

Regardless of how Swindells-Donovan's *mens rea* pans out, the essays do not serve the purpose of tending to prove or disprove that the Judge's actions at a pre-motion conference infer an appearance of bias against the putative class of men.  The essays do not deal with that conference or what took place there—other writings of the plaintiff, which are not the subject of this action, however, do.  As such, there was no need for Swindells-Donovan to place on the PACER website the entire text of five copyrighted works and a portion of another.[3]

Factor 4.  The "market" inquiry

The focus in the "market" inquiry is whether the defendants by placing the essays on the PACER website and in the public records of three courts—two state and one federal, usurped the market of the original works.  NXIVM Corp., 364 F.3d at 482.

This Court may take judicial notice that once I became a public figure through media coverage of the Ladies' Nights case, which involved the hot-button issue of sexual discrimination, the value of the six essays to the public increased.  (Den Hollander Decl. ¶¶ 26, 27).  A district court can properly take judicial notice of the public reaction to a court case and consider it in making its decision.  United States v. Shenberg, 89 F.3d 1461, 1476-77 (11th Cir. 1996), *cert. denied*, 519 U.S. 1117 (1997)(systematic corruption in high state court caused actual loss of public confidence in the government)**.**

Courts may also recognize current political conditions.  McLaughlin, Weinstein's Federal Evidence, § 201.12(6), 2d ed.  In the never-ending culture wars where the personal is political,

---

[3] Defendant Swindells-Donovan complains that the plaintiff's submission of evidence as to Defendant Steinberg's willingness to cheat on his taxes and perhaps lie to the N.Y. State Bar has nothing to do with this case—that the Tax Warrants against Steinberg and other submitted evidence are irrelevant.  That is not necessarily so.  The evidence provides an illustrative example of what the defendants did in submitting the plaintiff's six essays in three different cases where the essays had nothing to do with those cases.  In addition, Swindells-Donovan's objection to the Tax Warrants and other evidence reveals the hypocrisy of the defendants' position, which was the purpose in submitting the evidence about Steinberg in the first place.  Under the defendants' reasoning, when an opponent submits extraneous documents, he operates far outside the bounds of objectively reasonable litigation.  But when they do it—it is okay.

the *ad hominem* criticisms directed by the politically correct against a specific person for

"misogyny," and innuendos of "rape" and "murder [of females]" actually increase the

marketability for that individual's expressions because it publicizes him as a controversial figure.

(Den Hollander Decl. Exhibit E ¶ 11, Exhibit I  ¶ 14, Exhibit J ¶ 12).  Unlike in NXIVM Corp.,

364 F.3d at 482, the defendants' *ad hominem* attacks on the plaintiff did not harm the market for

the essays but rather improved it.  It was their making those essays available through less

expensive ways that harmed the plaintiff's ability to profit from the improved marketability.

When the plaintiff became a public figure, he intended to profit from the increase value

of the essays by selling them through a website or licensing them to men's rights groups.  (Den

Hollander Decl. ¶ 27).  At that time, the essays were not available to the public.  (Den Hollander

Decl. ¶ 27).  The defendants, however, undercut the value to the plaintiff of that potential market

by making the text of the essays available to the general public at a cost of $.08 a page from

PACER, $.35 from U.S. Southern District Court, and $.35 from N.Y. State Court records.  When

the unauthorized use becomes widespread, it adversely affects the potential market for a work.

*See* Sony Corp. of Am., 464 U.S. 417, 451.  The defendants' unauthorized use placed the essays

on the World Wide Web—cannot get much more widespread than that.

The potential loss of revenue in markets that an author was reasonably able to develop

and exploit or license others to do so weighs against fair use, Am. Geophysical Union, 60 F.3d

913, 930, and it does not matter if the copyright holder has not yet entered a potential market,

Umg Recordings v. Mp3.com, Inc., 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000).  Before the

plaintiff was able to enter the market to take advantage of his new status, the defendants made

the essays available to the general public within three months of the media coverage on the

Ladies' Nights case.  People interested in these six essays by a person billed in the N.Y. Times

as an "antifeminist lawyer" were not about to pay dollars for them when thanks to the defendants the essays were available for pennies.

5.  Summary

All the above factors need to be weighed with none dominating the determination of whether fair use exists.  NXIVM Corp., 364 F.3d at 482.

The defendants—without authorization—intentionally copied, distributed, made available to the public, and caused to be displayed the copyrighted six essays in efforts to influence three different courts into making decisions based on a party's political and social beliefs rather than on the facts in issue, and to use social opprobrium to intimidate that party into relinquishing his legal rights to prosecute three cases.  If fair use permits such tactics, it will seriously deter the creativity protected by the Copyright Act.[4]

## II.  The Court's subject matter jurisdiction depends on the works being registered, not the Certificates of Registration being mailed to the plaintiff.

Defendant Swindells-Donovan claims the registration of a work, and therefore a court's subject matter jurisdiction, depends on the Copyright Office mailing the actual certificates, which means issuing them.  The Copyright act, however, states:

"The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a

---

[4] When the plaintiff's opposition to the defendants' motions to dismiss under Rule 12(b)(6) was filed, neither the plaintiff nor the defendants had found authority for deciding fair use without an analysis of the facts because fair use is a fact driven inquiry.  The defendants questioned the veracity of that statement, but to do so, they prevaricated. The District Court in Shell v. Devries, 2007 WL 324592 at *1 (D.Colo. 2007) specifically stated its finding of fair use was based, in part, on the Magistrate's "findings of fact."  On appeal, the Tenth Circuit specifically referred to Shell as a motion for judgment on the pleadings that "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved," which the Circuit found the moving party had done.  Shell v. Devries, 2007 WL 4269047 *1 (10th Cir. 2007), cert. denied, 128 S.Ct. 2434 (2008).  The defendants subsequently ferreted out a fair use decision on a motion for failure to state a cause of action.  Burnett v. Twentieth Century Fox Film Corp., 491 F.Supp.2d 962 (C.D.Cal. 2007).  That court, however, relied on documents referenced in the complaint.  Id. at 966.  So wherever the defendants search and however they describe their findings, it still comes back to fair use as a fact driven analysis.

court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office."   17 U.S.C. § 410(d)

The plaintiff has shown that the copyright applications for the two essays <u>Fear Corrupts</u> and <u>Two Sides</u> were filed and, according to the Copyright Office, accepted, and that the Office's website lists the two essays as being registered effective November 13, 2007.  (Den Hollander Decl. ¶ 5).  Defendants, however, claim the actual certificates must first be mailed by the Copyright Office for this Court to have jurisdiction concerning the two essays.

Such a position creates a Catch-22 when factoring in the statute of limitations of three years for infringement.  The alleged infringements of those two essays were discovered approximately two years ago and 1.75 years ago.  (Den Hollander Decl. ¶¶ 11, 19, 21).  Given the Copyright Office's backlog—it receives an estimated 12,000 works a day—the certificates may not be issued until after the three years has expired; thereby, barring any infringement claim not because the plaintiff sat on his rights but because the Copyright Office sat on his essays.

The defendants' position also concomitantly raises the open question as to whether subject matter jurisdiction exists when a copyright application is still pending.  An application would be pending right up until issuance of a certificate, according to the defendants' position. Authorities in the Southern District are clearly in conflict as to whether just the filing of an application grants jurisdiction or the Copyright Office must actually mail out, or issue, a certificate.  "[I]f an application for copyright registration has been filed, jurisdiction exists while the application is pending."  <u>Lennon v. Seaman</u>, 84 F.Supp.2d 522, 524 (S.D.N.Y. 2000).  The treatise <u>Nimmer on Copyright</u> supports this position:  "application for registration [is] the condition to filing an infringement action whereas issuance of a registration certificate is a condition to statutory damages…."  M. Nimmer & D. Nimmer, <u>Nimmer on Copyright</u>, §

18

7.16(B)(1)(a)(i), Matthew Bender (2008).  Cases, such as <u>National Ass'n of Freelance</u>

<u>Photographers v. AP</u>, 1997 U.S. Dist. LEXIS 19568 *39 (S.D.N.Y.2004), however, require

issuance, the actual mailing of a certificate, before an infringement action can be brought.

Regardless of where the Southern District Court finally comes down on whether

jurisdiction is satisfied by just filing an application or the Copyright Office must first issue a

certificate, any dismissal for lack of subject matter jurisdiction has no claim preclusive or *res*

*judicata* effect.  <u>Thompson v. County of Franklin</u>, 15 F.3d 245, 253 (2d Cir. 1994); <u>Tabachnik v.</u>

<u>Dorsey</u>, 2005 WL 1668542 at *4 (S.D.N.Y. 2005); <u>Singer v. Livoti</u>, 741 F.Supp. 1040, 1044

(S.D.N.Y.1990).  So if the claims of infringement concerning the essays <u>Fear Corrupts</u> and <u>Two</u>

<u>Sides</u> are dismissed for lack of jurisdiction because the certificates have not been issued, the

plaintiff will still be able to re-instituted those claims once the certificates are mailed—assuming

the statute of limitations allows.

## RELIEF

The plaintiff refers to his argument for relief in his Opposition Memorandum to

Defendants' Motion to Dismiss under Rule 12(b) at pp. 24-25, which includes statutory and

enhanced statutory damages against the defendants, and, in the alternative under 17 U.S.C. §

504(b), a portion of the profits the defendants earned from their cases by infringing the essays.

The amounts by which the defendants profited are peculiarly within their knowledge, and,

without limited discovery, the plaintiff has no way of determining those amounts.

## ATTORNEY'S FEES

The Second Circuit has held that "objective reasonableness is a factor that should be

given substantial weight in determining whether an award of attorney's fees is warranted."

<u>Matthew Bender & Co. v. West Publ'g Co.</u>, 240 F.3d 116, 122 (2d Cir. 2001).  Reasonableness in

bringing an action includes whether the case involves novel or close questions that clarify the boundaries of copyright law.  Earth Flag Ltd. v. Alamo Flag Co., 154 F.Supp.2d 663, 666 (S.D.N.Y. 2001)(plaintiff's flag contained only public domain material; therefore, copyright suit unreasonable).  This action has presented three novel questions:

1.  Is the display of a work on the Internet publication?

2.  Does fair use require that copyrighted works submitted in judicial proceedings be relevant to the issues of those proceedings?

3.  Does registration of a work, as opposed to the mailing of a certificate, determine whether a court has jurisdiction over an infringement action?

The plaintiff initiated this action only after the defendants copied, distributed, and displayed six copyrighted essays of his in three different courts and three distinct cases in which those essays were not relevant to the issues for which they were submitted.[5]  When the initial infringement occurred in the Ladies' Nights case, the plaintiff requested that Court to "instruct attorney Donovan to reveal how, when, and, if applicable, from whom she acquired the essays." (Den Hollander Decl. ¶ 15).  The Court, however, ruled that "any claim that Den Hollander may seek to pursue in relation to the submission of those essays is beyond the scope of this action." (Den Hollander Decl. ¶ 14).  So, the plaintiff filed this action for infringement and to prevent the further unauthorized use of the essays by the defendants, which it has so far succeeded in doing.

**CONCLUSION**

The purpose of the Copyright Act is to encourage creativity by securing the profits of such to the author.  NXIVM Corp. v. Ross Inst., 2005 U.S. Dist. LEXIS 44789 *14 n. 11 (S.D.N.Y. 2005).  Allowing others to make copyrighted material available to the general public through the courts when that material has nothing to do with the issues before those courts will

---

[5] In two of the cases all the essays had already been registered and in the other, the Ladies' Nights action, one of the essays was registered as part of a larger work.

stifle creativity because authors will know that the benefits of any and all of their creative

endeavors may be dissipated by the appearance of their works on a court's website and in a

court's files.

WHEREFORE, the plaintiff requests his cross motion for summary judgment be granted.


Dated: December 12, 2009
       New York, N.Y.                                    /S/
                                              _____
                                              Roy Den Hollander, Esq.
                                              Attorney and plaintiff
                                              545 East 14 Street, 10D
                                              New York, N.Y. 10009
                                              (917) 687-0652

21