UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------
ROY DEN HOLLANDER,
                          Plaintiff,

                                                               Case No. 08-cv-4045(FB)(ECF)

        v.

DEBORAH SWINDELLS-DONOVAN,
PAUL W. STEINBERG, and
JANE DOE,
                          Defendants.
-----------------------------------------------------

## DECLARATION OF PLAINTIFF ROY DEN HOLLANDER

       Roy Den Hollander, the plaintiff, and an attorney admitted to practice in this Court, affirms the following under the penalty of perjury:

       1.       I am fully familiar with and have personal knowledge of the facts set forth in this declaration.

       2.       I created six essays ("six essays") in a tangible form prior to the defendants' use of them.  The essays are <u>A Different Time</u>, <u>Fear Corrupts</u>, <u>Two Sides</u>, <u>Invisible Weapon</u>, <u>Do Men Cause Wars</u>, <u>Some Differences: Men v. Girls</u>.  (<u>Exhibit A</u>).

       3.       Since the creation of the six essays, I have been the sole owner of all rights in them under the Copyright Act of 1976.

       4.       I subsequently included the essay <u>A Different Time</u> as part of a draft of a larger work that has not yet been finalized called <u>Stupid Frigging Fool</u> in Part 3 at pp. 48-49, which was registered with the U.S. Copyright Office on April 20, 2002, TXu001053401.  (<u>Exhibit B</u>, record of registration from Copyright Office website).  <u>A Different Time</u> is 240 words out of a draft manuscript of around 250,000 words for <u>Stupid Frigging Fool</u>.

       5.       According to four telephone conversations that I had with the Copyright Office over 2009, the essays <u>Fear Corrupts</u> and <u>Two Sides</u> were, in accordance with its procedures,

accepted for registration on November 13, 2007 and assigned Service Request Numbers ("SRN"): <u>Fear Corrupts</u>, SRN 1-27294448 and <u>Two Sides</u> SRN 1-27294778.  The certificates have not yet been received by me, but as of December 10, 2009, the Office's website, http://www.copyright.gov/, listed the essays as registered with an effective registration date of November 13, 2007.  (<u>Exhibit C</u>, records of registration from Copyright Office website).

6. I had initially mailed the applications for copyright registration for <u>Fear Corrupts</u> and <u>Two Sides</u> to the Copyright Office on November 5, 2007, which were delivered on November 9, 2007.  (<u>Exhibit C</u>, U.S. Postal Receipt for Certified Mail and Confirmation of delivery from Post Office website).

7. The essays <u>Invisible Weapon</u>, <u>Do Men Cause Wars</u>, and <u>Some Differences: Men v. Girls</u> were all registered with the Copyright Office on November 13, 2007.  (<u>Exhibit D</u>, copies of the Certificates of Registration).

8. At some unspecified time, but after all the essays were created in tangible form, which placed them under the protection of the Copyright Act, and after <u>A Different Time</u> was registered as part of the draft work <u>Stupid Frigging Fool</u>, defendant Steinberg, according to his admission, copied all six essays in order to use them and subsequently did use them in an existing defamation case brought by the plaintiff against Steinberg and one of his male clients and in a private nuisance case brought by the plaintiff against one of Steinberg's male clients.

9. Steinberg, according to his admission, knew the essays were authored by me and again copied the essays and distributed them to defendant Swindells-Donovan.  It is unknown to me whether Steinberg received some form of compensation for the essays from Swindells-Donovan.

10. Steinberg's copying and distributing of the essays were not authorized by me.

11. On October 24, 2007, defendant Swindells-Donovan filed virtually identical copies of all six essays on the Electronic Case Filing System ("ECF") of the U.S. District Court for the Southern District of New York as an exhibit in opposition to a recusal motion in the civil rights case, Den Hollander v. Copacabana *et al.*, No. 07 CV 05873, in which defendant Swindells-Donovan represented one of a number of nightclubs that charged males more for admission than females. (SDNY ECF, 1:07-cv-5873, docket text no. 24, Swindells-Donovan Declaration; Exhibit E). The action was dubbed by the media as the "Ladies' Nights" case.

12. Swindells-Donovan reproduced and filed the six essays without authorization from me.

13. The issue I presented on the motion to recuse the Judge in the Ladies' Nights case was whether the Judge under 28 U.S.C. § 144 and 28 U.S.C. § 455 had exhibited an appearance of not acting fairly towards the plaintiff, putative class of men during a pre-motion conference. (SDNY ECF, 1:07-cv-5873, docket text nos. 19-21, 28, 29). The issue was not whether I was biased toward females, which defendant Swindells-Donovan endeavored to show by submitting the six essays, Exhibit E ¶ 11.

14. The Judge denied the motion to recuse and subsequently dismissed the case for lack of state action. In the Judge's dismissal opinion, the Judge said, "[t]he essays submitted by Lotus [Swindells-Donovan's client] as exhibits in opposition to Den Hollander's motion for recusal are irrelevant to this case, and any claim that Den Hollander may seek to pursue in relation to the submission of those essays is beyond the scope of this action." (Exhibit F p. 12, SDNY ECF, 1:07-cv-5873, docket text no. 66).

15. Defendant Swindells-Donovan, in a November 1, 2007 letter to the Southern District Judge, Exhibit G, commented on a letter I had previously sent the Judge concerning the essays in which I requested the Court to "instruct attorney Donovan to reveal how, when, and, if

3

applicable, from whom she acquired the essays." Exhibit H. In her November 1 letter, Swindells-Donovan admitted the subject matter of the plaintiff's letter—the essays—was "completely irrelevant to any existing issue in the case...." The interesting fact question is whether at the time Swindells-Donovan sent the letter, she was aware of the Judge's decision to deny the recusal motion that issued on the same date as Swindells-Donovan's letter of November 1, 2007. If not, then Swindells-Donovan still believed the recusal issues were "existing issue[s]" in the case and, by her own words, the essays were irrelevant to those existing issues.

16. Once the essays were filed on the S.D.N.Y. ECF system, they were available to the public worldwide on the Internet for a price through the U.S. Courts' Public Access to Court Electronic Records ("PACER") at $.08 a page, PACER website: http://pacer.psc.uscourts.gov/, and through the U.S. Southern District Court's Records department for $.35 a page.

17. When Swindells-Donovan filed the six essays, she knew the essays had been created by the me. (SDNY ECF, 1:07-cv-5873, docket text no. 24; Exhibit E ¶ 11).

18. The copies filed by Swindells-Donovan have telltale markings of Â, Є, and ™ in a number of places, Exhibit E, which, other than spacing, are the only differences between Swindells-Donovan's unauthorized copies and the originals created by me, Exhibit A.

19. On December 19, 2007, during a hearing on a motion made by me to amend my defamation complaint against defendant Steinberg, N.Y.C. Civil Court, 021283 CV 06, opposition papers by defendant Steinberg were submitted during the calendar call. Steinberg's papers contained virtually identical copies of the plaintiff's six essays as an exhibit. (Exhibit I, Steinberg's admission in November 11, 2008 letter to Judge Block and certified copies of the pertinent papers with the calendar call number and date at the very top in the darken margin).

20. Steinberg's use of the six essays was not authorized by me.

21. On March 11, 2008, in a motion for a default judgment made by me against one of Steinberg's male clients for failure to timely file an Answer in a private nuisance action in the N.Y. State Supreme Court, 102057-2007, defendant Steinberg, without authorization from me, filed virtually identical copies of the six essays as an exhibit to opposition papers to my motion for a default judgment. (Exhibit J, certified copies of the pertinent papers).

22. Once the essays, which were irrelevant to the issues on the two motions, were filed with the N.Y. Supreme Court and the N.Y.C. Civil Court, they were available to the general public and could be copied at a cost of $.35 a page.

23. When Steinberg, without authorization from me, copied the essays, displayed the essays, and distributed them by filing the essays in two courts, he knew the essays had been created by me. (Exhibit I, Steinberg's admission before the N.Y.C. Civ. Ct. in his Affirmation in Opposition ¶ 12 and Exhibit J, his admission before the N.Y. Sup. Ct. 102057/2007 in his Affirmation in Opposition ¶ 12).

24. The unauthorized copies filed by Steinberg, Exhibits I & J, are identical to those filed by defendant Swindells-Donovan, Exhibit E, right down to the telltale markings: Â, Є, and ™, and the spacing. Those marks and the spacing are the only differences between Steinberg's copies and the originals created by me, Exhibit A.

25. The copies of four of the essays that Swindells-Donovan and Steinberg used carry the copyright mark ©. (Exhibits E, I, J).

26. In July and August 2007, I became a public figure as the result of an article in the New Yorker and appearances on various radio and television shows, such as Nightline. The media coverage concerned the Ladies' Night lawsuit I had brought against various New York City nightclubs for charging males more for admission than females.

5

27. Once I became a public figure, the value of the six essays increased, and I planned to profit on their increased value by setting up a website that would make them available for a price or license them to men's rights groups. At no time after becoming a public figure were the essays available to the public, and even before that, they were only temporarily available.

28. The defendants, however, then posted the essays on the PACER website and filed them in one Federal court and two New York State courts, which prevented me from utilizing their marketability because they were now available for pennies from the World Wide Web and public records.

29. Defendant Swindells-Donovan's attorney stated in her Declaration in Support of Dismissal at ¶ 5, dated March 11, 2009, that she attached the complaint from the Ladies' Night lawsuit as Exhibit 4 to her Declaration. That is false. The original complaint was amended and, therefore, the amended complaint is the complaint for the Ladies' Nights lawsuit. Swindells-Donovan's attorney failed to attach the amended complaint, so I have included it here as <u>Exhibit K</u>.

Dated: December 12, 2009
New York, N.Y.

/S/

_____
Roy Den Hollander, Esq.
Attorney and plaintiff
545 East 14 Street, 10D
New York, N.Y. 10009
(917) 687-0652