UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X     Case No.: 08 CV 04045 (FB)(LB)
ROY DEN HOLLANDER,

                Plaintiff,

      v.

DEBORAH SWINDELLS DONOVAN, PAUL W.
STEINBERG, and JANE DOE,

                Defendants.
-----------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
DEBORAH SWINDELLS DONOVAN'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**


GORDON & REES LLP
ATTORNEYS FOR DEFENDANT DEBORAH SWINDELLS DONOVAN
90 BROAD STREET, 23RD FLOOR
NEW YORK, NEW YORK 10004
(212) 269-5500 (PHONE)
(212) 269-5505 (FAX)

## **TABLE OF CONTENTS**

                                                                                            **Page**

I.    THE ABSENCE OF COPYRIGHT REGISTRATION CERTIFICATES PARTIALLY DIVESTS THIS COURT OF SUBJECT MATTER JURISDICTION ........1

II.   DONOVAN PROVES THAT HER USE OF THE SIX ESSAYS WAS A "FAIR USE" ..................................................................................................................2

      1a.   Donovan used the six essays for criticism and commentary, rendering the use transformative. ..................................................................2

      1b.   Donovan properly procured the six essays, precluding a finding of bad faith. ............................................................................................5

      1c.   Donovan's use of the six essays was non-commercial. .....................6

      2.    The Nature of the Copyrighted Work Favors Application of the Fair Use Doctrine. ...........................................................................................8

      3.    The Amount and Substantiality of the Portion Used At Worst Neither Favors Nor Disfavors Application of the Fair Use Doctrine .............9

      4.    The Effect of the Use Upon the Potential Market For or Value of the Copyrighted Work Favors Application of the Fair Use Doctrine.....10

III.  THE LITIGATION PRIVILEGE ACCORDS DONOVAN ABSOLUTE IMMUNITY.....11

IV.  BECAUSE SUMMARY JUDGMENT SHOULD BE GRANTED IN DONOVAN'S FAVOR, DISCOVERY WOULD BE INAPPROPRIATE ............................................12

V.   DONOVAN IS ENTITLED TO COSTS AND ATTORNEY'S FEES. ........................12

CONCLUSION ..................................................................................................................12

## TABLE OF AUTHORITIES

Page

**Cases**

*A.V. v. iParadigms, LLC*
  562 F.3d 630 (4th Cir. 2009) ........................................................................................... 3
*Arica Inst. v. Palmer*
  970 F.2d 1067 (2d Cir. 1992) ......................................................................................... 11
*Bill Graham Archives v. Dorling Kindersley Ltd.*
  448 F.3d 605 (2d Cir. 2006) ............................................................................................. 4
*Bond v. Blum*
  294 Fed. Appx. 70 (4th Cir. 2008) ................................................................................. 11
*Campbell v. Acuff-Rose Music, Inc.*
  510 U.S. 569 (1994) ..................................................................................................... 4, 7
*City Merchandise, Inc. v. Kings Overseas Corp.*
  No. 99 CV 10456 (RCC), 2001 WL 286724 (S.D.N.Y. Mar. 23, 2001) .......................... 1
*Compare Demetriades v. Kaufman*
  680 F. Supp. 658 (S.D.N.Y. 1988) .................................................................................. 1
*Corbis Corp. v. UGO Networks, Inc.*
  322 F. Supp. 2d 520 (S.D.N.Y. 2004) .......................................................................... 1, 2
*Getaped.com v. Cangemi*
  188 F. Supp. 2d 398 (S.D.N.Y. 2002) ......................................................................... 8, 9
*Harper & Row Publishers, Inc. v. Nation Enterprises*
  471 U.S. 539 (1985) ..................................................................................................... 4, 5
*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*
  497 F. Supp. 2d 627 (E.D. Pa. 2007) ........................................................................... 6, 7
*Lennon v. Premise Media Corp.*
  556 F. Supp. 2d 310 (S.D.N.Y. 2008) ........................................................................... 10
*Lennon v. Seaman*
  63 F. Supp. 2d 428 (S.D.N.Y. 1999) ............................................................................... 2
*Lennon v. Seaman*
  84 F. Supp. 2d 522 (S.D.N.Y. 2000) ............................................................................... 1
*Naantaanbuu v. Abernathy*
  816 F. Supp. 218 (S.D.N.Y. 1993) ................................................................................ 10
*National Ass'n of Freelance Photographers v. Associated Press*
  No. 97 Civ. 2267 (DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) .......................... 1
*Noble v. Town Sports Intern., Inc.*
  No. 96 CIV. 4257(JFK), 1998 WL 43127 (S.D.N.Y. Feb. 2, 1998) ................................ 1
*NXIVM Corp. v. Ross Institute*
  364 F.3d 471 (2d Cir. 2004) ..................................................................................... 1, 5, 6
*Robinson v. Princeton Review, Inc.*
  No. 96 CIV. 4859 (LAK), 1996 WL 663880 (S.D.N.Y. Nov. 15, 1996) ........................ 2
*Rogers v. Koons*
  960 F.2d 301 (2d Cir. 1992) .......................................................................................... 7, 8
*Salinger v. Random House, Inc.*
  811, F.2d 90 (2d Cir. 1987) ......................................................................................... 5, 10
*Sony Corp. of America v. Universal City Studios, Inc.*
  464 U.S. 417 (1984) ......................................................................................................... 4

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Weissman v. Freeman*
   868 F.2d 1313 (2d Cir. 1989)..................................................................................7
*Wright v. Warner Books, Inc.*
   953 F.2d 731 (2d Cir. 1991)....................................................................................6

**Statutes**

17 U.S.C. § 107 (2006) ..........................................................................................1, 12

**Other Authorities**

Pierre N. Leval, Commentary, *Toward a Fair Use Standard*
   103 Harv. L. Rev. 1105 (1990)...............................................................................3
RayMing Chang, *"Publication" Does Not Really Mean Publication: The Need to Amend the Definition of Publication in the Copyright Act*
   33 AIPLA Q.J. 225 (2005)......................................................................................8

Plaintiff attempts to evade dismissal of his fatally flawed copyright infringement complaint with conclusory arguments and strained interpretations of relevant case law. He also attempts to defeat dismissal with a half-hearted cross-motion for summary judgment.[1] These attempts should fail. Not only is there a problem with subject matter jurisdiction, but Donovan has convincingly established each element of the fair use defense, warranting summary judgment in her favor and immediate dismissal of Plaintiff's complaint. *See* 17 U.S.C. § 107 (2006) ("the fair use of a copyrighted work ... is not an infringement of copyright"). *See also NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 475 (2d Cir. 2004), *cert. denied* 543 U.S. 1000 (2004). Moreover, Plaintiff barely addressed the litigation privilege, which provides yet another basis for dismissal of the complaint.

## I.  THE ABSENCE OF COPYRIGHT REGISTRATION CERTIFICATES PARTIALLY DIVESTS THIS COURT OF SUBJECT MATTER JURISDICTION

Plaintiff correctly identifies a split of authority in this circuit on the threshold issue of subject matter jurisdiction. *Compare Demetriades v. Kaufman*, 680 F. Supp. 658, 661 (S.D.N.Y. 1988) (holding that issuance of a copyright registration certificate is a necessary element of subject matter jurisdiction); *National Ass'n of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267 (DLC), 1997 WL 759456, at *12 (S.D.N.Y. Dec. 10, 1997)[2]; *Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521-22 (S.D.N.Y. 2004); *City Merchandise, Inc. v. Kings Overseas Corp.*, No. 99 CV 10456 (RCC), 2001 WL 286724, at *3 (S.D.N.Y. Mar. 23, 2001) (Hurwit Decl. Ex. 2); *Noble v. Town Sports Intern., Inc.*, No. 96 CIV. 4257(JFK), 1998 WL 43127, at *1 (S.D.N.Y. Feb. 2, 1998) (Hurwit Decl. Ex. 3) *with Lennon v. Seaman*, 84 F. Supp. 2d 522, 524 (S.D.N.Y. 2000) (*Lennon II*) ("if an

---

[1] Although Plaintiff has filed a cross-motion for summary judgment, his arguments in that regard are essentially the same as those used for rebutting Donovan's motion. Therefore, Donovan in this brief will focus on reinforcing her arguments in favor of summary judgment on her behalf, which will simultaneously demonstrate that Plaintiff has utterly failed to prove his entitlement to summary judgment.

[2] All unreported decision are annexed to the Declaration of Joshua S. Hurwit, dated January 18, 2010 ("Hurwit Decl."). This decision is annexed to the Hurwit Decl. as Exhibit ("Ex.") 1.

application for copyright infringement has been filed, jurisdiction exists while the application is pending") (citing *Lennon v. Seaman*, 63 F. Supp. 2d 428, 432 (S.D.N.Y. 1999) (*Lennon I*).

What Plaintiff fails to note, however, is that *Lennon II* and its companion cases have been sharply criticized as contradicting the plain language of the Copyright Act. *See, e.g., Corbis Corp.*, 322 F. Supp. 2d 520 at n. 1; *Robinson v. Princeton Review, Inc.*, No. 96 CIV. 4859 (LAK), 1996 WL 663880, at *7-9 (S.D.N.Y. Nov. 15, 1996) ("as most of the cases in this Circuit to have considered the issue have held, registration is a prerequisite to commencement of an action for copyright infringement") (citations omitted) (Hurwit Decl. Ex. 4). This Court should therefore side with the majority and hold that subject matter jurisdiction is lacking unless and until copyright registration certificates have issued.

But even if this Court took the minority view and found subject matter jurisdiction to exist, it should, for the reasons discussed *infra*, grant Donovan's motion for summary judgment on the basis of fair use and deny Plaintiff's cross-motion for summary judgment in its entirety.

II. **DONOVAN PROVES THAT HER USE OF THE SIX ESSAYS WAS A "FAIR USE"**

    **1a.  Donovan used the six essays for criticism and commentary, rendering the use transformative.**

Plaintiff claims that Donovan's use of the six essays was not transformative because Donovan's criticism was not aimed at the content of the six essays but at the author himself. Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment ("Opposition Brief" or "Opp. Br.") at p. 4. Plaintiff is wrong. In her submission to the Court, Donovan critiqued the six essays as "invective against women" and dryly remarked that Plaintiff would probably prefer a male judge. 56.1 ¶ 22. Thus, Donovan's criticism was primarily aimed at the six essays, and any ancillary criticism she leveled against Plaintiff himself does not render the use non-transformative. Furthermore, Donovan used the

2

essays, and her critique of them, to illustrate a point in opposition to Plaintiff's motion for Judge Cederbaum's recusal. Thus, the "criticism" was also directed at Plaintiff's position on the motion, but not Plaintiff himself.

Plaintiff fails to cite a single case to support the novel argument that Donovan's criticism of the author somehow detracts or diminishes her criticism of the six essays. Opp. Br. at p. 4. The one case he does cite, *A.V. v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009), actually supports the conclusion that Donovan's use of the six essays was a transformative use. In *A.V.* the Fourth Circuit agreed with Judge Leval's observation that "[a] 'transformative' use is one that 'employ[s] the quoted matter in a different manner or for a different purpose from the original,' thus transforming it." *Id.* at 638, quoting Pierre N. Leval, Commentary, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990). Plaintiff's purpose in writing the six essays was to criticize "Feminazis" and "the Feminazi infested media." 56.1 ¶¶ 11-12. Donovan's purpose in using them, on the other hand, was to "demonstrate the frivolity of Plaintiff's motion to disqualify Judge Cedarbaum[.]" *Id.* at 18. Because the manner in which Donovan used the six essays differed dramatically from the manner used by Plaintiff, Donovan's use was clearly a transformative use.

Plaintiff next argues that Donovan's use of the six essays was not transformative because "the essays [sic] relevance depends on whether they tend to prove or disprove that the Judge's actions at the conference created an appearance of bias." Opp. Br. at 5. This argument makes no sense. Relevance is not a fair use factor. But even if it was, Plaintiff's overly strained interpretation of relevance defeats his argument. Donovan tendered the six essays to undermine the basis on which Plaintiff was moving to disqualify Judge Cedarbaum. 56.1 ¶¶ 18-19. By accusing Judge Cedarbaum of creating an appearance of bias, Opp. Br. at p. 5, Plaintiff opened the door to arguments demonstrating his own appearance of bias, which would undermine the credibility of his accusation. 56.1 ¶ 22.

3

The essays were thus directly relevant to the issue. Plaintiff cannot now make the absurd claim that his personal biases are irrelevant because he merely claimed that Judge Cedarbaum's actions "created an *appearance of bias* toward the putative class of men." Opp. Br. at p. 5 (emphasis added).

Finally, Plaintiff uses arithmetic to argue that Donovan's use of the six essays was not a transformative use. Opp. Br. at p. 6-7. He alleges that Donovan's use of the Plaintiff's copyrighted works amounted to "46%" of her motion, and that means her use was not a transformative use under *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006). He is wrong.

First, *Bill Graham Archives* merely holds that the extent to which copyrighted material is used in the secondary work is a relevant consideration within the first factor. *Id.* at 611. Second, Plaintiff's math ignores the context so critical to such an analysis. Plaintiff cites to *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586-587 (1994), but that case actually helps Donovan. In *Campbell*, the Supreme Court aptly observed "that the extent of permissible copying varies with the purpose and character of the use." *Id.* (citation omitted). The Court then pointed to its prior decision in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) as standing for the proposition that "reproduction of entire work does not have its ordinary effect of militating against a finding of fair use as to home videotaping of television programs." *Id.* at 586-587 (parenthesis and internal quotations omitted). The Court also quoted the following passage from *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564 (1985): "[E]ven substantial quotations might qualify as fair use in a review of a published work or a news account of a speech but not in a scoop of a soon-to-be published memoir." *Id.* at 587 (parenthesis and internal quotations omitted; alteration in original).

4

Thus, *Sony Corp.* expressly rejects the rigid application Plaintiff advocates here. As Donovan explains in her Rule 56.1 statement, she submitted the six essays in their entirety to prevent accusations of doctoring them or presenting them out of context. 56.1 ¶ 17. To find in Plaintiff's favor on this subfactor would be to ignore the contextual analysis the Supreme Court has consistently urged.

*Salinger v. Random House, Inc.*, 811, F.2d 90, 98-99 (2d Cir. 1987), cited by Plaintiff, does not suggest a contrary result. *Salinger*, which involved a copyright infringement action the famous author brought against an unauthorized biographer, is completely inapposite. Donovan is not writing a biography of Plaintiff that features the six essays. *Harper & Row Publishers, Inc., supra*, 471 U.S. at 565-566, also cited by Plaintiff, is equally inapposite; Donovan is not writing an article that features the six essays.

Accordingly, Donovan has clearly demonstrated that her use of the six essays was transformative. Conversely, Plaintiff's inability to show that Donovan's use was non-transformative erodes the viability of his cross-motion for summary judgment.

### 1b. Donovan properly procured the six essays, precluding a finding of bad faith.

Plaintiff misunderstands the concept of bad faith in the fair use analysis. In his view, Donovan's "bad faith" is conclusively established by the telltale copyright symbols printed on the six essays, Donovan's knowledge that Plaintiff was the author, and her failure to obtain authorization from Plaintiff to use the essays. Opp. Br. at pp. 7-8. Plaintiff's argument, however, misses the mark. *NXIVM Corp., supra*, makes clear that the focus of the bad faith inquiry is not whether the alleged infringer knew the works were copyrighted, but *how* they came into his or her possession and whether the alleged infringer knew that usage of them would violate the law. In *NXIVM Corp.*, a copyright notice was printed on "virtually every page" of the plaintiff's manuscript. *Id.* at 475. But this fact played no apparent role in the

5

Court's bad faith analysis. The critical question was whether the defendants knew that their access to the plaintiff's manuscript "was unauthorized or was derived from a violation of law or breach of duty[.]" *NXIVM Corp.*, 364 F.3d at 478. *See also Wright v. Warner Books, Inc.*, 953 F.2d 731, 737 (2d Cir. 1991) (recipient of letters who used them in her biography without the sender's permission did not act in "bad faith").

In this case, Plaintiff has not and cannot establish the existence of bad faith on the part of Donovan. Donovan has already established that she received the six essays from Steinberg, who stated in a letter that he viewed them on a public Internet site and printed them, and the format of the six essays supported that statement. 56.1 ¶¶ 4-6. Moreover, Steinberg told her he intended to use them as well; as he was a fellow officer of the court, Donovan believed he had obtained them legitimately and had no reason to believe she could not use the six essays in support of the motion. Id. at ¶ 6. Donovan has therefore shown that she acted in good faith. Because Plaintiff has not and cannot contest this conclusion, there is no genuine issue of material fact concerning bad faith. This subfactor clearly favors Donovan.

**1c.   Donovan's use of the six essays was non-commercial.**

Plaintiff cobbles together random statements from binding and non-binding authority to argue that Donovan's status as an attorney renders her use of the six essays a commercial use. Opp. Br. at pp. 8-9. Plaintiff is clearly flailing. While it is true the district court in *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 636 (E.D. Pa. 2007) characterized the practice of law as a profit making venture, it is equally true that this hardly supports the notion that Donovan's use of the six essays was a commercial use.

First, the court in *Healthcare Advocates, Inc.* correctly recognized the Supreme Court's observation that if

> commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conduct for profit in this country.'

*Id.* at 636 (quoting *Campbell*, 510 U.S. at 584 (1994)).

With that principle in mind, the *Healthcare Advocates, Inc.* court went on to endorse an argument remarkably similar to the one Donovan makes here: that she used the six essays to zealously represent her client. 56.1 ¶ 21. Indeed, in its opinion granting summary judgment on the basis of fair use, the court observed that the defendant law firm used the plaintiff's copyrighted works "primarily to defend [its] clients." *Healthcare Advocates, Inc.*, 497 F. Supp. 2d at 636. The court also poignantly observed that "[i]t would be an absurd result if an attorney defending a client against charges of trademark and copyright infringement was not allowed to view and copy publicly available material, especially material that his client was alleged to have infringed." *Id.* at 637 (footnote omitted). Donovan respectfully submits that it would be an equally absurd result for this Court to find that her use of the six essays for the limited purpose of opposing Plaintiff's motion to disqualify Judge Cedarbaum was a commercial use.

*Weissman v. Freeman*, 868 F.2d 1313 (2d Cir. 1989), also cited by Plaintiff, does not support a finding in Plaintiff's favor on the commercial/non-commercial fair use subfactor. *Weissman* merely observed that in academia, prestige among one's peers had more value than monetary gain because recognition "so often influences professional advancement and academic tenure." *Id.* at 1324. *Weissman* is therefore inapposite. Moreover, rather than supporting Plaintiff's cross-motion for summary judgment, *Rogers v. Koons*, 960 F.2d 301, 303 (2d Cir. 1992) merely recites the familiar principle, articulated by the Supreme Court, that the "crux of the profit/nonprofit distinction is not whether the sole motive of the use is

7

monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.* (citation omitted).

In sum, Plaintiff's argument boils down to the following: Donovan's status as an attorney + her desire to win the Ladies Nights case + the prestige that ostensibly stems from a victory in the Ladies Nights case = a commercial use. Opp. Br. at p. 9. This is a faulty equation, as demonstrated not only in the above analysis of Plaintiff's cited cases but also from the cases cited by Donovan in her Memorandum of Law in Support of her Motion for Summary Judgment ("Moving Brief"). *See* Moving Brief at pp. 8-11 and cases cited therein. This subfactor indisputably favors Donovan.

### 2. The Nature of the Copyrighted Work Favors Application of the Fair Use Doctrine.

Plaintiff offers no authority overruling *Getaped.com v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002), which held that "when a webpage goes live on the Internet, it is distributed and 'published[.]'" Although he generally repeats the same discredited argument that publication of the six essays on the Internet is not really publication because some commentators believe *Getaped.com* was wrongly decided, he now argues that "numerous authorities cited by the [P]laintiff indicate such a display is not a publication, or at least an unresolved question in the law." Opp. Br. at 9.

Donovan disagrees. To support his contention that *Getaped.com* was wrongly decided, Plaintiff, in his Memorandum of Law in Opposition to Donovan's Motion to Dismiss, quoted in part the following passage from RayMing Chang, *"Publication" Does Not Really Mean Publication: The Need to Amend the Definition of Publication in the Copyright Act*, 33 AIPLA Q.J. 225, 252 (2005):

> Publication is still very significant in copyright law today, yet there is a lack of clarity as to whether publication can occur via electronic dissemination. This lack of clarity is contributing to the creation of arguably bad law, as the *Getaped.com* case illustrates. Thus, there is

a need to amend the definition of publication under the Copyright Act.

Although Chang disagrees with *Getaped.com*, and submits that there is "a lack of clarity as to whether publication can occur via electronic dissemination[,]" he plainly acknowledges that the core holding of *Getaped.com* is a settled precept of copyright law:

> The position that transmissions over the Internet may result in publication is also supported by the practices of the Copyright Office. When the Copyright Office receives a registration application, it accepts an applicant's determination of whether an online work, i.e., a work distributed via digital transmission, is published. This approach to registration implies that the Copyright Office at least tacitly agrees that works available via transmission over the Internet can be considered published under the Copyright Act.

*Id.* (footnotes omitted).

Although it is tacit, the Copyright Office's agreement with *Getaped.com*, as noted above, further blunts Plaintiff's attack. Accordingly, this factor favors Donovan. Therefore, summary judgment should be granted in Donovan's favor, and Plaintiff's cross-motion for summary judgment should be denied.

### 3. The Amount and Substantiality of the Portion Used At Worst Neither Favors Nor Disfavors Application of the Fair Use Doctrine

Plaintiff claims this factor favors him because: 1) Donovan submitted verbatim copies of five of the six essays ("Fear Corrupts," "Two Sides," Invisible Weapon," "Do Men Cause Wars," and "Some Differences: Men v. Girls"); and 2) the sixth essay, "A Different Time" is the "heart" of a larger work titled "Stupid Frigging Fool." Opp. Br. at p. 11. In support, Plaintiff essentially repeats what he argued in his Memorandum of Law in Opposition to Donovan's Motion to Dismiss at pp. 19-21.

Because Donovan addressed these arguments in her Reply Memorandum of Law in Further Support of her Motion to Dismiss (the "Reply Brief") at p. 8, they will not be repeated here. Donovan also respectfully points the Court to the arguments presented in her Moving Brief at pp. 10-11.

### 4. The Effect of the Use Upon the Potential Market For or Value of the Copyrighted Work Favors Application of the Fair Use Doctrine.

Plaintiff asserts for the first time that he planned to take advantage of his newfound fame by selling the six essays for profit but irretrievably lost that opportunity once Donovan uploaded them to the PACER web site.[3] Opp. Br. at 16. This assertion rests on a flawed foundation. Plaintiff cannot unilaterally declare himself to be a "public figure." He must engage in a much more searching analysis. *See Naantaanbuu v. Abernathy*, 816 F. Supp. 218, 223 (S.D.N.Y. 1993) (discussing the Second Circuit test for determining whether an individual is a public figure). He has not done so, and an evaluation of the factors identified by the Second Circuit demonstrates he does not meet the standard.[4]

Moreover, Plaintiff's claim of lost profits assumes that people would actually pay for his misogynistic writings. Opp. Br. at p. 16-17. Plaintiff has not tendered empirical data showing the six essays would command a sizable price – or any price – on the open market. In the absence of a market for the six essays, Plaintiff cannot argue that Donovan's actions somehow sapped demand. *Id.*

Plaintiff has also failed – or refused – to address the Fourth Circuit's observation that the defendant's submission of a copyrighted work in a judicial proceeding "increases the

---

[3] This assertion is specious. If Plaintiff wished to sell the six essays "through a website or [by] licensing them to men's rights groups," Opp. Br. at 16, he never should have posted them on a public Internet site in the first place. Moreover, if Plaintiff truly believed that the posting of these essays to PACER was problematic and costing him money, why did he not immediately (or at any time in the two-plus years since) make an application to seal the exhibit containing the six essays? Not only did Plaintiff fail to do that, but he publicly re-published the six essays by attaching them to the Complaint in this case, which is itself posted on PACER.

[4] Plaintiff's argument in this regard is so unworthy of acceptance that Donovan will not waste time and space in this brief going through a detailed analysis. Donovan is confident a review of the cited case law will cause the Court to reach the same conclusion. But it is also worth noting that Plaintiff fails to explain in any way how his alleged status as a "public figure" is relevant to the fair use analysis. The cases on fair use do not attach dispositive weight to a party's status in this regard. *See, e.g., Salinger v. Random House, Inc.*, 811 F.2d 90, 99 (2d Cir. 1987). And Plaintiff is hardly on par from a public figure perspective as the plaintiffs in, for example, *Salinger* and *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008) (and in *Lennon*, the court does not even mention, let alone consider, this "factor").

value of the work in a perverse way, *but it certainly doesn't decrease it.*" *Bond v. Blum*, 294 Fed. Appx. 70 (4th Cir. 2008), *cert. denied* 129 S.Ct. 1343 (2009) (emphasis added).[5]

Accordingly, this factor favors Donovan. Because Donovan has easily established that all four factors compel a finding of fair use, this Court should grant her motion for summary judgment in its entirety and deny Plaintiff's cross-motion in its entirety. *See Arica Inst. v. Palmer*, 970 F.2d 1067, 1079 (2d Cir. 1992) (a defendant need not prevail on all four fair use factors to prevail, but if she does, "victory on the fair use playing field is assured").

Finally, in a last-ditch effort to win the fair use fight, Plaintiff launches a red herring. He argues that if Donovan's use of the six essays qualifies as a fair use, it will "seriously deter the creativity protected by the Copyright Act." Opp. Br. at p. 17. This conclusory statement ignores the very purpose of the fair use exception: to vindicate the Copyright Act's goal of encouraging creative and original work by allowing a use instead of preventing it. *Arica Institute, Inc.*, 970 F.2d at 1077 (citations omitted). Donovan's use of the six essays in the proceeding to disqualify Judge Cedarbaum unquestionably promotes that objective.

### III. THE LITIGATION PRIVILEGE ACCORDS DONOVAN ABSOLUTE IMMUNITY.

Plaintiff's Memorandum of Law in Opposition to Donovan's Motion to Dismiss contains token opposition to this argument, *see* n. 10, but his Opposition Brief does not address it. Rather than restate her argument, Donovan respectfully refers the Court to her Memorandum of Law in Support of her Motion to Dismiss at pp. 15-16, her Reply Memorandum of Law in Further Support of her Motion to Dismiss at p. 9, and her Moving Brief at pp. 20-21.

---

[5] Donovan discusses *Bond* and its pertinent observation in her Memorandum of Law in Support of her Motion to Dismiss at page 13 and in her Reply Brief at page 8.

IV. **BECAUSE SUMMARY JUDGMENT SHOULD BE GRANTED IN DONOVAN'S FAVOR, DISCOVERY WOULD BE INAPPROPRIATE**

Plaintiff argues that limited discovery is necessary to determine his measure of purported damages. Opp. Br. at p. 19. Plaintiff's argument is meritless. Because Donovan has adequately established a fair use defense, Plaintiff would not be entitled to damages, much less discovery on the issue of damages. See 17 U.S.C. § 107 (2006) ("the fair use of a copyrighted work ... is not an infringement of copyright").

V. **DONOVAN IS ENTITLED TO COSTS AND ATTORNEY'S FEES.**

Plaintiff regurgitates arguments presented in his Memorandum of Law in Opposition to the Motion to Dismiss; arguments Donovan has already addressed in her Reply Brief at pp. 9-10, and her Moving Brief at pp. 21-22. Accordingly, Donovan respectfully requests that Plaintiff be ordered to pay costs and attorney's fees.

### CONCLUSION

For all the foregoing reasons, Donovan respectfully requests that the Court: (1) grant Donovan's motion for summary judgment; (2) deny Plaintiff's cross-motion for summary judgment; (3) dismiss Plaintiff's complaint with prejudice; and (4) award Donovan costs and attorney's fees.

Dated: New York, New York
       January 18, 2010

>                    Respectfully submitted,
>
>                    GORDON & REES LLP
>
>                    By: _____
>                    Diane Krebs, Esq. (DK 8280)
>                    Joshua S. Hurwit, Esq. (JH 1058)
>                    Attorneys for Defendant Deborah Swindells Donovan
>                    90 Broad Street, 23rd Floor
>                    New York, New York 10004
>                    (212) 269-5500 (Phone)/(212) 269-5505 (Fax)