# HURWIT DECL.
# EXHIBIT 1

Westlaw.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

C

United States District Court, S.D. New York.
NATIONAL ASSOCIATION OF FREELANCE
PHOTOGRAPHERS, Kevin J. Larkin, Joseph M.
Tabacca, and Paul Hurschmann, Plaintiffs,
v.
ASSOCIATED PRESS, Defendant.
No. 97 Civ. 2267(DLC).

Dec. 10, 1997.

Joel L. Hecker, Laurence Desind, Charles D. Dono-
hue, Russo & Burke, New York City, for plaintiffs.

Robert Penchina, Margaret B. Soyster, Hilary Lane,
Rogers & Wells, New York City, for defendant.

OPINION and ORDER

COTE, J.

**\*1** This action was commenced in March 1997 by
three professional freelance photographers, Kevin J.
Larkin, Joseph M. Tabacca, and Paul Hurschmann
(collectively "the individual plaintiffs"), and the
non-profit association with which they are affili-
ated,[FN1] the National Association of Freelance
Photographers ("NAFP"), against the Associated
Press ("AP"), a non-profit corporation that gathers
and disseminates news and information, and, ac-
cording to the plaintiffs, also engages in the sale of
photographs of newsworthy events. The plaintiffs
filed an Amended Complaint on May 7, 1997, in re-
sponse to a motion for sanctions that AP had served
on the plaintiffs on April 24, 1997, but not filed, in
compliance with Rule 11(c)(1)(A), Fed.R.Civ.P.
That motion, and an accompanying cover letter, no-
tified the plaintiffs that their original complaint
contained some false statements (regarding pro-
curement of copyright registrations), and advised
that if the plaintiffs did not withdraw three of the
complaints' six counts, which were asserted to have

no legal basis, then AP would file the sanctions mo-
tion. In filing their mended Complaint, the
plaintiffs removed the allegedly false statements,
but made no other curative changes in their plead-
ings. The Amended Complaint asserts antitrust and
copyright infringement claims and seeks declarat-
ory and injunctive relief largely on the basis of AP's
practice of requiring photographers who are on as-
signment for AP, and from whom it buys photo-
graphs, to assign their copyrights in those photo-
graphs to AP as a condition of sale.

> FN1. The Amended Complaint states that
> Larkin is NAFP's president, Hurschmann is
> NAFP's executive vice president, and
> Tabacca is a member of the organization.

On May 29, 1997, AP filed an answer with counter-
claims and also noticed the two motions that are the
subject of this opinion. First, AP has moved pursu-
ant to Rule 12(c), Fed.R.Civ.P., for a judgment on
the pleadings as to all but one of the counts of the
Amended Complaint (hereinafter "Complaint"), ar-
guing that both NAFP and the individual plaintiffs
lack standing to assert their claims and that, in any
event, none of the claims states a viable cause of
action. Second, as forewarned, AP has filed a mo-
tion for sanctions under Rule 11, Fed.R.Civ.P., as-
serting that the plaintiffs and their counsel filed the
Complaint for improper motive and without a rea-
sonable basis in law. As to the latter, the plaintiffs
have cross-moved pursuant to Rule 11(c)(1),
Fed.R.Civ.P., for expenses and attorney's fees in-
curred in opposing AP's motion for sanctions. For
the reasons set forth below, the motion under Rule
12(c) is granted and the Complaint is dismissed
with prejudice as to all the counts at issue; the
cross-motions for sanctions are denied.

**STANDARD OF REVIEW**

In deciding a motion under Rule 12(c), this Court
"appl[ies] the same standard as that applicable to a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

Page 2

motion under Rule 12(b)(6)," that is, the Court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the nonmovant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Moreover, the Court may dismiss an action pursuant to a motion under either Rule only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Sheppard,* 18 F.3d at 150. In other words, the Court can dismiss the plaintiffs' complaint here only if, assuming all facts as true, they still have failed to plead the basic elements of their causes of action.

## BACKGROUND

*2 The Complaint alleges that AP is a cooperative association of publications and other communications related entities referenced as "Members") whose business, at least in part, is he collection, assembly, and distribution of information to the public. This information is acquired by AP from its own employees, from the employees of Members, and from other "independent originators of such materials," including the photographers who make up NAFP. In regard to the latter point, although the Complaint speaks in terms of "Freelance Photographers," the practice of AP that is attacked in the Complaint pertains to AP's purchase of photographs from photographers who attend and photograph events at AP's request, and on its behalf, and not to AP's purchase of photographs from those who are called freelance photographers in the conventional sense.

According to the plaintiffs, AP is "the chief single source of information for the American press," such that the "inability to sell photographs to AP or any of its multitude of Members could have a decimating effect upon the business of any Freelance Photographer." The Complaint purports to document the "power and domination of AP" through allega-

tions of specific instances in which AP improperly demanded, disseminated, retained, or otherwise used without furnishing satisfactory compensation (if any), certain photographs taken by the three individual plaintiffs.

Count One of the Complaint seeks declaratory relief. It alleges that Freelance Photographers routinely "cover" events for AP by providing what is labeled as "Professional Services," which involves "the presence of the Freelance Photographer at an event with the intent, but not the absolute requirement, of creating photographic images of the event for submission to the AP or a Member." AP pays Freelance Photographers for Professional Services at a rate that is unrelated to the subject matter or content of the images, or whether any images are in fact created or submitted to AP, or accepted, used, or returned by AP. Payment for such services is accomplished by check, and each check that AP issues for such services bears on its face a legend stating:

In consideration of the transfer of any and all copyrighted ownership in the news materials described above. Endorsement signifies consent. [FN2]

> FN2. AP indicates that it began printing the legend on its checks after the decision in *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The plaintiffs assert that the reference in the legend to "news materials described above" is to "a payment stub which does not describe the photographs submitted."

The central focus of this action concerns the parties' differing interpretations of this legend, that is, AP's position that it owns the copyright in all images for which a check bearing this legend was endorsed by a freelance photographer, and he plaintiffs' contention that the legend is ineffective to transfer copyright to AP. In support of the latter view, the com-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

plaint alleges that checks bearing the legend were:

Endorsed by Freelance Photographers on the back
without noticing and therefore not reading, the
Legend on the front; ... Endorsed by Freelance
Photographers on the back not understanding the
significance or intended meaning of the Legend
on the front, or ... Endorsed by Freelance Photo-
graphers after crossing out or altering the lan-
guage of the Legend.

**\*3** On the basis of these allegations Count One
seeks a declaration that

each Freelance Photographer is the copyright owner
of the Photographs created by such Freelance
Photographer and submitted to AP; and that en-
dorsement of Payment Checks issued as com-
pensation for Professional Services and bearing
the Legend on their face did not and/or do [sic]
not transfer copyright ownership in the Contested
Images from Freelance Photographers to AP.

In Count Two the Complaint requests injunctive re-
lief to prevent AP's continued misuse of photo-
graphs, taken by Freelance photographers, that AP
maintains in a "photo library." The plaintiffs allege
that AP uses these photographs without the author-
ization or consent of the Freelance Photographers
who created them, without attributing copyright
credit to them, and without payment for each use.
The specific relief requested includes an injunction
against future unauthorized "commercial exploita-
tion" of the photos by AP, and an order directing
that AP: (i) give full copyright credit "to each
Freelance photographer owning a photographic im-
age used by AP" for any unauthorized purpose; (ii)
account to "each Freelance photographer" for "each
use made by AP" of his or her images and the rev-
enues received therefrom, and pay over "to each
Freelance photographer owning photographic im-
ages used by AP" any revenue derived by any un-
authorized use thereof; and (iii) return "to each
Freelance Photographer all images presently held
by AP without the express authorization of each
such Freelance photographer."

Counts Three and Four assert claims for restraint of
trade, monopoly, and unfair trade practices under
(respectively) federal and state antitrust laws. The
Complaint alleges that "AP dominates and controls
the market for gathering and disseminating inform-
ation through print media in the form of photo-
graphic images," and that due to this "dominant po-
sition in the marketplace, Freelance Photographers
are compelled to submit images of noteworthy
events to AP if such Photographers desire to remain
active in such marketplace ." More particularly, the
complaint asserts that AP, "directly and through
and/or in combination with its constituent Mem-
bers": (i) uses its dominance to require as a condi-
tion of payment for Professional Services that
Freelance Photographers "transfer to AP all copy-
right ownership and interest in images used by AP,"
and allow AP to make continued use of the images
without credit and/or additional compensation; and
(ii) "refuse[s] to do business with and/or threaten[s]
not to do business with those Freelance Photo-
graphers who object to the conduct of AP."

According to the plaintiffs, AP's conduct
"restrain[s] trade and commerce by interfering with
the ability of Freelance Photographers to compete
in the commercial exploitation of images concern-
ing events and people," in violation of Sections 1
and/or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2,
which causes Freelance Photographers to "lose sub-
stantial revenue and threaten[s] their economic sur-
vival." The plaintiffs demand treble damages for
these infractions, as well as an injunction (i) barring
AP from requiring as a condition of payment that
Freelance Photographers transfer copyrights to AP,
(ii) halting AP's use of photos without permission
of the copyright owners, and (iii) precluding AP
from refusing to do business, threatening not to do
business, or taking other reprisals in retaliation for
objections by Freelance Photographers to AP's ac-
tions or their refusal to comply with AP's demands.

**\*4** Count Five asserts a copyright infringement
claim on behalf of plaintiff Larkin only. The Com-
plaint alleges that he created certain images and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

then, prior to the commencement of this action, "complied in all respects" with governing federal copyright laws by

> filing a Registration Application together with deposit copies of the [subject images] with the United States Copyright Office, along with payment of the requisite fees, which submission and payment were received by the Copyright Office prior to the commencement of this action.

AP's use of Larkin's images is thus alleged to have infringed on his "exclusive rights in the copyright" of the images, in violation of Sections 106(2) and 106(5) of the Copyright Act of 1976, 17 U.S.C. §§ 106(2), (5). [FN3]

> FN3. Count Six asserts a nearly identical infringement claim on behalf of plaintiff Hurschmann, but as noted, AP has not made a motion as to that claim. Although AP speaks of moving to dismiss "Counts One through Four, and part of Count Five," Count Five is not readily divisible. The Court therefore construes AP's motion to be directed at all of the first five counts of the Complaint and not at Count Six.

### DISCUSSION

AP raises numerous grounds for dismissal as to each of the plaintiffs' claims, including one ground that applies equally to all, standing. Because standing is a prerequisite to maintaining suit, the Court will address that issue first.

### A. Standing

AP argues that both NAFP and the individual plaintiffs lack standing here because the Complaint purports to assert claims generally on behalf of "professional Freelance Photographers" who "have been 'covering' events pursuant to a specific assignment or some other agreement with the AP or a Member." As for the individual plaintiffs, they plainly lack standing to assert the present claims on behalf of any persons other than themselves. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("plaintiff generally must assert is own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The Court finds that the individual plaintiffs do have standing to assert the claims in the Complaint as to themselves; AP's arguments to the contrary go more toward the sufficiency of the individual plaintiffs' pleadings (or lack thereof) than to their capacity constitutionally to assert the present claims.

With respect to NAFP, AP contends that this organization-which seeks redress in the present action only for injuries allegedly suffered by its members, and not for any injury to itself-fails to satisfy the test for "associational" standing set forth in *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and reiterated in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977):

> an association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt,* 432 U.S. at 343. It is undisputed that NAFP satisfies the first two elements of this test; the only question is whether it satisfies the third element as well, that is, whether the claims asserted in the Complaint *or* the relief requested therein require the participation of individual members of NAFP.

**\*5** The Court essentially agrees with AP that NAFP lacks standing here under the *Warth/Hunt* standard. Any judicial determination on the claims in this lawsuit requires proof regarding individual claimants, for example, whether given payment

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

checks were effective to transfer copyright to AP in light of all the circumstances under which the checks were endorsed by Freelance Photographers. Because this conclusion rests on slightly different considerations as to each of the plaintiffs' claims, the Court will further address the issue of NAFP's standing in the sections below that correspond to those claims.

Generally speaking, however, the plaintiffs are not challenging the enforceability of the check legend on its face or standing alone. Rather, they are challenging AP's business practice concerning the endorsement of checks and the transfer of copyright in purchased photographs, a practice that (at least potentially) affects each plaintiff endorser/seller differently, depending on their prior understandings or course of dealing with AP, specific side-agreements that may govern a given transaction, or particular instances of misperception, miscommunication, or fraud by either party. In this situation, the merits of the plaintiffs' claims simply cannot be determined without the participation of individual claimants and the presentation of evidence as to the discrete circumstances substantiating their claims. [FN4] *See, e.g., Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 596-97 (2d Cir.1993) (denying standing to association challenging city rent schemes as a "taking" because "it is impossible to discern the identity of the aggrieved parties without delving into individual circumstances" and "whether a taking has occurred depends ... on a variety of financial and other information unique to each landlord"); *C.A.U.T.I.O.N., Ltd. v. City of New York,* 893 F.Supp. 1065, 1069-70 (S.D.N.Y.1995) (denying associational standing where plaintiffs alleged that city officials had policy or practice that violated Fourteenth Amendment and "[p]roof of the existence of a policy or practice require[d] ... individual members of CAUTION ... to show individual instances of misconduct"). For this reason, NAFP has no standing to assert most of the claims in the Complaint.

FN4. The plaintiffs do not-and in any event

could not-dispute that it is appropriate to deny associational standing where the *claims* at issue require individual participation, even if the relief requested, as is often the case with declaratory or injunctive relief, does not so require. *See Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 596 (2d Cir.1993) ( "[T]he relief requested is only half of the story. The *Hunt* test is not satisfied unless ' *neither the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit.' ") (quoting *Hunt,* 432 U.S. at 343) (emphasis in *Dinkins* ).

**B. *Declaratory Judgment***

As noted, the plaintiffs seek a declaration that each freelance photographer owns the copyright in his or her photographs, and that AP's policy of requiring the transfer of copyright through "endorsement of Payment Checks issued as compensation for Professional Services" was not effective to "transfer copyright ownership in the Contested Images from Freelance Photographers to AP ." Initially, the plaintiffs concede, as they must, that the use of "a legend on a check" and the required endorsement thereof-as was AP's practice here-" *may* be effective to transfer copyright under the proper circumstances." (Emphasis in original.)

**\*6** Section 204(a) of the Copyright Act of 1976 provides:

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C. § 204(a). The Second Circuit in *Playboy Enters., Inc. v. Dumas,* 53 F.3d 549, 564 (2d Cir.1995), indicated that the use of a legend on a check may satisfy the writing requirement of Sec-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

tion 204(a), at least in certain circumstances. The district court in *Playboy* had found the legend in that case [FN5] ineffective to transfer copyright, given the ambiguity of the legend and the absence of evidence of the parties' intent. The legend was ambiguous because, *inter alia*, it made no mention of "copyright"; the assignment of "all right, title, and interest" was in the "items" as opposed to rights; the language described not a present transfer of rights but confirmation of one past; and thus there was "no clear way to tell what the parties intended by their agreement." *Playboy Enters., Inc. v. Dumas,* 831 F.Supp. 295, 308-309 (S.D.N.Y.1993). [FN6] The Second Circuit affirmed the finding that the legend was ambiguous, and thus ineffective to transfer copyright in the circumstances of that case. *See Playboy,* 53 F.3d at 564 (emphasizing that the legend at issue "does not expressly mention copyright" and that "the evidence is conflicting as to whether the parties intended a one-time transfer of reproduction rights or a transfer that included copyright").

> FN5. The legend at issue read in pertinent part:
>
> By endorsement of this check, payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title, and interest in and to the following items: [a description followed]
>
> *Playboy Enters., Inc. v. Dumas,* 831 F.Supp. 295, 300 n. 1 (S.D.N.Y.1993) (alteration in original).

> FN6. The district court repeatedly stressed this theme of clarity, concluding, for example, that the Ninth Circuit's view that "a one-line pro forma statement will do" to transfer copyright had to be "predicated on the fact that the terms of the to forma statement are clear," *Playboy,* 831 F.Supp. at 308 citing *Effects Assocs. ., Inc. v. Cohen,* 908 F.2d 555 (9th Cir.1990)), and that the import of two Southern District cases was

that "unless there is evidence of an intention to transfer copyright, a writing merely reciting transfer of an object will not transfer copyright," *id.* at 309 (citing *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.,* 690 F.Supp. 298 (S.D.N.Y.1988); and *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.,* 13 U.S.P.Q.2d 1472 (S.D.N.Y.1989)).

The plaintiffs argue in opposing this motion that "*this Legend* under *these* circumstances, does not transfer copyright to AP." (Emphasis in original.) To begin with, that very statement of the issue demonstrates again why NAFP has no standing here; there is no way to determine whether "*this Legend* under *these* circumstances" was effective to transfer copyright without examining "*these* circumstances," that is, the particular circumstances in which individual Freelance Photographers endorsed their checks. That conclusion is reaffirmed by the Complaint's allegations as to why the endorsements were ineffective in this regard, *i.e.,* because Freelance Photographers endorsed the checks "without noticing and therefore not reading, the Legend[,] ... [while] not understanding the significance or intended meaning of the Legend[,] ... [or] after crossing out or altering the language of the Legend." Such fact-intensive inquiries plainly require the participation of the individual photographers offering the specific explanations.

Although the individual plaintiffs have standing to seek a declaration as to the effect of AP's check endorsement procedure on them, the Court finds that this claim, as pleaded in the Complaint, fails as a matter of law to state a viable cause of action. Specifically, the Complaint alleges no facts on behalf of the individual plaintiffs that would permit this Court to find that the legend at issue did *not,* in the particular circumstances of this case, transfer *their* copyright interests to AP. Instead, in apparent recognition of the clarity of the language in the legend, the Complaint attacks the legend by identifying circumstances in which it might *not* be effective, *e.g.,* where individual endorsers failed to see it

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

or understand it, crossed it out, or had prior understandings or dealings with AP that would unambiguously render the legend moot. The critical fact, however, is that no such alternative circumstances are adduced in the Complaint *as to the individual plaintiffs*. To the contrary, the Complaint contains potentially mitigating allegations only as to "Freelance Photographers" generally, which, for the reasons stated above, are wholly ineffectual in this action given NAFP's lack of standing. Notwithstanding the plaintiffs' misplaced protestations (in opposing this motion) about what "[t]he evidence in this case *will show,* " (emphasis added), the Complaint contains no allegations particular to any of the three individual plaintiffs that would render the legend ineffective as to them and thereby entitle them to relief. The claim for a declaratory judgment must therefore be dismissed.

#### C. *Injunction*
\*7 The plaintiffs' claim for injunctive relief is deficient largely for the reasons set forth above. First, NAFP lacks standing to seek an injunction on behalf of Freelance Photographers in general. The grounds proffered for the injunction, essentially that AP engaged in unauthorized use of Freelance Photographers' copyrighted materials and failed to compensate or credit Freelance Photographers for those uses, all depend at root on proof of copyright ownership in the subject materials-especially in light of the plaintiffs' concession that "AP has the right to *use* the photographs" them selves "in connection with the story for which such photograph[s] w[ere] created" by the plaintiffs. (Emphasis added.) As noted above, proof of copyright ownership cannot be adduced without the participation of individual photographers, who would have to establish that their endorsement of payment checks from AP was ineffective to transfer copyright, or that they had other individual arrangements or dealings with AP that negated the effect of the transfer. Once again, NAFP cannot satisfy the test for associational standing.

The individual plaintiffs do have standing to assert

their own claims for unauthorized use and failure to provide compensation or credit for copyrighted materials. But these plaintiffs nevertheless still cannot maintain their claim for injunctive relief because the Complaint fails to allege facts that would permit the finding of liability requisite to such relief. Although the Complaint describes a photograph taken by each of the individual plaintiffs and used by AP, the Complaint does not, as explained above, identify the theory by which the transfer of copyrights in these three photographs might be deemed ineffective. That is, when read as a whole, the Complaint appears to allege that these three photographs were taken while the individual plaintiffs worked on behalf of AP as "Freelance Photographers," as that term is used in the Complaint,[FN7] and that each plaintiff thereafter received payment through endorsement of a check bearing the legend described above. What the Complaint quite clearly fails to allege, however, is that the circumstances claimed to have rendered ineffective the copyright transfers of Freelance Photographers *generally -i.e.,* that checks were endorsed without the photographers noticing or understanding the legend, or after crossing it out-apply to any of the three individual plaintiffs, or occurred with respect to any of the three specifically referenced photographs.

> FN7. The Complaint explicitly states that two of the three individual plaintiffs were working as Freelance Photographers for AP when they took the photographs at issue, but does not make such an allegation as to plaintiff Tabacca.

In short, the Complaint alleges no facts that would permit a finding that the individual plaintiffs retained ownership of copyrights in the subject photographs (or that would permit a finding of copyright infringement, as explained below); and therefore those plaintiffs cannot maintain a claim for unauthorized use or failure to compensate or credit for copyrighted materials. Accordingly, the plaintiffs have no entitlement to injunctive relief with respect to these issues, and their claim to that effect must

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

be dismissed.

#### D. *Antitrust*

**\*8** The Complaint asserts antitrust claims under both Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2,[FN8] and seeks both treble damages and an injunction against (i) AP's policy of requiring Freelance Photographers to transfer their copyright ownership in photographs to AP as a condition of sale, (ii) AP's unauthorized use of Freelance Photographers' photographs, and (iii) AP's "refusing to do business" with, or taking other retaliatory actions against, Freelance Photographers who object to AP's policies. As above, the individual plaintiffs have standing to assert these claims in regard to themselves, but unlike the prior claims, whether NAFP also has standing is a closer question.

> FN8. AP correctly notes that, because the provisions of New York's antitrust laws are to be construed in keeping with federal antitrust law, the plaintiffs' antitrust and unfair business claims under state law will rise or fall along with their federal antitrust claims. Because the Court concludes that the federal claims are deficient as a matter of law, the state claims will not be discussed.

The plaintiffs concede that NAFP, as an association, cannot pursue a claim for money damages on behalf of its members under the antitrust statutes, but they maintain that it may seek injunctive relief for such individuals under those laws. In support of this argument the plaintiffs rely on *Barr v. Dramatist's Guild, Inc.,* 573 F.Supp. 555, 561-62 (S.D.N.Y.1983), where the court held that an association was not precluded *by any principle of antitrust law*[FN9] from obtaining injunctive relief for its members, and therefore analyzed the standing of the association in that case under the familiar *Warth/Hunt* standard. Although this Court has concluded that NAFP cannot satisfy the third element

of that test with respect to the claims for declaratory or injunctive relief-because those claims necessitated the participation of individual plaintiffs-the antitrust injunction claim presents different considerations. In its most important aspect, the claim seeks to bar AP from requiring as a condition of purchasing photographs from Freelance Photographers that those Freelance Photographers transfer their copyrights in the subject photographs to AP. Giving the plaintiffs the benefit of the doubt on this motion to dismiss, the Court concludes that substantiation of this claim (at least) will not necessarily require the participation of individual claimants.[FN10] The Court therefore finds that NAFP as well as the individual plaintiffs have standing to assert the antitrust claims in the Complaint.

> FN9. The *Barr* court based this conclusion on the difference between Section 4 of the Clayton Act, 15 U.S.C. § 15, which prohibits associations from suing for treble damages where the only injury alleged is to its members, *see Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262-65, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), and Section 16 of the Clayton Act, 15 U.S.C. § 26, which permits "[a]ny person, firm, corporation, or association ... to sue for and have injunctive relief." *See Barr,* 573 F.Supp. at 561-62.

> FN10. Unlike the declaratory judgment claim, for example, the claim here does not require proof that transfers of copyright were or were not effective in individual cases; rather, the claim weeks to bar the practice in the first instance on the ground that it restrains trade. Proving an adverse effect on competition in the marketplace as a result of that practice (regardless of its effectiveness to transfer copyright) would not necessarily require the participation of each individual photographer.

Although the plaintiffs have standing, the Court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

concludes that the Complaint contains insufficient factual allegations to permit a finding that AP has violated either Section 1 or 2 of the Sherman Act. At the very least, the plaintiffs have failed adequately to allege the following essential elements of such claims: that they were the victims of "antitrust injury" or "concerted action," or that AP exercised "monopoly power" in the relevant market. For these reasons, Counts Three and Four of the Complaint must be dismissed.

*1. Restraint of Trade*

Section 1 of the Sherman Act provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

**\*9** 15 U.S.C. § 1. In order to state a claim under Section 1, plaintiffs must allege "(1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." *Maric v. Saint Agnes Hosp. Corp.,* 65 F.3d 310, 313 (2d Cir.1995) (citing *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs., Inc.,* 996 F.2d 537, 542 (2d Cir.1993), *cert. denied,* 116 S.Ct. 917 (1996)). In addition, plaintiffs must demonstrate that they have "antitrust standing" and have suffered "antitrust injury." The former requirement involves a showing that the antitrust claimant is a "proper plaintiff," *i.e.,* that based on factors such as the directness and identifiability of his injuries, the plaintiff will be "an efficient enforcer of the antitrust laws." *Balaklaw v. Lovell,* 14 F.3d 793, 798 n. 9 (2d Cir.1994). The latter requirement demands inquiry into "whether the plaintiff suffered antitrust injury," *id.,* that is,

injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

*Id.* at 797 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). This definition underscores the fundamental tenet that '[t]he antitrust laws ... were enacted for "the protection of *competition,* not *competitors.* " ' " *Id.* quoting *Brunswick,* 429 U.S. at 488 (quoting *Brown Shoe v. United States,* 870 U.S. 294, 320 (1962))). In light of these standards, the plaintiffs' claims are deficient in numerous respects.

First, the plaintiffs have failed to allege sufficient facts to satisfy the first fundamental element of a Section 1 claim, the existence of "a combination or some form of concerted action between at least two legally distinct economic entities." *Capital Imaging,* 996 F.2d at 542. The Complaint states that AP acted improperly "directly and through and/or in combination with is constituent Members," and "directly and by way of and/or in combination with its constituent Members." This bare assertion is an inadequate allegation of concerted action because, for one, it fails to make clear whether AP is legally distinct from its "Members," *both* of which are included within a single cryptic definition in the Complaint as "a cooperative association of publications and other communications related entities." *See id.* (agreement between parent corporation and wholly owned subsidiary agents is not concerted action for purposes of Sherman Act).

In any event, the plaintiffs have apparently abandoned this theory of concerted action in opposing the present motion. They now allege instead that it is "the presence of 'agreements' here between AP and Freelance Photographers ... that bring AP's practices within the each of the [concerted action] requirement of Section 1." Under the facts as alleged by the plaintiffs, however, the photographers are not willing participants in these agreements and can hardly be said to have engaged in the kind of joint action forbidden by Section 1. Indeed, the only case cited in support of the plaintiffs' revised theory is *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665 (7th Cir.1985), a case that describes

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

the narrow exception whereby *franchisees* alleging an illegal "tying" arrangement can satisfy the joint action requirement by charging a "conspiracy"-really "unwilling compliance"-between themselves and a franchisor. *Id.* at 669-70 (citing *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)). Because this case does not (and could not) involve allegations of a franchisor-franchisee situation, and because, as explained below, the plaintiffs cannot establish a "tying" arrangement, this theory of concerted action fails as a matter of law. On the basis of this conclusion alone, the plaintiffs cannot maintain a Section 1 claim.

**\*10** In addition, however, the plaintiffs also have failed to allege "antitrust injury." Even assuming that they are the "proper plaintiffs" here-such that they satisfy the "antitrust standing" requirement-the plaintiffs have set forth insufficient facts to enable them to show, as they must, "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging,* 996 F.2d at 543 (emphasis in original). *See also Clorox v. Sterling Winthrop, Inc.,* 117 F.3d 50, 56 (2d Cir.1997) (discussing actual adverse effects requirement). To the contrary, the only allusions to anticompetitive effect in the Complaint are the allegations that AP's copyright transfer policy and "refusal to deal" with Freelance Photographers who object to that policy: (i) has "restrain[ed] trade and commerce by interfering with the ability of Freelance Photographers to compete in the commercial exploitation of images concerning events and people," and (ii) "is causing and will continue to cause Freelance Photographers to lose substantial revenue and threaten their economic survival." These allegations not only are wholly conclusory, but more importantly fail to demonstrate the requisite effect on " *competition,* not *competitors.* " *Balaklaw,* 14 F.3d at 797; *accord Clorox,* 117 F.3d at 57.

To begin with, the plaintiffs simply make *no* factual allegations that would permit a finding that either of the proffered effects has actually occurred, is oc-

curring, or is threatened to occur. Absent allegations suggesting how Freelance Photographers' "ability to compete" has been hampered, or facts documenting such hindrances and the revenue photographers have lost or will continue to lose thereby, the plaintiffs' antitrust claims resemble only a rote inventory of key words and phrases from an antitrust hornbook. *See Sage Realty Corp. v. ISS Cleaning Servs. Group, Inc.,* 936 F.Supp. 130, 135 (S.D.N.Y.1996) ("[A]n antitrust Complaint is insufficient if it simply contains conclusory allegations which merely recite the litany of antitrust.") (internal quotations and citations omitted). Such terminology may be necessary to state an antitrust claim, but it is not alone sufficient.

Moreover, the Complaint sets forth no factual connection between the alleged market effects and the substantive allegations concerning, for example, AP's check endorsement policies with respect to Freelance Photographers generally. Similarly, the allegations regarding the individual plaintiffs show at most that they personally were harmed by AP's actions toward them, and *not* that others in the market were thereby harmed, thus rendering those allegations deficient as well. *See Capital Imaging,* 996 F.2d at 543 ("to prove [plaintiff] has been harmed as an individual competitor will not suffice"). In short, at no point does the Complaint adduce facts to show that *competition in the market* -even as generously defined by the plaintiffs in their brief opposing this motion as the "commercial" market for photographs by Freelance Photographers-was harmed by AP's copyright transfer policies or its "refusal to deal with Freelance Photographers." To the contrary, the Complaint merely sets forth a situation in which a purchaser of goods dictates the terms of its purchases. There is no allegation, however, that the copyright transfer requirement prevents those Freelance Photographers who do *not* "object to AP's conduct" from competing in the market, and there are no facts alleged-including those concerning the individual plaintiffs-to support the claim that Freelance Photographers are compelled to submit images to *AP* and no other entity to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
(Cite as: 1997 WL 759456 (S.D.N.Y.))

remain competitive. Without any of these sorts of allegations, the plaintiffs' claim simply cannot survive.

*11 Finally, the plaintiffs' substantive theory of antitrust violation under Section 1 is flawed as well. Although nowhere asserted in the Complaint, the plaintiffs contend in opposing this motion that their pleadings adequately allege restraint of trade in the form of either a "reciprocal dealing" arrangement or a "tying" arrangement. The former claim fails because, as the plaintiffs concede, the "essence" of a reciprocal dealing arrangement is "the willingness of each [of two companies] to buy from the other, conditioned upon the expectation that the other company will make reciprocal purchases," (quoting *United States v.. General Dynamics Corp.,* 258 F.Supp. 36, 58 (S.D.N.Y.1966)); in this case, however, there has never been the slightest suggestion (either in the Complaint or in the papers addressed to this motion) that the plaintiffs have made any relevant purchases from AP.

The tying claim is equally invalid. A tying arrangement is defined as:

an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 461, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (quoting *Northern Pac. R. Co. v. United States,* 356 U.S. 1, 5-6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)). Implicit in this definition is the "fundamental principle of antitrust law that an illegal tying arrangement requires that *at least two products* and/or services be purchased by the same individual." *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 71 (2d Cir.) (citation omitted) (emphasis added), *cert. denied,* 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996). There simply is no way that the plaintiffs can make out a tying claim in this case as presently configured, given that the only

purchaser at issue is AP, the alleged antitrust violator, and that AP is purchasing only *one product,* the photographs that are the subject of the plaintiffs' present copyright claims. The plaintiffs' dubious attempt to distinguish different *markets* for the subject photographs-one ostensibly involving news agencies such as AP and the other involving the "commercial" photograph-buying public-cannot circumvent the determinative circumstance in their pleadings, *i.e.,* that only a *single* product is being bought.

In sum, the plaintiffs have pleaded insufficient facts to establish that they suffered antitrust injury under the *per se* "tying" theory, and they likewise have stated no claim for the requisite injury under the "rule of reason" because, as noted above, they have plead no facts that, if proven, would show that AP's actions "had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging,* 996 F.2d at 543 (emphasis in original). Their Section 1 claim must therefore be dismissed.

### 2. *Monopolization*

Although the plaintiffs failed to plead a separate claim for monopoly, the Court will consider the viability of such a claim because the Complaint, by citing Section 2 of the Sherman Act, seems at least to attempt to make allegations thereunder. Section 2 penalizes "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire ... to monopolize ... trade or commerce." 15 U.S.C. § 2. Under that statute, "[t]he offense of monopoly ... has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power...." *Eastman Kodak,* 504 U.S. at 481 (citation omitted); *accord Clorox,* 117 F.3d at 61. A claim of attempted monopoly requires the plaintiff to prove: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v.. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

(1993). The allegations here are insufficient to sustain either variation of the claim.

*12 First and foremost, while the Complaint makes the flatly conclusory assertion that "AP dominates and controls the market for gathering and disseminating information through print media in the form of photographic images," the plaintiffs' pleadings fail altogether to allege facts that would substantiate such a claim. Specifically, the Complaint contains not a single factual allegation demonstrating that AP has *any* market power, or the extent thereof, let alone that AP's market share makes it dominant. Absent any description of the relevant market structure, or any statement concerning the percentage of the market that is controlled by AP, the plaintiffs cannot establish that AP either possesses monopoly power or has a "dangerous probability" of achieving it. The plaintiffs' mere assertion of AP's dominance is insufficient make it so.

In addition, as indicated above, the Complaint contains no facts to support that AP's policies have had any adverse effect on *competition,* as opposed to individual Freelance Photographers. And finally, there is no allegation from which it could be found that AP wilfully acquired monopoly power or intends to acquire it in the future. For these reasons, the plaintiffs have failed to state a claim under Section 2.

E. *Copyright Infringement*

The claim for copyright infringement is easily dismissed. he allegation in the Complaint that plaintiff Larkin "fil[ed] a Registration Application" as well as other materials and fees with the United States Copyright Office ... prior to the commencement of this action," bares the fatal defect. As AP correctly notes, an action for copyright infringement cannot be asserted unless a certificate of registration has been *issued;* the mere filing of an application is simply insufficient to support such a claim. *See, e.g., Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.) ("There are only two elements of an in-

fringement claim: ownership of a valid copyright and the copying of constituent elements of the work that are original."), *cert. denied,* 522 U.S. 908, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997); *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2d Cir.1989) (same); *Robinson v. The Princeton Review Inc.,* 41 U.S.P.Q.2d 1008, 1015 (S.D.N.Y.1996) ("[A]s most of the cases in this Circuit to have considered the issue have held, registration is a prerequisite to commencement of an action for copyright infringement.") (citing cases). Because it is undisputed that neither Larkin nor any of the other plaintiffs has received a certificate of registration in any of the subject photographs from the Copyright Office, this claim must be dismissed.[FN11]

> FN11. The plaintiffs' sole citation from this Circuit in support of their claim is to a single footnote in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 886 F.Supp. 1120 (S.D.N.Y.1995), which in turn cited a Fifth Circuit opinion in dicta for the proposition that receipt by the Copyright Office of a registration application (along with the required materials and fees) is sufficient to assert an infringement claim. *Id.* at 1125 n. 7 (citing *Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 386-87 (5th Cir.1984)). Even aside from the limited persuasiveness in any event of so attenuated a reference, the Fifth Circuit opinion appears to offer minimal precedential value, especially today. First, it is evident that the court in *Itar-Tass* found the registration requirement unnecessary only because the works for which the plaintiffs sought copyright protection in that case were "Berne Convention works under 17 U.S.C. § 101," 886 F.Supp. at 1126, works that are expressly exempted from the registration prerequisite under Section 411 of the Copyright Act, 17 U.S.C. § 411. Moreover, as Judge Kaplan of this Court has pointed out, the statement in *Apple*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481
**(Cite as: 1997 WL 759456 (S.D.N.Y.))**

*Barrel* regarding the necessity of actual re-gistration was based solely on "the then-current edition of *Nimmer* [,] ... yet that au-thoritative text now quite clearly indicates that registration is a precondition to the commencement of an infringement action except in limited circumstances that do not pertain to this case." *Robinson v. The Prin-ceton Review Inc.,* 41 U.S.P.Q.2d 1008, 1015 (S.D.N.Y.1996) (citing 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B] (1996)). In short, the plaintiffs have offered no persuasive au-thority to sustain their claim.

### F. Sanctions

AP's motion for sanctions under Rule 11, Fed.R.Civ.P., is based on the following conduct of the plaintiffs: (i) their erroneous assertion in the original complaint that the individual plaintiffs had obtained actual registration with the Copyright Of-fice for the photographs that they are the subject of their infringement claims against AP; and (ii) their contention that the legend on the checks at issue cannot transfer a copyright. On the latter point, AP argues that the law is settled that a copyright may be transferred by such a legend unless factual cir-cumstances surrounding the transfer indicate other-wise.

**\*13** As noted, the plaintiffs amended their plead-ings to remove any assertion of actual copyright re-gistration, and they have made clear in opposing AP's motion for judgment on the pleadings that their legal theory regarding the check legends is that the legend in this case was ineffective to create a transfer of copyright because of the circumstances attendant to individual transfers. Indeed, in light of the amendment of their pleadings and subsequent arguments, the plaintiffs now contend that AP's Rule 11 motion was filed in bad faith, and they have accordingly cross-moved for Rule 11 sanc-tions against AP. Applying the safe harbor provi-sion of Rule 11, I decline to impose sanctions pur-suant to either motion.

### CONCLUSION

For the reasons set for above, AP's motion for judg-ment on the pleadings is granted and Counts One through Five of the Complaint are dismissed in their entirety. The cross-motions for sanctions are denied.

SO ORDERED.

S.D.N.Y.,1997.
National Assoc. of Freelance Photographers v. As-sociated Press
Not Reported in F.Supp., 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# HURWIT DECL. EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d, 2001 WL 286724 (S.D.N.Y.), 64 U.S.P.Q.2d 1061
**(Cite as: 2001 WL 286724 (S.D.N.Y.))**

C

United States District Court, S.D. New York.
CITY MERCHANDISE, INC., Plaintiff,
v.
KINGS OVERSEAS CORP. d//b/a Kings International Co., Debbie Feldstein, Naum Feldchtein, and Sarita Feldchtein, Defendants.
**No. 99 CV 10456(RCC).**

March 23, 2001.

OPINION AND ORDER

CASEY, D.J.

**\*1** Defendants King Overseas Corp., Debbie Feldstein, Naum Feldchtein and Sarita Feldchtein ("Defendants") bring this motion to dismiss for failure to state a cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(6). They also request the costs of this motion and attorney fees. For the reasons explained below, the motion is granted, but the request for costs and fees is denied.

I. Background

Plaintiff City Merchandise ("Plaintiff") brings this suit claiming copyright infringement, Lanham Act and New York statute violations, unfair competition and unjust enrichment. In January 1997, Plaintiff commissioned a design to be imprinted on a variety of goods, including mugs. Complaint at ¶ 6. The wording on the design is "NY" and "New York." Plaintiff maintains that it is the exclusive owner of the right, title, interest in and copyright pertaining to the design. *Id.* at ¶ 7. Plaintiff applied for copyright registration in October 1999, but it has not yet sought leave to amend its complaint to reflect such registration. *Id.* at ¶ 8.

Plaintiff alleges that Defendants obtained access to the design without permission in January 1998, and produced and distributed through interstate commerce various goods depicting the design. *Id* . at ¶ 9. On September 1, 1999, counsel for Plaintiff wrote to Defendant Sarita Feldchtein, an officer of Defendant Kings International, and stated that if Defendants desired to avoid a lawsuit they should (1) list all of their items depicting the design; (2) provide an accounting of their sales, costs and profits associated with the design; (3) produce invoices representing sales of the design; (4) deliver the infringing items; and (5) make payment in the greater amount of either $2,500 or their profits from the allegedly infringing items. Max Aff., Ex. A. When Defendants did not respond, Plaintiff filed its complaint on October 12, 1999.

II. Discussion

A. Standard for Motion to Dismiss

In reviewing a motion to dismiss for failure to state a cause of action, the court must accept as true the allegations in the complaint and draw all inferences in favor of the complainant. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Thus, the issue is not whether plaintiff will ultimately prevail, rather whether plaintiff is entitled to offer evidence to support its claims. *GMA Accessories, Inc. v. Idea Nuova,* 2000 WL 1848478, at \*2 (S.D.N.Y. Dec. 18, 2000) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)). Nonetheless, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Yurman Design Inc. v. Chaindom Enters., Inc.,* 2000 WL 897141, at \*4 (S.D.N.Y. July 5, 2000).

B. Copyright Infringement Claim

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2001 WL 286724 (S.D.N.Y.), 64 U.S.P.Q.2d 1061
(Cite as: 2001 WL 286724 (S.D.N.Y.))

**\*2** Plaintiff claims the design in question is an original work under the Copyright Act of 1976, 17 U.S.C. § 102, and that the Defendants' appropriation of the design infringes on Plaintiff's copyright. The party claiming copyright infringement must prove ownership of a valid copyright and unauthorized copying by the putative infringer. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Hamil Am., Inc. v. GFI,* 193 F.3d 92, 98 (2d Cir.1999); *Marvullo v. Gruner & Jahr AG & Co.,* 2001 WL 40772, at \*2 (S.D.N.Y. Jan. 17, 2001) (stating copyright infringement claim must allege original work, ownership of copyright in work, registration of copyright, and infringing acts). Registration of the work is "prima facie" evidence of ownership. *Marvullo,* 2001 WL 40772, at \*2. Copying can be demonstrated with either direct evidence or "circumstantially by showing access to the copyrighted work, and substantial similarity as to protectible material in the two works." *Franklin Elec. Publishers, Inc. v. Unisonic Prods.Corp.,* 763 F.Supp. 1, 4 (S.D.N.Y.1991).

The Copyright Act states in part, "no action for infringement ... shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). If the registration has been refused, the applicant may bring an infringement claim after giving notice to the Register of Copyrights. *Id.* Here, Plaintiff has applied for copyright registration, but has not, to this Court's knowledge, received such registration. It is well settled that the court lacks subject matter jurisdiction unless the claimant has a registration or its registration has been refused. *See e.g., Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 453 (2d Cir.1989) (stating registration is prerequisite to copyright infringement claim); *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.,* 49 F.Supp.2d 673, 677 (S.D.N.Y.1999) ("[D]istrict courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a party asserts in its pleadings that he has received an actual certificate of registration or its denial from the Copyright Office."); *Noble v.*

*Town Sports Int'l, Inc.,* 1998 WL 43127, at \*1 (S.D.N.Y. Feb. 2, 1998) (dismissing Copyright Act claim because plaintiff had only applied for registration and had not received it); *National Ass'n of Freelance Photographers v. Associated Press,* 1997 WL 759456, at \*12 (S.D.N.Y. Dec. 10, 1997) ("[A]n action for copyright infringement cannot be asserted unless a certificate of registration has been issued; the mere filing of an application is simply insufficient to support such a claim.") *Robinson v. Princeton Review,* 1996 WL 663880, at \*7-8 (S.D.N.Y. Nov. 15, 1996) (same); *Demetriades v. Kaufmann,* 680 F.Supp. 658, 661 (S.D.N.Y.1988) ("Receipt of an actual certificate of registration or denial of same is a jurisdictional requirement, and this court cannot prejudge the determination to be made by the Copyright Office.").

**\*3** Plaintiff urges that this long line of cases should be ignored in favor of a statement in *Lennon v. Seaman,* in which the district court stated the jurisdictional registration requirement could be met by filing an application for registration. 63 F.Supp.2d 428, 432 (S.D.N.Y.1999). The Court is not persuaded. First, this statement is not controlling on this Court's decision. Second, rather than relying on case law within this Circuit for support, the statement cites only a copyright treatise. *See id.* Third, in a subsequent decision in the same case, the cases cited by the court do not support the proposition that the filing of an application meets the jurisdictional requirement. *See Lennon v. Seaman,* 84 F.Supp.2d 522, 524 (S.D.N.Y.2000) (listing cases). In all of the cited cases, the claimant had complied with the statute by either obtaining a registration or a refusal. For example, in *Demetriades v. Kaufmann,* when the plaintiff filed the complaint he had an application for registration, at which time the court did not have jurisdiction. *Demetriades,* 680 F.Supp. at 661. The Copyright Office issued a registration before the court made its determination, however, hence giving the court jurisdiction. *Id.*

The statute and Second Circuit precedent explicitly require registration as a prerequisite to an infringe-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 286724 (S.D.N.Y.), 64 U.S.P.Q.2d 1061
**(Cite as: 2001 WL 286724 (S.D.N.Y.))**

ment claim. Plaintiff has not alleged ownership, i.e., registration, of the copyright, therefore it has not met the jurisdictional requirements for a copyright claim. Its claim for copyright infringement must be dismissed.

## C. Lanham Act Claim

Plaintiff's second claim alleges false designation of origin in violation of § 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Section 43(a) affords protection for unregistered marks by providing a cause of action for the use of "any word, term, name, symbol, or device ... or any false designation of origin ... which is likely to cause confusion ... as to the origin ... of ... goods." *Id.* Courts have expanded the Act's protection to "encompass the design of a product" or its "trade dress." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 209 (2000). To be entitled to this protection, the mark must be distinctive. *Id.* at 210; *GMA Accessories, Inc.,* 2000 WL 1848478, at *3.

A mark is inherently distinctive if its inherent nature serves to identify a particular source. *Wal-Mart,* 529 U.S. at 210 (quoting § 43(a)). Courts have found word marks to be inherently distinctive if they are "arbitrary," fanciful" or "suggestive." *Id.* (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 10-11 (2d Cir.1976)). However, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores,* 529 U.S. at 216. A mark has secondary meaning "when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." ' *Id.* at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851, n. 11 (1982)). Here, there is no allegation of distinctiveness generally or secondary meaning specifically. Therefore, the Lanham Act claim is dismissed.

## D. Remaining Claims

*4 Plaintiff's remaining claims include unfair competition, unjust enrichment and violation of New York's General Business Law § 349. These claims all arise under state law and the Court declines to retain jurisdiction over them. *See Historical Truth Prods. v. Sony Pictures Entm't, Inc.,* 1995 WL 693189, at *13 (S.D.N.Y. Nov. 22, 1995) (declining jurisdiction over unfair competition, misappropriation and unjust enrichment claims after Copyright Act claim had been dismissed). A federal court hearing a federal question may exercise supplemental jurisdiction over state law claims that arise under the same "case or controversy." 28 U.S.C. § 1367(a). Once the federal question claim is dismissed, however, the court may decline to retain jurisdiction over the remaining claims. *Historical Truth Prods.,* 1995 WL 693189, at *13 (citing 28 U.S.C. § 1367(c)(3) and *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) (suggesting that district court is obliged to dismiss the remaining state law claims under these circumstances)). Further, the corporate parties are both New York corporations and there is not complete diversity here. *See* Complaint at ¶¶ 1-3. Accordingly, the remaining claims are dismissed.

## III. Conclusion

For the reasons forgoing reasons, Defendants' motion to dismiss is granted. As Defendants did not provide any support for their request for costs and attorney fees, the request is denied. The Clerk of the Court is directed to close the case.

So ordered.

S.D.N.Y.,2001.
City Merchandise, Inc. v. Kings Overseas Corp.
Not Reported in F.Supp.2d, 2001 WL 286724 (S.D.N.Y.), 64 U.S.P.Q.2d 1061

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# HURWIT DECL. EXHIBIT 3

Westlaw.

Not Reported in F.Supp., 1998 WL 43127 (S.D.N.Y.), 46 U.S.P.Q.2d 1382
**(Cite as: 1998 WL 43127 (S.D.N.Y.))**

☞

United States District Court, S.D. New York.
Richard NOBLE, Richard Noble, as agent for Wil-
liam J. Cook and Kim L. Waltrip, Jeffrey Robert
Bate, Craig D. Branham, Steve Lyon, Sharon K.
Lloyd-Dunbar, and Christine N Seibert, Plaintiffs,
v.
TOWN SPORTS INTERNATIONAL, INC. and
TSI/NEW YORK SPORTS CLUB, INC., Defend-
ants.
**No. 96 CIV. 4257(JFK).**

Feb. 2, 1998.

*MEMORANDUM OPINION and ORDER*

KEENAN, District J.

**\*1** Before the Court is Defendants' motion to dis-
miss this action, pursuant to Fed.R.Civ.P. 12(b)(1),
for lack of federal subject matter jurisdiction or, in
the alternative, dismissing Plaintiffs' claim for stat-
utory damages and attorney's fees under the Copy-
right Act. For the reasons stated below, the Court
grants Defendants' motion to dismiss for lack of
federal subject matter jurisdiction.

BACKGROUND

Plaintiff Richard Noble is a professional photo-
grapher who took photographs of the other
Plaintiffs in this action, who are models. Defend-
ants Town Sports International, Inc. and TSI/New
York Sports Club, Inc. are affiliates that operate
health clubs in New York, Massachusetts, Wash-
ington, D.C. and other places. By a written license
agreement, Defendants allegedly purchased from
Noble a limited right to use his photographs in con-
nection with a specific advertising campaign. The
agreement allegedly provided that Defendants
could use the photographs for one year, in a limited
geographic area, for a specific advertising cam-

paign. Plaintiffs contend that Defendants breached
the terms of the license agreement by using the
photographs for more than one year, without
Plaintiffs' consent, in unauthorized advertisements
and in unauthorized geographic areas. Plaintiffs
filed the instant lawsuit, stating a federal claim for
copyright infringement and state law claims for
breach of contract, unfair competition, unjust en-
richment and invasion of privacy under §§ 50-51 of
the New York Civil Rights Law.

Defendants move to dismiss the federal copyright
infringement claim on the ground that the photo-
graphs at issue are not registered with the U.S.
Copyright Office, which is a prerequisite to institut-
ing a copyright infringement suit. Alternatively,
Defendants move to dismiss the claim for statutory
damages and attorney's fees for failure to comply
with 17 U.S.C. §§ 411(a) and 412 of the Copyright
Act.

DISCUSSION

*A. The Copyright Infringement Claim*

Under the Copyright Act, "[N]o action for infringe-
ment of the copyright of any work shall be insti-
tuted until registration of the copyright claim has
been made in accordance with this title." 17 U.S.C.
§ 411(a). "The registration requirement is a juris-
dictional prerequisite to an infringement suit."
*M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903
F.2d 1486, 1488 & n. 4 (11th Cir.1990); *see Whim-
sicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d
452, 453 (2d Cir.1989) ("proper registration is a
prerequisite to an action for infringement"); *De-
metriades v. Kaufman,* 680 F.Supp. 658, 661
(S.D.N.Y.1988) ("Receipt of an actual certificate of
registration or denial of same is a jurisdictional re-
quirement, and this court cannot prejudge the de-
termination to be made by the Copyright Office.").

Plaintiff Richard Noble has only applied for copy-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 43127 (S.D.N.Y.), 46 U.S.P.Q.2d 1382
**(Cite as: 1998 WL 43127 (S.D.N.Y.))**

right registration of the photographs at issue in this case; a certificate of registration has not yet been issued by the Copyright Office. Nonetheless, Plaintiffs' counsel contends that "[t]he application for registration is sufficient to maintain an infringement action." Pls. Mem. in Opp. at 6. The Court disagrees. The issuance of a registration certificate is a "prerequisite to the commencement of the infringement action" and an application for registration does not suffice. *Robinson v. Princeton Review,* No. 96 Civ. 4859(LAK), 1996 WL 663880, at *7-8 (S.D.N.Y. Nov.15, 1996); *see National Ass'n of Freelance Photographers v. Associated Press,* No. 97 Civ. 2267(DLC), 1997 WL 759456, at *12 (S.D.N.Y. Dec.10, 1997) ("an action for copyright infringement cannot be asserted unless a certificate of registration has been issued; the mere filing of an application is simply insufficient to support such a claim"). Because Plaintiff Noble has only filed an application for registration, and no certificate of registration has yet been issued for the photographs underlying the infringement claim, the federal copyright infringement claim cannot stand. Upon dismissal of this federal claim, which is the only basis for original federal jurisdiction, only state law claims remain and the Court declines to exercise supplemental jurisdiction over those claims.

CONCLUSION

**\*2** For the reasons discussed above, the Court grants Defendants' motion to dismiss the federal copyright infringement claim for lack of federal subject matter jurisdiction. Absent any other federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. The Court orders this case closed and directs that it be removed from the Court's docket.

SO ORDERED.

S.D.N.Y.,1998.
Noble v. Town Sports Intern., Inc.
Not Reported in F.Supp., 1998 WL 43127 (S.D.N.Y.), 46 U.S.P.Q.2d 1382

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# HURWIT DECL.
# EXHIBIT 4

Westlaw

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
(Cite as: 1996 WL 663880 (S.D.N.Y.))

Page 1

☞

United States District Court, S.D. New York.
Adam ROBINSON, Plaintiff,
v.
The PRINCETON REVIEW, INC. and John Katz-
man, Defendants.
No. 96 CIV. 4859 (LAK).

Nov. 15, 1996.

Glenn Greenwald, New York City, for Plaintiff.

Kim J. Landsman, Patterson, Belknap, Webb &
Tyler LLP, New York City, for Defendants.

AMENDED MEMORANDUM OPINION

KAPLAN, District Judge.

*1 Adam Robinson, the plaintiff in this case, claims
to be the author of very successful test preparation
books which, along with other works allegedly
based on them, are published by defendant The
Princeton Review, Inc. ("Princeton"). Robinson as-
serts that Princeton is infringing his claimed copy-
right in certain materials and that it has breached
various other legal duties owed to him. Princeton
and its president, John Katzman, move to dismiss
the complaint on the grounds that (1) the Court
lacks subject matter jurisdiction because plaintiff's
claims do not arise under the Copyright Act, and
(2) plaintiff has not obtained a registration of any of
the copyrights sued upon as allegedly required by
17 U.S.C. § 411(a). In the alternative, defendants
move for an order compelling arbitration and stay-
ing this action.

*Facts*

As this is a motion addressed to the complaint, the
Court takes its well-pleaded factual allegations as
true. It considers also the three exhibits incorpor-

ated into the complaint: two contracts to which the
parties are signatories and a series of applications
for registration of copyright. *San Leandro Emer-
gency Medical Plan v. Philip Morris,* 75 F.3d 801,
808-09 (2d Cir.1996).

From 1985 through 1990, Robinson co-authored a
series of six highly successful books including
*Cracking the System: The SAT, Word Smart, Guide
to College Admissions,* and test preparation books
for the LSAT, the CRE and the GMAT
(collectively, the "Initial Works"). (Cpt ¶ 10; *id.*
Ex. A, ¶ 2) Although the complaint does not expli-
citly say so, it seems clear that these Initial Works
were published by Princeton.

In 1989, Katzman sought to induce Robinson to
transfer his copyright and other interests in the
formation and development of the business to Prin-
ceton. The two agreed that they would form a three-
person mediation panel to determine the amount of
compensation to be paid by Princeton to Robinson
as compensation for Princeton's past exploitation of
Robinson's work. (Cpt ¶ 27)

*The 1990 Agreement*

In 1990, Robinson was in financial difficulty, al-
legedly because Princeton did not pay him a share
of its profits and otherwise deprived him of eco-
nomic benefits to which he was entitled. (*Id.* ¶ 28)
Under this financial pressure, Robinson entered into
an agreement with Katzman and Princeton, dated
July 24, 1990 (the "1990 Agreement"), pursuant to
which Robinson acknowledged that his contribu-
tions to the works theretofore published by Prin-
ceton had been made as an employee for hire, as-
signed any interest he may have had in the literary
property, and gave Princeton a release, all in ex-
change for $200,000. Princeton promised to ac-
knowledge and credit Robinson as the creator of
various techniques and ideas in its products. (*Id.* ¶
33 & Ex. B)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
**(Cite as: 1996 WL 663880 (S.D.N.Y.))**

*The Random House Agreement*

In 1990, Robinson entered into a publishing agreement with Random House, Inc. ("Random House"), Princeton and David Owen for the publication of six additional education-related works. (Cpt ¶ 10) This in turn led Princeton to adopt a business plan pursuant to which it would create an array of educational products that would trade on the success of the Initial Works. (*Id.* ¶ 11) According to plaintiff, the success of the Initial Works has spawned "a vast array of highly profitable education-related products which have been, and continue to be, marketed and sold by" Princeton and many of which "are directly derived from" or "centrally based upon the ideas contained in" the Initial Works (collectively known as the "Derivative Works"). (*Id.* ¶ 12)

*The 1991 Agreement*

*2 On or about September 26, 1991, Robinson, Princeton, Katzman and others entered into a second agreement (the "1991 Agreement"). (*Id.* ¶ 14 & Ex. A) The 1991 Agreement recited that (i) Katzman, Robinson, Owen and another had entered into an agreement with a division of Random House to publish trade paperback editions of the Initial Works, and (ii) Katzman, with the consent of Robinson and others, had entered into an agreement with Random House for the publication of six additional works in the series (the "Subsequent Works"). (*Id.* Ex. A, at 1) It provided for payments by Princeton to Robinson and Owen and the distribution of royalties on the Initial and Subsequent Works among Princeton, Robinson, Owen and another. (*Id.* ¶¶ 1(a), 3) The Agreement acknowledged that all of the books in the series would require periodic revision and provided that "every attempt" would be made to have the original writers make the necessary revisions to the Initial Works. (*Id.* ¶ 2) Should the original writers fail to make the revisions, the other parties had the right to make them, subject to the reasonable approval of Robinson, Owen and Princeton. (*Id.*)

The 1991 Agreement dealt also with future exploitation of the Initial and Subsequent Works. It provided that the parties appointed Princeton:

'as the sole party with the right to authorize the exploitation of all such works or any elements thereof and that without the written consent of [Princeton], no other party shall authorize or license any publication or use of such works or any derivations thereof for any purpose, provided that Owen and Robinson shall have a right of approval with respect to any such exploitation of the [Initial Works] and/or Word/Smart II [one of the Subsequent Works], such approval not to be unreasonably withheld." (*Id.* ¶ 4(a))

Owen and Robinson confirmed also that (i) they had transferred to Princeton all rights, if any, they had in and to all books in the series except the Initial Works and Word Smart II, and (ii) any contributions they might make to the series, with the exception of the Initial Works, "derivative works based thereon," and any future books of which they might be the authors, would be as employees for hire with the intention that copyright would vest irrevocably in Princeton. (*Id.* ¶ 4(b))

*The Complaint*

The complaint contains four counts. (Cpt ¶¶ 40-68)

The first count, which purports to allege copyright infringement, asserts that Princeton Review has been (a) "marketing, advertising, promoting, using, infringing upon, selling, publicly distributing, and profiting" from Robinson's copyrighted materials, (b) "using and exploiting Robinson's copyrighted products, books, and other materials without his consent and/or authorization," a nd (c) "copying or substantially copying portions of Robinson's copyrighted products, books, and other materials without compensating Robinson and without acknowledging his copyright interests therein." It alleges also that Princeton used and exploited Robinson's works without "compensating him or furnish-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
**(Cite as: 1996 WL 663880 (S.D.N.Y.))**

ing him with his share of the profits generated by said use and exploitation." (*Id.* ¶ 44)

*3 The second count is for breach of contract. It alleges that defendants have breached the 1991 Agreement by, among other things, failing to pay Robinson amounts due under the 1991 Agreement, to credit him on subsequent works based on works of which Robinson allegedly was the author, and using Robinson's works without his approval. (*Id.* ¶ 50)

The third and fourth counts allege, respectively, claims for breach of alleged fiduciary duties and to set aside the 1990 Agreement on the ground of duress. (*Id.* ¶¶ 60-68)

The complaint seeks at least $20 million in compensatory damages, at least $50 million in punitive damages, an accounting, a declaration that the 1990 Agreement is null and void, and an injunction restraining the defendants from publishing products based upon or derived from Robinson's copyrighted works without properly crediting Robinson and obtaining his approval.

### Discussion

For Robinson to have this claim heard in federal court, he must establish both that the Court has jurisdiction over the subject matter and that the procedural requirements for bringing suit under 17 U.S.C. § 411(a) have been met.

### Subject Matter Jurisdiction

### The Standard

There is subject matter jurisdiction in this case only if plaintiff has stated a claim arising under the Copyright Act.[FN1] However, "[i]t is well-settled that not every case involving federal copyright laws 'arises under' those laws such that federal jurisdiction is proper pursuant to § 1338(a)." *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 931 (2d

Cir.1992).

> FN1. The complaint alleges jurisdiction under 28 U.S.C. §§ 1331 a nd 1338(a). As there is no claim alleged under any federal statute other than the Copyright Act, those sections are coextensive for purposes of this case.

The long history of the federal courts' efforts to define the contours of federal jurisdiction in cases involving copyrights was summarized in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964), *cert. denied,* 381 U.S. 915 (1965). That case, however, did not resolve the question whether there is federal question jurisdiction "when a defendant licensed to use a copyright or patent on certain terms is alleged to have forfeited the grant ..." *Schoenberg,* 971 F.2d at 931. The Circuit turned to that issue in *Schoenberg,* where it set out a three-prong test for determining when federal jurisdiction exists in a case claiming copyright infringement by virtue of a breach by a licensee of the terms of the license:

' *Schoenberg* asks a Court first to determine whether the claim of copyright infringement is only 'incidental' to plaintiff's claim seeking a determination of contractual rights. If the copyright infringement claim is merely incidental, no jurisdiction exists and the analysis ends. If the infringement claim is more than incidental, the court should determine whether the claim alleges a breach of a condition. If the complaint alleges a breach of condition, the court has subject matter jurisdiction. If not, the court must examine whether a breach of covenant is alleged. If a breach of covenant is asserted, the court has jurisdiction if the alleged breach is so material as to create a right of rescission." *Schoenberg v. Shapolsky,* 916 F.Supp. 333, 334-35 (S.D.N.Y.1996) (citing *Schoenberg,* 971 F.2d at 932) (footnote omitted).

*4 While the meaning of the second and third prongs of the test is clear, *infra,* the standard for de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
(Cite as: 1996 WL 663880 (S.D.N.Y.))

termining whether an alleged infringement is merely incidental to a contract dispute is less so. Nonetheless, the *Schoenberg* panel cited with approval *Berger v. Simon & Schuster,* 631 F.Supp. 915 (S.D.N.Y.1986), 971 F.2d at 932, where Judge Sand looked to the plaintiff's real motive in bringing the suit-specifically, whether the substance of the claim was to vindicate his rights as copyright proprietor or, as was found to be true in that case, merely to free himself of his contractual obligations in order to publish with another publisher on more attractive terms. 631 F.Supp. at 918-19. More recently, Judge Sand held in *Living Music Records, Inc. v. Moss Music Group, Inc.,* 827 F.Supp. 974 (S.D.N.Y.1993), that an infringement claim is incidental if it necessarily would be resolved by determination of the contract issues and that the assertion of a separate claim for breach of contract also is relevant.[FN2] *Id.* at 980; *accord, Schoenberg,* 916 F.Supp. at 335. This Court, on remand in *Schoenberg,* identified additional factors that aid in determining whether infringement claims are merely incidental to contract disputes and therefore not within the grant of copyright jurisdiction. A claim is incidental if "resolving plaintiff's claim will not require the Court to construe any aspect of the Copyright Act or to apply distinctly federal principles." *Schoenberg,* 916 F.Supp. at 335. The lack of any effort by the plaintiff to terminate the license also is relevant to determining the essential nature of the claim. *Id.* In much the same vein, the failure of a plaintiff with a claim of this nature to tender back the benefits received under the license suggests that the crux of the suit is for breach of contract-that is, for enforcement of the provisions of the license-rather than for copyright infringement. *See* 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.15[A], at 10-127 (1996) (hereinafter NIMMER ).

> FN2. *See also Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 230 (2d Cir.1982) (lack of contract claim considered in determining that complaint stated claim under Copyright Act).

*Plaintiff's Infringement Claim*

*The Infringement Claim Is Incidental*

Stripped of verbiage, plaintiff's infringement claim is that the defendants have exploited certain of the allegedly copyrighted materials without complying with the terms of the 1991 Agreement providing for (a) plaintiff's compensation, (b) the crediting of plaintiff's contributions, and (c) obtaining plaintiff's approval.[FN3] (Cpt ¶ 44) Resolution of the claims of alleged breaches of contract necessarily will resolve the infringement claims. Moreover, there is no suggestion that plaintiff has given notice of termination of the agreements or that he has tendered back any consideration that he has received thereunder. Indeed, the injunction plaintiff seeks would not preclude the defendants from exploiting the works. It would preclude exploitation only if plaintiff were not properly credited, his approval not obtained, or the compensation "to which he is entitled" not paid. (Cpt at 28-29) In other words, plaintiff in substance seeks specific performance, not to recapture any rights that he licensed to Princeton thereunder. Plaintiff's claim of copyright infringement therefore is incidental to his contract claims.

> FN3. Indeed, plaintiff has acknowledged that he makes no claim that Princeton's publication of the Initial Works and the Subsequent Works is infringing because plaintiff "agreed to permit the Princeton Review to publish them ..." (Tr., July 22, 1996, 15-16) He complains only of the derivative works prepared from them. (*Id.*) This is a most unusual argument, as it is difficult to see how the derivative works could infringe if defendants' publication of the Initial and Subsequent Works does not. (*See id.* at 17-18) The point here, however, is that plaintiff does not contend that any of defendants' actions should be held to have resulted in the reversion to the plaintiff of any rights granted by him to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5
Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
(Cite as: 1996 WL 663880 (S.D.N.Y.))

Princeton, save his contention that he entered into the 1990 Agreement under duress. *Infra.*

*5 Even if the infringement claim were not merely incidental to the contract dispute, the complaint would not pass muster under the second and third prongs of the *Schoenberg* test. The *Schoenberg* court adopted the analysis previously employed by the District of Columbia Circuit in *Costello Publishing Co. v. Rotelle,* 670 F.2d 1035 (D.C.Cir.1981). *Costello* makes clear that the proper focus of the inquiry is on whether the plaintiff, if successful, would recapture any rights previously granted to the licensee, either for failure of a condition prerequisite to or qualifying the grant or by rescission for material breach. 670 F.2d at 1045.

The plaintiff, as noted, does not here seek to recapture any rights granted by the 1991 Agreement. He does not seek rescission, and he does not allege that he tendered to the defendants whatever consideration he already has received under the 1991 Agreement, an essential element of a rescission claim. *See Wigand v. Flo-Tek, Inc.,* 609 F.2d 1028, 1035 (2d Cir.1980).

Plaintiff does argue that he asserts claims of copyright infringement that are not grounded in the contract. His contentions, however, are singularly unpersuasive.

First, plaintiff points to his allegation that Princeton is selling the disputed works without acknowledging plaintiff's copyright interests in them and argues that "these acts of infringement" are "grounded exclusively in Section 401 of the Copyright Act." (Pl.Mem. 12-13) But "an author who sells or licenses her work does not have an inherent right to be credited as author of the work" and "it has been held not to infringe an author's copyright for one who is licensed to reproduce the work to omit the author's name." 2 NIMMER § 8D.03[A][1], at 8D-32. Section 401, moreover, merely permits a copyright owner to place a notice of copyright on publicly distributed copies of a work and provides for the form, position and evidentiary weight of the notice. It did not require that Princeton acknowledge plaintiff's claimed interest in the allegedly infringing works. Even if it did, it is doubtful that Princeton's failure to do so would constitute infringement, which is defined by Section 501 of the Act in relevant part as violation of any of the exclusive rights of the copyright owner as provided by Sections 106 through 118. Hence, plaintiff's claim of infringement based on the alleged failure to attribute his contribution rests exclusively on the contracts.[FN4] *Id.*

> FN4. The 1991 Agreement provides only that it contains nothing that "in any way limits [plaintiff's] right to claim and receive due credit for [his] contributions." (Cpt Ex. A, ¶ 6(b)) The 1990 Agreement obligated defendants "to provide appropriate recognition, acknowledgment and attribution to Robinson for the contributions made by Robinson to the Intellectual Property ..." (*Id.* Ex. B, ¶ I.B.)

Second, plaintiff argues that many of the works of which he claims infringement are not included in the 1991 Agreement. The 1991 Agreement, he says, applies only to the Initial Works, the Subsequent Works, and derivative works based on the foregoing. (Pl.Mem. 10) He asserts in his brief that "[s]cores of other products ... are the copyrighted works of Robinson, with respect to which [he] alleges infringement." (*Id.*) He then goes on to say, however, that most of the allegedly infringed works "are not works of which he is the original author at all, but rather, are derivative works or works based upon [his] original works..." (*Id.* 11; *see also* Tr., July 22, 1996, 16-20) While the argument is far from clear, the thrust seems to be that (a) plaintiff owns copyrights that were not licensed or assigned to Princeton, (b) at least some of the works complained of infringe those copyrights, and (c) the allegedly infringing works are not derivative of the Initial and Subsequent Works, so they are not protected from infringement liability by the convey-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
(Cite as: 1996 WL 663880 (S.D.N.Y.))

Page 6

ance of rights pursuant to the 1991 Agreement.

*6 Assuming this to be the plaintiff's argument, it would not establish federal jurisdiction here. To begin with, the complaint contradicts the assertion that the allegedly infringed works are outside the 1991 Agreement. It alleges that the "vast array" of products sold by Princeton was "spawned" by the Initial Works. (Cpt ¶¶ 12-13) The works upon which plaintiff premises his infringement claim are "products, books, and other materials being marketed and sold by Katzman and the Review" for which plaintiff has "filed applications for registration of his copyrights," copies of which are attached to the complaint and all of which appear to be covered by the 1991 Agreement. (Cpt ¶¶ 41-43 & Ex. C) Hence, the complaint simply does not permit plaintiff's belated contention that the allegedly infringed works are not covered by the 1991 Agreement.[FN5]

> FN5. Many other allegations of the complaint support this conclusion. Paragraph 13 suggests that the 1991 Agreement permitted exploitation of all of plaintiff's works. Paragraph 18 complains of sales of products included in the 1991 Agreement. Paragraph 21 complains of products based upon or derived from the Initial Works. Paragraph 25 complains of copying of the Initial Works. Paragraph 26 alleges infringement of copyright in "these works," clearly a reference to the Initial Works.

Even if the complaint were not inconsistent with the argument advanced on the motion, it would be insufficient to the extent it seeks to assert infringement on the basis of works supposedly outside the 1991 Agreement. In order to state a claim for copyright infringement, the plaintiff must allege, *inter alia,* "which specific original works are the subject of the copyright claim." *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y.1992), *aff'd mem.,* 23 F.3d 398 (2d Cir.), *cert. denied,* 115 S.Ct. 365 (1994). This plaintiff assuredly has not done.

Plaintiff's final argument is that his claim for rescission of the 1990 Agreement on the ground that it allegedly was signed under duress independently gives rise to subject matter jurisdiction. (Pl.Mem. 18 n.*) Even assuming that rescission of the 1990 Agreement would result in the reversion of rights in some of the allegedly infringed works to plaintiff [FN6] and, in consequence, in infringement by the defendants, Robinson would be mistaken because his duress claim fails to state a claim upon which relief may be granted.

> FN6. This assumption, moreover, is unduly favorable to the plaintiff. The 1991 Agreement explicitly confirmed that plaintiff had transferred to Princeton any rights he had, including copyright, in and to all books in the series except the Initial Works and Word Smart II, gave Princeton the sole right to add new and further works to the series, and granted to Princeton the sole right to authorize the exploitation of all of the works. (Cpt Ex. A, ¶¶ 4(a), 4(b), 4(e)) There is no claim of duress with respect to the 1991 Agreement. Hence, rescission of the 1990 Agreement would not prevent Princeton from publishing the allegedly infringing works.

The elements of duress essential to state a claim for cancellation of an instrument are: "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms (4) because the circumstances permitted no other alternative." *Kamerman v. Steinberg,* 891 F.2d 424 (2d Cir.1989) (citing *Gulf & Western Corp. v. Craftique Products., Inc.,* 523 F.Supp 603, 610 (S.D.N.Y.1981)); *accord, e.g., First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 633-34 & nn. 8-9 (2d Cir.1972); *Industrial Recycling Systems, Inc. v. Ahneman Associates, P.C.,* 892 F.Supp. 547, 549 (S.D.N.Y.1995). This complaint sufficiently alleges the first two elements, possibly the third, but not the fourth. Plaintiff's assertions that he was in a "vulnerable state" and "lacked the financial re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
(Cite as: 1996 WL 663880 (S.D.N.Y.))

sources to vindicate his unambiguous rights" (Cpt ¶¶ 27-31) fail to allege the necessary lack of alternative. As plaintiff does not state a legally sufficient claim for rescission of the 1990 Agreement, there is no claim arising under the Copyright Act and therefore no subject matter jurisdiction.

*Lack of Copyright Registration*

**\*7** This action must be dismissed for an entirely independent reason. The complaint alleges that plaintiff applied for registration of the allegedly infringed copyrights and attached copies of the applications. There is no suggestion that any of the applications had been granted or refused by the Copyright Office. In consequence, plaintiff has not satisfied Section 411(a) of the Copyright Act.[FN7]

> FN7. Of course, insofar as plaintiff is correctly construed as claiming infringement of other copyrights, he has not even alleged that he has applied for, let alone obtained, registration.

Section 411(a) provides in relevant part that:

'no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement....''

Section 410(a) provides further:
'When, after examination, the Register of Copyrights determines that ... the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim....'

Moreover, Section 410(a)'s requirement of "examination" would be meaningless if filing and

registration were synonymous. The statute thus clearly distinguishes between "registration" and "application," requiring the former as a prerequisite to the commencement of an infringement action. Accordingly, as most of the cases in this Circuit to have considered the issue have held, registration is a prerequisite to commencement of an action for copyright infringement. *E.g., Kregos v. Associated Press,* 795 F.Supp 1325, 1331 (S.D.N.Y.1992); *Novak v. National Broadcasting Co.,* 716 F.Supp. 745, 750 (S.D.N.Y.1989); *Wales Industry Inc. v. Hasbro Bradley, Inc.,* 612 F.Supp 510, 515 (S.D.N.Y.1985); *Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179, 1182 (S.D.N.Y.1984); *Techniques Inc. v. Rohn,* 592 F.Supp. 1195, 1197 (S.D.N.Y.1984). Plaintiff nevertheless contends that his applications suffice in this case, arguing in substance that *Kregos* and similar cases are wrongly decided and that Section 410(d) of the Act warrants a different result.

The language in Section 410(d) upon which plaintiff relies states that "the effective date of a copyright registration is the day on which an application, deposit, and fee which are later determined ... to be acceptable for registration, have all been received in the Copyright Office." The fact that registration occurs *nunc pro tunc* as of the date of the application, he suggests, is tantamount to legislative equation of an application with registration. The obvious flaw in this argument, of course, is that the relation back of registration to the filing date says nothing about what constitutes registration. Indeed, this argument lends cogent support to defendants' emphasis on the distinction between application and registration, as there would be no need to relate the date of registration back to the date of application if the two were synonymous.

**\*8** Putting aside the argument based on Section 410(d), plaintiff points to a handful of cases that have held that registration is not a prerequisite to an infringement suit, most notably *Apple Barrel Productions, Inc. v. R.D. Beard,* 730 F.2d 384 (5th Cir.1984), and *Havens v. Time Warner,* 896

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008
(Cite as: 1996 WL 663880 (S.D.N.Y.))

F.Supp. 141 (S.D.N.Y.1995). *Apple Barrel* stated, without discussion or analysis, that "[i]n order to bring suit for copyright infringement, it is not necessary to prove possession of a registration certificate." 730 F.2d at 386. It cited only the then-current edition of NIMMER in support of this assertion, yet that authoritative text now quite clearly indicates that registration is a precondition to the commencement of an infringement action except in certain limited circumstances that do not pertain to this case. 2 NIMMER § 7.16[B]. *Havens* merely cited *Apple Barrel* for the proposition that possession of a registration certificate is unnecessary, not that suit may be brought before registration is granted. 896 F.Supp. at 142-43. Hence, the cases upon which plaintiff relies are unpersuasive.

There is, to be sure, something to be said for the proposition that an applicant for registration perhaps ought not be prevented from seeking injunctive relief against alleged infringement where the threat of irreparable injury is clear and the registration requirement has not been satisfied through no fault of the applicant as, for example, where the Registrar of Copyrights simply has not acted on an application. *See Olan Mills v. Linn Photo*, 23 F.3d 1345 (8th Cir.1994); *Pacific and Southern Co. v. Duncan*, 74 F.2d 1490 (11th Cir.1984); *cf. Monster Communications, Inc. v. Turner Broadcasting System, Inc.*, 935 F.Supp. 490, 493 (S.D.N.Y.1996); *but see* 2 NIMMER §§ 7.16 [B] [1], at 7-159, 7.16[C][3], at 7-177 to 7-178. But there are substantial reasons for the Court to decline to permit this action to go forward without registration.

First, the proposed Copyright Reform Act of 1993, among other things, would have repealed Section 411(a) and thus would have permitted copyright infringement suits upon application. H.R. 897, 103d Cong., 1st Sess. § 6 (1993). Yet Congress did not enact the bill. *See* Alan J. Hartnick, *GATT Copyright Restoration*, N.Y.L.J., Feb. 3, 1995, at 5. While such action is not conclusive of the construction properly to be placed on Section 411(a), it nevertheless serves as a reminder that the Court should

not lightly disregard what arguably is a congressional determination that no exception is to be made for injunction actions.

Second, even if the Court, in appropriate circumstances, properly might construe Section 411(a) to permit an action for an injunction prior to the grant or refusal of registration, this case would not present a situation in which that would be called for. As the discussion above indicates, the gravamen of this case is plaintiff's claim that the defendants are not living up to the terms of contracts pursuant to which he conveyed his alleged rights or acknowledged that the rights belonged to Princeton in the first place. If he prevails, he will be made whole, or substantially so, by damages and perhaps other relief. His situation is radically different from that of an author who finds another about to exploit the author's intellectual product without any color of authority.

*Conclusion*

**\*9** Accordingly, the Court holds that plaintiff has failed to state a claim arising under the Copyright Act. The motion to dismiss for lack of subject matter jurisdiction is granted. Even if the jurisdictional issue were resolved in plaintiff's favor, the Court would dismiss the complaint for failure to state a claim upon which relief may be granted because plaintiff may not bring this action for infringement in the absence of registration of the copyrights upon which he relies.

SO ORDERED.

S.D.N.Y.,1996.
Robinson v. Princeton Review, Inc.
Not Reported in F.Supp., 1996 WL 663880 (S.D.N.Y.), 41 U.S.P.Q.2d 1008

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.