UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
ROY DEN HOLLANDER,

                Plaintiff,

                                           Case No. 08-cv-4045(FB)(ECF)

      v.

DEBORAH SWINDELLS-DONOVAN,
PAUL W. STEINBERG, and
JANE DOE,

                Defendants.
-------------------------------------------------------


REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT SWINDELLS-DONOVAN'S MOTION FOR SUMMARY JUDGMENT



Roy Den Hollander (RDH 1957)
Attorney and *pro se* plaintiff
545 East 14 Street, 10D
New York, NY 10009
(917) 687 0652

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………………………………………………iii

PRELIMINARY STATEMENT ……………………………………………………..…………1

ARGUMENTS………..…………………………………………………………………………2

    I.      Defendant Donovan violates Local Civil Rule 56.1…………………………….2

    II.     Defendant Donovan keeps avoiding the one and only issue in the Ladies' Nights recusal motion—whether the Judge appeared bias………………………4

    III.    The defendants' use of the essays in court proceedings for which the essays were irrelevant is not fair use……………………………………………5

          Factor 1.  The "purpose and character" inquiry……………………………….5

                a.  Defendants' use was not transformative…………………………5

                b.  Defendants' use was in bad faith and willful……………………5

                c.  Defendants' use was commercial…………………………………7

          Factor 2.  The "nature of the copyrighted work" inquiry………………………9

          Factor 3.  The "amount and substantiality" inquiry……………………………10

          Factor 4.  The "market" inquiry……………………………………………….11

    IV.    Donovan wrongly advocates the use of copyrighted material in court is always fair use…………………………………………………………………11

    V.     Donovan concedes there is a novel question on subject matter jurisdiction..12

CONCLUSION…………………………………………………………………………………12

## TABLE OF AUTHORITIES

Page

Constitution

U.S. Const. Article III..................................................................................................12

Cases

Am. Geo. Un. v. Texaco, 60 F.3d 913 (2d Cir. 1994)......................................................1

Application of National Broadcasting Co., Inc., 635 F.2d 945 (2d Cir. 1980)..................11

Bond v. Blum, 317 F.3d 385 (4th Cir. 2003)..............................................................8, 9

Castle Rock Entr. v. Carol Pub., 955 F.Supp. 260 (S.D.N.Y. 1997),
 aff'd 150 F.3d 132 (2d Cir. 1998)..................................................................................6

Feist Pub. v. Rural Tel., 499 U.S. 340 (1991)......................................................5 n. 5, 9

Getaped.Com, Inc. v. Cangemi, 188 F.Supp.2d 398 (S.D.N.Y. 2002)..............................9

Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539 (1985)..................................6, 8

Healthcare Advocates, Inc. v. Harding, 497 F. Supp. 2d 627 (E.D. Pa. 2007)................7, 8

Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104 (2d Cir. 1998)................................5, 10

Infinity Broad. Corp. v. Kirkwood, on remand, 63 F.Supp.2d 420 (S.D.N.Y. 1999)............12

Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996 (2d cir. 1995)............................................6

Lennon v. Premise Media Corp., 556 F.Supp.2d 310 (S.D.N.Y. 2008)......................5 n. 4, 9

Morris v. Bus. Concepts, Inc., 2001 U.S. Dist. LEXIS 17760,
60 U.S.P.Q.2d 2015 (S.D.N.Y. 2001)............................................................................12

N.A.S. Import v. Chenson Enter., 968 F.2d 250 (2d Cir. 1992)........................................1

New Era Publications Int'l ApS v. Carol Pub. Group, 904 F.2d 152 (2d Cir. 1990)...............8

NXIVM Corp. v. Ross Inst., 364 F.3d 471 (2d Cir. 2004)..................................................6

Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992)................................................................6

Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir. 1987)..........................................11

Sandoval v. New Line Cinema Corp., 973 F. Supp. 409 (S.D.N.Y. 1997)..........................8

Shell v. Devries, 2007 WL 324592 (D.Colo. 2007),
aff'd, 2007 WL 4269047 (10th Cir. 2007)........................................................................8

Stewart v. Abend, 495 U.S. 207 (1990)……………………………………………………………9

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127
(2d Cir. 2003)……………………………………………………………………………9 n. 9

Twin Peaks v. Publ'ns Int'l, 996 F.2d, 1366 (2d Cir. 1993)……………………………………6

Weissmann v. Freeman, 868 F.2d 1313 (2d Cir. 1989)……………………………………5, 8
.
Worldwide Church of God v. Phil. Church God, 227 F.3d 1110 (9th Cir. 2000)…………………9

Statutes & Rules

17 U.S.C. § 504…………………………………………………………………………………1

17 U.S.C. § 505…………………………………………………………………………………1

Fed. R. Civ. P. 5.2……………………………………………………………………………...11

Fed. R. Civ. P. 11………………………………………………………………………………4

Fed. R. Civ. P. 15……………………………………………………………………………2 n. 1

Fed. R. Evid. 106……………………………………………………………………………11 n. 10

Local Civil Rule 56.1…………………………………………………………………………2

Other

Judge Pierre N. Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1103
(1990)……………………………………………………………………………………11 n. 12

Ray Ming Chang, Publication" Does Not Really Mean Publication, 33 AIPLA Q.J. 225
(2005)……………………………………………………………………………… 9, 10

**PRELIMINARY STATEMENT**

Defendant Swindells-Donovan ("Donovan") argues the plaintiff's six copyrighted essays infer he is "misogynistic," and that inference was relevant to the determination of whether the "conduct" of the female Judge in the Ladies' Nights case appeared bias. (Don. Sum. Jdg. Memo pp. 10-11; 56.1 ¶¶ 10, 18).  In  denying the recusal motion, the Judge held: "I am unaware of any conduct of mine that provides a basis for reasonably questioning my impartiality toward men as a class." (Ex. A, bottom of page, emphasis added).  The plaintiff argues the essays had nothing to do with, in the Judge's own words, her "conduct." They were written before the Ladies' Nights case even started.

Regardless of how your Honor resolves the relevancy argument for Donovan, it cannot help defendant Steinberg who fails to make any arguments on his own behalf in this case.  Steinberg cannot piggyback on Donovan's relevancy argument because the specifics of his alleged infringements are different.  Steinberg did not use the essays to oppose recusal motions—he used them to oppose a motion to amend a complaint in one case and to oppose a default motion in another case.  The judges in both cases were men; Steinberg, a defendant in one case, is male; and his client in both cases is also male; so for Steinberg the "misogynist" argument does not fly.  Further, by not submitting any evidence, he failed to meet his burden of proof as required on fair use issues.  Am. Geo. Un. v. Texaco, 60 F.3d 913, 918 (2d Cir. 1994).

If this Court finds no fair use, the relief sought against defendants is also somewhat different.  Steinberg used all six essays after their effective date of copyright registration, so the following may apply:  statutory damages, 17 U.S.C. § 504(c)(1); enhanced statutory damages, 17 U.S.C. § 504(c)(2)—since he knew his actions infringed or he acted with reckless disregard for the plaintiff's rights, N.A.S. Import v. Chenson Enter., 968 F.2d 250, 252-53 (2d Cir. 1992); and costs and attorney's fees, 17 U.S.C. § 505.

Donovan used one essay, A Different Time, after its effective date of registration as part of a larger work, so statutory, enhanced statutory, costs, and attorney fees may apply

1

to that use.  The other five essays she used before their registration, so liability for a portion of the profits she made from the Ladies' Nights case may apply.[1]

If this Court decides that none of the essays were infringed after registration, then plaintiff requests a portion of both defendants' profits from the cases in which they used the essays.

## ARGUMENTS

**I. Defendant Donovan violates Local Civil Rule 56.1.**

Local Civil Rule 56.1 requires material facts—not irrelevancies.  Donovan included in her 56.1 statement of material facts a number of irrelevancies at ¶¶ 1, 2, 11-15.[2]

Donovan also violated L. Civ. R. 56.1 by making false statements, omitting key facts, and making legal conclusions:  **(1)** Her 56.1 Statement at ¶ 4 falsely states the plaintiff's supporting affirmation for recusal in the Ladies' Nights case accused the Judge of "evincing" sexual bias, when it actually states the Judge "created the <u>appearance</u> that [she] was motivated by sexual bias …."  (Don. Decl., Ex. 2 – Plaintiff's Affrm. ¶ 8)(emphasis added).  **(2)** Donovan omitted in her Declaration at ¶ 3 that the Judge in the Ladies' Nights case personally and professionally insulted the plaintiff, moved up a pre-motion conference schedule to the advantage of the defendants, and relied on arguments from papers submitted by a defendant for which the plaintiff was suppose to have two weeks to respond.  (Don. Decl., Ex. 2 – Plaintiff's Affrm.  ¶¶ 2-4, 6, 7, 13).  **(3)** Her Declaration at ¶ 6 and her 56.1 Statement at ¶¶ 8, 9, omit that four of the essays received from Steinberg bore the copyright notice ©.  **(4)** Her 56.1 Statement at ¶¶ 8, 9, infers legal conclusions that when writings appear

---

[1] This allegation was made in the plaintiff's Rule 15(d) Cross Motion to Supplement the Complaint, April 1, 2009, which is still pending.

[2] Apparently, Donovan just cannot let go of her animosity toward the plaintiff for not believing and speaking as she does.  She once again attempts, as she did in the Ladies' Nights case and as Steinberg did in two cases, to obtain a court ruling against the plaintiff—not based on the merits—but on his exercise of the fundamental right of all humans to freedom of speech, which so many men died defending.  Her zealotry, or opportunism, is entertaining but a waste of this Court's time and an abuse of the judicial system.  The plaintiff is unaware of any defense for copyright infringement that absolves a plagiarist because an author's written words are not politically correct or kowtow to feminist tenets.  Donovan's tactics are more appropriate for the former Soviet Union where people were punished for not thinking certain thoughts and not reiterating certain doctrine.

2

on the Internet, they are actually "published" in accordance with the Copyright Act and can be used without the author's permission.  **(5)** She falsely swore the plaintiff attacked the "credibility" of the Judge in the Ladies' Nights case. (Don. Decl. ¶ 5, last sentence).  The plaintiff's recusal affirmation actually asserted the Judge's conduct was worthy of belief in presenting an appearance of bias. (Don. Decl., Ex. 2 – Plaintiff's Affrm. ¶¶ 5-13).  **(6)** She falsely swore in her Declaration at ¶ 8 and her 56.1 Statement at ¶ 18 falsely states the plaintiff "challenged" the Judge's "objectivity" when the recusal motion challenged the <u>appearance</u> of the Judge's objectivity.  **(7)** Her 56.1 Statement at ¶ 3 states her firm was "retained," which means paid money, to defend the nightclub Lotus in the Ladies' Night case. This contradicts ¶¶ 20 & 21 of the 56.1 Statement and her Declaration at ¶ 9 where she swore her use of the essays in defeating the recusal motion was not for "profit" but to "zealously represent" her client. But that is what lawyers do to justify their retainers.  **(8)** Her 56.1 Statement at ¶ 29 claims the plaintiff "implicitly admits Donovan did not 'hack' into a computer" to obtain the essays.  That is false.  Plaintiff <u>explicitly</u> said such in a February 10, 2009, letter to Senior Judge Block that plaintiff withdrew those allegations from the complaint. (Ex. B).  But Donovan still harps on them, 56.1 at ¶¶ 23-26, 29; Don Decl. at ¶¶ 10-11, —more zealous defense work or a failure to review the record.[3]  **(9)** Her 56.1 Statement at ¶¶ 27, 28 and attorney Krebs' Declaration at ¶ 2 prevaricate by failing to state plaintiff actually said he "temporarily displayed" five essays on the Internet prior to their copyright registration, Ex. D, and that <u>A Different Time</u> was displayed on the Internet after its copyright registration and is still on the Internet, which is the essay Donovan's attorney viewed in March 2009.  **(10)** Donovan made a legal conclusion in her Declaration at ¶ 8 that her opposition to the Ladies' Nights recusal motion "commented on and critiqued the six essays."  **(11)** She falsely swore she attached a "true and correct copy" of the complaint in

---

[3] Had she simply answered my email in October 2007 asking how she acquired the essays, Ex. C, I never would have accused her of hacking into a computer.  The accusation would have fallen on Steinberg, but he manipulated her into disseminating the essays first, so it looked liked she was the culprit.

3

the Ladies' Night case. (Don. Decl. ¶ 2). That complaint was superceded by the First Amended Class Action Complaint. (Den Holl. Decl. Ex. K).

**II. Defendant Donovan keeps avoiding the one and only issue in the Ladies' Nights recusal motion—whether the Judge appeared bias.**

The only issue in the Ladies' Nights recusal motion, or as Donovan now calls it "foundation," (Don. 56.1 ¶ 19), was whether the Judge <u>appeared</u> to act unfairly at a pre-motion conference and in scheduling that conference. (Den Holl. Sum. Jdg. Memo. pp. 12-15; Opp. Mtn Dis. pp. 13-15). The essays neither tend to prove nor disapprove either, since they were written before the case began. Donovan even admitted in her letter to the Judge that the essays were "completely irrelevant to any existing issue in the case…." (Den Holl. Decl. ¶ 15, Ex. G). She has not denied that when she wrote that letter, the Judge's recusal was still an "issue in the case."

The trier of fact on the recusal motion—the Judge—is the one who scheduled the conference, was at the conference, witnessed what occurred, and made the decision: "I am unaware of any <u>conduct of mine</u> that provides a basis for reasonably questioning my impartiality toward men as a class. Motion denied." (Ex. A (bottom of page)(emphasis added)). By the Judges own words, her decision was based on her "conduct" at the conference and in scheduling the conference—not her beliefs; nor plaintiff's beliefs; nor his alleged prejudices, credibility, motivations, or frivolity. This is not a situation where the plaintiff was the only one to observe the crucial events. The Judge was there and so was Donovan. Plaintiff's credibility as to the facts was irrelevant. The Judge had seen for herself. Donovan should have stuck to what had occurred, as did the Judge, rather than resorting to her "arsenal" of "all available tools" for winning at any cost. (*See* Don. 56.1 ¶ 21). If Donovan had really believed the recusal motion frivolous, then she should have made a Fed. R. Civ. P. 11(b)(2) motion—she did not.

**III. The defendants' use of the essays in court proceedings for which the essays were irrelevant is not fair use.**

Factor 1.  The "purpose and character" inquiry

*a. Defendants' use was not transformative.*

"[D]ifference in purpose is not quite the same thing as transformation." Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 108 (2d Cir. 1998).  Steinberg transferred the entire essays from the Internet to paper and Donovan from paper back to the Internet.  Their "retransmissions [left] the character of the original [essays] unchanged.  There is neither new expression, new meaning nor new message.… In short, there is no transformation.… [U]se of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use. " Id. at 108 (internal quotes omitted).

In addition, Donovan and Steinberg used the essays for the same purpose as they were written, which further weakens their fair use defenses.[4] Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989).  As argued in plaintiff's Opposition to the Dismissal Motion at pp. 16-17, Doc. No. 21, the intrinsic purposes of the essays were to agitate, provoke, incite, foment, and stir things up in the culture wars.  The defendants simply used the essays expressions in the hope of agitating the courts against him, as Donovan swore:  to win by using "all available tools in [her] arsenal," Don. 56.1 ¶ 21.[5]

*b. Defendants' use was in bad faith and willful.*

Donovan claims she had "a good faith belief the essays had been available to the general public." (Don. Sum Jdg. Memo. p 12).  When the plaintiff walks into Barnes & Noble, he has "a good faith belief" the books are "available to the general public," but that

---

[4] Defendants' use is not similar to the transformative use in Lennon v. Premise Media Corp., 556 F.Supp.2d 310 (S.D.N.Y. 2008), on which Donovan relies.  There a movie producer added film segments while parts of John Lennon's song "Imagine" were playing in the background.  The Court found fair use by the moviemaker because the film segments transformed the utopian message of the original song to a cynical one. Id. at 321-25.  Here, the defendants did not change the essays' messages.
[5] Donovan's Reply at pp. 4-5 simply confuses the denominator for determining under Factor 1 a sub-factor of "transformative" with the denominator used for Factor 3, Den Holl. Sum. Jdg. Memo. pp. 6-7, and she fails to realize that the law of copyright applies more strongly to the essays than biographies, *see* Feist Pub. v. Rural Tel., 499 U.S. 340, 347-48 (1991).

5

does not mean he can copy, display, distribute them on the Internet or elsewhere as he wishes.

"Fair use presupposes 'good faith' and 'fair dealing.'" Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 562 (1985)(quoted citation omitted). "Knowing exploitation of a copyrighted work for personal gain militates against a finding of fair use." Rogers v. Koons, 960 F.2d 301, 309 (2d Cir. 1992). "The standard is simply whether the defendant had knowledge that its conduct represented infringement or recklessly disregarded the possibility." Twin Peaks v. Publ'ns Int'l, 996 F.2d, 1366, 1382 (2d Cir. 1993). Plaintiff does not have to prove defendant's knowledge or reckless disregard directly; rather, it may be inferred from defendant's conduct. Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1010 (2d cir. 1995)(violation in bad faith and willful).

*(b)(1) Donovan blames Steinberg for her bad faith and willfulness.*

Both defendants were on notice that four of the essays were protected works because they carried the copyright notice ©, meaning the essays could not be used without the author's permission. Castle Rock Entr. v. Carol Pub., 955 F.Supp. 260, 267 (S.D.N.Y. 1997), *aff'd* 150 F.3d 132 (2d Cir. 1998); Copyright Circular 1, p. 4. Both defendants are sophisticated with respect to such matters since they are attorneys, Castle Rock at 267, yet both chose to ignore the notice and use the essays as they pleased. Even had the essays been published, it would not have given them the right to copy, display, and distribute them. 17 U.S.C. 501. Donovan wrongly asserts that NXIVM Corp. v. Ross Inst., 364 F.3d 471 (2d Cir. 2004), holds the copyright notice has nothing to do with determining bad faith. (Dom. Reply p. 5). The Second Circuit, however, found the "bad faith" subfactor favored the copyright holder in that case where the © notice was on the work.[6] Id. at 478.

Donovan, an experienced Federal court litigator of 25 years, knew the plaintiff wrote the essays, knew they were in a tangible form, saw the copyright symbol, and knew they

---

[6] If Donovan really believed the essays had been obtained lawfully, then why did she refuse to tell plaintiff how she acquired them.

6

were not so old as to have fallen into the public domain. (Don. Decl. ¶¶ 5, 6). Yet she tries to excuse her bad faith and willful infringement on her naiveté in trusting the word of Steinberg—not just as to facts but to copyright law. (Id.). Donovan's firm, Gordon & Rees, has an intellectual property division. For her to rely on the word of Steinberg—a non-copyright lawyer and <u>not</u> an officer of the S.D.N.Y. court—that certain essays were "published" and "could be [re]produced" strains credulity.[7] (Don. 56.1 ¶ 9). Further, at the time Donovan reproduced and displayed the essays, they had <u>not</u> yet been filed in a state court case. Even if they had, the schoolyard defense of "he did it, so I can" does not apply.[8]

*(b)(2) Defendant Donovan's visceral reaction to the essays infers she was driven to disseminate them in order to marshal social disapproval against the plaintiff.*

Donovan admits she found the essays "inflammatory," "misogynistic," and "offensive." (Don. 56.1 ¶¶ 10, 16). All motivating factors for her to display the essays on PACER in order to agitate the politically correct against the plaintiff for being an heretical opponent of feminism who should be stoned with opprobrium, and to sway the court into ruling against him because of his heresy. Her bad faith is especially clear, since the essays did not tend to prove or disprove whether the Judge had exhibited an appearance of bias.

c. *Defendants' use was commercial.*

Donovan argues the practice of law is <u>not</u> commercial and a record of wins does <u>not</u> provide additional benefits, such as recognition and more clients. (Don. Sum. Jdg. Memo. p. 8). The absurdity of that statement is obvious, as are her attorney's blatant misrepresentations about a case holding the practice of law is commercial. (Don. Reply Memo. pp. 6-7). In <u>Healthcare Advocates, Inc. v. Harding</u>, 497 F. Supp. 2d 627 (E.D. Pa. 2007), the

---

[7] Steinberg is not admitted to the S.D.N.Y. Donovan also relies on the format of the essays to justify her alleged belief they came off the Internet. (Don. 56.1 ¶¶ 8, 9; Decl. ¶ 6). The problem is that when something is printed off the Internet, the bottom of the hard copy usually lists the date of printing. None of the pages with the essays have such a date, which should have made her suspicious.
[8] Paradoxically, post-modern feminists, such as Donovan, are suppose to take responsibility for their volitional acts and not blame men, but such would not serve her interests here.

7

court specifically found a law firm had engaged in commercial activity when it reproduced and displayed to its employees a work as part of its defense of a client. Id. at 636. The court found the subfactor of commercialism existed because "law firms operate for profit" and the "firm makes a living by charging clients for defending their rights in court." Id. The court went on to find fair use, however, because, in part, the copying and displaying were relevant to the case. Id. at 637.

Donovan also tries to narrow commercialism to only "pecuniary gain," "enrich[ment]," or "pure financial gain." (Don. Sum. Jdg. Memo. p. 9). "Monetary gain is not the sole criterion." Weissmann, 868 F.2d at 1324. That rule is not limited to academia, as Donovan contends, because the Second Circuit specifically relied on the principle that "the crux of the profit/non-profit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price," Harper & Row, 471 U.S. at 562. So commercialism means more than pecuniary gain—it means benefit, which includes recognition or fame.

Donovan even cherry picks phrases from other cases trying to assemble the dissemblance that attorneys do not profit—materially or otherwise—from defending their clients or winning cases. (Don. Sum. Jdg. Memo. pp. 8-11). She mistakenly relies on two cases that gave the commercial subfactor little weight because the defendants' works were transformative. In Sandoval v. New Line Cinema Corp., 973 F. Supp. 409 (S.D.N.Y. 1997), defendant's movie briefly included several of the plaintiff's still photographs in one scene. In New Era Publications Int'l ApS v. Carol Pub. Group, 904 F.2d 152 (2d Cir. 1990), the defendant's book long expose about Scientology was a work of criticism and research. Donovan and Steinberg's uses of the essays were not transformative; therefore, the commercial subfactor is not outweighed by the transformative subfactor. In Shell v. Devries, 2007 WL 324592 (D.Colo. 2007), *aff'd*, 2007 WL 4269047 (10th Cir. 2007), the copyright action was dismissed under Rule 12(b)(6), in part, because the plaintiff failed to allege a commercial use by the defendant of her work. Id. at *4. Donovan admits she was retained in the Ladies'

Nights case. (Don. Decl. ¶ 2). And in <u>Bond v. Blum</u>, 317 F.3d 385 (4th Cir. 2003), the commercial subfactor did not apply because the work was relevant to the issues. <u>Id.</u> at 389. Here, the essays were not relevant to the "critical issue" of whether the Ladies' Nights Judge was "an impartial arbiter." (Don. Sum. Jdg. Memo. p. 10, quoted words).

<u>Factor 2. The "nature of the copyrighted work" inquiry</u>

Fair use is less likely in creative than factual works. <u>Stewart v. Abend</u>, 495 U.S. 207, 237 (1990)(citation omitted). Creative works contain creativity, imagination and originality. <u>Worldwide Church of God v. Phil. Church God</u>, 227 F.3d 1110, 1118 (9th Cir. 2000). The "*sine qua non* of copyright is originality." <u>Feist Pub. v. Rural Tel.</u>, 499 U.S. 340, 345 (1991). If the essays are anything—they are original.

The distinction under Factor 2 is between creative works and those that consist of a recitation of facts. <u>Lennon v. Premise Media Corp.</u>, 556 F.Supp.2d 310, 325 (S.D.N.Y. 2008). It is not fiction/fantasy versus commentary/opinion, since both are creative; otherwise, Justice Scalia's views on interpreting the Constitution would carry less copyright protection than comic books. The essays in this case are not a mere recitation of facts.[9]

As for whether the essays were published, this Court is referred to the plaintiff's Opposition to the Motion to Dismiss, pp. 5-9. The display of a work is not a publication, and "[t]o 'display' a work means to show a copy of it, either directly or by means of … any other device or process," which presumably includes the Internet. 17 U.S.C. § 101 (definitions "publication" & "display"). Donovan relies on <u>Getaped.Com, Inc. v. Cangemi</u>, 188 F.Supp.2d 398 (S.D.N.Y. 2002), which is factually distinguishable because it only applied to a website's html code—not the actual words of the author.

Her attorney, Hurwit, says that one commentator, Ray Ming Chang, "plainly acknowledges that the core holding of <u>Getaped</u> is a settled precept of copyright law." (Don. Reply p. 9). That is completely false and an apparent attempt to deceive this Court for

---

[9] The Court, however, could redact any facts contained in the essays and make its decision based on the remaining expression. <u>Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.</u>, 338 F.3d 127, 135 (2d Cir. 2003).

9

which Hurwit should be admonished.  Chang wrote a 27-page law journal article, <u>"Publication" Does Not Really Mean Publication</u>, 33 AIPLA Q.J. 225 (2005), analyzing the "uncertainty" and lack of "clarity" in the law "as to whether publication can occur via electronic dissemination." <u>Id.</u> at 231, 252-53.  The entire theme of Chang's article is that the law is unsettled.  Chang even presents three different interpretations which illustrate that.  Donovan's attorney uses the one that supports publication, but in doing so, he hides the page cite, 237, apparently to mislead that Chang considers publication via electronic dissemination to be "settled precept."  Chang did not opt for any interpretation, only that the "lack of clarity … needs to be resolved," <u>id.</u> at 251, which this Court now has the opportunity to do.

<u>Factor 3.  The "amount and substantiality" inquiry</u>

"Though not an absolute rule, generally, it may not constitute a fair use if the entire work is reproduced." <u>Infinity</u>, 150 F.3d at 109.  Donovan argues all the essays are part of the larger work <u>Stupid Frigging Fool</u>, and, therefore, her use of them was not "substantial."  (Don Sum. Jdg. Memo. p. 16-17).  Only <u>A Different Time</u> is part of <u>Stupid Frigging Fool</u>.  All the others were created and copyrighted as separate works, not as a collection.  Still, she argues that because all the essays deal with the same theme, they "constitute a minor portion of a larger body of work…"  (<u>Id.</u>) Such foolishness would allow the infringement of nearly any handful of John Updike's short stories because his large collection of short stories deal, almost exclusively, with the theme of the American small town.

Her attorney then makes an even more ludicrous argument:  if the "essays constitute the bulk of the [plaintiff's] work" on one theme, it is fair use to use them in their entirety.  (<u>Id.</u>).  Under this claim, a person could copy most of John Updike's short stories without infringing because it was the bulk of his work on one theme.

Donovan disingenuously claims she was driven to use the essays in their entirety because she did not want to be charged with "doctoring" or quoting "out of context."  (Don. Decl. ¶ 8). Ramifications from plagiarizing just part of a work cannot justify plagiarizing the

10

entire work; otherwise, the fair use factor concerning "amount and substantiality" would be meaningless.[10]

Factor 4.  The "market" inquiry

The relevant consideration is the "potential market."  <u>Salinger v. Random House, Inc.</u>, 811 F.2d 90, 99 (2d Cir. 1987).[11]  Donovan faults the plaintiff for not providing evidence of potential markets harmed.[12]  But it is she who asserts the defense of fair use, so it is her burden to submit "empirical data" that there is an "absence of a market for the six essays."  (Don. Reply p. 10, quotes).  She also makes the conclusory assertion that the plaintiff is not a public figure but again fails to submit evidence.  Donovan's attorney actually refuses to meet his client's burden of proof by arrogantly declaring he "will not waste time and space" for this.  (Don. Reply p. 10 n. 4).

Donovan also faults the plaintiff for not moving to seal the records, presumably under Fed. R. Civ. P. 5.2.  That ruled took effect December 1, 2007.  Donovan put the essays on PACER on October 24, 2007.  Prior to December 1, 2007, once documents become known to the public, as with PACER, "it would take the most extraordinary circumstances" to justify sealing.  <u>Application of National Broadcasting Co., Inc.</u>, 635 F.2d 945, 952 (2d Cir. 1980).  Further, even had the essays been sealed, it would not absolve Donovan of violating the plaintiff's rights under the Copyright Act.

**IV. Donovan wrongly advocates the use of copyrighted material in court is always fair use.**

Donovan claims not to advocate a *per se* rule that copyrighted works used in court are inherently fair use, but in effect that is what she is doing by not qualifying her arguments with the requirement that the works be relevant.  (Don. Sum. Jdg. Memo. pp. 19,

---

[10] Her attorney even tries to justify submitting five entire essays because Fed. R. Evid. 106 allows an adverse party to demand the submission of an entire document quoted from.  The adverse party was the plaintiff, so her attorney is actually arguing that Donovan read the mind of the plaintiff and found that he would require the complete essays be submitted, so she did it herself.

[11] Plaintiff unsuccessfully submitted a number of the essays to various periodicals after the defendants' distributions.  Such publications decline articles that were previously available to the public.

[12] Donovan claims, without evidence, her filings on PACER increased the essays' values.  (Don. Reply pp. 10-11).  Even if so, the increased value due to unauthorized use does not make it fair.  Judge Pierre N. Leval, <u>Toward a Fair Use Standard</u>, 103 Harv. L. Rev. 1103, 1111 (1990).

22).  The plaintiff argues the relevancy requirement in his Sum. Jdg. Memo. pp. 13-15 and Opp. to Mtn. Dis. pp. 11-15.  Donovan also tries to establish a *per se* rule by extending the New York litigation privilege for defamation to Federal copyright law.[13]  (Don. Sum Jdg. Memo. p. 20).  She claims any statements by attorneys in court, including the submission of copyrighted works, would be absolutely privileged as a matter of law.  That is the same as a *per se* rule for fair use.  She also argues "finality" supports an absolute litigation privilege, which is the same as advocating that whenever one party violates another party's rights in connection with a judicial proceeding, the harmed party has no recourse in a plenary action.

**V.  Donovan concedes there is a novel question on subject matter jurisdiction.**

Donovan admits the plaintiff "correctly identifies a split of authority" on whether subject matter jurisdiction exists only when "copyright certificates have issued."  (Don Reply pp. 1-2).  Courts decline to make fee awards in cases with novel questions such as this case because it is important to encourage parties to clarify the boundaries of copyright law.  <u>Morris v. Bus. Concepts, Inc.</u>, 2001 U.S. Dist. LEXIS 17760 *4, 60 U.S.P.Q.2d 2015 (S.D.N.Y. 2001); <u>Infinity Bd. Corp. v. Kirkwood</u>, 63 F.Supp.2d 420, 427-28 (S.D.N.Y. 1999)(no fees where party had well considered position and litigated case responsibly).  Donovan's request for attorney fees, therefore, assuming she is successful on the merits, should be denied.  Further argument against attorney's fees for defendants is at plaintiff's Opposition to the Motion to Dismiss pp. 23-24.

If this Court decides it does not have subject matter jurisdiction over the essays <u>Fear Corrupts</u> and <u>Two Sides</u>, then it has no authority to make a decision concerning those essays.  U.S. Const. Article III.

**CONCLUSION**

Plaintiff requests his Cross Motion for Summary Judgment be granted.

---

[13] Donovan's attorney relies on New York defamation law as applied to fact situations that have nothing to do with Federal copyright law.  He bizarrely argues that because the cases did not involve copyrights that means they actually apply to all copyright cases.  (Don. Sum. Jdg. Memo. p. 20 n. 10).

12

Dated: January 30, 2010
      New York, N.Y.

                                                              /S/
                                                       _____
                                                       Roy Den Hollander, Esq.
                                                       Attorney and plaintiff
                                                       545 East 14 Street, 10D
                                                       New York, N.Y. 10009
                                                       (917) 687-0652