UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ROY DEN HOLLANDER,

                Plaintiff,

    -against-

DEBORAH SWINDELLS-DONOVAN,
PAUL W. STEINBERG, and JANE DOE.

                Defendants.

-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
No. 08-CV-4045 (FB) (LB)

*Appearance:*

*For the Plaintiff:*
ROY DEN HOLLANDER, ESQ., *pro se*
545 East 14th St. Apt. 10D
New York, NY 10009

*For Defendant Deborah Swindells-Donovan:*
JOSHUA S. HURWIT, ESQ.
GORDON & REES LLP
90 Broad Street, 23rd Floor
New York, NY 10004

*For Defendant Paul W. Steinberg:*
PAUL W. STEINBERG, ESQ., *pro se*
14 East Fourth Street
New York, NY 10012-1141

**BLOCK, Senior District Judge:**

      Roy Den Hollander ("Hollander"), an attorney appearing *pro se*, sued Deborah Swindells-Donovan ("Donovan") and Paul W. Steinberg ("Steinberg"), also attorneys, for copyright infringement under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101-803, in connection with the defendants' submission of six of Hollander's essays ("the Essays") as exhibits in New York state and federal court proceedings. Donovan moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim, and requested an award of costs and attorney's fees;

1

the Court converted the motion to one for summary judgment and afforded the parties an opportunity to submit papers in support. Hollander then cross-moved for summary judgment. For the following reasons, the Court grants Donovan's motion, denies Hollander's, and *sua sponte* grants summary judgment to Steinberg. In addition, the Court denies Donovan's request for fees and costs.

## I

As confirmed before the Court at oral argument on February 18, 2010, the relevant facts are not in dispute:

Hollander authored the six Essays, which convey his aggressively anti-"Feminazi" world view, and registered each with the United States Copyright Office (the "Office").[1] He made the Essays publicly available on his website at some point in 2006 or 2007, at which time Steinberg made a copy.[2] On October 19, 2007, Steinberg sent copies of the Essays to Donovan.

### A. Donovan's Use of the Essays

Hollander's claims against Donovan arise from *Hollander v. Copacabana Nightclub, et al.* ("*Copacabana*"),[3] in which Hollander alleged that the "Ladies' Night" promotions hosted by several New York City nightclubs discriminated against men in violation of the Fourteenth Amendment. Donovan represented defendant Lotus Nightclub.

After a contentious status conference, Hollander moved to disqualify District Judge

---

[1] Hollander possesses certificates of registration for "A Different Time," "An Invisible Weapon," "Do Men Cause Wars," and "Some Differences: Men and Girls," "Fear Corrupts," and "Two Sides;" although the Office has not issued certificates for the remaining two, "Fear Corrupts" and "Two Sides," both are listed as registered in the Office's records.

[2] Hollander subsequently removed the Essays from the Internet.

[3] Case No. 07-CV-5873(MGC) (S.D.N.Y. filed June 21, 2007)

Miriam Cedarbaum, asserting that her conduct had "create[d] the appearance that [she], whether true or not, is biased and prejudiced against men and creates a perception that she is not impartial in these proceedings." Krebs Decl., Ex. 5 (Hollander Aff. in Support).  Donovan attached the Essays to her opposition to Hollander's motion, asserting that they supported her argument that Hollander was "challenging Judge Cedarbaum's impartiality simply because she is female, not biased." *Id.*, Ex. 6 (Donovan Decl. in Opp.).  Judge Cedarbaum denied Hollander's recusal motion and ultimately dismissed the *Copacabana* case because the defendants' offering of reduced-priced admission to females did not constitute state action.  *See Copacabana*, 580 F. Supp. 2d 335 (S.D.N.Y. 2008).

**B. Steinberg's Use of the Essays**

Though the Court did not have the benefit of moving papers or affidavits from Steinberg, the parties' undisputed representations at oral argument and the record before the Court provide a sufficient account of the facts relevant to Steinberg's use of the Essays.

Hollander and Steinberg's sordid history centers primarily around Steinberg's representation of Hollander's upstairs neighbor William Fasano, the object of a number of Hollander's lawsuits.  Hollander's claims against Steinberg in this particular case, however, originated out of two particular New York state court actions.  In *Hollander v. Fasano, et al.* ("*Fasano I*"),[4] Hollander brought a defamation action against several parties for statements made in pleadings in a different action;[5] Steinberg was a named defendant and also represented Fasano. When Hollander moved to amend the complaint, seeking to add certain female acquaintances of Fasano as defendants, Steinberg submitted the Essays as an exhibit to his affirmation in opposition.

---

[4] N.Y. Co. Civ. Ct. Index No. 021283/2006

[5] N.Y. Sup. Ct. Index No. 116711/2003

Steinberg asserted that the content of the Essays -- in light of Hollander's alleged "issues with gender identity," "obsession with Fasano's body," and assault of Steinberg -- "addressed matters relating to [Hollander's] motivation in bringing suit and also concern for the physical protection of parties whom [Hollander] was seeking to join in the action." Hollander Decl., Ex. I (Steinberg Affirmation in Opp.).

In *Hollander v. Fasano* ("*Fasano II*"),[6] Steinberg represented Fasano in a nuisance action brought by Hollander. After Hollander's complaint went unanswered, he moved for a default judgment; Steinberg opposed that motion, appending a verified answer and counterclaims which requested, *inter alia*, "protective orders ... to safeguard Mr. Fasano and others from potential physical harm by Mr. Den Hollander." Hollander Decl., Ex. J (Verified Answer and Counterclaim). In support of this request, Steinberg attached the Essays, asserting that their content, when considered with Hollander's alleged misdeeds, evidenced the danger that Hollander posed to his neighbors. *Id.*

## II

Both Donovan and Steinberg admit that they knowingly submitted Hollander's Essays as exhibits in a judicial proceeding. Accordingly, the issue before the Court is whether their submissions constitute "fair use" under § 107 of the Copyright Act as a matter of law.

**A. Summary Judgment**

"Summary judgment should be granted if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). "Although fair use is a mixed question

---

[6]N.Y. Sup. Ct. Index No. 102057/2007

of law and fact," the Court can "resolve[] fair use determinations at the summary judgment stage where there are no genuine issues of material fact." *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) (citations, internal quotation marks and alterations omitted). There is a genuine dispute as to material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the face of such a dispute on a summary judgment motion, the "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2676 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### B. Subject Matter Jurisdiction

Donovan argues that Hollander's failure to present certificates of registration for "Fear Corrupts" and "Two Sides" deprives the Court of subject-matter jurisdiction over infringement claims based on those essays. However, the record demonstrates that all six Essays were registered with the Office; as such, the Court has jurisdiction over all of Hollander's infringement claims. *See In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116, 122 (2d Cir. 2007) (citing 17 U.S.C. § 411(a)).

### C. Fair Use Under 17 U.S.C. § 107.

Under the Copyright Act, the fair use of copyrighted works does not constitute "an infringement of copyright," permitting the reproduction of copyrighted works "for purposes such as criticism, comment, news reporting, teaching [and] research." 17 U.S.C. § 107. Determining whether a particular reproduction is a fair use requires the consideration of a number of statutory

5

factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* These factors are not to be treated in isolation; "all are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994). Ultimately, the statute "calls for case-by-case analysis," and its lists of acceptable purposes and relevant factors are "illustrative and not limitative." *Id.* Thus, "[a]lthough defendants bear the burden of proving that their use was fair, they need not establish that each of the factors set forth in § 107 weighs in their favor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004).

Although neither the Supreme Court nor the Second Circuit has addressed fair use in the context of evidentiary submissions in judicial proceedings, other courts have. Consistent with the case-by-case nature of the doctrine, those courts have not announced a *per se* rule. Instead, they have considered each application of the unique fair use question presented, guided by the four statutory factors where relevant. *See, e.g.*, *Bond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003) (affirming finding of fair use where alleged infringer introduced plaintiff's copyrighted manuscript as evidence in child custody proceeding); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir. 1982) (affirming jury's finding of fair use where alleged infringer introduced copyrighted films as evidence in a nuisance abatement proceeding); *Shell v. DeVries*, No. 07-1086, 2007 WL 4269047 (10th Cir. 2007) (affirming finding of fair use where alleged infringer copied "ten pages from [plaintiff's]

website to use as evidence in unrelated litigation"); *but see Images Audio Visual Prod., Inc. v. Perini Bldg. Co., Inc.*, 91 F. Supp. 2d 1075, 1082 (E.D. Mich. 2000) (holding that the introduction of copyrighted photographs as evidence in an arbitration proceeding constituted copyright infringement where photos were copyrighted "specifically for the purpose of litigation" and defendant used them for their intended, intrinsic use as demonstrative evidence).  The Court adopts the same approach.

**D.  Claims Against Donovan**

Donovan's stated justification for her submission of the Essays to Judge Cederbaum appears somewhat disingenuous.  The relevancy of the Essays to Hollander's recusal motion is dubious, and she undoubtedly intended simply to prejudice Judge Cederbaum against Hollander.  Nonetheless, the decisive factor bearing upon the issue of "fair use" in the present case is that Donovan introduced the Essays into the judicial proceeding only as evidence of the workings of Hollander's mind; she did not attempt to produce a comparable or derivative work, nor did she use the Essays for their expressive content.  Even though the Essays are indisputably creative and published, and Donovan admits that she reproduced five of the six in their entirety, her submission "[was] indifferent to [Hollander's] mode of expression."  *See Bond*, 317 F.3d at 395 ("The copyright law was never designed to protect content as distinguished from mode of expression.").

Accordingly, Donovan did not exploit Hollander's copyrighted ideas or expressions, nor did she put the Essays to "the same intrinsic use" for which Hollander obtained the copyrights and for which he could "expect[] protection from unauthorized use."  *Jartech*, 666 F.2d at 407.  By contrast, in *Perini* -- the only case of which the Court is aware that found an infringement where copyrighted materials were submitted in a judicial proceeding -- the defendant infringed the plaintiff's copyrights because he used the copyrighted photos "for precisely the same purpose -- or,

7

at a minimum, for one of the same purposes -- as the photos themselves were intended to serve," namely for evidence in a judicial proceeding. *Perini*, 91 F. Supp. 2d at 1081.

Moreover, given the nature of the Essays and that they were submitted as evidence of the workings of Hollander's mind, "it is impossible to imagine" how their use in the judicial proceeding could affect the market for the Essays, which Hollander describes as "men's rights groups," Hollander Decl. ¶ 27, or "could in any way impact [their] marketability." *See Bond*, 317 F.3d at 396-97 ("[I]f anything, [the defendants' use of plaintiff's manuscript as evidence] increases the value of the work in a perverse way, but it certainly doesn't decrease it." (alteration in original)); *cf. Perini*, 91 F. Supp. 2d at 1086 (Where the submission of copyrighted photos as evidence "wholly superseded one of the principal objects of [the copyrighted works]," it "thereby displaced a key market for those works.").

Ultimately, Donovan's submission of the Essays "ha[d] nothing whatsoever to do with any interest that the copyright law was designed to protect." *Bond*, 317 F.3d at 397.

**E.  Claims Against Steinberg**

Although Steinberg embraced Donovan's arguments in his pre-motion letter and at oral argument, he did not formally join her motion, nor did he submit his own. Nevertheless, a district court has the power to *sua sponte* grant summary judgment "so long as the losing party was on notice that [he or] she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Thus, "[w]here it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to

judgment as a matter of law." *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996).

Between Hollander's own motion for summary judgment, his opposition to Donovan's motion, and the representations of the parties at oral argument, the facts underlying the claims against Steinberg have been fully developed and are not in dispute. As with Donovan, Steinberg's purpose in introducing the Essays undoubtedly had less to do with their relevancy, which was questionable, at best, and more to do with poisoning the minds of the judges in *Fasano I* and *Fasano II*. Be that as it may, Steinberg also submitted the Essays to evince the workings of Hollander's mind, and his use cannot realistically be viewed as negatively impacting Hollander's market for the Essays. Accordingly, the same rationale which supports granting summary judgment for Donovan compels the Court to grant summary judgment for Steinberg.

### III

Donovan requests attorney's fees and costs for her defense of this action. The Court has the "equitable discretion" to make, or refrain from making, such an award to the prevailing party in a copyright action. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (citing 17 U.S.C. § 505). In *Fogerty,* the Supreme Court:

> approved in dicta several nonexclusive factors courts could consider when awarding fees, namely, "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Such factors may be used "so long as . . . [they] are faithful to the purposes of the Copyright Act."

*Crescent Publ'g Group, Inc. v. Playboy Enter., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001) (quoting *Fogerty*, 510 U.S. at 534).

While Hollander filed suit based on facts which clearly could not support copyright

9

infringement, Donovan's use of the Essays in the litigation, as noted, was of dubious propriety. Accordingly, after considering the *Fogerty* factors, the Court, in its equitable discretion, will not award costs and fees to Donovan.[7]

## CONCLUSION

Donovan's motion for summary judgment is granted, and Hollander's cross-motion is denied. Summary judgment in favor of Steinberg is granted *sua sponte*. The complaint is dismissed in its entirety.

Donovan's request for attorney's fees and costs is denied.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 11, 2010

---

[7] In the same vein, the Court would not have granted Steinberg fees and costs if he had retained counsel in this matter and requested them.